UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE DASILVA, JR.,

Plaintiff,

Civil No. 20-11358

v.

Honorable Mark A. Goldsmith

JOHN E. WHITLEY, in his official capacity as Acting Secretary of the Army, AND MARTIN POTTER, individually and in his official capacity as Assistant Chief of U.S. Army Detroit Arsenal Division,

Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

---

Defendant John E. Whitley, in his official capacity as the Acting Secretary of the United States Army, and Defendant Martin Potter, in his official capacity as the Assistant Chief of the United States Army Detroit Arsenal Fire Division, by and through their attorneys, Saima S. Mohsin, Acting United States Attorney, and Benjamin A. Anchill, Assistant United States Attorney, now move to dismiss the amended complaint for the reasons set forth more fully in the attached brief in support of this motion. Pursuant to Local Rule 7.1(a), undersigned counsel sought

concurrence in the relief sought by explaining the basis for this motion to Plaintiff's counsel via email on March 16, 2021. However, concurrence was not forthcoming.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

*/s/ Benjamin A. Anchill*

Benjamin A. Anchill (P70968)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9566
benjamin.anchill@usdoj.gov

Dated: March 18, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE DASILVA, JR.,

Plaintiff,

Civil No. 20-11358

v.

Honorable Mark A. Goldsmith

JOHN E. WHITLEY, in his official capacity as Acting Secretary of the Army, AND MARTIN POTTER, individually and in his official capacity as Assistant Chief of U.S. Army Detroit Arsenal Division,

Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

---

**ISSUES PRESENTED**

I. Should Plaintiff's First Amendment retaliation claim (Count I) be dismissed as preempted by Title VII?

II. Should Plaintiff's Title VII hostile work environment claim (Count II) be dismissed because the amended complaint fails to allege facts sufficient to support a plausible inference of a hostile work environment?

III. Should Plaintiff's Title VII retaliation claim (Count III) be dismissed due to failure to allege a plausible adverse employment action and because the claim is administratively unexhausted?

IV. Should Plaintiff's claims under Michigan's Elliott-Larsen Civil Rights Act (Counts IV and V) be dismissed as preempted by Title VII?

V. Should Plaintiff's state-law tort claims (Counts VI and VII) be dismissed because they were not presented to the Department of the Army, as required under the Federal Tort Claims Act, and because they are preempted by the Federal Employees' Compensation Act?

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iv

INTRODUCTION ........ 1

BACKGROUND ........ 1

LEGAL STANDARDS ........ 8

A. Rule 12(b)(1) ........ 8

B. Rule 12(b)(6) ........ 9

ARGUMENT ........ 9

A. Count I: Plaintiff's First Amendment retaliation claim is preempted by Title VII ........ 9

B. Count II: Plaintiff's Title VII hostile work environment claim does not rise to the level of an actionable sexually hostile work environment claim ........ 10

C. Count III: Title VII retaliation claim is not plausible because there is no cognizable adverse action alleged and the claim is unexhausted. ........ 17

D. Counts IV and V: Plaintiff's ELCRA claims are preempted by Title VII. ........ 20

E. Counts VI & VII: Plaintiff's negligent and intentional infliction of emotional distress were not presented to the Army and are preempted by the Federal Employees' Compensation Act. ........ 22

1. Federal Tort Claims Act ........ 22

2. FECA Preemption ........ 24

CONCLUSION ........ 25

CERTIFICATION OF SERVICE ........ 26

LOCAL RULE CERTIFICATION ........ 27

## TABLE OF AUTHORITIES

**Cases:**

*Amini v. Rite Aid Corp.*, 819 F. App'x 344 (6th Cir. 2020)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Benford v. Frank*, 943 F.2d 609 (6th Cir. 1991)

*Blakely v. United States*, 276 F.3d 853 (6th Cir. 2002)

*Briggs v. Potter*, 463 F.3d 507 (6th Cir. 2006)

*Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998)

*Brown v. General Servs. Admin.*, 425 U.S. 820 (1976)

*Brown v. Middaugh*, 41 F. Supp. 2d 172 (N.D.N.Y. 1999)

*Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 2000)

*Bush v. Lucas*, 462 U.S. 367 (1983)

*Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939)

*Coulson v. The Goodyear Tire & Rubber Co.*, 31 F. App'x 851 (6th Cir. 2002)

*Davis v. Runyon,* 142 F.3d 433 (6th Cir. 1998)

*Douglas v. United States*, 658 F.2d 445 (6th Cir. 1981)

*Downs v. Postmaster Gen.*, 191 F.3d 451 (6th Cir. 1999)

*Ellison v. United States*, 531 F.3d 359 (6th Cir. 2008)

*Ervin v. Nashville Peace & Just. Ctr.*, 673 F. Supp. 2d 592 (M.D. Tenn. 2009)

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)

*Folley v. Henderson*, 175 F. Supp. 2d 1007 (S.D. Ohio 2001)

*Hammer v. Paulson*, No. 05-CV-2557G, 2007 WL 2819377
(N.D. Ga. Sept. 25, 2007)

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)

*Hawana v. City of New York*, 230 F. Supp. 2d 518 (S.D.N.Y. 2002)

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008)

*Hawkins v. BBVA Compass Bancshares, Inc.*, 613 F. App'x 831 (11th Cir. 2015)

*Hill v. Tween Brands, Inc.*, No. CV 09-J-1717, 2009 WL 10689474
(N.D. Ala. Nov. 10, 2009)

*Hudson v. City of Highland Park, Mich.*, 943 F.3d 792 (6th Cir. 2019)

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)

*Jordan v. U.S. Dep't of Educ.*, No. 1:05CV1066, 2006 WL 1305073
(N.D. Ohio May 10, 2006)

*Kelly v. Senior Ctrs., Inc.*, 169 F. App'x 423 (6th Cir. 2006)

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)

*Land v. Dollar*, 330 U.S. 731 (1947)

*Lavack v. Owen's World Wide Enter. Network, Inc.*, 409 F. Supp. 2d 848
(E.D. Mich. 2005)

*Lockett v. Potter*, No. 106 CV 1879, 2007 WL 496361 (N.D. Ohio Feb. 12, 2007)

*Lockheed Aircraft Corp. v. United States*, 460 U.S. 190 (1983)

*McDaniel v. United States*, 970 F.2d 194 (6th Cir. 1992)

*McNeil v. United States*, 508 U.S. 106 (1993)

*Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873 (6th Cir. 2020)

*Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266 (6th Cir. 1990)

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000)

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998)

*Perryman v. West*, 949 F. Supp. 815 (M.D. Ala. 1996)

*Resch v. Baydoun*, No. 4:14-CV-13432, 2016 WL 8703616 (E.D. Mich. Feb. 19, 2016)

*Risher v. Hibner*, 859 F. Supp. 1046 (E.D. Mich. 1994)

*RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125 (6th Cir. 1996)

*Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673 (6th Cir. 2011)

*Saltsman v. United States*, 104 F.3d 787 (6th Cir. 1997)

*Scott v. Inter-Con Sec. Systems, Inc.*, No. 19-12655, 2020 WL 4437537 (E.D. Mich. Aug. 3, 2020)

*Sherman v. Chrysler Corp.*, 47 F. App'x 716 (6th Cir. 2002)

*Singleton v. United States*, 277 F.3d 864 (6th Cir. 2002)

*Taylor v. Donahoe*, 452 F. App'x 614 (6th Cir. 2011)

*Toyee v. Reno*, 940 F. Supp. 1094 (E.D. Mich. 1996)

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003)

*United States v. Sherwood*, 312 U.S. 584 (1941)

*Urton v. Bd. of Educ. of Lockland City Sch. Dist.*, No. 1:07CV387, 2009 WL 243036 (S.D. Ohio Jan. 30, 2009)

*Vance v. Dep't of Veterans Affs.*, 886 F. Supp. 2d 771 (S.D. Ohio 2012)

*Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291 (6th Cir. 2015)

*Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013)

*Williams v. Gen. Motors Corp.*, 187 F.3d 553 (6th Cir. 1999)

**Statutes:**

5 U.S.C. § 8102(a), (c)

28 U.S.C. § 1346(b)

28 U.S.C. § 2675(a)

28 U.S.C. § 2679(b)(1)

**Other Authorities:**

28 C.F.R. § 14.2(a)

29 C.F.R. § 1614.105(a)

29 C.F.R. § 1614.106

29 C.F.R. § 1614.108(h)

29 C.F.R. § 1614.109(g)

29 C.F.R. § 1614.504(a)

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(6)

## INTRODUCTION

This is an employment action brought by a male employee of the United States Army who claims to be the victim of a sexually hostile work environment and retaliation. But each of the seven counts in Plaintiff's amended complaint is subject to dismissal with prejudice for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and/or for failure to state a claim on which relief can be granted under Rule 12(b)(6).

## BACKGROUND[1]

Plaintiff Joe DaSilva, Jr., is employed as a Firefighter/EMT by the United States Army at the Detroit Arsenal Fire Division. Am. Compl. ¶ 6 (ECF No. 29, PageID.86.) His first-level supervisor was Defendant Martin Potter, Assistant Chief. *Id.* ¶¶ 7, 9 (ECF No. 29, PageID.86-87.) His second-level supervisor was Sean Edwards, Chief of the Division. *Id.* ¶ 8 (ECF No. 29, PageID.87.)

---

[1] The factual allegations in the amended complaint are accepted as true for the present purposes only and presented as such throughout this section. *See Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 879 (6th Cir. 2020). The documents attached to this motion are part of the administrative record and thus may be considered by the Court without converting this motion to dismiss into a motion for summary judgment. *See Resch v. Baydoun*, No. 4:14-CV-13432, 2016 WL 8703616, at *2 (E.D. Mich. Feb. 19, 2016). In addition, many of the attached documents are pertinent to the Court's analysis into whether subject matter jurisdiction exists and may be considered on that basis. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947).

Plaintiff alleges that Assistant Chief Potter "periodically made unwanted sexual comments" to him, including "stating that Plaintiff should wear a bra, that Plaintiff has breast implants, or suggesting that they try the 'pencil test.'" *Id.* ¶ 10.

Plaintiff also alleges that Assistant Chief Potter and Chief Edwards are "routinely loud and rude" to him by "ignoring him and/or ostracizing him from the workplace community." *Id.* ¶ 11. For example, in January 2017, Chief Edwards stated to Plaintiff, in front of his peers: "Dasilva, I don't like you. I just have to work with you." *Id.* ¶ 13. Chief Edwards and Assistant Chief Potter also "periodically made other comments to this effect." *Id.* In January 2017, Plaintiff was denied an opportunity to attend a training course. *Id.* ¶ 14 (ECF No. 29, PageID.88.) And in February 2017, Plaintiff was scored lower than similarly situated employees on a performance evaluation. *Id.* ¶ 15. Plaintiff also alleges that he was denied "multiple" unspecified promotions and/or transfers in retaliation for complaining about sexual harassment. *Id.* ¶¶ 29, 55 (ECF No. 29, PageID.90, 93.)

In February 2017, Plaintiff filed an Equal Employment Opportunity (EEO) pre-complaint with the Department of the Army, Docket No. ARDETROIT17FEB00469 ("2017 EEO Complaint"). *Id.* ¶ 16 (ECF No. 29, PageID.88); Exhibit 1 – 2017 EEO Counselor's Report.[2] The 2017 EEO Complaint

[2] Plaintiff incorrectly refers to this complaint as an "Equal Employment Opportunity Commission" complaint. Am. Compl. ¶ 16 (ECF No. 29, PageID.88.) Plaintiff's EEO complaint was filed with his employing agency, the Department of the Army,

raised all of the allegations discussed in the preceding two paragraphs with the exception of the claim about being denied promotions or transfers. *See* EEO Counselor's Report at 000028 (pagination in the lower right-hand corner).

In March 2017, Plaintiff entered into a Negotiated Settlement Agreement ("Settlement Agreement") with the Army resolving the 2017 EEO Complaint. Exhibit 2 – Settlement Agreement. Under the terms of the Settlement Agreement, the Army agreed to "[n]ot take any disciplinary action against [Plaintiff] for any acts that occurred prior to 2 March 2017," and to conduct an investigation into the conduct giving rise to the 2017 EEO Complaint. *Id.* at 000033. In return for the Army's promises, Plaintiff agreed that his "signature on this agreement constitutes a full and complete settlement of any and all issues and claims arising from the circumstances of the aforementioned EEO complaint," and that he "waive[s] his right to pursue administrative or judicial action in any forum concerning the matters raised in this complaint and that they will not be the subject of future litigation." *Id.* at 000033-34. The Settlement Agreement is signed by Plaintiff and representatives of the Army. *Id.* at 000034. By signing the Settlement Agreement, Plaintiff certified that he read and "agree[d] to accept its provisions." *Id.*

---

pursuant to the procedures set forth in 29 C.F.R. § 1614.105(a), under which a federal employee believed to be a victim of discrimination must consult an EEO counselor at the employing agency within 45 days of the discrimination and "prior to filing a [formal] complaint in order to try to informally resolve the matter."

After Plaintiff filed the 2017 EEO Complaint, Assistant Chief Potter "continued to make unwanted sexual comments to Plaintiff with increasing frequency." Am. Compl. ⁋ 17 (ECF No. 29, PageID.88.) In April 2018, Plaintiff filed internal Army complaints alleging sexual harassment. *Id.* ⁋ 18. According to Plaintiff, the internal investigators concluded that Assistant Chief Potter sexually harassed him. *Id.* ⁋⁋ 19, 26, 52 (ECF No. 29, PageID.88, 90, 93.)

In April 2018, Plaintiff filed a second EEO pre-complaint with the Department of the Army, Docket No. ARDETROIT10MAY01583 ("2018 EEO Complaint"). Exhibit 3 – 2018 EEO Counselor's Report. In the 2018 EEO Complaint, Plaintiff alleged harassment based on sex and national origin (Brazilian) "when unwanted sexual nature comments were made by Assistant Chief Potter to include 'how much do breast implants cost' and remarking that you should be able to wear a 'B-cup bra.'" *Id.* at 000012. Plaintiff later added a retaliation claim alleging that Assistant Chief Potter retaliated against him for filing the 2017 EEO Complaint by continuing to make "inappropriate sexual comments." Exhibit 4 – Email Adding Reprisal Claim. However, importantly, Plaintiff did not allege that he was retaliated against by being denied promotions or transfers. *Id.*

The 2018 EEO Complaint was not resolved at the pre-complaint stage; on June 1, 2018, Plaintiff filed a formal complaint with the Department of the Army ("Formal Complaint") pursuant to 29 C.F.R. § 1614.106. Exhibit 5 – Formal

Complaint. Plaintiff alleged discrimination based on race (Caucasian), sex, age (51), national origin, and religion (Catholic). *Id.* at 000007. Plaintiff claimed that on April 30, 2018, Assistant Chief Potter "made several harassing comments . . . of an unwanted sexual nature such as 'how much do breast implants cost' and remarks that I should wear a 'B-cop [sic] bra." *Id.* Plaintiff also raised acts that occurred "last summer," including "that I should do the pencil test I bet you can hold a pencil until your those [sic] tits and it will not fall." *Id.*

In December 2018, Plaintiff requested a hearing with an EEOC administrative judge pursuant to 29 C.F.R. § 1614.108(h). Exhibit 6 – 12/26/18 Letter. In March 2020, the administrative judge, *sua sponte*, granted summary judgment to the Army pursuant to 29 C.F.R. § 1614.109(g), concluding that the allegations in the Formal Complaint did not rise to the level of a hostile work environment. Am. Compl. ⁋⁋ 20-21 (ECF No. 29, PageID.88); Exhibit 7 – AJ Decision.

Plaintiff filed this lawsuit on May 28, 2020. *See* Compl. (ECF No. 1, PageID.1-12.) In his initial complaint, Plaintiff sued then-Secretary of Defense Mark Esper, Assistant Chief Potter, and Chief Edwards in both their individual and official capacities. *See id.* Plaintiff asserted five counts:

> Count I: First Amendment retaliation against Assistant Chief Potter.
>
> Count II: Title VII sexual harassment/gender stereotyping discrimination against Assistant Chief Potter.

Count III: Fourth and Fourteenth Amendment (bodily integrity) against Assistant Chief Potter.

Count IV: Supervisor liability against then-Secretary Esper and Chief Edwards.

Count V: Elliott-Larsen Civil Rights Act – sex/weight discrimination against Assistant Chief Potter.

On February 18, 2021, Defendants filed motions to dismiss. (ECF No. 26, PageID.62-76; ECF No. 27, PageID.77-81.) Defendants argued that: (i) the constitutional claims are subject to dismissal as preempted by Title VII; (ii) Plaintiff named the wrong defendant for his Title VII claim; and (iii) the ELCRA claim is preempted by Title VII. *Id.*

Prior to filing their motions, in an attempt to avoid unnecessary motion practice, the predecessor to the undersigned informed Plaintiff's counsel of the defects in the complaint, even furnishing legal authorities to Plaintiff's counsel. Exhibit 8 – 2/17/21 Emails. Plaintiff was encouraged to amend the complaint prior to motion practice to comply with pleading requirements for claims against government actors. *Id.* Plaintiff refused, requiring Defendants to prepare and file their motions: "We disagree and you may file your motions." *Id.*

Two weeks after Defendants filed their motions, Plaintiff filed an amended complaint addressing some – but not all – of the defects raised in the motions to dismiss, and creating new defects. Am. Compl. (ECF No. 29, PageID.85-99.) The amended complaint correctly names the Acting Secretary of the Army, John

Whitley, as a Defendant, although Plaintiff erroneously refers to him as the Secretary of Defense. *Id.* ⁋ 2 (ECF No. 29, PageID.85-86.) The amended complaint removes Chief Edwards as a Defendant, but continues to assert claims against Assistant Chief Potter in his official and individual capacities.

As for the claims in the amended complaint, Plaintiff dropped one of his constitutional claims, the Fourth and Fourteenth Amendment "bodily integrity" claim, but continues to assert a First Amendment retaliation claim against Assistant Chief Potter. Am. Compl. at Count I (ECF No. 29, PageID.89-91.)[3] Plaintiff also continues to assert ELCRA claims, even adding an ELCRA retaliation claim that was not in the initial complaint. *Id.* at Counts IV & V (ECF No. 29, PageID.94-97.) Plaintiff also adds state-law tort claims for negligent and intentional infliction of emotional distress premised on alleged sexual harassment. *Id.* at Counts VI & VII (ECF No. 29, PageID.97-98.) Finally, Plaintiff adds retaliation claims under both Title VII and ELCRA. *Id.* at Counts III & V (ECF No. 29, PageID.92-94, 96-97.)

---

[3] Plaintiff continues to reference the Fourth and Fourteenth Amendments in the amended complaint, Am. Compl. ⁋ 1 (ECF No. 29, PageID.85-86), but the count that had asserted claims under those Amendments in the initial complaint is absent from the amended complaint.

## LEGAL STANDARDS

### A. Rule 12(b)(1)

A court must dismiss an action for lack of subject-matter jurisdiction if the court lacks statutory or constitutional authority to adjudicate. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The lack of subject-matter jurisdiction may be asserted by either party or the court, *sua sponte*, at any time during the course of an action. *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939).

A motion to dismiss under Rule 12(b)(1) may present either a facial or factual challenge to subject-matter jurisdiction. "Facial attacks" on the complaint require the court to determine if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, assuming the allegations in the complaint are true for the purposes of the motion. *Singleton v. United States*, 277 F.3d 864, 870 n.4 (6th Cir. 2002). In a challenge to the factual basis for subject-matter jurisdiction, a plaintiff's allegations of fact are not presumed to be true. *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). If there is a factual dispute, the district court must weigh the conflicting evidence to determine whether jurisdiction exists. *Id.* In doing so, the district court has broad discretion to consider affidavits and documents outside the complaint without converting the motion into one for summary judgment. *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947). The current motion represents both a factual and facial attack on Plaintiff's claim against the

United States. The plaintiff has the burden of demonstrating jurisdiction to survive a motion to dismiss based upon lack of subject-matter jurisdiction. *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

**B. Rule 12(b)(6)**

A court must grant a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim if a complaint fails to provide grounds of entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Mere conclusions, labels, or "naked assertions" will not survive a 12(b)(6) motion to dismiss. *Id.*

## ARGUMENT

**A. Count I: Plaintiff's First Amendment retaliation claim is preempted by Title VII.**

Plaintiff alleges that he was retaliated against, in violation of the First Amendment, for filing an EEO complaint. Am. Compl. ⁋ 25 (ECF No. 29, PageID.89.) The EEO complaint is also the protected activity on which Plaintiff's Title VII retaliation claim is based. *Id.* ⁋ 50 (ECF No. 29, PageID.93.)

Plaintiff is a federal employee. All conduct alleged in his amended complaint concerns his employment with the federal government. As previously explained, *see*

ECF No. 26, PageID.69-71, Title VII "provides the sole and exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Servs. Admin.*, 425 U.S. 820, 825 (1976); *see also Bush v. Lucas*, 462 U.S. 367 (1983) (declining to extend *Bivens* remedy to federal employees; because Congress had comprehensively regulated the rights and responsibilities of those in the civil service, it was not for the courts to graft a constitutional supplement onto that detailed scheme). Because his First Amendment claim falls under Title VII and is premised on the same protected activity, Plaintiff must proceed solely under that statute. *See Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) ("Federal employees must rely upon Title VII and other federal antidiscrimination statutes like the ADEA that apply to the federal government as the exclusive remedy for combating illegal job discrimination."); *Toyee v. Reno*, 940 F. Supp. 1094, 1096 (E.D. Mich. 1996) ("Because Title VII is the exclusive judicial remedy for claims of employment discrimination based on national origin, plaintiff's First Amendment claim is preempted."). Dismissal of Count I is necessary pursuant to Rule 12(b)(1) and Rule 12(b)(6) due to Title VII's exclusivity in the federal employment space.

**B. Count II: Plaintiff's Title VII hostile work environment claim does not rise to the level of an actionable sexually hostile work environment claim.**

Plaintiff alleges that Assistant Chief Potter's comments about his body created a sexually hostile work environment. Am. Compl. ⁋⁋ 40-43 (ECF No. 29, PageID.91-92.) However, almost all of the alleged comments and actions giving rise

to this claim occurred before Plaintiff filed his 2017 EEO Complaint, which was resolved by the Settlement Agreement. In particular, the 2017 EEO Complaint included claims that Assistant Chief Potter told Plaintiff that he should wear a bra; it included Chief Edwards' alleged comment about not liking Plaintiff; it included the claim that Plaintiff is ostracized and ignored; it included the claim that Plaintiff was denied a training opportunity in January 2017; and it included the claim that Plaintiff was given an unfair performance appraisal in February 2017. Exhibit 1 – EEO Counselor's Report at 000028. The Settlement Agreement extinguished any lawsuit based on these alleged actions:

> Complainant's signature on this agreement constitutes a full and complete settlement of any and all issues and claims arising from the circumstances of the aforementioned EEO complaint. . . . In addition, the complainant agrees to waive his right to pursue administrative or judicial action in any forum concerning the matters raised in this complaint and they will not be made the subject of future litigation.

Exhibit 2 – Settlement Agreement.[4]

---

[4] In addition to the Settlement Agreement being part of the case's administrative record (*see* footnote one, above), the Court may consider the Settlement Agreement without converting this motion into a motion for summary judgment because the 2017 EEO Complaint is referenced in the amended complaint, *see* Am. Compl. ⁋ 16 (ECF No. 29, PageID.88), and that complaint, including its disposition via the Settlement Agreement, is central to Plaintiff's claims in this case. *See Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) ("court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment"). If the Court is not inclined to consider the Settlement Agreement, Defendants do not object to the

"Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties." 29 C.F.R. § 1614.504(a). Thus, the Agreement must be enforced – Plaintiff cannot bring a judicial action "concerning matters raised" in the 2017 EEO Complaint and such matters cannot "be made the subject of future litigation."

Federal courts have enforced EEO settlement agreements like the one here to bar hostile work environment claims premised on actions that are the subject of a settled EEO complaint. *See, e.g.*, *Folley v. Henderson*, 175 F. Supp. 2d 1007, 1013 (S.D. Ohio 2001) (refusing to consider pre-settlement acts when analyzing harassment claim of federal employee because the settlement "extinguish[ed] any Title VII claims based upon events which occurred prior to [the settlement] date"); *Perryman v. West*, 949 F. Supp. 815, 821-22 (M.D. Ala. 1996) (federal employee "cannot bring a claim for hostile environment harassment based on conduct which was the subject of the EEO complaints that she settled"); *Hammer v. Paulson*, No. 05-CV-2557G, 2007 WL 2819377, at *7 (N.D. Ga. Sept. 25, 2007) (acts giving rise to settled EEO complaint cannot later form the basis for hostile work environment claim; pre-settlement acts "will not be considered because they were resolved by [the] settlement agreement").

---

conversion of this motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

Once the acts that were the subject of Plaintiff's settled 2017 EEO Complaint are eliminated from consideration, the few remaining allegations, accepted as true and construed in the light most favorable to Plaintiff, do not give rise to a plausible hostile work environment claim.[5]

In *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998), the Supreme Court recognized that Title VII's protections extend to hostile work environment claims based on same sex harassment. But excluding the alleged acts and conduct that was the subject of the settled 2017 EEO Complaint, only the following purported harassment allegations potentially remain:

- Assistant Chief Potter "periodically" made "unwanted sexual comments to Plaintiff," including that he should "wear a bra, that Plaintiff has breast implants, or suggesting that they try the 'pencil test.'" Am. Compl. ⁋ 10 (ECF No. 29, PageID.87.)[6]

- Chief Edward and Assistant Chief Potter were "routinely loud and rude to Plaintiff." *Id.*[7]

---

[5] Even if the Court were to consider the acts forming the basis for the 2017 EEO Complaint, the allegations in the amended complaint still fall short of a plausible hostile work environment claim based on the authorities discussed below.

[6] Plaintiff does not specify when each alleged comment was made. To the extent any were made before the 2017 EEO Complaint, it would be subsumed by the allegation in the 2017 EEO Complaint that "From time to time . . . Potter will say 'put on a bra. You ought to put on a 38B,'" Exhibit 1 – 2017 EEO Counselor's Report at 000028, and any claim based thereon extinguished by the Settlement Agreement.

[7] Again, to the extent this occurred before the 2017 EEO Complaint, it is extinguished by the Settlement Agreement.

These allegations do not state a plausible sexually hostile work environment claim.

A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To establish a hostile work environment claim based on sex, a plaintiff must show, among other things, that he was subject to unwelcome harassment, the harassment was based on sex, and the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013).

To be sufficiently "severe or pervasive," the conduct must be enough to create an environment that a reasonable person would find hostile or abusive, and a plaintiff must subjectively regard the environment as abusive. *Harris*, 510 U.S. at 21. Courts look to "all the circumstances" to determine whether an objectively hostile work environment exists, including such factors as "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

Sexual comments and harassing acts of a "continual," "ongoing," and "commonplace" nature are more likely to be deemed pervasive. *Hawkins v.*

*Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008). Additionally, "harassment involving an 'element of physical invasion' is more severe than harassing comments alone." *Id.* at 334 (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations and quotation marks omitted). The Sixth Circuit has affirmed dismissal of hostile work environment claims where a plaintiff "has not alleged facts from which the court may infer that plaintiff was subjected to the kind of severe or pervasive harassment that is necessary for a hostile work environment claim." *Taylor v. Donahoe*, 452 F. App'x 614, 620 (6th Cir. 2011).

Plaintiff alleges only "periodic" sexual comments with no allegation of any effect on Plaintiff's ability to perform his job. The comments are nonactionable offensive remarks or jokes. Courts have held that far more serious hostile work environment claims failed to meet the severity threshold. *See Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) (battery coupled with two offensive remarks over a six month period not sufficiently severe to create a hostile work environment); *Kelly v. Senior Ctrs., Inc.*, 169 F. App'x 423 (6th Cir. 2006) (plaintiff failed to allege facts sufficient to meet severe/pervasive threshold where staff used the pejorative N-word, executive described a board member as a "token black," commented that the

participants were slovenly or were "pigs" at meals, and tolerated others' racist behavior); *Coulson v. The Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 858 (6th Cir. 2002) ("name-calling and harassment due to [plaintiff's] short stature" insufficiently severe); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (teasing, offhand comments, and other isolated incidents including a sexual advance did not constitute a discriminatory change in the terms and conditions of employment); *Lavack v. Owen's World Wide Enter. Network, Inc.*, 409 F. Supp. 2d 848, 855 (E.D. Mich. 2005) (no hostile environment where male supervisor touched male plaintiff's upper leg, slapped him in the genitals with a ruler, made lewd comments, showed plaintiff a photo of a man in a "speedo," holding that although "the alleged conduct was frequent, "the severity and threatening nature of the harassment was minimal").

Likewise, Plaintiff's allegation that Chief Edwards and Assistant Chief Potter are "routinely loud and rude" to him is not the type of behavior that federal anti-discrimination laws forbid and, even accepted as true, is not objectively severe enough to state a claim for hostile work environment, particularly absent any allegation that the loudness or rudeness is sex-based. *See Amini v. Rite Aid Corp.*, 819 F. App'x 344, 348 (6th Cir. 2020) ("Harsh, rude, or offensive criticism from a supervisor, without more, cannot constitute severe harassment."); *Hudson v. City of Highland Park, Mich.*, 943 F.3d 792, 803 (6th Cir. 2019) ("periodic rude comments

from his co-workers . . . do not suffice" because "Title VII does not serve as a general civility code for the American workplace" (internal quotation marks omitted); *Downs v. Postmaster Gen.*, 191 F.3d 451 (6th Cir. 1999) (Table) (affirming dismissal of hostile work environment claim for failure to state a claim because plaintiff did not allege that the harassing acts "had interfered with his work performance in any way"); *Ervin v. Nashville Peace & Just. Ctr.*, 673 F. Supp. 2d 592, 603 (M.D. Tenn. 2009) ("[E]vidence of harassing conduct, even if it is offensive, vulgar, inappropriate, or personally directed at a plaintiff, is not sufficient to support a claim unless it rises to the level of being severe, pervasive, or extreme."); *Urton v. Bd. of Educ. of Lockland City Sch. Dist.*, No. 1:07CV387, 2009 WL 243036, at *9 (S.D. Ohio Jan. 30, 2009) ("While there is uncontested evidence that [supervisor] was often angry and was rude to Urton, Title VII was not meant to be, and courts must ensure that it does not become a 'general civility code.'").

Plaintiff's Title VII hostile work environment claim should be dismissed because the allegations do not rise to the level of a hostile work environment.

**C. Count III: Title VII retaliation claim is not plausible because there is no cognizable adverse action alleged and the claim is unexhausted.**

The retaliatory adverse employment action alleged in the amended complaint is that Plaintiff was denied "multiple promotions and/or transfers" that, if awarded, would have taken Plaintiff "away from" Assistant Chief Potter. Am. Compl. ¶¶ 55, 58, 60 (ECF No. 29, PageID.93-94.) To show Title VII retaliation, Plaintiff must

allege, among other things, that the Army took "adverse employment action" against him. *Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291, 300 (6th Cir. 2015). "An adverse employment action is a materially adverse change in the terms of employment," amounting to "a significant change in employment status rather than a mere inconvenience." *Id.* (internal quotation marks and ellipses omitted).

Here, Plaintiff does not state a plausible adverse employment action because he does not allege any "change in employment status," much less a "significant" change. *See Hawkins v. BBVA Compass Bancshares, Inc.*, 613 F. App'x 831, 836 (11th Cir. 2015) (employer's refusal to transfer employee away from supervisor who "belittled" and "degraded" her not a cognizable adverse employment action; employee "obviously suffered no reduction in pay, prestige, or responsibility by remaining in the same position for which she had been hired"); *Hawana v. City of New York*, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002) (no adverse employment action where "the transfer was sought simply to get away from his supervisor and involved no change in pay or title").

Plaintiff's retaliation claim is also subject to dismissal for failure to specify any particular transfer or promotion that he was allegedly denied. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (Title VII plaintiff required "to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally

requested promotion"); *Brown v. Middaugh*, 41 F. Supp. 2d 172, 188 (N.D.N.Y. 1999) ("His denial of promotion allegation fails because he has not alleged specific instances where he applied for and was denied any job advancements."); *Hill v. Tween Brands, Inc.*, No. CV 09-J-1717, 2009 WL 10689474, at *2 (N.D. Ala. Nov. 10, 2009) (dismissing complaint because it "fails to allege a single specific promotion . . . denied").

Finally, Plaintiff's Title VII retaliation claim should be dismissed for lack of subject matter jurisdiction because Plaintiff failed to administratively exhaust the claim. Title VII contains a limited waiver of the United States' sovereign immunity for claims of federal employment discrimination; however, this waiver is specifically conditioned upon proper and timely exhaustion of EEO administrative remedies. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93-94 (1990). A federal employee must exhaust all available administrative remedies before filing an employment discrimination complaint in the district court. *Brown*, 425 U.S. at 832; *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991).

"[E]ach retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" that must be exhausted. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Sherman v. Chrysler Corp.*, 47 F. App'x 716, 721 (6th Cir. 2002). Plaintiff failed to administratively exhaust his claim that the Army retaliated against him by refusing to promote or transfer him

away from Assistant Chief Potter. There is no evidence that the alleged denial of promotions or transfers was part of Plaintiff's 2018 EEO Complaint or later-added retaliation claim, nor was such a claim ever investigated by the Army or addressed by the EEOC Administrative Judge. As a result, Plaintiff has failed to exhaust a retaliation claim involving the denial of promotions or transfers. *See Vance v. Dep't of Veterans Affs.*, 886 F. Supp. 2d 771, 775 (S.D. Ohio 2012) (dismissing Title VII retaliation claim for failure to exhaust administrative remedies where federal employee raised only a race discrimination claim, but not a retaliation claim, during the pre-suit administrative process); *Jordan v. U.S. Dep't of Educ.*, No. 1:05CV1066, 2006 WL 1305073, at *5 (N.D. Ohio May 10, 2006) (federal employee's claim that her employment was terminated in retaliation for protected activity deemed unexhausted and "not properly before the Court" because "administrative remedies must be exhausted for each discrete incident of retaliation" and "she never filed an EEO complaint with regard to her termination").

**D. Counts IV and V: Plaintiff's ELCRA claims are preempted by Title VII.**

Title VII is the exclusive, preemptive scheme for redress of federal employment discrimination. *Brown,* 425 U.S. at 835. Because Plaintiff brings claims of federal employment discrimination cognizable under Title VII, his claims of employment discrimination brought under other bases of jurisdiction, including ELCRA, must be dismissed. Following *Brown,* the Sixth Circuit has affirmed

dismissal of discrimination claims brought by federal employees under state discrimination statutes. *See Davis v. Runyon,* 142 F.3d 433 (6th Cir. 1998) (unpublished) (affirming dismissal of postal employee's race and sex discrimination claims under Ohio's analog to Title VII, concluding that federal employee "cannot bring a claim under the Ohio analog to Title VII").

This court has similarly held that ELCRA claims brought by federal employees are preempted. For instance, in *Scott v. Inter-Con Sec. Systems, Inc.*, No. 19-12655, 2020 WL 4437537, at *4-5 (E.D. Mich. Aug. 3, 2020), the court dismissed an employee's ELCRA discrimination claims against his federally-employed supervisors in their official and individual capacities. As to the official-capacity ELCRA claim, the court relied on *Brown* to hold that "Title VII does not constitute a waiver of sovereign immunity for state law discrimination claims" due to Title VII's exclusivity. *Id.* at *4. As for the ELCRA claims brought against the employee's supervisors in their individual capacities, the court held that "Title VII's exclusivity extended to individual and official capacity suits alike." *Id.* at *5-6.

For these reasons, the ELCRA claims in Counts IV and V are facially implausible, requiring dismissal pursuant to Rule 12(b)(1) and Rule 12(b)(6).

**E. Counts VI & VII: Plaintiff's negligent and intentional infliction of emotional distress were not presented to the Army and are preempted by the Federal Employees' Compensation Act.**

Plaintiff's state-law tort claims for negligent and intentional infliction of emotional distress are premised on the same facts as his discrimination claims, namely, alleged sexual harassment and retaliation. Am. Compl. ⁋⁋ 78, 84 (ECF No. 29, PageID.97-98.) The claims should be dismissed because Plaintiff failed to present the claims to the Army under the Federal Tort Claims Act, depriving the Court of subject matter jurisdiction over the claims pursuant to Rule 12(b)(1), and because the claims are preempted by FECA, necessitating dismissal pursuant to Rule 12(b)(1) and Rule 12(b)(6).

1. Federal Tort Claims Act

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The FTCA provides the exclusive waiver of sovereign immunity for suits sounding in tort against the United States, its agencies, and/or its employees acting within the scope of employment. *See* 28 U.S.C. § 1346(b); 28 U.S.C. § 2679(b)(1). But this waiver of sovereign immunity is "limited," and Congress has placed "several conditions" on it. *Ellison v. United States*, 531 F.3d 359, 361 (6th Cir. 2008). One of the limitations Congress placed on the FTCA is that plaintiffs may not initiate suit against the United States under the FTCA before they exhaust the administrative tort claim

procedure described in the Act. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 111 (1993); *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002).

Specifically, "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a). The FTCA's administrative exhaustion requirement is jurisdictional. *See McNeil*, 508 U.S. at 113 (district court properly dismissed complaint for lack of jurisdiction where plaintiff did not file administrative claim before bringing suit); *Blakely*, 276 F.3d at 865 ("Under the FTCA, a district court does not have jurisdiction over an action filed pursuant thereto if the plaintiff did not file an administrative claim.").

A claimant presents an administrative claim to an agency under § 2675(a) of the FTCA when he or she "(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Douglas v. United States*, 658 F.2d 445, 447 (6th Cir. 1981); *see also* 28 C.F.R. § 14.2(a) (setting forth requirements for administrative claims under FTCA).

Here, Plaintiff does not allege that he presented a claim to the appropriate agency, the Department of the Army. Nor has a diligent search of the agency's records revealed a record of a claim. Exhibit 9 – Sipes Decl. ¶ 2. Accordingly, Plaintiff cannot meet his burden to establish the existence of subject matter

jurisdiction over his tort claims. *See Moir*, 895 F.2d at 269. Dismissal of those claims is required pursuant to Rule 12(b)(1).

2. FECA Preemption

FECA establishes a compensation scheme, administered by the Secretary of Labor, for federal employees' "disability or death . . . resulting from personal injury sustained while in the performance of his duty." 5 U.S.C. § 8102(a). FECA is the exclusive avenue of redress for a federal worker's claim against the United States work-related injuries and supplants all other liability to a federal employee with work-related injuries. *Id.* §§ 8102(a), 8116(c); *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-94 (1983).

The Sixth Circuit has held that FECA preempts claims brought by federal employees for negligent and intentional infliction of emotional distress arising from the federal workplace. *See McDaniel v. United States*, 970 F.2d 194, 197 (6th Cir. 1992); *Saltsman v. United States*, 104 F.3d 787, 790 (6th Cir. 1997). District courts have likewise dismissed negligent/intentional infliction of emotional distress claims brought by federal employees. *See Risher v. Hibner*, 859 F. Supp. 1046, 1057 n.17 (E.D. Mich. 1994); *Lockett v. Potter*, No. 106 CV 1879, 2007 WL 496361, at *2 (N.D. Ohio Feb. 12, 2007) ("Claims for intentional infliction of emotional distress, whether brought pursuant to the FTCA or state law . . . are within the coverage of FECA and are, therefore, preempted by FECA.").

Plaintiff's negligent and intentional infliction of emotional distress claims are preempted by FECA, requiring dismissal under Rule 12(b)(1) and Rule 12(b)(6).

**CONCLUSION**

For the reasons stated, the claims in the complaint are subject to dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and/or failure to state a claim pursuant to Rule 12(b)(6).

Plaintiff has already had an opportunity to file an amended complaint curing any curable deficiencies and is not entitled to another opportunity, particularly where he has continued to assert claims that are not plausible. *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (only one opportunity to amend required; additional amendments not appropriate in the event of "repeated failure to cure deficiencies"). The complaint should now be dismissed with prejudice.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

*/s/ Benjamin A. Anchill*

Benjamin A. Anchill (P70968)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9566
benjamin.anchill@usdoj.gov

Dated: March 18, 2021

**CERTIFICATION OF SERVICE**

I hereby certify that on March 18, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the ECF participants in this case.

*s/Benjamin A. Anchill*
BENJAMIN A. ANCHILL
Assistant U.S. Attorney

**LOCAL RULE CERTIFICATION**

I, Benjamin A. Anchill, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*s/Benjamin A. Anchill*
BENJAMIN A. ANCHILL
Assistant U.S. Attorney