# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| JOE DASILVA, JR.<br>*Plaintiff,* | Case No. 20-cv-11358 |
| v. | Honorable Mark A. Goldsmith |
| JOHN E. WHITLEY, in his official capacity as Acting Secretary of the Army, AND MARTIN POTTER, individually and in his official capacity as Assistant Chief of U.S. Army Detroit Arsenal Division,<br>*Defendants.* | Oral Argument Requested |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
### AND MEMORANDUM OF LAW

Plaintiff Joe DaSilva, by and through his undersigned counsel, hereby opposes the Motion to Dismiss (ECF 32) submitted by Defendants John E. Whitley, in his official capacity as Acting Secretary of the Army, and Martin Potter, individually and in his official capacity as Assistant Chief of U.S. Army Detroit Arsenal Division.

Dated: January 18, 2022    Respectfully Submitted,

Keith Altman, Esq.
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorney for Plaintiff Joe DaSilva, Jr.*

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

### STATEMENT OF ISSUES PRESENTED

**A.** Does Title VII preempt DaSilva's First Amendment cause of action?

**B.** Has DaSilva pled sufficient facts to put Defendants on notice of his hostile work environment claim?

**C.** Is DaSilva's allegation of denial of promotions meet Rule 8's pleading requirements, and did the evidence he gave during the EEOC investigation regarding Defendant's retaliatory conduct put Defendants on notice of his intent to pursue a retaliation claim?

**D.** Are DaSilva's state law claims against Defendant Potter preempted by Title VII?

**E.** Are DaSilva's emotional distress claims subject to dismissal based on grounds of preemption or failure to exhaust administrative remedies?[1]

---

[1] DaSilva agrees to withdraw these claims, so these issues need not be addressed by the Court.

## STATEMENT OF MOST RELEVANT AND CONTROLLING AUTHORITY

*AMTRAK v. Morgan,* 536 U.S. 101, 115-16, 122 S. Ct. 2061 (2002)

*Ang v. Procter & Gamble Co.*, 932 F.2d 540 (6th Cir. 1991)

*Brooks v. Seiter,* 779 F.2d 1177 (6th Cir. 1985)

*Cipollone v. Liggett Grp.*, 505 U.S. 504, 112 S. Ct. 2608 (1992)

*Day v. Wayne Cty. Bd. of Auditors,* 749 F.2d 1199 (6th Cir. 1984)

*Dixon v. Ashcroft,* 392 F.3d 212 (6th Cir. 2004)

*Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962)

*Harris v. Forklift Sys.*, 510 U.S. 17, 18, 114 S. Ct. 367 (1993)

*Laster v. City of Kalamazoo,* 746 F.3d 714 (6th Cir. 2014)

*Randolph v. Ohio Department of Youth Services,* 453 F.3d 724 (6th Cir. 2006)

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S. Ct. 992 (2002)

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ...............................................................i

STATEMENT OF MOST RELEVANT AND CONTROLLING AUTHORITY...............ii

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES................................................................... v

LOCAL RULE CERTIFICATION ....................................................................viii

INTRODUCTION..................................................................................... 1

LEGAL STANDARD ................................................................................ 2

ARGUMENT............................................................................................ 3

   A. DaSilva's First Amendment Retaliation claim does not allege
discrimination and is not preempted by Title VII .................................3

   B. DaSilva's FAC alleges sufficient conduct to constitute an
actionable hostile work environment claim. .........................................5
      1. Defendant's pre-2017 conduct formed the foundation for
DaSilva's experience of subsequent harassment, and must be
considered in the Court's 'totality of the circumstances' review. .......6
      2. DaSilva has alleged sufficient facts to survive a motion to
dismiss his hostile work environment claim....................................10

   C. DaSilva's FAC properly pleads an adverse employment action to
support his Title VII retaliation claim and identified the alleged
retaliatory conduct in his second EEO complaint. .............................12
      1. Plaintiff pleads sufficient facts regarding adverse employment
action to state a claim for retaliation under Title VII. ....................13
      2. The Court has jurisdiction to hear DaSilva's Title VII retaliation
claims. ...........................................................................................17

   D. Counts IV And V: DaSilva's ELCRA Claims are not Preempted by
Title VI..............................................................................................20

   E. DaSilva withdraws Counts VI and VII...........................................22

CONCLUSION ...................................................................................... 22

CERTIFICATE OF SERVICE................................................................. 24

TABLE OF AUTHORITIES

## CASES

*AMTRAK v. Morgan* 536 U.S. 101, 122 S. Ct. 2061 (2002) .......................8

*Ang v. Procter & Gamble Co.*, 932 F.2d 540 (6th Cir. 1991) ..................17

*Barrett v. Forest Labs., Inc.,* 39 F. Supp. 3d 407 (S.D.N.Y. 2014 ...........14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 2007 U.S. LEXIS 5901 (2007) ..............................................3

*Brooks v. Seiter,* 779 F.2d 1177 (6th Cir. 1985) ........................................3

*Brown v. Coach Stores* 163 F.3d 706 (2d Cir. 1998) ...............................14

*Cipollone v. Liggett Grp.*, 505 U.S. 504, 112 S. Ct. 2608 (1992).............21

*Conley* v. *Gibson,* 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) ........15

*Conley v. Gibson,* 355 U.S. 41, 78 S. Ct. 99,  2 L. Ed. 2d 80 (1957)..........3

*Day v. Wayne Cty. Bd. of Auditors*, 749 F.2d 1199 (6th Cir. 1984). .........5

*Dixon v. Ashcroft*, 392 F.3d 212 (6th Cir. 2004). ....................................19

*Dorothy Covey v. City of Philadelphia,* 2007 U.S. Dist. LEXIS 17734 (E.D.Pa. 2007) ..........................................................................................5

*Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270 (1st Cir. 1993)..........21

*Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007)....................3

*Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962)................................16

*Franceschi v. United States VA,* 514 F.3d 81 (1st Cir. 2008) .................17

*Gentek Bldg. Prods. v. Sherwin-Williams Co.,* 491 F.3d 320 (6th Cir. 2007)..........................................................................................................2

*Gibbons* v. *Ogden*, 22 U.S. (9 Wheat.) 1, 211, 6 L. Ed. 23 (1824)...........21

*Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir. 1981) ............. 17

*Hale v. Cuyahoga County Welfare Dep't,* 891 F.2d 604 (6th Cir. 1989). 13

*Harmon v. Honeywell Intelligrated,* 2020 U.S. Dist. LEXIS 255756 ....... 7

*Harris v. Forklift Sys.*, 510 U.S. 17, 114 S. Ct. 367 (1993) ...................... 7

*Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir. 1999) ........................... 7

*Laster v. City of Kalamazoo,* 746 F.3d 714 (6th Cir. 2014) ..................... 4

*Marvaso v. Sanchez*, 971 F.3d 599 (6th Cir. 2020) ............................ 3, 12

*Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266 (6th Cir. 1990) ................................................................................................... 2

*Neiman v. Reid*, No. 1:12-CV-1645, 2015 U.S. Dist. LEXIS 42725 (N.D. Ohio Mar. 31, 2015). ................................................................................ 4

*Nguyen v. City of Cleveland,* 229 F.3d 559 (6th Cir. 2000) ................... 13

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724 (6th Cir. 2006) 7, 9

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 91 L. Ed. 1447, 67 S. Ct. 1146 (1947) ..................................................................................... 21

*Rottman v. U.S. Coast Guard Academy*, 630 F. Supp. 1123 (D.Conn. 1986) ........................................................................................................ 5

*Shaffer v. Peake*, Civil Action No. 07-298, 2008 U.S. Dist. LEXIS 22967 (W.D. Pa. Mar. 24, 2008) ................................................................... 21

*Sicuso v. Carrington Golf Club, LLC*, No. 17-13938, 2019 U.S. Dist. LEXIS 10339 (E.D. Mich. Jan. 23, 2019). ........................................... 22

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S. Ct. 992 (2002).. 14, 15

*Velikonja v. Mueller,* 315 F. Supp. 2d 66 (D.D.C. 2004) .......................... 5

*Wayside Church v. Van Buren Cty.*, 847 F.3d 812 (6th Cir. 2017) ........... 2

*Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367 (6th Cir. 2002) ...................................................................................................20

*White v. GSA*, 652 F.2d 913 (9th Cir. 1981)..............................................5

## US CONTITUTION

USCS Const. Amend. 1 ........................................................................3, 4

## STATUTES

42 U.S.C. § 1983 ......................................................................................3

42 USCS § 2000e-2 ..................................................................................5

Mich. Comp. Laws Serv. § 37.2202 ........................................................22

## RULES

Fed. R. Civ. P. 8(a) ................................................................................3

Fed. R. Civ. P. 12(b)(1) ..........................................................................2

Fed. R. Civ. P. 12(b)(6) ......................................................................2, 3

## LOCAL RULE CERTIFICATION

I, Keith Altman, Esq., certify that this document complies with Local Rule 5 .1 (a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.l(d)(3).


Keith Altman, Esq.

## INTRODUCTION

The facts of DaSilva's case as alleged are this: over a period of more than three years, Defendant Potter made regular, repeated disparaging comments to DaSilva – his subordinate – about DaSilva's body, in front of coworkers and others.[2]  DaSilva took action to stop the abuse, but even after a finding of harassment, Potter was given what amounted to a slap on the wrist and the harassment continued, and in fact, escalated.[3]  Not only was DaSilva subjected to sexually inappropriate comments at work, but he was also denied all opportunities to move to a new position, out of the reach of his harasser.[4]

Defendants seek to avoid liability for their violation of DaSilva's rights by claiming his only recourse is under Title VII, and alleging that, despite filing two EEO complaints and a SHARP complaint, DaSilva hasn't sufficiently put them on notice of the facts underlying his claims.  Neither of these is true.  As discussed below, Title VII does not preempt claims by federal employees for violation of their constitutional rights.  And DaSilva's numerous complaints, testimony, and the First Amended Complaint itself are sufficient to put Defendants on notice of misconduct DaSilva was subjected to.  Defendants could have – and should have – taken action to protect DaSilva from the harassment and retaliation of

---

[2] First Amended Complaint ("FAC") (Doc. 29) ¶¶10 – 13.
[3] *Id.* at ¶¶ 16 – 21.
[4] *Id.* at ¶¶ 14, 29 – 33.

his supervisor years ago. They elected not to do so, leaving DaSilva no choice but to seek relief in federal court.

## LEGAL STANDARD

Where a motion seeks dismissal of claims based on both Rules 12(b)(1) and 12(b)(6), the jurisdictional issues should be addressed first.[5] "When a factual attack, also known as a speaking motion, raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist. In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts."[6] But "[w]hen reviewing a facial attack, a district court takes the allegations in the complaint as true, just as in a Rule 12(b)(6) motion."[7]

In analyzing a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court must "accept [the Complaint's] factual allegations as

---

[5] *See Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017), quoting *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) ("We are 'bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction.'").

[6] *Gentek Bldg. Prods. v. Sherwin-Williams Co.,* 491 F.3d 320, 323 (6th Cir. 2007).

[7] *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017), quoting *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 323 (6th Cir. 2007).

true, draw all reasonable inferences in the plaintiff's favor, and only then determine whether those facts and inferences plausibly give rise to an entitlement to relief."[8] "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief'."[9] "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'."[10] "A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[11] Motions to dismiss complaints filed under civil rights statutes are "scrutinize[d] with special care."[12]

## ARGUMENT

### A. DaSilva's First Amendment Retaliation claim does not allege discrimination and is not preempted by Title VII.

To state prima facie claim for First Amendment free speech employment retaliation under 42 U.S.C. § 1983, a plaintiff must show

---

[8] *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020).

[9] *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929, 940, 2007 U.S. LEXIS 5901, *21 (2007).

[10] *Id.*

[11] *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957) (footnote omitted).

[12] *Brooks v. Seiter,* 779 F.2d 1177, 1180 (6th Cir. 1985).

"(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct."[13]

Defendants first argue that DaSilva's First Amendment retaliation claim, Count I in the First Amended Complaint ("FAC", Doc. 29), is preempted by Title VII. In doing so, Defendants conflate this cause of action with others alleged in the FAC. In Count I, DaSilva contends he engaged in constitutionally protected speech – the filing of an EEOC complaint – and that as a result, Defendant Potter retaliated against him through disparate treatment in performance evaluations and denial of employment opportunities. Defendant Potter was involved in reviewing DaSilva's applications, and it is DaSilva's claim that Defendant Potter negatively influenced DaSilva's applications in retaliation for DaSilva's complaint against Defendant Potter, ultimately leading to every single application being denied.

As noted by the Sixth Circuit, "the type of activity protected by the First Amendment is different than the type of activity protected by Title VII."[14] And Title VII addresses a different sort of harm – it prevents a

---

[13] *Neiman v. Reid*, No. 1:12-CV-1645, 2015 U.S. Dist. LEXIS 42725, at *23 (N.D. Ohio Mar. 31, 2015).
[14] *Laster v. City of Kalamazoo,* 746 F.3d 714, 719 (6th Cir. 2014).

federal employer from discriminating in hiring, promotion, transfer, or firing *on the basis of race, color, sex, religion or national origin.*[15]  In *Day v. Wayne Cty. Bd. of Auditors,* the Sixth Circuit held, "[w]here an employee establishes employer conduct which violates both Title VII and rights derived from another source -- the Constitution or a federal statute -- which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII."[16]  DaSilva's First Amendment claim is not for *discrimination* in federal employment, but violation of his constitutional rights, and is therefore not preempted by Title VII.[17]

### B. DaSilva's FAC alleges sufficient conduct to constitute an actionable hostile work environment claim.

Defendants seek dismissal of DaSilva's Title VII hostile work environment claim, arguing that the conduct alleged was not sufficiently pervasive or severe to be actionable.  But as discussed more fully below,

---

[15] 42 USCS § 2000e-2.

[16] 749 F.2d 1199, 1205 (6th Cir. 1984).

[17] *See, e.g. Dorothy Covey v. City of Philadelphia,* 2007 U.S. Dist. LEXIS 17734, \*12 (E.D.Pa. 2007) ("Because Plaintiff's retaliation claim under § 1983 is based on a violation of her First Amendment rights to free speech and to petition the government for redress of grievances, it has an independent constitutional basis beyond Title VII.").  *See also Rottman v. U.S. Coast Guard Academy*, 630 F. Supp. 1123, 1125 (D.Conn. 1986); *Velikonja v. Mueller,* 315 F. Supp. 2d 66, 76 (D.D.C. 2004).

DaSilva's pleading is sufficient under Rule 8 to permit him to move forward to fact discovery.

1. **Defendant's pre-2017 conduct formed the foundation for DaSilva's experience of subsequent harassment, and must be considered in the Court's 'totality of the circumstances' review.**

As a preliminary mater, Defendants attempt to draw a line in the sand, asking the Court to ignore any harassment that occurred prior to March 2, 2017, on the grounds that DaSilva waived his right to pursue those claims in exchange for Defendants' promise to investigate them. First, the three cases cited by Defendants are not binding, and generally distinguishable on their facts.  In *Hammer v. Paulson*, for example, the plaintiff's _only_ cause of action was for retaliatory harassment she suffered after filing an EEO complaint, so the court's attention was correctly focused on conduct that occurred after her filing date.[18] DaSilva's case is distinguishable because he also alleges a hostile work environment on the basis of sex.  The *Perryman v. West* plaintiff did not allege any post-settlement harassment; her complaint arose from a post-settlement forgery investigation she alleged was retaliatory.[19]  The court correctly found that the plaintiff could not bring a hostile work

---

[18] No. 1:05-CV-2557-GGB, 2007 U.S. Dist. LEXIS 70785, at *18 (N.D. Ga. Sep. 25, 2007).
[19] 949 F. Supp. 815, 817 (M.D. Ala. 1996).

environment claim based solely on settled claims.[20]  And in *Folley v. Henderson*, the plaintiff's settlement agreement included transfer to a different worksite, so her pre- and post- settlement work environments were necessarily distinct.[21]

More significantly, Defendants' proposed approach is contrary to relevant precedent, in that it improperly casts each harassing act or omission as an independent event.  As the Supreme Court explained in *Harris,* ". . . whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances . . ."[22]  In *AMTRAK v. Morgan*, the Court elaborated on the cumulative nature of hostile environment claims:

> Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.  The "unlawful employment practice" therefore cannot be said to

---

[20] *Id.*

[21] 175 F. Supp. 2d 1007, 1010 (S.D. Ohio 2001).

[22] *Harris v. Forklift Sys.*, 510 U.S. 17, 18, 114 S. Ct. 367, 369 (1993).  *See also Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) ("Rather than considering each event complained of in isolation, we must consider the totality of the circumstances in determining whether the harassment was sufficiently severe and pervasive.").  *See also Harmon v. Honeywell Intelligrated,* 2020 U.S. Dist. LEXIS 255756, *20 ("While some of plaintiff's allegations alone may not be enough to constitute a severe or pervasive work environment, the totality of the circumstances must be considered.").  See generally *Jackson v. Quanex Corp.*, 191 F.3d 647, 660 (6th Cir. 1999) (reiterating its position that even offensive comments directed at non-parties should be considered when evaluating a hostile work environment claim).

occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative affect of individual acts.

…

In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." [*Harris v. Forklift Sys.,* 510 U.S. at 23].  To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1) . . . It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.[23]

Because the DaSilva alleged additional discriminatory conduct occurring after settlement of his earlier claims, the Court can – and should – consider Defendant's pre-settlement conduct in evaluating whether DaSilva experienced a hostile work environment.

---

[23] 536 U.S. 101, 115-16, 122 S. Ct. 2061, 2073-74 (2002) (internal citations omitted).

The Sixth Circuit's analysis in *Randolph v. Ohio Department of Youth Services* offers further support for Plaintiff's position.[24]   In that case, the District Court held that the plaintiff failed to exhaust her administrative remedies as to harassment that occurred prior to May 1, 1996 – the date of the first incident identified in her EEOC complaint – and declined to consider any alleged misconduct that occurred prior to that date.[25]   The Sixth Circuit rejected this approach, explaining,

> The district court's holding bifurcated Randolph's hostile-work-environment claim and held one of the claims exhausted.  Hostile work environment claims by their very nature require ongoing conduct, however. *See Bell v. Chesapeake & Ohio Ry. Co.*, 929 F.2d 220, 223 (6th Cir. 1991) ("[M]any discriminatory acts occur in such a manner that it is difficult to define precisely when they took place. One might say they unfold rather than occur." (internal citations omitted)). This case is no exception.  Randolph's allegations are not bounded by discrete temporal boundaries, but rather describe an escalating progression of harassment.  Thus, the actions prior to and after May 1, 1996, all support Randolph's single claim.   As a result, the district court's holding misconstrued both the nature of the evidence presented and the nature of Randolph's claim. As the pre-May 1, 1996, actions do not constitute a separate claim, the district court's exhaustion holding was incorrect.
> …
>
> [T]he ongoing nature of hostile-work-environment sexual harassment claims undergirds our "totality of the circumstances" review of these claims. *See Jackson v. Quanex*

---

[24] 453 F.3d 724 (6th Cir. 2006).
[25] *Id.* at 731.

*Corp.*, 191 F.3d 647, 658-59 (6th Cir. 1999).  As noted above, this case is no exception, and the imposition of an artificial cut-off of May 1, 1996, would exclude evidence relevant to the totality of the circumstances.  The EEOC complaint cannot be read as a temporal limitation on the admission of evidence for the hostile work environment claim.  As a result, we consider the events alleged both before and after May 1, 1996, in reviewing Randolph's hostile-work-environment claim.[26]

The same logic applies here.  Defendant Potter's post-settlement must be considered in the context of the history of abuse that occurred before it.  Defendant's harassment compounded over time, and all of it bears on the question of whether the work environment, taken as a whole, was sufficiently hostile to alter the conditions of DaSilva's employment.

### 2.  DaSilva has alleged sufficient facts to survive a motion to dismiss his hostile work environment claim.

Defendants next argue for dismissal on the grounds that the facts alleged are insufficient to support a plausible inference of a hostile work environment.  Defendants are wrong.  The facts alleged in the FAC show a distinct pattern of harassment.  Plaintiff contends, "[f]or over three years, [Defendant] Potter . . .periodically made unwanted sexual comments to Plaintiff, such as:

- stating that Plaintiff should wear a bra,

- [stating] that Plaintiff has breast implants, [and]

---

[26] 453 F3d at 732.

- suggesting that they try the "pencil test." ("Pencil test" is a vulgar slang phrase, referring to placing a pencil underneath an individual's breast tissue to see if the tissue is large enough to hang over the pencil and weighs enough to keep the pencil lodged in place against the torso.)"[27]

Defendants' brief highlights the word 'periodically' as if it demonstrates the infrequency of Defendants' harassing comments.[28]  As defined by Merriam-Webster, 'periodically' means, "(1) at regular intervals of time; (2) from time to time: FREQUENTLY."[29]  The FAC goes on to allege Defendants Potter and Edwards were "routinely loud and rude" to DaSilva, ignored him, and "ostraciz[ed] him from the workplace community," and that these actions were done in the presence of multiple coworkers.[30]  Plaintiff also contends that Defendant Potter made multiple comments to the effect of, "Dasilva, I don't like you. I just have to work with you."[31]  The FAC further alleges Defendant's unwanted sexual comments continued with increasing frequency after he filed an EEOC complaint,[32] and that, significantly, "[t]he Army's internal

---

[27] FAC (Doc. 29), ¶ 10.

[28] Doc. 32. at p. 15.

[29] *Periodically, Merriam-Webster.* https://www.merriam-webster.com/dictionary/periodically, last accessed January 17, 2022) (emphasis in original).

[30] *Id.* at ¶¶ 11 – 12.

[31] *Id.* at ¶ 13.

[32] *Id.* at ¶ 17.

investigators concluded that Potter's actions rose to the level of sexual harassment."[33]  And contrary to Defendants' claim that "Plaintiff alleges only 'periodic' sexual comments with no allegation of any effect on Plaintiffs ability to perform his job,"[34] the FAC specifically alleges Defendant Potter's harassment was "frequent, pervasive [and] ongoing,"[35] and caused him to suffer emotional distress, sleeplessness, irritability, loss of appetite, headaches, fright, shock, indignity, humiliation, outrage, indignity, the embarrassment of being wrongfully subjected to sexual harassment, and loss of employment opportunity, income and future earning capacity.[36]

Taking all these factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, they plausibly give rise to a hostile work environment claim under Title VII.[37]

### C. DaSilva's FAC properly pleads an adverse employment action to support his Title VII retaliation claim and identified the alleged retaliatory conduct in his second EEO complaint.

Defendants' motion next seeks dismissal of DaSilva's third cause of action for Title VII retaliation, claiming (1) failure to allege an adverse

---

[33] *Id*. at ¶ 19.
[34] Doc. 32, Page 24 of 36.
[35] FAC (Doc. 29) at ¶ 21.
[36] FAC (Doc. 29) at ¶ 22.
[37] *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020).

employment action and (2) exhaustion. Neither of these arguments has merit.

### 1. Plaintiff pleads sufficient facts regarding adverse employment action to state a claim for retaliation under Title VII.

First, the FAC does, in fact, allege adverse retaliatory employment actions. Within the text of Count III itself, DaSilva contends that, despite being transferred, Potter "has remained in a position from which he is directly involved in reviewing Plaintiff's [promotion and transfer] applications," that Plaintiff has applied for multiple promotions and transfers in the years following his EEOC complaint, and that those requests have all been denied.[38] DaSilva alleges, "upon information and belief, [Defendant] Potter has negatively influenced Plaintiff's applications," and that, as a result of Defendant Potter's conduct, "Plaintiff has been left with the choice between remaining in his current position, where he is forced to continue working with Potter or face constructive discharge."[39] "For the purposes of Title VII, a failure to promote is an adverse employment action."[40]

---

[38] FAC, ¶¶ 55 – 58.

[39] *Id.*, ¶¶ 58 – 59.

[40] *Nguyen v. City of Cleveland,* 229 F.3d 559, 562 (6th Cir. 2000), citing *Hale v. Cuyahoga County Welfare Dep't,* 891 F.2d 604, 606 (6th Cir. 1989).

Defendant's argument that Plaintiff must plead specific facts regarding the promotions he was denied is inconsistent with the notice pleading requirements of Rule 8.[41]  Defendants stand on rocky ground in their reliance on the Second Circuit's holding in *Brown v. Coach Stores.* Defendants are correct that *Brown* dismissed the plaintiffs claim for failing to identify specific promotions she applied for and was denied, under the then-applicable Second Circuit standard requiring discrimination plaintiffs to plead specific facts establishing a prima facie case under *McDonnell Douglas.*[42]  But "*Brown* was decided before the Supreme Court's decision in *Swierkiewicz,* which held that a complaint 'need not plead a prima facie case of discrimination' to survive a motion to dismiss."[43]  Thus, "[a]t a minimum, *Swierkiewicz* calls into question the reasoning in Brown, if it does not abrogate that case's holding entirely."[44]

---

[41] *See Brown v. Coach Stores* 163 F.3d 706, 714 (2d Cir. 1998) ("By requiring identification of specific positions for which Brown applied and was denied promotion, and dismissing this complaint for lack of such specificity, the Court has denied Brown the benefit of reasonable inferences that the Court acknowledges "must" be drawn in her favor at this preliminary stage of the case.") (Judge Newman, dissenting).

[42] 163 F.3d at 710.

[43] *Barrett v. Forest Labs., Inc.,* 39 F. Supp. 3d 407, 441-42 (S.D.N.Y. 2014), citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S. Ct. 992, 997 (2002).

[44] *Id.*

In rejecting application of the *McDonnell Douglas* standard at the pleading stage, the *Swierkiewicz* Court explained,

> imposing the Court of Appeals' heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley* v. *Gibson,* 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed. 1990).[45]

The Court went on to explain that Federal Rules were sufficiently drafted to avoid surprise in federal litigation:

> Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard. Rule 8(e)(1) states that "no technical forms of pleading or motions are required," and Rule 8(f) provides that "all pleadings shall be so construed as to do substantial justice." . . . If a pleading fails to specify the allegations in a

---

[45] *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-14, 122 S. Ct. 992, 998-99 (2002) (internal citations omitted).

manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.[46]

Defendants' request that this Court require Plaintiff plead specific facts regarding each promotion he applied for and was denied is inconsistent with the *Swierkiewicz* Court's analysis and should be rejected.  But to the extent the Court determines these facts must be alleged, Plaintiff respectfully requests leave to amend to provide them.[47]

---

[46] *Id.* at 513 − 14.

[47] *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) ("Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.") (internal citations omitted).

## 2. The Court has jurisdiction to hear DaSilva's Title VII retaliation claims.

Defendants next allege that the Court lacks jurisdiction to hear DaSilva's Title VII retaliation claim due to failure exhaust administrative remedies, claiming "[t]here is no evidence that the alleged denial of promotions or transfers was part of DaSilva's 2018 EEO Complaint or later-added retaliation claim, nor was such a claim ever investigated by the Army or addressed by the EEOC Administrative Judge."[48]

First, regarding retaliatory conduct that occurred after DaSilva's second EEO complaint was resolved, the law does not require further administrative action prior to seeking relief in federal court. As noted by the Sixth Circuit, "[c]ourts have held 'that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.'"[49]

---

[48] Doc. 132 at p. 29.

[49] *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546-47 (6th Cir. 1991), quoting *Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). *See also Franceschi v. United States VA,* 514 F.3d 81, 86-87 (1st Cir. 2008) ("A claim of retaliation for filing an administrative charge with the EEOC is one of the narrow exceptions to the normal rule of exhaustion of administrative remedies. Such a claim may ordinarily be bootstrapped onto the other Title VII claim or claims arising out of the

"Because retaliation claims, by definition, arise after the filing of the EEOC charge, this rule promotes efficiency by requiring only one filing."[50]  Thus, the Court has jurisdiction to resolve DaSilva's Title VII retaliation claim as it pertains to retaliatory conduct that arose out of – and occurred after – DaSilva's filing of the second EEO and SHARP complaints.

Second, DaSilva <u>did</u> seek redress for the retaliatory conduct resultant from his first EEO complaint in his second one.  On April 29, 2018, DaSilva emailed acting EEO officer Melissa Kleehammer, writing, "I'm sending you this email to officially file a Reprisal Complaint on A/C Martin Potter."[51]  Mr. DaSilva also provided testimony regarding the alleged retaliation during the subsequent investigation.  For example, the May 3, 2018 EEO Counselor's Report notes, "[i]n December 2016, the aggrieved alleges that Mr. Potter verbalized to him. 'If I become assistant chief.  I will make sure you don't move up.'  This was said in front of other staff."[52]  The same document noted that DaSilva's "relief sought" included, "AIC Chief Potter to either move out of his chain of command or be demoted so [sic] is his equal **and no longer a block to his**

---

administrative charge and considered by the district court, even though it has not been put through the administrative process.").

[50] *Ang v. Procter & Gamble Co.*, 932 F.2d at 547.

[51] Doc. 32-5.

[52] Doc. 32-14 at 000012.

**career**."[53]   The December 13, 2018 Report of Investigation notes that DaSilva reported, "he has been told that EEO complaints reflect poorly on promotion boards."[54]   This statement derived from DaSilva's November 29, 2018 Declaration, in which he stated, "Fire Chief Sean Edwards (reassigned to another department), has stated that EEO complaints made by personnel would reflect poorly on promotions board."[55]  These statements make clear that DaSilva alleged Defendant Potter intentionally interfered with his requests for promotion, and put Defendants on notice of the facts underlying his Title VII retaliation claim.

*Dixon v. Ashcroft* is directly on point.[56]   In that case, the district court dismissed the plaintiff's Title VII retaliation claim on the grounds that he did not properly include allegations of retaliation in his subsequent EEOC complaint.[57]   The Sixth Circuit rejected the district court's strict adherence to form, explaining, "[t]he purpose of the requirement [of exhaustion of administrative remedies] is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an

---

[53] *Id.* (emphasis added).

[54] *See* Exhibit 1 hereto.

[55] *See* Exhibit 2 hereto.

[56] 392 F.3d 212 (6th Cir. 2004).

[57] *Dixon v. Ashcroft*, 392 F.3d at 217.

attempt to avoid litigation."[58]   Thus, "'where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'"  "This principle [[is] known as the 'expected scope of investigation test.'"[59]   The *Dixon* court concluded, "[t]he determinative inquiry in this case, therefore, is whether Dixon alleged sufficient facts in his EEOC Complaint to put the EEOC on notice of his retaliation claim, despite that he did not check the appropriate box on the EEOC's Complaint of Discrimination form."[60]

Here, as in *Dixon*, DaSilva made allegations and provided evidence in support of his contention that Defendant Potter improperly interfered with his requests for transfer and promotion in retaliation for his filing of his first EEO complaint in his second one, sufficient to put Defendants on notice of this claim.

### D. Counts IV And V: DaSilva's ELCRA Claims are not Preempted by Title VI.

Defendants again raise the specter of preemption to avoid liability for violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), as alleged in Counts IV and V of the FAC.  "The preemption doctrine is rooted in

---

[58] *Id.,* quoting *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002).
[59] *Id.*
[60] *Id.*

the Supremacy Clause, which invalidates state laws that "interfere with, or are contrary to, the laws of congress."[61]   The Supreme Court has expressed a presumption against preemption, explaining, "consideration of issues arising under the Supremacy Clause 'starts with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.'"[62] "A court's sole task in determining whether a state statute is preempted is to ascertain whether Congress intended the federal law to have such effect."[63] With respect to Title VII, Congress answered this question directly:

> Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.[64]

[61] *Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1273-74 (1st Cir. 1993), quoting *Gibbons* v. *Ogden*, 22 U.S. (9 Wheat.) 1, 211, 6 L. Ed. 23 (1824).

[62] *Cipollone v. Liggett Grp.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 2617 (1992), quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 91 L. Ed. 1447, 67 S. Ct. 1146 (1947).

[63] *Ellenwood v. Exxon Shipping Co., supra.*

[64] 42 U.S.C.S. § 2000h-4 (LexisNexis, Lexis Advance through Public Law 117-80, approved December 27, 2021, with a gap of Public Law 117-58. Title 26 provisions are current through Public Law 117-80). *See also Shaffer v. Peake*, Civil Action No. 07-298, 2008 U.S. Dist. LEXIS 22967, at *53-54 (W.D. Pa. Mar. 24, 2008), quoting *Brunetti v. Rubin,* 999 F.

ELCRA's purpose is consistent with that of Title VII. Indeed, ELCRA protects a wider swath of employees from discrimination than Title VII, in that it prohibits discrimination on the basis of weight.[65] ELCRA also authorizes action against the individual harasser – Potter.[66]

### E. **DaSilva withdraws Counts VI and VII.**

DaSilva hereby withdraws Counts VI and VII of his FAC, so the Court need not address the arguments presented by Defendants on these claims.

### CONCLUSION

DaSilva's complaint alleges specific facts sufficient to put Defendants on notice of his Title VII claims, thus meeting the

---

Supp. 1408, 1411 (D.Colo. 1998) ("Title VII 'does not subsume or preempt all claims that rely on the same nucleus of operative facts.'").
[65] Mich. Comp. Laws Serv. § 37.2202 (LexisNexis, Lexis Advance through Act 118 of the 2021 Regular Legislative Session and E.R.O. 2021-1) ("(1) An employer shall not do any of the following: (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.").
[66] *Sicuso v. Carrington Golf Club, LLC*, No. 17-13938, 2019 U.S. Dist. LEXIS 10339, at *22 (E.D. Mich. Jan. 23, 2019).

requirements of Rule 8. Defendants cannot reasonably claim to be in the dark about what DaSilva's contentions are, or the relief he seeks.

Moreover, Title VII doesn't preempt his First Amendment retaliation claim or his ELCRA causes of action. For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' motion and permit this case to be heard on the merits. To the extent the Court believes additional factual allegations are warranted, DaSilva requests leave to amend to conform with the Court's determination.

Dated: January 18, 2022    Respectfully Submitted,

Keith Altman, Esq.
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorney for Plaintiff Joe DaSilva, Jr.*

# CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022, I electronically filed **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW** the above document with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel.

# EXHIBIT 1

### TO PLAINTIFF DASILVA'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

December 13, 2018 Report of Investigation

# REPORT OF INVESTIGATION

December 13, 2018

**Agency Number:** ARDETROIT18MAY01583

**Activity Filed Against:** Department of the Army
United States Army Garrison
Detroit Army Arsenal Base
Directorate of Emergency Services
Fire and Protection and Prevention Division
Warren, MI

**Complainant's Name and Address:** Joe DaSilva, Jr.
3705 Dexter Ann Arbor Road
Ann Arbor, MI 48103

**Representative' Name and Address:** Solomon Radner, Esq.
Excolo Law, PLLC
26700 Lasher Rd, Suite 401
Southfield, MI 48033

**Date Complaint Filed:** June 1, 2018

**Dates of Investigation:** October 18 – December 3, 2018

**Claim:** Was Complainant subjected to a hostile work environment (sexual) and discriminated against based on his sex (male), national origin (Brazilian), age (51; born 1967), race (Latino), and reprisal (filing prior EEO complaints)[1] when on April 3, 2018, Assistant Chief Martin Potter said to him "how much do breasts implants cost" and remarking that he should be able to wear a "B-cup bra" (Investigative File [IF] pages [pp] 55-58)?

## PART I – BACKGROUND

During the timeframe, Complainant was a Firefighter (Hazmat Tech/Basic Life Support), GS-03081-07. In this position, assigned to a crew, he engaged in structural firefighting, rescue operations, hazardous materials incidents, and performed noninvasive emergency procedures in support of the Detroit Arsenal base population. Complainant worked a 72-hour rotating shift to include evenings, weekends, and holidays (IF pp 68-76).

Complainant reported the alleged harassment to Sexual Assault Response Prevention (SHARP) personnel on April 5, 2018 (IF pp 99-101). An Investigating Officer was appointed on April 10, 2108, by the Garrison Manager (IF pp 108-111). On May 22, 2018, the Investigator's results showed the comment was made by Mr. Porter and provided a list of recommended actions (IF page [p] 121). The Agency lists Complainant's prior EEO activity as two informal complaints filed alleging a hostile work environment naming Fire Chief Sean Edwards, Fire Chief, GS-

---

[1] Complainant added the bases of race, age, and reprisal during the course of the investigation (IF pp 7, 128, 200).

DaSilva, ARDETROIT18MAY01583

0081-12, and Assistant Chief Martin Potter, GS-0081-10, as the alleged harassers. The complaints were based on his sex, national origin, and reprisal. One of the complaints did not go formal and the other resulted in a negotiated settlement agreement (IF p 125). For information pertaining to witness participation and provided documents, see the Investigator's Declaration at IF p 167.

## PART II – SUMMARY OF EVIDENCE

### Complainant's testimony

Complainant declares management is aware of his race and national origin because he has talked about taking trips to Brazil to visit family (IF p 134). On April 3, 2018, as he was walking through the kitchen Mr. Potter looked at his chest and arbitrarily asked him "how much do breast implants cost?" He walked out of the kitchen very upset and angry (IF pp 129-130, 133). This was not the first time Mr. Potter has made this type of comment to him. He explains that in February 2017, Mr. Potter asked him if he was able to wear a "B-cup bra and has said to him "I bet you can hold a pencil under your boobs and not let it drop." He believed the negotiated settlement agreement would curtail the harassing comments; however, the harassment did not stop as evident of this current complaint (IF p 130). Although the agency conducted an investigation into the statement made in this complaint, he has not been privy to any punishment/corrective action taken as a result of the SHARP investigation (IF p 132). He adds Mr. Potter is allowed to make inappropriate comments without fear of consequence and his complaint was not taken seriously (IF p 132). He has not heard Mr. Potter make similar comments to other employees (IF p 134).

When asked to explain how he was being discriminated against, he explains the comments about his breast size infers that he is a woman, which demeans his sexuality and masculinity (IF p 134). Mr. Potter once said that he was the "oldest Firefighter in the department." He also believes he is being treated differently because he is the only Firefighter who is from Brazil, Latino and has been told that EEO complaints reflect poorly on promotion boards (IF p 135).

### Management's testimony and documentary evidence

**Mr. Edwards (sex-male; national origin-United States; born 1922; race-Caucasian/Native American)** declares he is Complainant's second-level supervisor. He is aware of Complainant's age, race, sex, and national origin (IF pp 137-138). He is aware Complainant filed other EEO complaints which were resolved at the informal stage (IF pp 138-139).

On April 3, 2018, he was sitting at the kitchen table eating and talking with another Firefighter. The television was on and there were multiple conversations occurring between Firefighters. He did not hear the alleged comment made by Mr. Potter regarding the cost of breast implants. Mr. Potter told him that there was a story on television about breast implants and he decided to ask Complainant whether he (Complainant) knew how much implants cost (IF pp 139, 141). Before he could take action on the comment, Complainant went to SHARP. During the SHARP investigation, Complainant and Mr. Potter did not work together. As a result of the SHARP investigation and as discipline, Mr. Potter received a Letter of Caution (IF p 140). Additionally, as a result of the SHARP investigation, the entire staff was given SHARP training and he

2

DaSilva, ARDETROIT18MAY01583

instituted random SHARP investigations to ensure the workplace was free of material that might be offensive to employees. He did not hear the comment made regarding Complainant wearing a "B-cup" (IF p 139). No other employees have complained to him about Mr. Potter making similar comments (IF p 140).

**Mr. Potter (sex-male; national origin-European; born 1974; race-Caucasian)** declares he is Complainant's supervisor when they work on the same shift (IF p 142). He is aware of Complainant's age, race, sex, and national origin. He served as a witness in Complainant's previous EEO complaint (IF p 143).

On April 3, 2013, there was a news story playing on the television regarding the cost of breast implants. As he was watching the story, Complainant walked by and the questioned popped in his head to ask him (Complainant) if he knew the cost of breast implants. As a result of making the comment, he received a Letter of Counseling for unprofessional behavior. He explains the comments started several years ago when there was a weight loss challenge among the Firefighters. Complainant would talk about his stomach and he would talk about Complainant's chest size. It was during this bantering that he asked Complainant if he wore a "B-cup size" (IF p 144). He never made the following comments to Complainant: "you're the oldest Firefighter in the department" and "Let's do the pencil test; I bet you can hold a pencil under your boobs and not let it drop" (IF p 164). He has not made similar comments to other employees, or been counseled for making other comments (IF p 144). He denies discriminating against Complainant. He adds Complainant participates in similar behavior and often incites conversation of this nature (IF p 145; see Memorandum for Records at IF pp 147-150).

**Complainant's Rebuttal**
Complainant declined to provide rebuttal (IF p 208).

**Testimony of Other Witness**
**Mr. Matthew Holtyn (sex-male; national origin-United States; born 1973; race-Caucasian; claims no prior EEO activity)**, Firefighter, GS-0081-07, co-worker, declares he was not on shift on the day the comment was made regarding the breast implants. However, he has heard Complainant and Mr. Potter make jokes with each other. Mr. Potter has never made similar comments to him. He does not believe Complainant is being discriminated against (IF pp 151-153).

**Mr. Lesley Tillman (sex-male; national origin-United States; born 1973; race-Black; claims prior EEO activity)**, Assistant Fire Chief (Training and Fire Prevention), GS-0081-10, declares he once served as Complainant's first-level supervisor (IF p 155). On April 3, 2018, while getting his coffee in the breakroom, he cannot say for certain, but he heard Mr. Potter ask Complainant something to the effect of "Joe, do you know how much breasts implants cost? Those look like a C-cup" (IF p 157). Mr. Potter has not made similar comments to him nor have any employees complained to him about comments being made to them (IF p 158). He does not believe the comment had anything to do with discrimination; the comment was poor judgement on the part of Mr. Potter (IF p 159).

3

000064

DaSilva, ARDETROIT18MAY01583

**Mr. David Ferris (sex-male; national origin-United States; born 1983; race-Caucasian; claims prior EEO activity)**, Firefighter, GS-0081-07, co-worker, declares on April 3, 2018, he recalls a comment made about breast implants directed at Complainant. Although he does not recall the exact comment, he saw Complainant get upset and walk out of the kitchen area. He believes Mr. Potter made a very poor choice of words. Mr. Potter has not made similar comments to him or any of his co-workers. He adds that there is a lot of joking in the Firehouse, but nothing is said to offend or degrade anyone (IF p 162). He does not believe the work environment is hostile or harassing (IF p 163).

Cassandra J. Williams
Investigator

4

# EXHIBIT 2

### TO PLAINTIFF DASILVA'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

November 29, 2018 Declaration of Joe DaSilva Jr.

DaSilva, ARDETROIT18MAY01583

past to Brazil to visit family members, ie: funeral leave. I have a Brazilian Passport for that reason, which was retrieved, at that time, by my security clearance advisor. Assistant Chief Potter has made derogatory remarks to me, in front of peers / supervisors in reference of my nationality.

Q: To clarify, the only comment made on April 3, 2018 by Assistant Chief Potter was "how much do breast implants cost," is this correct?
R: As stated in my last Declaration paged that was signed on 11-15-18 on page 4. question #1.

Q: Did you in anyway solicit these comments from by Assistant Chief Potter [please explain your response]?
R: As stated in my last Declaration paged signed on 11-15-18 I just walked in to the kitchen.

Q: Regarding the question, what was the outcome/conclusion of the AR 15-6 investigation (page 5 of 6 of the original Declaration), what did the letter dated May 23, 2018 say from Mr. Arthur Young?
R: All documents we're forwarded to your office through channels, at this time I was not privy to said punishment / corrective action.

Q: Have you heard Assistant Chief Potter make similar comments of this nature [regarding breast implants, bra size, etc] to any other employees [male and/or female]? If so, please provide the name of the employee(s), approximately when, and what was said?
R: No not to the best of my knowledge.

Q: Have you heard any other managers make similar comments of this nature [regarding breast implants, bra size, etc] to any other employees [male and female]? If so, please provide the name of the manager, the managers organizational relationship to you, the name of the employee(s), approximately when, and what was said?
R: No not to the best of my knowledge.

Q: Do you have any belief regarding why Assistant Chief Potter singles you out when making these comments [please explain your response]?
R: I do not know why.

Q: Have you heard Assistant Chief Potter or anyone in your management chain-of-command make negative comments about you being male? If so, please provide the name of the management official, approximately when, and what was said?
R: No, I have not.

Q: Please explain why and what evidence supports your belief regarding why you believe you were discriminated against based on the fact that you are male.
R: His statements was he was inferring that the size of my breast were that of a women thus in need of a BRA, demeaning my sexuality and my Masculinity in front of my peers and other command staff that were present.

Q: Have you heard Assistant Chief Potter or anyone in your management chain-of-command

Page 2 of 4 Pages
Declarant's Initials _____

000134

DaSilva, ARDETROIT18MAY01583

make negative comments about you being older or older employees?  If so, please provide the name of the management official, approximately when, and what was said?
R: I do recall that when there were several of us in the kitchen, when, Assistant Chief Potter sarcastically said, after the last Captain retired "your the oldest Firefighter in the department".

Q:  Please explain why and what evidence supports your belief regarding why you believe you were discriminated against based on your age.
R:As I stated above, I was referred to as the old man. Which was witness by Firefighter Kumlin (unk on time/date).

Q:  Have you heard Assistant Chief Potter or anyone in your management chain-of-command make negative comments about you or any other employees being Latino?  If so, please provide the name of the management official, approximately when, and what was said?
R:No, not to the best of my knowledge. I am the only one, who is Latino.

Q:  Please explain why and what evidence supports your belief regarding why you believe you were discriminated against based on your race.
R:Due to Assistant Chief Potter's position, one could presume his role and position as Chief makes him a more of a informed supervisor.

Q:  Have you heard Assistant Chief Potter or anyone in your management chain-of-command make negative comments about you or any other employees being from Santos Brazil?  If so, please provide the name of the management official, approximately when, and what was said?
R:Yes, Fire Chief Ronald Hall( past Chief), called me a dumb Brazilian in the ladder bay. This happened approximately two years ago.

Q:  Please explain why and what evidence supports your belief regarding why you believe you were discriminated against based on your national origin.
R:To the best of my knowledge, I am the only one born in another country. And,  it is common knowledge.

Q:  Have you heard Assistant Chief Potter or anyone in your management chain-of-command make negative comments about you or any other employees who file EEO complaints?  If so, please provide the name of the management official, approximately when, and what was said?
R:Yes, Fire Chief Sean Edwards (reassigned to another department), has stated that EEO complaints made by personnel would reflect poorly on promotions board.

Q:  Please explain why you believe you have been discriminated against for reprisal –filing previous EEO complaint.
R:Because past complaints resolutions were not met with positive results.

Page 3 of      ages
Declarant's Initials

DaSilva, ARDETROIT18MAY01583

## END OF STATEMENT

I, **Joe DaSilva, Jr.** declare under penalty of perjury, that the foregoing is true and correct.

_____
(Declarant's Signature)

11-29-18
_____
(Date)

*Page 4 of __ Pages*
*Declarant's Initials* _____