UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE DASILVA, JR.,

       Plaintiff,                                Civil Action No. 20-cv-11358

vs.

                                                     HON. MARK A. GOLDSMITH

MARK ESPER, et al.,

       Defendants.
_____/

**OPINION & ORDER**
**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (Dkts. 32, 33) AND (2) DENYING AS MOOT PLAINTIFF'S MOTION FOR AN ORDER STRIKING SUBSTITUTION**

Plaintiff Joe Dasilva, Jr. brings this action against Defendants John Whitley, the Secretary of the U.S. Department of Defense, and Martin Potter, the Assistant Chief (and, subsequently, the Chief) of the U.S. Army Detroit Arsenal Fire Division.  Am. Compl. ¶ 1 (Dkt. 29).[1]  This matter is now before the Court on Defendants' joint motion to dismiss all claims against them (Dkt. 32)[2] and Dasilva's motion for an order striking substitution (Dkt. 40).  For the reasons that follow, the Court grants in part and denies in part Defendants' motion and denies as moot Dasilva's motion.[3]

---

[1] Mark Esper, the former Secretary of the Department of Defense, and Sean Edwards, the Chief of the U.S. Army Detroit Arsenal Fire Division, are also listed as Defendants on the docket, as they were named as Defendants in the original complaint.  Compl. (Dkt. 1).  Because Dasilva omitted Esper and Edwards as Defendants in his amended complaint, Dasilva has voluntarily dismissed them from the action.  See 61B Am. Jur. 2d Pleading § 730 (2022).  Accordingly, the Clerk's Office is directed to terminate Esper and Edwards on the docket.

[2] Potter also individually filed a motion to dismiss (Dkt. 33), stating that he seeks dismissal of the claims for the reasons set forth in the joint motion to dismiss.  Potter's individual motion is resolved in the same manner as Defendants' joint motion.

[3] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to

## I. BACKGROUND

Dasilva is a firefighter and emergency medical technician for the Army. Am Compl. ¶ 6. According to Dasilva, "[f]or over three years," his immediate supervisor, Potter, "has periodically made unwanted sexual comments . . ., such as stating that [Dasilva] . . . should wear a bra, that [Dasilva] . . . has breast implants, or suggesting that they try the 'pencil test.'" Id. ¶ 10.[4] Dasilva also describes Potter's unwanted sexual comments as "frequent, pervasive, and ongoing." Id. ¶ 21. Another superior, Edwards, allegedly told Dasilva that he did not like him. Id. ¶ 21. Further, Dasilva alleges, Potter and Edwards "were routinely loud and rude to [Dasilva] . . ., in addition to ignoring him and/or ostracizing him from the workplace community." Id. ¶ 11.

Dasilva alleges that these comments prompted him to file an Equal Employment Opportunity (EEO) complaint in 2017. Id. ¶ 16. In this complaint, Dasilva alleged, among other things, that (i) Potter gave Dasilva a poor performance review, (ii) Edwards told Dasilva that Edwards did not like him, and (iii) Potter would "periodically" tell Dasilva to "put on a bra" and that Dasilva "ought to put on a 38B." 2017 EEO Counselor Report (Dkt. 32-2). Dasilva's 2017 EEO complaint culminated in a settlement agreement between the Army and Dasilva, in which the Army agreed to investigate Edward's allegedly rude comments and Dasilva agreed to waive his right to administrative or judicial action concerning the matters raised in his complaint. Settlement Agreement (Dkt. 32-3).

---

the motions, the briefing includes Dasilva's response to the motion to dismiss (Dkt. 46) and Defendants' reply (Dkt. 49), as well as Defendants' response to the motion for an order striking substitution (Dkt. 41).

[4] According to Dasilva, the "pencil test" is a "vulgar slang phrase, referring to placing a pencil underneath an individual's breast tissue to see if the tissue is large enough to hang over the pencil and weighs enough to keep the pencil lodged in place against the torso." Am. Compl. ¶ 10.

2

Dasilva contends that in retaliation for filing the 2017 EEO complaint, Potter negatively influenced Dasilva's applications for transfer and promotion, resulting in each application being denied. Am. Compl. ¶¶ 32, 58. Further, Dasilva alleges, Potter "continued to make unwanted sexual comments to [Dasilva] . . . with increasing frequency." Id. ¶ 17.

Dasilva filed a second EEO complaint in 2018, in which Dasilva alleged that (i) Edwards told Dasilva that he did not like him; (ii) Potter made "unwanted sexual comments" to him, including asking Dasilva how much breast implants cost and remarking that Dasilva should be able to wear a B-cup bra; and (iii) in December 2016, Potter told Dasilva, "If I become assistant chief, I will make sure you don't move up." 2018 EEO Counselor Report at 2 (Dkt. 32-4). Dasilva later added to these claims via email, alleging that Potter retaliated against Dasilva for filing the 2017 EEO complaint by continuing to make "inappropriate sexual comments." Email Adding Reprisal Claim (Dkt. 32-5). In his second EEO complaint, Dasilva sought (i) paid overtime, (ii) for Potter and Edward's behavior to stop, (iii) to not have any more shifts with Potter, and (iv) for Potter to be "move[d] out of [Dasilva's] . . . chain of command or be demoted," so that Potter would "no longer [be] a block to [Dasilva's] . . . career." 2018 EEO Counselor Report at 2.

When Dasilva's 2018 EEO complaint was not resolved at the pre-complaint stage, Dasilva filed a formal complaint. Formal Complaint (Dkt. 32-6). In that complaint, Dasilva alleged that on April 3, 2018, Potter made "several harassing comments against [Dasilva] . . . of an unwanted sexual nature," including asking Dasilva "how much do breast implants cost" and remarking that Dasilva should wear a B-cup bra. Id. at 1 (punctuation modified). Further, Potter allegedly made statements "last summer" that Dasilva should do the pencil test. Id. Dasilva requested an

3

administrative hearing. On March 20, 2020, an administrative law judge (ALJ) with the United States Equal Employment Opportunity Commission (EEOC) granted summary judgment to the Army, finding that the conduct alleged in Dasilva's complaint did not rise to the level of a hostile work environment. Am. Compl. ¶ 20; ALJ Decision (Dkt. 32-8).

## II. LEGAL STANDARD

Defendants seek dismissal of Dasilva's claims under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

### A. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The plausibility standard requires courts to accept the alleged facts as true and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Typically, a court is confined to the pleadings in resolving a motion to dismiss. However, "court[s] may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." See Rondigo, LLC v. Twp. of Richmond, 641 F.3d 673, 680–681 (6th Cir. 2011) (punctuation modified).

### B. Rule 12(b)(1)

A court may dismiss a claim pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. Moir v. Greater Cleveland Reg'l Transp. Auth., 895 F.2d 266, 269 (6th Cir. 1990). When the defendant challenges subject matter jurisdiction through a motion to dismiss, the

plaintiff bears the burden of establishing jurisdiction. Nichols v. Muskingum Coll., 318 F.3d 674, 677 (6th Cir. 2003).

Rule 12(b)(1) motions generally come in two varieties: facial attacks and factual attacks. Gentek Bldg. Products, Inc. v. Sherman-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007). A factual attack—like the one that Defendants raise here—raises a factual controversy as to whether subject-matter jurisdiction exists. Id. In the case of factual attacks, no presumptive truthfulness applies to the allegations, and a court may consider documents outside the pleadings. Id.

### III. ANALYSIS

Dasilva brings several claims, including: (i) a claim for First Amendment retaliation under 42 U.S.C. § 1983 against Potter; (ii) a hostile work environment claim under Title VII of the Civil Rights Act of 1964 against the Department; (iii) a retaliation claim under Title VII against the Department; and (iv) sex discrimination, weight discrimination, and retaliation claims under Michigan's Elliott-Larsen Civil Rights Act (ELCRA) against all Defendants.[5] Defendants' arguments for dismissal of each of these claims are addressed in turn.

#### A. First Amendment Retaliation

Defendants argue that Dasilva's First Amendment retaliation claim under § 1983 is preempted by Title VII because Title VII provides the exclusive remedy for federal employment discrimination, and Dasilva's First Amendment retaliation claim is premised on the same protected

---

[5] In his amended complaint, Dasilva also brought claims for negligent infliction of emotional distress and intentional infliction of emotional distress. However, Dasilva has now withdrawn those claims. See Pl. Resp. at 22. Accordingly, Defendants' motion to dismiss is denied as moot as to these two claims. Further, Dasilva's motion for an order striking substitution—which challenges the substitution of the United States for Potter as the defendant of these two tort claims—is denied as moot.

5

activity as his Title VII retaliation claim. Defs. Mot. to Dismiss at 9–10. Dasilva disagrees, arguing that this court should recognize an exception to the exclusivity of Title VII for § 1983 retaliation claims based on the First Amendment, as some courts outside of this circuit have done. Pl. Resp. at 5 n.17 (citing Dorothy Covey v. City of Philadelphia, 2007 U.S. Dist. LEXIS 17734, *12 (E.D. Pa. 2007); Velikonja v. Mueller, 315 F. Supp. 2d 66, 76 (D.D.C. 2004); Rottman v. U.S. Coast Guard Academy, 630 F. Supp. 1123, 1125 (D. Conn. 1986)).

The United States Court of Appeals for the Sixth Circuit has held that "Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII." Day v. Wayne Cnty. Bd. of Auditors, 749 F.2d 1199, 1204 (6th Cir. 1984). The reason that Title VII provides the exclusive remedy is that "[i]t would be anomalous to hold that when the only unlawful employment practice consists of the violation of a right created by Title VII, the plaintiff can by-pass all of the administrative processes of Title VII and go directly into court under § 1983." Id. Thus, "an employee may sue her public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution." Id. at 1205 (citing Grano v. Dep't of Development, City of Columbus, 637 F.2d 1073 (6th Cir. 1980)). In other words, "[w]here an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII." Id.

Following Day, the Sixth Circuit has suggested that a plaintiff may seek redress under both § 1983 and Title VII for an employer's retaliatory actions that violates both Title VII and the First

Amendment. See Birch v. Cuyahoga Cnty. Probate Ct., 392 F.3d 151, 168 (6th Cir. 2004). In dicta, the Birch court voiced disagreement with the view that a First Amendment retaliation claim was preempted by Title VII, noting that "arguably the First Amendment to the Constitution independently protects a government employee from retaliation for complaints about discriminatory employment practices, which are a matter of public concern." Id. As support, the Birch court cited Strouss v. Mich. Dep't of Corrections, 250 F.3d 336, 346 n.5 (6th Cir. 2001), in which the court "not[ed] in dicta that a First Amendment retaliation claim based on complaints about sexual harassment, which is a specific form of sex discrimination, would be viable because such complaints are a matter of public concern." Id. At least one district court within this circuit has subsequently relied on Birch's dicta in holding that § 1983 retaliation claims based on the First Amendment are not preempted by Title VII. See Way v. Shawnee Twp., 192 F. Supp. 3d 867, 878 (N.D. Ohio 2016) ("Employer retaliation is generally not a valid claim under Section 1983. An exception exists, however, for First Amendment retaliation by public employers.") (citing Birch, 392 F.3d at 168).[6]

The parties have not briefed key issues relevant to whether Dasilva's First Amendment retaliation claim is preempted by Title VII: (i) what impact, if any, Birch and its progeny have on the bounds of Title VII's preemption scheme, and (ii) to what extent Dasilva's 2017 EEO complaint is a matter of public concern that is of relevance for the preemption analysis. The Court is disinclined to make these arguments for the parties. See, e.g., Hollon ex rel. Hollon v. Comm'r

---

[6] Because the Birch court determined that the plaintiff's retaliation claim—whether brought under § 1983 or Title VII—failed to establish an adverse employment action (an essential element of a retaliation claim), the Birch court ultimately did not have to resolve the question of whether First Amendment retaliation claims are excepted from Title VII's exclusivity. See Birch, 392 F.3d at 169.

of Soc. Sec., 447 F.3d 477, 491 (6th Cir. 2006) (limiting the court's consideration of issues to those raised in a party's brief and declining to formulate arguments on the party's behalf). Accordingly, the Court will not address the question further at this time.

Defendants may or may not ultimately prevail on their preemption argument. However, the Court concludes that the most prudent course is to decide the question after the parties have had an opportunity engage in discovery and fully develop the facts underlying the issues that might bear on the Court's decision. See Connick v. Myers, 461 U.S. 138, 147–148 (1983) (stating that whether speech addresses a matter of public concern is "determined by the content, form, and context of a given statement, as revealed by the whole record").

Importantly, the Court's chosen course will not unduly burden Defendants. The factual allegations underpinning Dasilva's First Amendment and Title VII retaliation claims are substantially similar. See Am. Compl. ¶¶ 23–35, 48–62. As explained below, Dasilva's Title VII retaliation claim survives Defendants' motion to dismiss. By declining to presently resolve the question of whether Title VII preempts Dasilva's First Amendment retaliation claim, the Court does not add significant new areas of discovery for Defendants.

For these reasons, the Court denies without prejudice Defendants' motion to dismiss as to Dasilva's First Amendment retaliation claim. However, Defendants are free to re-urge their preemption argument following discovery.

**B. Title VII Hostile Work Environment**

Defendants argue that Dasilva's hostile work environment claim fails for two reasons. First, "almost all of the alleged comments and actions giving rise to this claim occurred before [Dasilva] . . . filed his 2017 EEO Complaint, which was resolved by the Settlement Agreement."

8

Defs. Mot. to Dismiss at 10–11. Second, any comments that were made after the settlement agreement are not sufficiently severe or pervasive to give rise to a plausible hostile work environment claim. Id. at 13. Each argument is addressed in turn.

### i. Settlement Agreement

In the settlement agreement that Dasilva signed on March 16, 2017, Dasilva agreed "to waive his right to pursue administrative or judicial action in any forum concerning the matters raised in this complaint" and that these matters "will not be made the subject of future litigation." Settlement Agreement at 2. However, Dasilva now brings a hostile work environment claim that is based on Edward and Potter's offensive comments, see Am. Compl. ¶¶ 40, 43, some which were made prior to and are subject to the 2017 settlement agreement. Specifically, the pre-2017 settlement agreement comments made by Edwards (telling Dasilva that Edwards that he did not like him) and Potter (telling Dasilva to "put on a bra" and that Dasilva "ought to put on a 38B") are subject to the 2017 settlement agreement. 2017 EEO Counselor Report.[7]

A settlement agreement extinguishes Title VII claims that are based upon events that occurred prior to the settlement agreement. See Folley v. Henderson, 175 F. Supp. 2d 1007, 1011–1013 (S.D. Ohio 2001).[8] As a result, in resolving Dasilva's Title VII hostile work

---

[7] It appears that Edwards and Potter repeated some of these comments after the 2017 settlement agreement. See Am. Compl. ¶ 17 (alleging that after Dasilva filed his 2017 EEO complaint, Potter "continued to make unwanted sexual comments to [Dasilva] . . . with increasing frequency"); 2018 EEO Counsel Report (stating that Dasilva alleged that (i) Edwards told Dasilva that he did not like him, and (ii) Potter made "unwanted sexual comments" to him, including asking Dasilva how much breast implants costs and remarking that Dasilva should be able to wear a B-cup bra). Any comments that Edwards and Potter repeated after the 2017 settlement agreement are not subject to the 2017 settlement agreement and, therefore, can be considered in resolving Dasilva's Title VII hostile work environment claim.

[8] Dasilva argues that Folley is distinguishable because "the [Folley] plaintiff's settlement

9

environment claim, the Court cannot properly consider the acts that are subject to the 2017 settlement agreement.[9] Accordingly, the Court confines its consideration of this claim to the alleged acts that are not subject to the 2017 settlement agreement.

### ii. Severity and Pervasiveness

Defendants contend that even assuming that some of the alleged offensive comments occurred after the settlement agreement, Dasilva's Title VII hostile work environment claim should still be dismissed because Dasilva fails to plead that these comments were "severe or pervasive" enough to alter the conditions of Dasilva's employment and create an abusive working environment. Defs. Mot. to Dismiss at 14–17.

A successful hostile-work-environment claim under Title VII requires a plaintiff to establish that (i) the plaintiff belonged to a protected group, (ii) the plaintiff was subject to unwelcome harassment, (iii) the harassment was based on sex, (iv) the harassment was sufficiently "severe or pervasive' to alter the conditions of employment and create an abusive working environment, and (v) the defendant knew or should have known about the harassment and failed to act. Williams v. CSX Transp. Co., 643 F.3d 502, 511 (6th Cir. 2011). Courts must look at "all the circumstances," including "the frequency of the discriminatory conduct; its severity;

---

agreement included transfer to a different worksite, so her pre- and post- settlement work environments were necessarily distinct." Pl. Resp. at 7. However, Folley did not confine its holding to that context, nor does Dasilva suggest any reason for the Court to do so.

[9] In arguing that the Court should consider Defendants' alleged conduct that is subject to the 2017 settlement agreement, Dasilva relies on Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). However, Morgan—a case concerning whether courts may consider a hostile work environment claim even though some of the acts underlying the claim occurred outside of the statutory period for filing an EEOC charge—is inapposite. Morgan did not address whether courts may consider a hostile work environment claim where some of the acts underlying the claim are subject to a settlement agreement.

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Under this totality-of-the-circumstances test, "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." Williams v. Gen. Motors Corp., 187 F.3d 553, 562 (6th Cir. 1999).

      Defendants make much of the fact that at one point, Dasilva describes Edwards and Potter's harassment as "periodic[]." See Am. Compl. ¶ 10. Harassment made on a "periodic" basis, Defendants argue, is not pervasive. See Defs. Mot. to Dismiss at 15. It is true that isolated or infrequent harassment is not pervasive. See, e.g., Morris v. Oldham Cnty. Fiscal Ct., 201 F.3d 784, 790 (6th Cir. 2000) (holding that "isolated incidents" did not "amount to discriminatory changes in the terms and conditions of a plaintiff's employment"); Davis v. Solid Waste Servs., Inc., 20 F. Supp. 3d 519, 536 (E.D. Pa. 2014) (holding that "profanity-laden tirades" that "occurred monthly, at most," were "periodic" and, therefore, not so pervasive to "amount to a material change in the conditions of employment") (citing Harris, 510 U.S. at 21). However, pursuant to Federal Rule of Civil Procedure 8(d), Dasilva may state different or inconsistent theories of a claim, and the claim will be deemed sufficient if any of his alternative statements are sufficient. Although Dasilva describes Edwards and Potter's alleged harassment as "periodic" at one point, he describes it as "routine[]" at another, Am. Compl. ¶ 11, and as "frequent, pervasive, and ongoing" at yet another, id. ¶ 21. At the pleading stage, these latter allegations are sufficient for the Court to reasonably infer pervasive harassment.

      Because the Court finds that Dasilva has sufficiently alleged pervasive harassment, it need

11

not address Defendants' alternative argument that Dasilva has merely alleged non-severe remarks or jokes. Defs. Mot. to Dismiss at 15. This is because a plaintiff may satisfy the fourth element of a hostile work environment claim by showing either "severe or pervasive" harassment. Williams, 643 F.3d at 511 (emphasis added).

Accordingly, the Court denies Defendants' motion to dismiss Dasilva's Title VII hostile work environment claim.

### C. Title VII Retaliation

Defendants argue that Dasilva's Title VII retaliation claim fails for two reasons: (i) Dasilva does not allege a cognizable adverse action, and (ii) the claim is unexhausted. Defs. Mot. to Dismiss at 17–20. The Court disagrees with both arguments.

#### i. Adverse Action

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (i) the plaintiff engaged in a protected activity under Title VII, (ii) the exercise of protected rights was known by the plaintiff's employer, (iii) the employer took adverse employment action against the plaintiff, and (iv) there was a causal connection between the adverse employment action and the protected activity. Hunter v. Sec'y of U.S. Army, 565 F.3d 986, 995–996 (6th Cir. 2009).[10] An adverse action is one "that a reasonable employee would have found [to be] . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Garner v. Cuyahoga Cnty. Juvenile Ct., 554 F.3d 624,

---

[10] Although a plaintiff "need not plead a prima facie case of discrimination" to survive a motion to dismiss, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002), "the elements of a prima facie case are nonetheless aspects to consider when determining the plausibility of a discrimination claim," Haire v. Farm & Fleet of Rice Lake, Inc., No. 21-cv-10967, 2022 WL 128815, at *7 (E.D. Mich. Jan. 12, 2022).

639 (6th Cir. 2009) (punctuation modified).

Here, Dasilva alleges that after filing his 2017 EEO complaint, he applied for multiple promotions and transfers, all of which were denied due to Potter's negative influence. Am. Compl. ¶¶ 55, 58. A failure to promote or transfer an employee is clearly an adverse action under binding precedent. See, e.g., Hunter, 565 F.3d at 994 (listing "failure to promote" and "denial of transfer" as adverse actions).

Defendants contend that this is not enough, however. Specifically, Defendants argue that Dasilva's Title VII retaliation claim is "subject to dismissal for failure to specify any particular transfer or promotion that he was allegedly denied." Defs. Mot. to Dismiss at 18 (citing Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998)) (other citations omitted). In other words, Defendants advocate that a Title VII plaintiff should be required to identify in his or her pleadings the specific positions for which the plaintiff applied and was denied. This argument is unpersuasive for two reasons.

First, Defendants' position, if adopted, would impose too high a pleading standard. Twombly prohibits formulaic recitations of the elements of a claim; thus, an allegation that Defendants took an "adverse action" against Dasilva would not suffice. However, Twombly does not require plaintiffs to plead "detailed factual allegations," such as the specific title or description of the job for which Dasilva applied. See Twombly, 550 U.S. at 555. This is because all reasonable inferences are drawn in favor of the plaintiff. Iqbal, 556 U.S. at 678. Under Defendants' position, plaintiffs would be required to plead detailed factual allegations and, if they did not, they would be denied the benefit of reasonable inferences.

Second, Defendants' reliance on Brown is misguided. In Brown, the court—noting that

13

"the pleading requirements in discrimination cases are very lenient, even de minimis"—held that the plaintiff's allegations were insufficient because she "merely assert[ed] that on several occasions she . . . generally requested promotion." Brown, 163 F.3d at 710 (emphasis added). This fell short of alleging that she "applied for a specific position or positions and was rejected therefrom," which, the Brown court held, is what is required to sufficiently plead an adverse action based on a failure to promote. Id. (emphasis added). As the Brown court noted, "if generally requesting a promotion in an annual review were sufficient to establish a prima facie case, employers would be unfairly burdened in their promotion efforts." Id. Here, Dasilva does not merely allege that he generally requested a promotion. Rather, he alleges that he actually applied for promotions but was denied. See Am. Compl. ¶¶ 55, 58.[11]

For these reasons, Dasilva's Title VII retaliation claim does not fail for a lack of a cognizable adverse action.

### ii. Exhaustion

As noted above, Dasilva filed two EEO complaints, one in 2017 and one in 2018. In his second EEO complaint, Dasilva alleged that Potter retaliated against him for filing the 2017 EEO complaint by continuing to make "inappropriate sexual comments." Email Adding Reprisal

---

[11] Moreover, Brown has been "call[ed] into question . . . , if . . . not abrogate[d] . . . entirely" by later Supreme Court precedent. Barrett v. Forest Labs., Inc., 39 F. Supp. 3d 407, 442 (S.D.N.Y. 2014). Brown relied on the belief that a plaintiff must plead a prima facie case of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Brown, 163 F.3d at 709. However, a plaintiff "need not plead a prima facie case of discrimination" to survive a motion to dismiss. Swierkiewicz, 534 U.S. at 515. This is because "[t]he prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement." Id. at 510. Further, imposing the Second Circuit's heightened pleading standard in employment discrimination cases "conflicts with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 512 (quoting Fed. R. Civ. P. 8(a)(2)).

Claim. However, in this action, Dasilva alleges that Potter retaliated against Dasilva for filing the 2017 EEO complaint by causing Dasilva's applications for transfer and promotion to be denied. Am. Compl. ¶¶ 50–60. Defendants argue that Dasilva has, therefore, failed to administratively exhaust his Title VII retaliation claim because his 2018 EEO complaint did not allege retaliation in the form of being denied transfers or promotions. Defs. Mot. to Dismiss at 19–20.

"The right to bring an action under Title VII regarding equal employment opportunity in the federal government is predicated upon the timely exhaustion of administrative remedies, as set forth in the EEOC regulations." Benford v. Frank, 943 F.2d 609, 612 (6th Cir. 1991). Generally, "'[e]ach retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice, which must be exhausted.'" Sherman v. Chrysler Corp., 47 F. App'x 716, 721 (6th Cir. 2002) (quoting Morgan, 536 U.S. at 114) (punctuation modified). At the same time, the failure to explicitly state a potential claim in an EEO complaint does not always equate to a failure to administratively exhaust that claim. Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004). The exhaustion requirement "is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading. As a result, the EEOC complaint should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 732 (6th Cir. 2006) (punctuation modified).

As Dasilva points out, his second EEO complaint arguably did seek redress for the alleged retaliatory conduct that resulted from his first EEO complaint. See Pl. Resp. at 18–19. Specifically, Dasilva's second EEO complaint sought, among other things, for Potter to be

15

"move[d] out of [Dasilva's] . . . chain of command or be demoted," so that Potter would "no longer [be] a block to [Dasilva's] . . . career." 2018 EEO Counselor Report at 2.[12]

But even if Dasilva's 2018 EEO complaint failed to allege retaliation in the form of being denied transfers or promotions, this does not mean that Dasilva is prevented from seeking relief for this alleged retaliation in federal court. Adverse actions that have occurred subsequent to an administrative filing and are carried out in retaliation for the plaintiff's performance of a protected act can be reviewed for the first time in the district court if the retaliation claim is reasonably related to the claims that the plaintiff did assert before the agency. Delisle v. Brimfield Twp. Police Dep't, 94 F. App'x 247, 252–254 (6th Cir. 2004). For instance, in Delisle, the court considered the plaintiff's claim of retaliation (in the form of a demotion), even though the plaintiff did not administratively exhaust this claim, "since [the demotion] . . . occurred subsequent to [the plaintiff's] . . . filing of his administrative claim." Id. at 254. The plaintiff's EEO complaint included only claims of discrimination (in the form of suspensions) that occurred prior to the plaintiff's filing of the complaint. Id. The court concluded that it could consider the plaintiff's retaliation claim based on his demotion because this adverse action was "reasonably related" to the claims that the plaintiff had asserted before the administrative agency. Further, the Delisle court explained, "[g]iven that the administrative exhaustion requirement's purpose is, at least in part, to put potential defendants on notice while giving the EEOC the opportunity to investigate

---

[12] Dasilva also contends that his second EEO complaint alleged that in December 2016, Potter told Dasilva, "If I become assistant chief, I will make sure you don't move up." 2018 EEO Counselor Report at 2. However, because Potter allegedly made this statement in December 2016—before Dasilva filed his first EEO complaint on February 6, 2017, see Am. Compl. ¶ 16—this statement could not have been made in retaliation for Dasilva filing of his 2017 EEO complaint.

and, if possible, to mediate claims, in this situation the EEOC would have already had the opportunity to investigate, making a second filing unnecessary." Id. Additionally, "[r]equiring a plaintiff to file a second EEOC charge for retaliation after an initial administrative claim has been filed could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination." Id. (punctuation modified).

The Court thus turns to the question of whether the alleged denials of Dasilva's applications for transfers or promotions "occurred subsequent to an administrative filing," were "carried out in retaliation for [Dasilva's] . . . performance of a protected act," and were "reasonably related to the claims that [Dasilva] . . . did assert before the agency.' See Delisle, 94 F. App'x at 252. Dasilva alleges that after he filed his 2017 EEO complaint accusing Potter of sexual harassment, Potter retaliated against him by negatively influencing Dasilva's applications for promotions and transfers. Am. Compl. ¶ 58. Taking this allegation as true, as the Court must do, this adverse action occurred after Dasilva's filing of the 2017 EEO complaint. Further, Dasilva's reporting of acts that he believed constituted unlawful sexual harassment is a protected activity. See Horner v. Klein, 497 F. App'x 484, 489 (6th Cir. 2012). Finally, Potter's alleged negative influencing of Dasilva's applications is "reasonably related" to claims that Dasilva had already asserted before the EEOC, such as his claim that Potter gave him a poor performance review. See EEO Counselor Report at 2. For these reasons, Dasilva's Title VII retaliation claim does not fail for lack of exhaustion.

Accordingly, Defendants' motion to dismiss is denied as to Dasilva's Title VII retaliation claim.

### D. ELCRA Claims

Finally, Defendants argue that Dasilva's ELCRA claims should be dismissed as preempted by Title VII. Defs. Mot. to Dismiss at 20–21 (citing Davis v. Runyon, No. 96-4400, 1998 WL 96558 (6th Cir. Feb. 23, 1998) (affirming dismissal of race and sex discrimination claims brought under Ohio's analog to Title VII on preemption grounds)). Dasilva disagrees, arguing that Title VII does not foreclose his ELCRA claims because Title VII does not "'invalidat[e] any provision of State law unless such provision is inconsistent with any of the purposes of [Title VII] . . ., or any provision thereof.'" Pl. Resp. at 21 (quoting 42 U.S.C. § 2000h-4). ELCRA's purpose, Dasilva contends, "is consistent with that of Title VII." Id. at 22.

Dasilva's ELCRA claims are subject to dismissal for two reasons: sovereign immunity and Title VII exclusivity. Dasilva's ELCRA claims against Defendants in their official capacities raise issues of sovereign immunity. As another court within this district has explained:

> Although "it is clear that Congress has waived sovereign immunity for discrimination actions brought against the federal government[]" through Title VII, Taylor v. Geithner, 703 F.3d 328, 333 (6th Cir. 2013), that law is considered the "exclusive judicial remedy for claims of discrimination in federal employment." Id. (quoting Steiner v. Henderson, 354 F.2d 432, 434 (6th Cir. 2003)); Brown v. General Servs. Admin., 425 U.S. 820, 835 (1976). Because of this exclusivity, Title VII does not constitute a waiver of sovereign immunity for state law discrimination claims. See Clement v. Motta, 820 F. Supp. 1035, 1037 (W.D. Mich. 1991) (dismissing federal employee's ELCRA claim against Secretary of Agriculture for lack of subject-matter jurisdiction because state law discrimination claims are preempted by Title VII).

Scott v. Inter-Con Sec. Systems, Inc., No. 19-12655, 2020 WL 4437537, at *4 (E.D. Mich. Aug. 3, 2020). The Scott court reasoned that, because the defendants were federal employees and, therefore, "protected by sovereign immunity while acting in their official capacities," the plaintiff's ELCRA claims against the defendants in their official capacities are barred by sovereign

immunity. Likewise, Dasilva's ELCRA claims against Defendants in their official capacities are barred by sovereign immunity.

Dasilva's ELCRA claims against Potter in his individual capacity fail for a slightly different reason: Title VII exclusivity. Although Congress did not intend to occupy the entire anti-employment-discrimination field, there can be no doubt that Congress, through Title VII, superseded and invalidated analog state statutes insofar as these statutes permit employment discrimination actions against the federal government. Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown, 425 U.S. at 835. Title VII is, therefore, "both exclusive and preemptive of state law claims," including ELCRA claims, when a plaintiff alleges discrimination by the federal government. Burrows v. Henderson, 7 Fed App'x 472, 474 (6th Cir. 2001) (citing Brown, 425 U.S. at 829). Although the Sixth Circuit has not directly addressed the issue, courts within this circuit have agreed that where the defendants are federal officials, the plaintiff's "exclusive remedy falls under Title VII," and the plaintiff's ELCRA claims against the defendants in their individual capacities are, therefore, barred. Scott, 2020 WL 4437537, at *6; see also Clement, 820 F. Supp. at 1038 n.5 ("Brown's broad language on preemption and exclusivity has been construed as prohibiting suits not only against federal agencies or departments as individual defendants, but also against other federal officials in their official or individual capacities." ); Mallekoote v. Marsh, No. 1:89-CV-788, 1991 WL 502985, *4 (W.D. Mich. Sept. 27, 1991) (holding that Title VII's exclusivity extends to individual and official capacity suits alike and noting that "Brown did not distinguish between a suit against the government or its individual employees" and that "allowing additional individual remedies would interfere with [Title VII's] carefully devised scheme by permitting circumvention of administrative

remedies") (punctuation modified).

The Court is persuaded by the approach identified in Scott, Clement, and Mallekoote. As these cases suggest, § 2000e-4—which does not invalidate state discrimination laws other than those that are inconsistent with the purpose or provisions of Title VII—does not pose a barrier to preemption. Section 2000e-16, which prohibits discriminatory practices in the context of employment by the federal government, creates an "'exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination.'" Devine v. McDonough, No. 2:17-cv-02331-TLN-AC, 2021 WL 677899 (E.D. Cal. Feb. 22, 2021) (quoting Brown, 425 U.S. at 828–829). As a result, permitting state law employment discrimination claims against federal employees or the federal government would be inconsistent with the purpose of § 2000e-16. Accordingly, Dasilva's ELCRA claims against Potter in his individual capacity are barred by Title VII's exclusivity.

Defendants' motion to dismiss is, therefore, granted as to Dasilva's ELCRA claims.

### IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motions to dismiss (Dkts. 32, 33). Further, the Court denies as moot Dasilva's motion for an order striking substitution (Dkt. 40).

SO ORDERED.

Dated: February 9, 2022　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge