UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE DASILVA, JR.,

      Plaintiff,                  Civil No. 20-11358

v.                              Honorable Mark A. Goldsmith

CHRISTINE WORMUTH,        Magistrate Judge Anthony P. Patti
Secretary of the Army, and MARTIN
POTTER, in his individual capacity,

      Defendants.

---

## DEFENDANT WORMUTH'S MOTION TO COMPEL DISCOVERY, TO PERMIT PLAINTIFF'S DEPOSITION TO RESUME, AND FOR AN ENLARGEMENT OF THE PRESUMPTIVE SEVEN HOUR LIMIT ON PLAINTIFF'S DEPOSITION

---

Defendant Christine Wormuth, by and through her attorneys, Dawn N. Ison, United States Attorney, and Benjamin A. Anchill, Assistant United States Attorney, moves the Court for entry of an order compelling Plaintiff to resume his deposition after it was improperly terminated by his counsel. Pursuant to E.D. Mich. LR 7.1(a) and 37.1(a), undersigned counsel states that he attempted to resolve this matter with Plaintiff's counsel via discussion at the deposition on September 7, 2022. In addition, undersigned counsel certifies that counsel communicated in writing with opposing counsel on September 9, 2022, explaining the nature of the relief sought

by way of this motion and seeking concurrence. Concurrence was not forthcoming.

Accordingly, this motion is necessary.

Respectfully submitted,

DAWN N. ISON
United States Attorney

/s/ Benjamin A. Anchill
Benjamin A. Anchill (P70968)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9566
Dated:  September 13, 2022          benjamin.anchill@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE DASILVA, JR.,

      Plaintiff,                      Civil No. 20-11358

v.                              Honorable Mark A. Goldsmith

CHRISTINE WORMUTH,        Magistrate Judge Anthony P. Patti
Secretary of the Army, and MARTIN
POTTER, in his individual capacity,

      Defendants.

---

**DEFENDANT WORMUTH'S BRIEF IN SUPPORT OF MOTION TO
COMPEL DISCOVERY, TO PERMIT PLAINTIFF'S DEPOSITION TO
RESUME, AND FOR AN ENLARGEMENT OF THE PRESUMPTIVE
SEVEN HOUR LIMIT ON PLAINTIFF'S DEPOSITION**

---

### ISSUES PRESENTED

I.    Whether the Court should compel Plaintiff to respond to
questions unless they fall within the scope of Rule 30(c)(2).

II.   Whether the Court should permit the deposition of Plaintiff to
proceed where it left off and permit one additional hour of
deposition time.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................1

ARGUMENT ..................................................................................11

   A. The Court should compel Plaintiff to respond to questions unless they fall
      within the scope of Rule 30(c)(2)....................................................11

    1. Governing legal standards. ...........................................................11

    2. Discussion..............................................................................13

   B. The Court should permit the deposition of Plaintiff to proceed where it
      left off and permit one additional hour of deposition time. .............................15

CONCLUSION ................................................................................15

CERTIFICATION OF SERVICE..........................................................17

# TABLE OF AUTHORITIES

## Cases

*Cunningham v. Wells Fargo N.A.*, No. 3:19-CV-00528-FDW,

    2022 WL 1177166 (W.D.N.C. Apr. 20, 2022) .....................................................15

*Ferrell v. Sparkman*, No. 4:06CV7, 2007 WL 172516

    (E.D. Tenn. Jan. 18, 2007) ............................................................................. 12, 14

*In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614 (D. Nev. 1998) .....................12

*JSR Micro, Inc. v. QBE Ins. Corp.*, No. C-09-03044 PJH (EDL),

    2010 WL 1338152 (N.D. Cal. Apr. 5, 2010) .........................................................14

*Ralston Purina Co. v. McFarland*, 550 F.2d 967 (4th Cir. 1977) ...........................13

*Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637 (N.D. Ind. 1991) ..............13

*Wilson v. Martin Cnty. Hosp. Dist.*, 149 F.R.D. 553 (W.D. Tex. 1993) .................13

*Wright v. Firestone Tire & Rubber Co.*, 93 F.R.D. 491 (W.D. Ky. 1982) ..............14

## Other Authorities

Fed. R. Civ. P. 30 2000 Advisory Committee's Note ...............................................15

Fed. R. Civ. P. 30(d) 1993 Advisory Committee's Note..........................................13

## Rules

Fed. R. Civ. P. (d)(1) .......................................................................................... 11, 15

Fed. R. Civ. P. 30 ................................................................................................ 11, 12

Fed. R. Civ. P. 30(c)(2) ............................................................................... 1, 11, 12, 16

Fed. R. Civ. P. 30(d)(3).............................................................................................12

Fed. R. Civ. P. 30(d)(3)(A) ......................................................................................12

Fed. R. Civ. P. 30(d)(3)(B) ......................................................................................15

Fed. R. Civ. P. 37(a)(3)(B)(i)....................................................................................11

## INTRODUCTION

This is an employment action brought by a civilian male employee of the United States Army who claims to be the victim of sexual harassment by a male supervisor. In addition to a sexually hostile work environment claim, Plaintiff asserts claims of sex discrimination and retaliation.

At Plaintiff's deposition on September 7, 2022, his attorney instructed him not to respond to multiple questions in violation of Federal Rule of Civil Procedure 30(c)(2), which outlines the limited circumstances under which counsel may instruct a witness not to respond to a deposition question, none of which applies here. The last occurrence resulted in the premature termination of Plaintiff's deposition after approximately 4.85 hours to allow Plaintiff to obtain a protective order. Plaintiff has not moved for a protective order, nor is such an order appropriate.

The Army now asks the Court to permit Plaintiff's deposition to resume at a date and time that is mutually convenient to the parties and with instructions that questions, including the ones that Plaintiff's counsel already instructed his client not to answer, must be answered unless they fall within the scope of Rule 30(c)(2). In addition, the Army seeks one additional hour beyond the presumptive seven-hour time limit to conclude Plaintiff's deposition.

## BACKGROUND

Plaintiff Joe DaSilva, Jr., was employed by the United States Army as a Firefighter/EMT at the Detroit Arsenal Fire Division. (Am. Compl. ¶ 6, ECF No. 29,

PageID.86.) Plaintiff's first-level supervisor was Assistant Fire Chief Martin Potter, (*Id.* ¶¶ 7, 9, ECF No. 29, PageID.86-87), who is improperly named as a defendant in this case and represented by private counsel.

Since this lawsuit was filed, Plaintiff has taken a disability retirement due to health issues and is no longer employed by the Army.

Plaintiff claims that Potter sexually harassed him by "periodically" making "unwanted sexual comments," including "that Plaintiff should wear a bra, that Plaintiff has breast implants, or suggesting that they try the 'pencil test.'" (*Id.* ¶ 10.) Plaintiff also asserts sex discrimination and retaliation claims, alleging that Potter interfered with his ability to obtain promotions and gave him a lower performance evaluation than deserved due to his sex and in retaliation for complaining about sexual harassment. (*Id.* ¶¶ 15, 29, ECF No. 29, PageID.88, 90.)

One defense theory that the Army wishes to explore in discovery is that Plaintiff was not a victim of sexual harassment – but rather a perpetrator who was an active, willing participant in the sexually hostile work environment about which he complains in this lawsuit. The Army has a factual basis for this theory, including information derived from witness interviews that Plaintiff engaged in talk of an explicit sexual nature regarding websites he visited. In addition, the Army's internal investigator who conducted an investigation into Plaintiff's complaint of sexual

harassment found that Plaintiff "has engaged in off color comments and engaged back in other similar conversations." Exhibit 1 – Investigation Findings.

Plaintiff was deposed on September 7, 2022. However, the deposition was prematurely terminated after less than five hours. During the deposition, Plaintiff's counsel instructed his client not to respond to multiple questions. On all but the last occasion of this occurring, the parties agreed to move on to the next question because the questions to which Plaintiff refused to respond were relatively unimportant and the Army's preference was to attempt to complete the deposition without judicial intervention.

For example, Plaintiff's counsel instructed his client not to answer a question asking for the identity of his wife's employer:

```
Q.   Is she employed?
A.   Yes.
Q.   Where does she work?
     MR. ALTMAN:  Hold on.  I'm going to object
to the relevance.  What does his wife's employment
have anything to do with this lawsuit?
     MR. ANCHILL:  There's no relevancy objection
so that--
     MR. ALTMAN:  I'm going to instruct him not
to answer.  We'll move for a protective order if you
want.  You're not going to get into on a public record
his wife's employment.  She's not a party to this
```

```
suit.

          MR. ANCHILL:  What's your basis for

instructing him not to answer?

          MR. ALTMAN:  Because it's his wife's private

information.  She's not a party to this suit.  We'll

call the judge.  I'm fine with that.  What's your need

to know his wife's employment?  So no, I'm going to

instruct him not to answer.  The rules say I have to

move for a protective order.  I'll do that.  Do you

want to wait and we can save these things up and call

the judge all at once or do you want to call the judge

now?


          MR. ANCHILL:  We can move on for right now. ¹
```

Plaintiff's counsel also initially instructed Plaintiff not to respond to a question

asking for the age of his child, although counsel eventually allowed his client to

answer:

```
Q.   All right.  And how old is your son?

          MR. ALTMAN:  I'm going to instruct you not to

answer that question.

          Ask it differently, come on.  You don't need to

know about his family.  If you want to ask him is he still

in the house, has he graduated, okay.  But his age and
```

---

[1] All deposition excerpts reproduced in this motion are rough drafts provided by the court reporting company. The Army will file pertinent portions of the final transcript when received from the court reporter.

```
stuff like that is just --
        MR. ANCHILL:  I'm entitled -- I'm not asking his
birthday.  I mean, I just want to know how old he is.
        MR. ALTMAN:  Tell him how old he is.
THE WITNESS:  My son's 19 years old.
```

Additionally, Plaintiff's counsel instructed his client not to answer a question concerning a workplace conversation that Plaintiff had with Arthur Young, the Director of Operations at the Detroit Arsenal, who Plaintiff once considered a mentor. Plaintiff and Young were discussing, among other topics, the results of the Army's investigation into Plaintiff's sexual harassment complaint against Potter. Plaintiff testified that he surreptitiously recorded the conversation between him and Young without informing Young that he would be recording the conversation. After asking Plaintiff why he recorded the conversation, defense counsel asked Plaintiff if he thought that was the right thing to do – to secretly record a conversation with senior management. Plaintiff's counsel objected to the question as "argumentative" and instructed his client not to answer:

```
Q.  Okay.  Why did you record that conversation?
A.  I don't know.  It was just -- I was called in
there for this final report knowing that everything
was wrong about it.  I just did it.  It was not a --
it was just one of those feelings where I -- just do
```

it because it's a gut feeling.

Q.   So you think that was the right thing to do?
Secretly recording a conversation?

       MR. ALTMAN:  Objection, argumentative.
Don't answer that.

       MR. ANCHILL:  No, he has to answer.

       MR. ALTMAN:  No, he doesn't have to answer.

       MR. ANCHILL:  Yes, he does.

       MR. ALTMAN:  Okay, that's harassing.  I'll
move for a protective order.

       MR. ANCHILL:  Okay.

       MR. ALTMAN:  That's cool.  Let's call the
judge.

       MR. ALTMAN:  You want to stop?  Terminating
the depo is suspended.  I'll file a motion.  That's
fine.  Is that what you want to do?

       MR. ANCHILL:  Well, we'll hold up on the
deposition --

       MR. ALTMAN:  No, you won't --

       MR. ANCHILL:  It's a perfectly appropriate
question.

       MR. ALTMAN:  It is not a perfectly
appropriate question.  So, no, if you want to pursue
that we're going to call the judge and I will move for
a protective order.

       MR. ANCHILL:  We're not going to do that
now.  We're going to move on.  And we'll deal with it

later.

         MR. ALTMAN:  That's fine.

The Army did not initially insist on responses to the above questions because they were mostly background questions and not central to the claims or defenses in the case. However, after repeatedly and inappropriately directing his client not to answer deposition questions, Plaintiff's counsel indicated that he wanted to terminate the deposition to seek a protective order.

The events immediately preceding the termination of the deposition are as follows.

Plaintiff admitted in response to questioning that he viewed pornographic videos in the workplace from his laptop computer in his bunkroom, which is separated from other bunkrooms by only a curtain:

> Q.  Did you leave a pornographic website up on your
> computer screen in your bunkroom and then leave the
> bunkroom?
> A.  After responding to a call, yeah.
> Q.  Why did you do that?
> A.  Didn't do it on purpose.  I had to respond to a
> call.

The Army has a factual basis to believe that other employees heard the noises and/or actually saw Plaintiff watching pornographic videos. Potter is one of the employees who noticed pornography on Plaintiff's computer:

```
Q.   And to you [sic, your] knowledge Potter saw it?
A.   Yeah, obviously, yeah.
```

After concluding this line of questioning, defense counsel moved to a related topic. Defense counsel asked Plaintiff whether he follows websites featuring Brazilian women. Plaintiff's counsel instructed his client not to answer and terminated the deposition:

```
Q.   Do you follow websites featuring Brazilian women?
A.   I don't remember.  I don't think so, no.  I don't
know.  I don't remember.
Q.   You don't know whether you follow websites
featuring Brazilian women?
     MR. ALTMAN:  I'm going to object.  I'm going
to object.  This is absolutely harassment.  There is
nothing -- this is harassment.  If you want to persist
in this we'll call the judge.
     MR. ANCHILL:  You can answer.
     MR. ALTMAN:  I'm instructing him not to
answer.
     MR. ANCHILL:  He's --
     MR. ALTMAN:  I will move for a protective
```

order.  If you want us to terminate we -- listen, he's
not going to answer that question.  I will move for a
protective order or you can move on.

        MR. ANCHILL:  I don't -- first of all, I
don't appreciate you interrupting.

        MR. ALTMAN:  I'm sorry.

        MR. ANCHILL:  Don't interrupt me.

        MR. ALTMAN:  No, I can absolutely move for a
protective order.

        MR. ANCHILL:  You can.  Please don't
interrupt me every time I speak.

        MR. ALTMAN:  That's fine.  Deposition is
over.  We're done.  Deposition is over.  I'll file a
motion -- or you can just move on.  Your choice.

        MR. ANCHILL:  He has brought a sex
discrimination --

        MR. ALTMAN:  It doesn't matter.

        MR. ANCHILL:  Mr. Altman, what is -- let me
finish talking.

        MR. ALTMAN:  That's fine.

        MR. ANCHILL:  Just let me finish.

        MR. ALTMAN:  You're not going to convince me
that he's going to answer this question
(indiscernible) --

        MR. ANCHILL:  But I want to place this on
the record.

        MR. ALTMAN:  You can put it on the record

all you want.

        MR. ANCHILL:  But I can't because you keep interrupting me.

        MR. ALTMAN:  I'm filing -- I'm filing a motion to move for a protective order.  So.

        MR. ANCHILL:  That's fine.  Okay.

        MR. ALTMAN:  Let's go.

        MR. ANCHILL:  Can I just place my statement on the record?

        MR. ALTMAN:  What -- there's no statement to put.  Let's go.

        MR. ANCHILL:  Your client has brought a sex discrimination claim.

        MR. ALTMAN:  Okay, but that has nothing to do with whether he goes on Brazilian websites.

        MR. ANCHILL:  Yes, it does, because --

        MR. ALTMAN:  It doesn't.  We're done.

        It's your choice.  You can either move on or I will move -- file to terminate and we'll file for a protective order.  Make the call.  I'm not -- he's not going to discuss it.  It's your call.

        MR. ANCHILL:  Okay, let's go ahead and move for a protective order.

        MR. ALTMAN:  That's fine.  No problem.

The Army has a factual basis to believe that Plaintiff openly discussed in the workplace the women that he viewed on such websites using sexually explicit language that surpasses the alleged language giving rise to this lawsuit.

The Army now brings this motion seeking an order permitting Plaintiff's deposition to resume where it left off at a date and time that is mutually convenient to the parties and with instructions that questions must be answered unless they fall within the scope of Rule 30(c)(2). The Army also seeks an order permitting the Army a total of eight hours for Plaintiff's deposition – i.e., one hour more than the presumptive seven-hour time limit imposed by Federal Rule of Civil Procedure 30(d)(1).

**ARGUMENT**

**A.     The Court should compel Plaintiff to respond to questions unless they fall within the scope of Rule 30(c)(2).**

**1.     Governing legal standards.**

"Once a deponent has appeared for a deposition, Federal Rule of Civil Procedure 37(a)(3)(B)(i) governs a motion to compel a deponent – whether a party or a non-party – to answer a question." *MetroPCS v. Thomas*, 327 F.R.D. 600, 612 (N.D. Tex. 2018). Rule 37(a)(3)(B)(i) provides, in pertinent part: "A party seeking discovery may move for an order compelling an answer . . . if . . . a deponent fails to answer a question asked under Rule 30."

11

Rule 30 governs depositions. Rule 30(c)(2) addresses the limited circumstances under which counsel may instruct a witness not to respond to a deposition question: "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." "[A] deponent may refuse to answer a question during a deposition only for one of the three listed reasons." *Ferrell v. Sparkman*, No. 4:06CV7, 2007 WL 172516, at *2 (E.D. Tenn. Jan. 18, 2007). The first two reasons – to preserve a privilege and to enforce a limitation ordered by the Court – are inapplicable here. This leaves only the third avenue – to present a motion under Rule 30(d)(3).

Rule 30(d)(3) addresses motions to terminate or limit a deposition and provides that such motions may only be brought under limited circumstances:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.

Fed. R. Civ. P. 30(d)(3)(A). Notably, "it is not the embarrassment or annoyance which may be caused by unfavorable answers that is the criteria of 30(d)(3). It is the 'manner' in which the interrogation is conducted that is grounds for refusing to proceed, followed by the required motion to seek relief." *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 619 (D. Nev. 1998).

"As a general rule, instructions not to answer questions at a deposition are improper." *Wilson v. Martin Cnty. Hosp. Dist.*, 149 F.R.D. 553, 555 (W.D. Tex. 1993). Such instructions are generally "indefensible and utterly at variance with the discovery provisions of the Federal Rules of Civil Procedure." *Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977). "Directions to a deponent not to answer a question can be even more disruptive than objections." Fed. R. Civ. P. 30(d) 1993 Advisory Committee's Note.

## 2. Discussion

There is nothing suggesting bad faith by defense counsel or that the manner of interrogation was annoying, embarrassing, or oppressive, much less "unreasonably" so. "[F]ew depositions, particularly those where the deponent is a party, are not to some extent annoying, embarrassing or oppressive, at least in the subjective estimation of the individual being examined." *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 646 (N.D. Ind. 1991).

Counsel's instruction preventing Plaintiff from answering the question about whether he follows websites featuring Brazilian women was improper. The question was asked because Plaintiff is asserting a claim that he is the victim of sexual harassment in the workplace, and the Army is exploring a theory that Plaintiff himself openly engaged in conduct of a sexual nature at work. For example, Plaintiff has already admitted to watching pornographic videos at work and the Army has a

factual basis to believe that other employees observed Plaintiff doing this. The Army also has a factual basis to believe that Plaintiff openly discussed with his coworkers, in the workplace, women he viewed on the internet, and specifically, on websites featuring Brazilian women, using explicit language. That is why the question was asked. Had Plaintiff been permitted to answer the question and denied following such websites, a jury would be entitled to consider potential testimony from others to the contrary, which is relevant to credibility. Had Plaintiff been permitted to answer the question and admitted to following such websites, a series of questions would have likely followed asking Plaintiff if he discussed that type of website with his coworkers and what he said.

Case law is clear that relevancy objections to deposition questions have "no place in discovery unless the questioning enters the realm of harassment or embarrassment." *Wright v. Firestone Tire & Rubber Co.*, 93 F.R.D. 491, 493 (W.D. Ky. 1982). Put differently, "[t]here is simply no basis in the Federal Rules of Civil Procedure for Plaintiff to decline to answer questions related to a topic he deems irrelevant." *Ferrell*, 2007 WL 172516, at *2. The same is true about questions that are objected to as "argumentative." *See JSR Micro, Inc. v. QBE Ins. Corp.*, No. C-09-03044 PJH (EDL), 2010 WL 1338152, at *11 (N.D. Cal. Apr. 5, 2010) ("whether a question is argumentative is not a proper basis on which to instruct a witness not to answer").

**B.     The Court should permit the deposition of Plaintiff to proceed where it left off and permit one additional hour of deposition time.**

Rule 30(d)(3)(B) provides that a terminated deposition "may be resumed only by order of the court where the action is pending." Therefore, the Army seeks leave to resume Plaintiff's deposition where it left off.

The Army also seeks one additional hour over the presumptive seven-hour time limit of Rule 30(d)(1). "The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order." Fed. R. Civ. P. 30 2000 Advisory Committee's Note. Due to the fact-intensive nature of the case, the Army anticipated, even before the deposition had begun, that it would need close to the full seven hours for Plaintiff's deposition. The objections of Plaintiff's counsel and refusal to answer questions, along with the resulting discussions, impeded the progress of the deposition and consumed time that the Army was entitled to use for questioning the witness. As such, the Army asks the Court to permit time back. *See Cunningham v. Wells Fargo N.A.*, No. 3:19-CV-00528-FDW, 2022 WL 1177166, at *1 (W.D.N.C. Apr. 20, 2022) (permitting additional time because "Plaintiff impeded, delayed, and frustrated her first examination").

## CONCLUSION

For the reasons stated, the Army asks the Court to permit Plaintiff's deposition to resume at a date and time that is mutually convenient to the parties and with

instructions that questions, including the ones that Plaintiff's counsel already instructed his client not to answer, must be answered unless they fall within the scope of Rule 30(c)(2). In addition, the Army seeks one additional hour beyond the presumptive seven-hour time limit to conclude Plaintiff's deposition

Respectfully submitted,

DAWN N. ISON
United States Attorney

*/s/ Benjamin A. Anchill*
Benjamin A. Anchill (P70968)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9566
Dated:  September 13, 2022          benjamin.anchill@usdoj.gov

16

**CERTIFICATION OF SERVICE**

I certify that on September 13, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the ECF participants in this case.

*s/Benjamin A. Anchill*
BENJAMIN A. ANCHILL
Assistant U.S. Attorney