# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| JOE DASILVA, JR.,<br>*Plaintiff,*<br><br>v.<br><br>CHRISTINE WORMUTH,<br>Secretary of the Army, MARTIN<br>POTTER, in his individual<br>capacity, and ARTHUR J.<br>YOUNG, JR., in his individual<br>capacity.<br><br>*Defendants.* | Case No: 2:20-cv-11358<br><br>Honorable Mark A. Goldsmith<br><br>Magistrate Judge Anthony P. Patti |

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff, JOE DASILVA, JR., by and through his

attorneys, Keith Altman and The Law Office of Keith Altman, and files his

Second Amended Complaint against the Defendants in this civil action, stating

unto this Court as follows:

**JURISDICTION AND VENUE**

1.  This is an action for damages against Defendants brought pursuant to

42 U.S.C. §§ 1983 and 1988, and the First, Fourth, and Fourteenth Amendments

to the United States Constitution, Title VII of the Civil Rights Act of 1964, and

the Elliott-Larsen Civil Rights Act.

2.  This Court has original jurisdiction over Plaintiff's claims presented

in this Complaint based upon the laws of the United States pursuant to 28 U.S.C.

§§ 1331, 1343, and 1367.

1

3. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest, costs, and attorney fees.

4. The unlawful actions alleged in this Complaint took place within the jurisdiction of the United States District Court for the Eastern District of Michigan.

5. Venue is appropriate in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) and based on the situs of the incident, which occurred in the City of Warren, County of Macomb, State of Michigan.

## STATEMENT OF FACTS

6. At all pertinent times, Plaintiff, JOE DASILVA, JR., was a United States citizen, domiciled in the State of Michigan, employed as a Firefighter/EMT by the U.S. Army at the Detroit Arsenal Fire Division.

7. At pertinent times, Martin Potter ("POTTER") was employed as Assistant Chief by the U.S. Army at the Detroit Arsenal Fire Division. Upon information and belief, POTTER has recently been promoted to Chief of the U.S. Army at the Detroit Arsenal Fire Division.

8. Christine Wormuth ("WORMUTH") is the Secretary of the U.S. Army.

9. At pertinent times, Arthur J. Young, Jr. ("YOUNG") was employed as the Director of Emergency Services of the U.S. Army Detroit Arsenal Fire Division.

10. For the duration of Plaintiff's employment at the Detroit Arsenal

2

Fire Division, POTTER was Plaintiff's immediate supervisor.

11.   For over three years, POTTER has periodically made unwanted sexual comments to Plaintiff, such as stating that Plaintiff should wear a bra, that Plaintiff has breast implants, or suggesting that they try the "pencil test." ("Pencil test" is a vulgar slang phrase, referring to placing a pencil underneath an individual's breast tissue to see if the tissue is large enough to hang over the pencil and weighs enough to keep the pencil lodged in place against the torso.)

12.   POTTER was routinely loud and rude to Plaintiff specifically, in addition to ignoring him and/or ostracizing him from the workplace community.

13.   Multiple coworkers have witnessed these statements, and Plaintiff has not witnessed POTTER make similar statements to anyone but Plaintiff.

14.   On or about January 25, 2017, Plaintiff requested to attend a training course in pursuit of his own professional development, but his request was denied. POTTER has since denied similar requests.

15.   On or about February 2, 2017, POTTER completed Plaintiff's performance evaluation, scoring Plaintiff lower based on specific metrics than other employees who had identical metrics.

16.   On or about February 6, 2017, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint.

17. YOUNG had personal knowledge of Plaintiff's EEOC complaint.

18. YOUNG failed to notify POTTER that a Complaint had been filed against POTTER, while simultaneously assuring Plaintiff that YOUNG had spoken with POTTER and the behavior by POTTER would not occur again.

19. YOUNG failed to advance any punishment against POTTER.

20. Following Plaintiff's EEOC complaint, POTTER continued to make unwanted sexual comments to Plaintiff with increasing frequency.

21. On or about April 16, 2018, Plaintiff filed a SHARP complaint and a 15-6 complaint, both of which are internal Army complaints pertaining to sexual harassment.

22. The Army's internal investigators concluded that POTTER's actions rose to the level of sexual harassment.

23. On March 20, 2020, Administrative Judge Deborah M. Barno of the EEOC Detroit Field Office granted Former Defendant ESPER's motion for summary judgment, finding against Plaintiff and dismissing his EEOC claim.

24. Judge Barno erroneously concluded that there had only been two comments made by POTTER against Plaintiff. On the contrary, unwelcome comments have been frequent, pervasive, and remained ongoing.

25. Following the mishandling of Plaintiff's EEOC Complaint,

4

YOUNG allowed POTTER to sit on the promotions board for Plaintiff.

26. Plaintiff was subsequently passed up for promotion of which he was qualified.

27. Due to the conduct of Defendants, Plaintiff, JOE DASILVA, JR., suffered the following injuries and damages:

    a. Severe emotional distress from the time the sexual harassment began to the present, including, but not limited to: the emotional distress of being subjected to unwanted sexual harassment and the emotional distress of knowing that POTTER continued to negatively influence his career prospects;

    b. Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

    c. Fright, shock, indignity, humiliation, outrage, indignity, and embarrassment of being wrongfully subjected to this sexual harassment;

    d. Loss of employment opportunity, past income, and future earning capacity;

    e. Other damages which may be revealed through discovery.

## COUNT I

## CONSTITUTIONAL VIOLATION BY DEFENDANT POTTER (FIRST AMENDMENT – RETALIATION FOR PROTECTED CONDUCT)

28. Plaintiff incorporates herein all the prior allegations.

29. Under 42 U.S.C. § 1983, Plaintiff is protected from violations of the rights guaranteed to him by the Constitution and laws of the United States.

30. By filing an EEOC complaint against Defendant POTTER for sexual harassment, Plaintiff engaged in protected conduct. His Constitutionally guaranteed right to freedom of speech protects his ability to

file such a complaint.

31.    While this conduct would be protected even if the allegations had been baseless, the protection guaranteed to this conduct is further bolstered by the fact that both the Army and EEOC investigations independently concluded that Defendant Potter had, in fact, sexually harassed Plaintiff.

32.    As a result of this conclusion, the DEPARTMENT transferred POTTER to another position to protect Plaintiff from further harassment and retaliation.

33.    However, this transfer was insufficient to protect Plaintiff from Defendant POTTER.

34.    YOUNG allowed POTTER to sit on Plaintiff's promotion boards resulting in further harassment.

35.    In the years following Plaintiff's EEOC complaint, he has applied for multiple promotions and/or transfers, including applying for positions that would take him further away from Defendant POTTER.

36.    Despite his transfer, Defendant POTTER has remained in a position where he is directly involved in reviewing Plaintiff's applications.

37.    No special precautions have been taken to exclude Defendant POTTER from influencing decisions about Plaintiff's applications.

38.    YOUNG knowingly and intentionally allowed POTTER to influence Plaintiff's employment.

39.    Upon information and belief, Defendant POTTER has negatively

influence Plaintiff's applications, ultimately leading to every single application being denied.

40.    As a result, Plaintiff was been left with the choice between remaining in his current position, where he was forced to continue working with Defendant POTTER or face constructive discharge.

41.    Upon information and belief, Defendant POTTER has engaged in these actions as a means of retaliating against Plaintiff for his EEOC complaint and its negative impact on Defendant POTTER.

42.    Therefore, Defendant POTTER's actions constitute retaliation against Plaintiff for the protected conduct of engaging in free speech, in violation of the 1st Amendment to the Constitution and 42 U.S.C § 1983.

<u>COUNT II</u>

<u>VIOLATION OF TITLE VII BY DEPARTMENT<br>(SEXUAL HARASSMENT/GENDER STEREOTYPING)</u>

43.  Plaintiff incorporates herein all the prior allegations.

44.  Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits discrimination "because of sex."

45.  The "because of sex" language contained in Title VII has been interpreted to include discrimination based on gender stereotyping.

46.  In most cases, including the case at hand, gender stereotyping falls under the category of a hostile work environment for sexual harassment claims.

47.  By making derogatory comments toward Plaintiff, comparing features

of his body to those associated with women, POTTER discriminated against Plaintiff because of his sex, harassing him with comments implying the stereotype that men do not have bodies like Plaintiff's.

48.   By continually engaging in such gender stereotyping, POTTER created a hostile work environment for Plaintiff.

49.   These distinct but ongoing actions collectively constitute one unlawful employment action that cannot be said to occur on any particular day.

50.   Therefore, by repeatedly engaging in gender stereotyping, POTTER sexually harassed Plaintiff by creating a hostile work environment, in violation of Title VII.

51.   Title VII requires the exhaustion of administrative remedies prior to a claim being filed in a judicial forum.

52.   By not only filing an EEOC claim, but also completing the internal Army grievance process, Plaintiff has exhausted his administrative remedies without receiving adequate protection.

53.   Because of POTTER and YOUNG's positions, the DEPARTMENT is liable for their acts through the doctrine of respondeat superior.

54.   The above-described actions by POTTER and YOUNG constitute materially adverse employment actions against Plaintiff, along with other actions which may be revealed through discovery.

## COUNT III

## VIOLATION OF TITLE VII BY DEPARTMENT

8

## (RETALIATION FOR PROTECTED CONDUCT)

55.     Plaintiff incorporates herein all the prior allegations.

56.     Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits retaliation against an employee for engaging in protected conduct.

57.     Plaintiff filed an EEOC complaint against POTTER for sexual harassment. Also, Plaintiff filed a SHARP complaint and a 15-6 complaint, both of which are internal Army complaints pertaining to sexual harassment.

58.     By filing an EEOC complaint against POTTER for sexual harassment, and also filing a SHARP complaint and a 15-6 complaint, Plaintiff engaged in protected conduct.

59.     While this conduct would be protected even if the allegations had been baseless, the protection guaranteed to this conduct is further bolstered by the fact that both the Army and EEOC investigations independently concluded that POTTER had, in fact, sexually harassed Plaintiff.

60.     As a result of this conclusion, the DEPARTMENT transferred POTTER to another position to protect Plaintiff from further harassment and retaliation.

61.     However, this transfer was insufficient to protect Plaintiff from POTTER.

62.     YOUNG failed to inform POTTER of the EEOC Complaint while simultaneously reassuring Plaintiff the conduct would not occur again.

63.     YOUNG failed to advance discipline on POTTER for his actions.

64. In the years following Plaintiff's EEOC complaint, he has applied for multiple promotions and/or transfers, including applying for positions that would take him further away from POTTER.

65. Despite POTTER's transfer, he has remained in a position from which he is directly involved in reviewing Plaintiff's applications.

66. YOUNG continued to allow POTTER to sit on Plaintiff's promotions board.

67. No special precautions have been taken to exclude POTTER from influencing decisions about Plaintiff's applications.

68. Further, it is likely that YOUNG maintained POTTER on Plaintiff's promotions board maliciously.

69. Upon information and belief, POTTER has negatively influenced Plaintiff's applications, ultimately leading to every single application being denied.

70. As a result, Plaintiff has been left with the choice between remaining in his current position, where he is forced to continue working with POTTER or face constructive discharge.

71. Upon information and belief, POTTER has engaged in these actions as a means of retaliating against Plaintiff for his EEOC and internal Army complaints and their negative impact on POTTER.

72. The foregoing actions by POTTER constitute materially adverse employment actions against Plaintiff, along with other actions which may be

revealed through discovery.

73. Therefore, POTTER'S actions constitute retaliation against Plaintiff because he has opposed practices made unlawful by 42 U.S.C.S. § 2000e et seq. 42 U.S.C.S. § 2000e-3(a), to wit: POTTER sexual harassment of Plaintiff.

## COUNT IV

## VIOLATIONS OF ELLIOTT-LARSEN CIVIL RIGHTS ACT
### (SEX DISCRIMINATION; WEIGHT DISCRIMINATION)
### (Against All Defendants)

74. Plaintiff incorporates herein all the prior allegations.

75. Under the state law of Michigan, the Elliott-Larsen Civil Rights Act ("ELCRA") provides citizens of the State of Michigan with all of the protections against sex discrimination provided by the Constitution of the United States and Title VII of the Civil Rights Act of 1964.

76. Accordingly, the allegations in Count II above apply equally under ELCRA, and Plaintiff hereby realleges Paragraphs 37-45 and incorporates them as if fully set out herein.

77. In addition, the ELCRA goes beyond federal protections and guarantees protection from discrimination based on weight.

78. POTTER's ongoing comments toward Plaintiff made reference to his weight. The comments implied that Plaintiff is overweight to the point that his body no longer reflects that of a man. These comments were frequent, unwelcome, and substantially interfered with his employment so as to create an

11

intimidating, hostile, or offensive work environment.

79.   By making these comments, POTTER not only engaged in sex discrimination against Plaintiff, as set forth hereinabove, but also in weight discrimination within the meaning of the ELCRA.

80.   Therefore, POTTER has violated Plaintiff's rights as guaranteed by the ELCRA, discriminating against Plaintiff based on both his sex and his weight.

81.   POTTER is individually liable as a "person" who has violated the prohibitions of ELCRA.

82.   POTTER was at all relevant times an "Agent" of the DEPARTMENT, within the meaning of ELCRA. Accordingly, the DEPARTMENT and POTTER, in his official capacity as Assistant Chief of U.S. Army Detroit Arsenal Fire Division, are liable for the foregoing acts and omissions of POTTER under the terms of  ELCRA.

83.   POTTER's comments toward Plaintiff, referencing his weight and implying that Plaintiff is overweight to the point that his body no longer reflects that of a man, have been regular and ongoing for years and therefore shows a pattern and practice and, as such, they constitute intentional infliction of emotional distress.

## COUNT V

## VIOLATIONS OF ELLIOTT-LARSEN CIVIL RIGHTS ACT
### (RETALIATION)
### (Against All Defendants)

84.   Plaintiff incorporates herein all the prior allegations.

85.    Under the state law of Michigan, the Elliott-Larsen Civil Rights Act ("ELCRA") provides citizens of the State of Michigan with all of the protections against retaliation provided by the Constitution of the United States and Title VII of the Civil Rights Act of 1964.

86.    The allegations set out in Count I hereinabove state a prima facie case for retaliation under ELCRA. Specifically,

A.    That Plaintiff was engaging in protected acts;

B.    That this was known by the Defendants;

C.    That the Defendants took employment actions adverse to the Plaintiff; and

D.    that there was a causal connection between the protected activity and the adverse employment actions.

87.    Among other factors, the causal relationship between the protected activity and the adverse employment action is established by:

A.    The temporal relationship between Plaintiff's having engaged in a protected activity and the adverse employment actions; and

B.    The fact that the DEPARTMENT's internal investigators concluded that POTTER's actions rose to the level of sexual harassment; and,

C.    The DEPARTMENT's transfer of POTTER after the DEPARTMENT's internal investigators concluded that his actions rose to the level of sexual harassment of the Plaintiff.

## COUNT VI

13

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## BY POTTER

88.   Plaintiff incorporates herein all the prior allegations.

89.   POTTER owed a duty to Plaintiff to not subject him to sexual harassment in his employment or to retaliation.

90.   POTTER breached his duty to Plaintiff by subjecting him to sexual harassment and to retaliation, as described hereinabove.

91.   POTTER's conduct was extreme and outrageous.

92.   POTTER's actions proximately caused Plaintiff emotional injury.

93.   Plaintiff's injuries included serious and severe emotional anguish.

## COUNT VII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## BY POTTER

94.   Plaintiff incorporates herein all the prior allegations.

95.   POTTER's actions were intended to cause Plaintiff emotional distress, or, in the alternative, POTTER knew or should have known that his actions would result in Plaintiff's serious emotional distress.

96.   POTTER's conduct was extreme and outrageous.

97.   POTTER's actions proximately caused Plaintiff's emotional injury,

98.   Plaintiff's injuries included serious and severe emotional anguish.

## COUNT VIII

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## BY YOUNG

89.     Plaintiff incorporates herein all the prior allegations.

90.     YOUNG owed a duty to Plaintiff to not subject him to sexual harassment in his employment or to retaliation.

91.     YOUNG breached his duty to Plaintiff by subjecting him to sexual harassment and to retaliation, as described hereinabove.

92.     YOUNG's conduct was extreme and outrageous.

93.     YOUNG's actions proximately caused Plaintiff emotional injury.

94.     Plaintiff's injuries included serious and severe emotional anguish.

## COUNT IX

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY YOUNG

95.     Plaintiff incorporates herein all the prior allegations.

96.     YOUNG's actions were intended to cause Plaintiff emotional distress, or, in the alternative, YOUNG knew or should have known that his actions would result in Plaintiff's serious emotional distress.

97.     YOUNG's conduct was extreme and outrageous.

98.     YOUNG's actions proximately caused Plaintiff's emotional injury,

99.     Plaintiff's injuries included serious and severe emotional anguish.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JOE DASILVA, JR., demands judgment and prays for the following relief, jointly and severally, against all Defendants:

A. Full and fair compensatory damages in an amount to be determined by a jury;

B. Injunctive relief against DEPARTMENT requiring it to take all necessary steps to ensure that POTTER cease engaging in further discriminatory conduct towards Plaintiff;

C. Punitive damages in an amount to be determined by a jury.

D. Reasonable attorney's fees and costs of this action; and

E. Any such other relief as appears just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated: December 6, 2022                    Respectfully submitted,

Keith Altman, Esq.
Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
Tel: (987) 987-8929
*keithaltman@kaltmanlaw.com*

*Attorneys for Plaintiff*