UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE DASILVA, JR.,

     Plaintiff,                      Civil No. 20-11358

v.                               Honorable Mark A. Goldsmith

CHRISTINE WORMUTH,         Magistrate Judge Anthony P. Patti
Secretary of the Army, and MARTIN
POTTER, in his individual capacity,

     Defendants.

---

## MOTION FOR SUMMARY JUDGMENT

---

Defendant Christine Wormuth, by and through her attorneys, Dawn N. Ison, United States Attorney, and Benjamin A. Anchill, Assistant United States Attorney, moves for entry of summary judgment pursuant to Federal Rule of Civil Procedure 56(a). The grounds for this motion are set forth with more specificity in the attached brief.

The undersigned counsel certifies that counsel communicated in writing with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief. *See* E.D. Mich. LR 7.1(a). Opposing counsel thereafter expressly denied concurrence.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*/s/ Benjamin A. Anchill*
Benjamin A. Anchill (P70968)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9566
benjamin.anchill@usdoj.gov

Dated:  December 19, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE DASILVA, JR.,

      Plaintiff,                        Civil No. 20-11358

v.                                    Honorable Mark A. Goldsmith

CHRISTINE WORMUTH,          Magistrate Judge Anthony P. Patti
Secretary of the Army, and MARTIN
POTTER, in his individual capacity,

      Defendants.

_____

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

_____

<u>**Issues Presented**</u>

    I.    Should the Court grant summary judgment in Defendant's favor on Plaintiff's hostile work environment claim where the alleged harassment was not based on sex, not objectively severe or pervasive, and Plaintiff was a participant in the environment about which he complains?

    II.   Should the Court grant summary judgment in Defendant's favor on Plaintiff's retaliation claim where Plaintiff cannot satisfy the required element of the claim?

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION .................................................................................1

STATEMENT OF MATERIAL FACTS .................................................1

  A. Plaintiff's job at the Detroit Arsenal Fire Division..............................1

  B. The general work environment at the Detroit Arsenal........................2

  C. Plaintiff's relationship with Martin Potter. ......................................2

  D. Plaintiff and Potter participated in weight-loss competitions. ..........4

  E. Plaintiff's participation in inappropriate workplace behavior. ..........4

  F. Plaintiff's 2017 EEO complaint. ....................................................6

  G. Plaintiff's sexual harassment SHARP complaint...............................7

  H. Plaintiff's 2018 EEO complaint. ....................................................9

  I. Plaintiff is not selected for a promotion to caption.........................10

  J. Director Young declines to write Plaintiff a letter of recommendation. .........11

  K. Plaintiff's performance evaluation..................................................12

  L. Plaintiff files this lawsuit. .............................................................12

LEGAL ANALYSIS...........................................................................14

  A. Summary judgment is warranted on Plaintiff's hostile work environment claim based on sexual harassment and gender stereotyping. ...........................14

    1. Law .........................................................................................14

    2. The alleged harassment was not unwelcome. .............................15

    3. The alleged harassment was not based on sex. ...........................17

    4. The alleged harassment was not objectively severe or pervasive..............18

  B. Summary judgment is warranted on Plaintiff's retaliation claim. ...................21

    1. Law .........................................................................................21

    2. Discussion................................................................................21

      a. Potter did not retaliate. ........................................................21

      b. Young did not retaliate..........................................................24

CONCLUSION ............................................................................................25

CERTIFICATION OF SERVICE ...............................................................27

LOCAL RULE CERTIFICATION .............................................................27

# TABLE OF AUTHORITIES

## Cases

*Balletti v. Sun-Sentinel Co.*, 909 F. Supp. 1539 (S.D. Fla. 1995) ...........................16

*Baugham v. Battered Women, Inc.*, 211 F. App'x 432 (6th Cir. 2006) .................15

*Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000) ..................... 17, 19

*Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ........................24

*Clark v. United Parcel Serv., Inc.*, 400 F.3d 341 (6th Cir. 2005) ................... 19, 24

*Egbert v. Boule*, 142 S. Ct. 1793 (2022) ...................................................................13

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ..................................... 19, 20

*Gribcheck v. Runyon*, 245 F.3d 547 (6th Cir. 2001) ................................................21

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).................................. 15, 17, 18, 19

*Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008) ...........................19

*Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir. 1999) ........................................18

*Khalaf v. Ford Motor Co.*, 973 F.3d 469 (6th Cir. 2020) ........................................19

*Mackie v. U.S. Mfg., Inc.*, No. C03-85-LRR, 2005 WL 1532545
    (N.D. Iowa June 29, 2005) .................................................................................25

*Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784 (6th Cir. 2000) .........................19

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ......... 14, 15, 16, 17

*Perkins v. Harvey*, 368 F. App'x 640 (6th Cir. 2010) .............................................24

*Pratt v. Brown Mach. Co.*, 855 F.2d 1225 (6th Cir. 1988).....................................14

*Robinson v. Renown Reginal Medical Center*, No. 316CV00372MMDWGC,
    2018 WL 1463382 (D. Nev. Mar. 23, 2018) ......................................................25

*Simmons v. Ohio Rehab. Servs. Comm'n*, No. 13-4496, 2015 WL 13926948
    (6th Cir. Jan. 27, 2015) ......................................................................................22

*Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298 (6th Cir. 2016) ..............................17

*Souther v. Posen Const., Inc.*, 523 F. App'x 352 (6th Cir. 2013) ...........................16

*Taylor v. Geithner*, 703 F.3d 328 (6th Cir. 2013)................................................ 24, 25

*Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757 (6th Cir. 2006)...................................14

*Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291 (6th Cir. 2015) ...... 15, 18

*Williams v. Gen. Motors Corp.*, 187 F.3d 553 (6th Cir. 1999)......................... 14, 17

**Statutes**

42 U.S.C. § 2000e–2(a)(1) .......................................................................................14

42 U.S.C. § 2000e-3(a) ............................................................................................21

## INTRODUCTION

"Title VII imposes no general civility code." *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013). This employment action cannot go forward because it tries to do just that.

This suit is brought by a male firefighter who principally claims that his male supervisor, Martin Potter, sexually harassed him at the all-male firehouse by suggesting that he wear a bra and by making other childish comments. Plaintiff cannot satisfy the elements of his claims, including the requirement that the harassment be objectively "severe or pervasive." Plaintiff has also admitted that at least some of the comments may have been made in the context of a weight loss challenge and in response to Plaintiff first making fun of Potter. Plaintiff was an active participant in the environment about which he complains. The Court should grant summary judgment.

## STATEMENT OF MATERIAL FACTS

**A.   Plaintiff's job at the Detroit Arsenal Fire Division.**

1.      In 2007, Plaintiff began working for the Army as a civilian Firefighter/EMT at the Detroit Arsenal. Exhibit 1 – Pl. Dep. at 60:15-20.

2.      In July 2022, Plaintiff took disability retirement due to health issues from long COVID-19. *Id.* at 61:2-8, 64:1-5, 65:8-66:1.

3.      Firefighters report to captains, who report to assistant chiefs. Assistant chiefs report to chiefs, who report to the director. *Id.* at 61:12-16.

4.      Martin Potter was an assistant chief. *Id.* at 360:1-21. Sean Edwards was a chief. *Id.* at 300:15-16. Arthur Young was the director. *Id.* at 12:10-14, 63:4-8.

**B.   The general work environment at the Detroit Arsenal.**

5.      The Detroit Arsenal workplace at issue here is all male. *Id*. at 88:24-89:9, 274:3-11. Everyone considers each other "like family or brothers," a "second family." *Id.* at 90:10-12, 94:5-6.

6.      Firefighters work two- or three-day shifts. *Id.* at 91:11-92:4. They eat, cook, play games, and watch television and movies together. *Id.* at 92:5-14, 93:2-10.

7.      Firefighters sleep in bunkrooms. *Id.* at 92:18-20. The bunkrooms are "just cubicles with a curtain, so, you really have no privacy." *Id.* at 93:14-94:1.

**C.   Plaintiff's relationship with Martin Potter.**

8.      Plaintiff met Chief Potter in 2000. *Id*. at 117:13-16. Plaintiff claims his relationship with Potter was "never good." *Id.* at 120:9-12. For example, in or around 2001, Plaintiff claims that Potter "degraded" him and treated him "like shit." *Id.* at 124:18-125:15-126:5.

9.      According to Plaintiff, Potter made statements to Plaintiff, "on and off" beginning in 2008, that he should "wear a bra." *Id.* at 142:2-7, 143:23-144:18. Potter attests that this only occurred once. Exhibit 2 – Potter Decl. ¶ 2.

Plaintiff claims that Potter said, "Hey DaSilva, [bet] . . . you can hold . . . this pencil under with your breasts." Pl. Dep. at 144:14-17.

10.     In 2018, Potter said to Plaintiff, "hey DaSilva, tell us what it's like to get a breast implant. You had it, how much does it cost?" *Id.* at 162:4-163:6.

11.     Plaintiff did not tell Potter to stop making these statements or tell Potter that the statements were unwelcome. *Id.* at 147:9-17.

12.     Potter's statements about wearing a bra, the single statement about holding a pencil under Plaintiff's breast, and the single statement about breast implants, are the only acts comprising Plaintiff's harassment claim. *Id*. at 164:6-10.

13.     Plaintiff does not know what motivated Potter to make these statements. *Id*. at 157:11-15. Plaintiff does not know whether Potter was joking. *Id.* at 157:16-25. Nor does Plaintiff know if Potter was motivated by sexual desire/attraction. *Id.* at 158:10-13, 165:2-3. Plaintiff does not know if Potter was motivated by hostility toward all males. *Id*. at 165:4-6. However, Plaintiff believes that the firefighters who worked on Potter's shift "loved him [Potter]," while the firefighters who did not work with him "didn't like him." *Id.* at 85:3-7.

14.     Plaintiff admits that Potter's comments did not prevent Plaintiff from performing his job duties as a firefighter. *Id.* at 271:19-272:8.

15.     Potter never touched Plaintiff in a way that Plaintiff found offensive. *Id.* at 279:4-6. The alleged harassment was verbal. *Id.* at 156:11-25.

**D.   Plaintiff and Potter participated in weight-loss competitions.**

16.     The firefighters at this workplace playfully made fun of each other in a good-natured way. *Id*. at 96:2-15. Plaintiff testified that he probably made fun of other firefighters. *Id.* at 97:24-98:3.

17.     Firefighters participated in weight-loss competitions called "biggest loser competitions." *Id.* at 115:4-14. Plaintiff and Potter participated in these challenges. *Id.* at 390:1-6. There was playful and good-natured teasing associated with these competitions. *Id.* at 117:3-9.

18.     Plaintiff "might have" made fun of Potter's stomach during biggest loser competitions. *Id.* at 195:20-196:10. Plaintiff does not know whether Plaintiff's comment about Potter's stomach triggered Potter to respond by telling Plaintiff that he should wear a bra. *Id*. Potter confirmed that Plaintiff made fun of his stomach, prompting Potter to joke about Plaintiff's chest. Potter Decl. ¶ 2.

**E.   Plaintiff's participation in inappropriate workplace behavior.**

19.     There is a lot of swearing among firefighters in everyday conversation. "Pretty much everybody does it," including Plaintiff. Pl. Dep. at 94:7-16.

20.     Plaintiff swore and used vulgar language at work. *Id.* at 107:6-108:13. For example, Plaintiff's coworkers attest that he would call coworkers "fuck fuck," and greet them "what's up fucker?" or "what's up, douchebag?" Exhibit 3 – Biehl Decl. ¶ 5; Exhibit 4 – Fern Decl. ¶ 6; Exhibit 5 – Todd Decl. ¶ 2.

21.     Plaintiff made vulgar comments about women. For example, Plaintiff asked a coworker, Shane Biehl, whose wife is Filipino, whether it is true that "Asian girls" have "vaginas slanted sideways." Biehl Decl. ¶ 4. Plaintiff did not recall this. Pl. Dep. at 294:20-22.

22.     Lesley Tillman, an African American fire chief, attested that Plaintiff greeted him on one occasion saying, "what's up," followed by the N-word. Tillman Decl. ¶¶ 3-4. Plaintiff does not remember. Pl. Dep. at 248:8-18, 249:3-5.

23.     Plaintiff "might have once or twice" used the term "fat fuck." Pl. Dep. at 285:22-286:11. A coworker attested that Plaintiff referred to Firefighter Brian Furman, who is a larger employee, as a "fat fuck." Fern Decl. ¶ 4. Plaintiff did not remember whether he said this. Pl. Dep. at 286:3-6. A coworker attests that Plaintiff used the term "pretty often." Todd Decl. ¶ 5.

24.     Plaintiff received an informal memo regarding unwelcome conduct after he "unwelcomingly reached out" and "rubbed" the pregnant stomach of a female tenant of the Detroit Arsenal. Exhibit 7 – 9/1/15 Memo; Biehl Decl. ¶ 6; Exhibit 8 – Bramer Decl. ¶ 2. Although Plaintiff signed the memo, he denied at his deposition that it happened. Pl. Dep. at 276:1-277:4.

25.     Plaintiff received a written warning for making derogatory statements about management, including calling them "snakes" and "fucking dumb asses." Exhibit 9 – 3/7/17 Memo; Pl. Dep. at 245:19-246:7.

26.     Plaintiff received a warning after Potter, while walking past Plaintiff's bunkroom, discovered pornography on Plaintiff's laptop. Pl. Dep. at 249:6-22, 252:24-253:11; Potter Decl. ¶ 6. Plaintiff's coworkers have also observed Plaintiff watching pornography, and one heard the noises. Biehl Decl. ¶ 3; Todd Decl. ¶ 6.

27.     According to Inspector Fern, Plaintiff bragged about having "a big dick." After Fern expressed disbelief, Plaintiff exposed his penis within feet of Fern's face while he was resting in his bunkroom. Fern Decl. ¶ 5; Todd Decl. ¶ 7. Plaintiff denied this, Pl. Dep. at 290:17-291:3, 298:5-13, but is unaware of any motive for Fern to lie and gets along with him "real well." *Id.* at 70:1-4, 291:8-12.

## F.    Plaintiff's 2017 EEO complaint.

28.     In February 2017, Plaintiff filed an EEO pre-complaint with the Army.[1] Exhibit 10 – 2017 EEO Counselor's Report. The 2017 EEO complaint raised the following five allegations: (i) In February 2017, Potter rated Plaintiff a "2" on a performance evaluation instead of a "1"; (ii) In February 2017, Edwards made a rude comment to Plaintiff: "Do not touch my food, DaSilva," and "Thanks for the Hepatitis C, DaSilva"; (iii) In January 2017, Plaintiff was denied a training; (iv) In January 2017, Edwards stated to Plaintiff, "DaSilva I don't like you. I just have to

---

[1] Plaintiff at times stated that he filed this EEO complaint in 2016, but later realized that it was not filed until 2017. Pl. Dep. at 182:3-17. All references to a 2016 EEO complaint refer to the EEO complaint filed in 2017. *Id.*

work with you"; and (v) from "time-to-time," Potter told Plaintiff to "put on a bra" and "you ought to put on a 38B." *Id.*

29.     Plaintiff entered into a settlement agreement resolving the 2017 EEO complaint whereby Plaintiff agreed that he "waive[s] his right to pursue administrative or judicial action in any forum concerning the matters raised in this complaint and that they will not be the subject of future litigation." Exhibit 11 – Settlement Agreement; Pl. Dep. at 196:14-22.

30.     Potter was unaware of Plaintiff's 2017 EEO complaint until his deposition in this matter. Exhibit 12 – Potter Dep. at 7:17-8:15.

31.     The Court previously held in this case that "[a] settlement agreement extinguishes Title VII claims that are based upon events that occurred prior to the settlement agreement," and, "[a]s a result, in resolving Dasilva's Title VII hostile work environment claim, the Court cannot properly consider the acts that are subject to the 2017 settlement agreement." (ECF No. 50, PageID.313-314.)

**G.   Plaintiff's sexual harassment SHARP complaint.**

32.     As discussed, in April 2018, Potter asked Plaintiff about the cost of breast implants. Pl. Dep. at 203:15-18. Firefighters were watching the news at work. Before a commercial, a newscaster announced that the cost of breast implants would be discussed later. In response, as Plaintiff was walking toward Potter, Potter stated, "Joe, how much do breast implants cost"? Potter Dep. at 14:12-19.

33.    Plaintiff does not know whether Potter was joking when he made the comment. Pl. Dep. at 205:1-16. Potter confirmed that he was. Potter Decl. ¶ 3.

34.    Plaintiff "immediately" filed a complaint with SHARP, which stands for Sexual Harassment/Assault Response and Prevention). *Id.* at 162:3-163:6.

35.    Plaintiff had no contact with Potter after he filed the SHARP complaint because Potter was moved to a different shift. *Id.* at 207:17-208:10.

36.    After Plaintiff filed the SHARP complaint, the harassment from Potter stopped "forever." *Id*. at 208:11-22, 209:4-8, 218:23-219:3. This is when Potter first learned that Plaintiff was offended by his jokes. Potter Decl. ¶ 3.

37.    An investigation into Plaintiff's SHARP complaint was conducted by Robert Porter, Director of Human Resources, who interviewed Plaintiff and others. Pl. Dep. at 209:22-25, 212:25-213:2, 302:4-13.

38.    Director Porter found that "Potter did ask Fire Firefighter DaSilva about the cost of breast implants and it was perceived by Fire Fighter DaSilva to be sexual harassment," but that "I do not believe sexual harassment was the issue." Exhibit 13 – SHARP Investigation Results. Porter found that Plaintiff "has engaged in off color comments and engaged back in other similar conversations." *Id.* Porter found no evidence that Plaintiff has ever told Potter that his comments were unwelcome. *Id.* Plaintiff admitted that he never told Potter. Pl. Dep. at 147:9-17.

39.     Plaintiff believes that Porter did a "fair" job with the investigation. *Id.* at 213:3-5. He does not believe Porter discriminated against him. *Id.*

40.     After the investigation, the work atmosphere changed, and everyone was required to attend trainings, including SHARP training. *Id.* at 221:1-222:3; Potter Dep. at 50:22-51:2; Exhibit 14 – Young Dep. at 26:12-17, 27:19-28:8.

41.     Potter received a letter of counseling. Potter Dep. at 27:8-12; Exhibit 15 – 6/4/18 Counseling Letter. Potter did not receive his usual "outstanding" performance rating the next year and was given a lower rating due to the incident with Plaintiff. Potter Dep. at 49:16-50:20.

42.     Director Young was tasked with imposing disciplinary action against Potter in consultation with Management Employee Relations (MER). Young Dep. at 12:8-13, 15:15-22, 16:19-25, 17:16-25, 48:10-15. Young initially proposed a letter of reprimand, which is more severe than a letter of counseling, but was advised by MER that a letter of counseling would be appropriate and sufficient. *Id.* at 17:10-15, 22:1-15, 31:11-18. The letter of counseling "seemed to have been successful," deterred Porter from making additional comments, and Potter accepted responsibility. *Id.* at 18:18-19:1, 26:12-17, 27:11-14, 49:22-50:24, 51:15-17.

43.     After Plaintiff filed his SHARP complaint, Porter never again made an inappropriate comment to Plaintiff. Pl. Dep. at 208:11-22, 209:4-8, 218:23-219:3.

## H.  Plaintiff's 2018 EEO complaint.

44.     At the same time as he filed his SHARP complaint, Plaintiff filed a second EEO pre-complaint with the Army. Exhibit 16 – 2018 EEO Counselor's Report. Plaintiff alleged harassment based on sex and national origin (Brazilian) "when unwanted sexual nature comments were made by . . . Potter to include 'how much do breast implants cost' and remarking that you should be able to wear a 'B-cup bra.'" *Id.* at DEF-0743.

45.     On June 1, 2018, Plaintiff filed a formal complaint. Exhibit 17 – Formal Complaint. Plaintiff alleged discrimination based on race, sex, age, national origin, and religion. *Id.* at DEF-0738. Plaintiff claimed that on April 30, 2018, Potter "made several harassing comments . . . of an unwanted sexual nature such as 'how much do breast implants cost' and remarks that I should wear a 'B-cop [sic] bra." *Id.* Plaintiff also raised prior acts, including "that I should do the pencil test I bet you can hold a pencil until your those [sic] tits and it will not fall." *Id.*

46.     An ALJ granted summary judgment to the Army, as Plaintiff's allegations did not amount to a hostile environment. Exhibit 18 – ALJ Decision.

## I.     Plaintiff is not selected for a promotion to caption.

47.     In 2019, Plaintiff applied for a promotion to captain. Pl. Dep. at 168:21-169:4. Chief Potter, Assistant Chief Adam Todd, and Assistant Chief Lesley Tillman

were the scoring officials on Plaintiff's interview panel. Potter Dep. at 27:18-25, 31:3-4; Potter Decl. ¶ 7; Todd Decl. ¶ 8; Tillman Decl. ¶ 5.

48.     Plaintiff does not believe that Assistant Chiefs Todd or Tillman discriminated against him. Pl. Dep. at 172:14-16.

49.     Assistant Chiefs Todd and Tillman rated Plaintiff very low – the second lowest of the eight candidates who interviewed – and both concluded that Plaintiff was not qualified. Todd Decl. ¶ 8; Tillman Decl. ¶ 5.

50.     Potter also rated Plaintiff the second lowest and concluded that he was not qualified. Potter Decl. ¶ 7.

51.     Shane Biehl was ultimately selected over Plaintiff. *Id.* at 174:20-175:2; Todd Decl. ¶ 9; Tillman Decl. ¶ 6. Plaintiff does not have an opinion as to whether Biehl was more qualified than him for the position. Pl. Dep. at 175:16-21

**J.     Director Young declines to write Plaintiff a letter of recommendation.**

52.     Director Young declined to write Plaintiff a letter of recommendation supporting his potential candidacy for a part-time reserve police officer position with the Washtenaw County Sheriff's Department. Pl. Dep. at 137:1-11, 263:16-264:19. This position was unrelated to Plaintiff's federal employment with the Army. *Id.* at 264:9-19. Plaintiff did not complete the application process because he was unable to meet one of the physical requirements of the job. *Id.* at 264:20-266:8.

53.     Young's positive, mentor-mentee relationship with Plaintiff changed "a few years ago" when Young learned that Plaintiff was "using [Young's] name and position in the fire station kind of as an attempted shield for him with his peers, telling them that he had a direct line with the director." Young Dep. at 43:15-44:16.

**K.    Plaintiff's performance evaluation.**

54.     In Plaintiff's evaluation for 2017, Potter rated Plaintiff "success" in technical skills, and "excellence" in each of the three other categories. Exhibit 19 – 2017 Evaluation; Pl. Dep. at 307:19-25. Plaintiff believes that this evaluation is discriminatory because he should have received an "excellence" in "technical skills" instead of "success." *Id.* at 306:25-307:18.

**L.    Plaintiff files this lawsuit.**

55.     In this lawsuit, Plaintiff claims that Potter sexually harassed him by "periodically" making "unwanted sexual comments," including "that Plaintiff should wear a bra, that Plaintiff has breast implants, or suggesting that they try the 'pencil test.'" (ECF No. 29, PageID.87.)

56.     Plaintiff alleges (in paragraph 13 of the amended complaint) that Chief Edwards was rude when he stated, "Dasilva, I don't like you. I just have to work with you," in front of Plaintiff and coworkers. (ECF No. 29, PageID.87-88.) Plaintiff confirmed that this incident is the same as the one raised in Plaintiff's 2017 EEO complaint. Pl. Dep. at 194:1-9.

57.     Plaintiff alleges (paragraph 14) that Potter and Edwards denied him a training in January 2017. (ECF No. 29, PageID.88.) Plaintiff confirmed that he raised this in his 2017 EEO complaint. Pl. Dep. at 191:20-192:4.

58.     Plaintiff alleges (paragraph 15) that he received a discriminatory performance evaluation in February 2017. (ECF No. 29, PageID.88.) Plaintiff confirmed that he raised this in his 2017 EEO complaint. Pl. Dep. at 186:18-187:6.

59.     Plaintiff alleges (paragraphs 29-33) that Potter interfered with Plaintiff's ability to obtain "multiple promotions and/or transfers." (ECF No. 29, PageID.88.) However, Plaintiff clarified that he believes there is only one promotion or transfer that Potter interfered with: his 2019 request for a promotion to captain. Pl. Dep. at 168:15-169:20.

60.     The amended complaint contains seven counts. Count one alleges First Amendment retaliation against Potter in his individual capacity, a *Bivens* claim that is barred by *Egbert v. Boule*, 142 S. Ct. 1793 (2022). Count two alleges hostile work environment under Title VII based on sexual harassment and gender stereotyping. Count three alleges retaliation in violation of Title VII. Counts four and five, alleging violations of Michigan's Elliott-Larsen Civil Rights Act, have been dismissed. (ECF No. 50, PageID.322-324.) Counts six and seven, alleging negligent and intentional infliction of emotional distress, were withdrawn. (ECF No. 50, PageID.309 n.5.)

## LEGAL ANALYSIS[2]

**A.  Summary judgment is warranted on Plaintiff's hostile work environment claim based on sexual harassment and gender stereotyping.**

### 1.   Law

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). "A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). In *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998), the Supreme Court held that same-sex harassment is covered under Title VII. In addition, "making employment decisions based on sex stereotyping, i.e., the degree to which an individual conforms to traditional notions of what is appropriate for one's gender, is actionable discrimination under Title VII." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006).

---

[2] The Court is familiar with the summary judgment standard; it is not repeated here. Because Plaintiff repeatedly testified that he did not recall facts that would have potentially harmed his case had he admitted them, it is important to note that plaintiff "may not create a dispute of fact concerning an issue about which he has no recollection." *Pratt v. Brown Mach. Co.*, 855 F.2d 1225, 1233 (6th Cir. 1988).

To constitute a hostile work environment, the workplace must be "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To establish a prima facie claim for hostile work environment same-sex harassment, Plaintiff must establish: (1) he was a member of a protected class; (2) he faced unwelcome harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment; and (5) his employer is liable. *Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 438 (6th Cir. 2006). Plaintiff cannot satisfy the second, third, or fourth elements.

## 2.    The alleged harassment was not unwelcome.

Whether the plaintiff has met this burden of establishing a hostile work environment created by same-sex sexual harassment "depends on an examination of the totality of the circumstances including 'common sense' and an 'appropriate sensitivity to social context.'" *Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291, 297 (6th Cir. 2015) (quoting *Oncale*, 523 U.S. at 82). For example:

> A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field – even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office.

*Oncale*, 523 U.S. at 81.

15

To determine whether harassment is unwelcome, "we focus on the plaintiff's words, deeds, and deportment." *Souther v. Posen Const., Inc.*, 523 F. App'x 352, 355 (6th Cir. 2013). Plaintiff's "words, deeds, and deportment" leave no doubt that he was a willing participant in the atmosphere about which he complains. And under *Oncale*, context matters. It is not actionable for a football coach to smack a player "on the buttocks as he heads onto the field." 523 U.S. at 81.

The workplace here is all male. Pl. Dep. at 88:24-89:9, 274:3-11. Everyone considers each other "family" and "brothers." *Id.* at 90:10-12, 94:5-6. So much so that Plaintiff felt at liberty to watch pornography at work, *id.* at 249:6-22, 252:24-253:8-11, and use vulgar language. *See, e.g.*, Todd Decl. ¶¶ 2-5, 7; Fern Decl. ¶¶ 2, 6; Biehl Decl. ¶¶ 4-5. Plaintiff admitted that he may have used the term "fat fuck," Pl. Dep. at 285:22-286:11, and coworkers confirmed it. Fern Decl. ¶ 4; Todd Decl. ¶ 5. "Where a plaintiff's action in the workplace shows that she was a willing and frequent participant in the conduct at issue, courts are less likely to find that the conduct was 'unwelcome' or 'hostile.'" *Balletti v. Sun-Sentinel Co.*, 909 F. Supp. 1539, 1547 (S.D. Fla. 1995) (citing cases). Investigator Porter found – "fair[ly]" – Plaintiff was a willing participant in the atmosphere about which he complains. Exhibit 13 – SHARP Investigation Results; Pl. Dep. at 213:3-5. The Court should not permit Plaintiff to use the derogatory term "fat fuck," for example, and then complain when someone expresses weight-based observations about him.

3.    **The alleged harassment was not based on sex.**

"Any unequal treatment of an employee that would not occur but for the employee's gender may, if sufficiently severe or pervasive under the *Harris* standard, constitute a hostile environment in violation of Title VII." *Williams*, 187 F.3d at 565. However, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination because of sex.'" *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (quoting *Oncale*, 523 U.S. at 80 (cleaned up)). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80.

"Following *Oncale*, [the Sixth] Circuit allows a plaintiff alleging same-sex harassment in hostile work environment cases to establish the inference of discrimination based on sex in three ways." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307–08 (6th Cir. 2016).

> (1) where the harasser making sexual advances is acting out of sexual desire; (2) where the harasser is motivated by general hostility to the presence of men in the workplace; and (3) where the plaintiff offers direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.

*Id.* (cleaned up).

Plaintiff here cannot make a showing under *Oncale*. Avenue one is unavailable because Plaintiff does not know whether Potter was motivated by sexual

desire, Pl. Dep. at 158:10-13, 165:2-3, and the first avenue requires "credible evidence that [harasser's] behavior . . . was motivated by sexual desire." *Wade*, 612 F. App'x at 297. No such evidence exists here.

Nor can Plaintiff show that Potter used "sex-specific and derogatory terms" so "as to make clear that [he was] motivated by general hostility to the presence of [men] in the workplace." *Id.*. Plaintiff testified that he does not know whether Potter harbors hostility toward all males. Pl. Dep. at 165:4-6. Plaintiff also testified that some of his coworkers (the ones who worked the same shift as Potter) "love" Potter and some do not (the ones who do not work his shift). *Id.* at 85:3-7. Everyone is male. *Id.* at 88:24-89:9, 274:3-11. Given Plaintiff's acknowledgement that some male employees "love" Potter, Plaintiff cannot offer proof supporting avenue two of a "general hostility to the presence of [men] in the workplace."

The third avenue applies only in mixed-sex workplaces. The firehouse is not a mixed-sex workplace.

### 4. The alleged harassment was not objectively severe or pervasive.

A hostile environment must be both objectively and subjectively offensive. *Harris*, 510 U.S. at 21–22. The conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999). Courts consider "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Title VII sets a "high bar" to prove discriminatory harassment. *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 485 (6th Cir. 2020). "[T]easing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Conduct that is merely offensive is not actionable." *Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008).

Potter's comments to Plaintiff about wearing a bra,[3] the single comment about breast implants, and a single "pencil test" comment, are the type of isolated incidents and offhand comments – over the course of his fourteen years as a firefighter – that have failed to establish a hostile work environment.[4] The alleged harassment did not

---

[3] Plaintiff raised Potter's bra comments and Edwards' comments about "Hepatitis C" and "not liking" Plaintiff in his 2017 EEO complaint that was resolved by settlement. Exhibit 11 – Settlement Agreement. Applying the law of the case, the Court should not consider those comments in assessing Plaintiff's claims.

[4] *See, e.g.*, *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (supervisor's vulgar jokes, placement of vibrating pager on plaintiff's thigh, and pulling at plaintiff's overalls as if to look down them after plaintiff stated that she was wearing thong did not make prima facie showing of hostile work environment); *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 790 (6th Cir. 2000) (several dirty jokes, a sexual advance, reference to plaintiff as "hot lips," and comments about plaintiff's clothing were not sufficient to establish an objectively hostile environment); *Bowman*, 220 F.3d at 464 (supervisor rubbing plaintiff's shoulder,

involve a physical component; it was verbal. Pl. Dep. at 156:11-25, 279:4-6. The

comments did not interfere with Plaintiff's ability to do his job. *Id.* at 271:19-272:8.

Most importantly, Plaintiff testified that he does not know whether Potter was

joking, *id.* at 157:16-25, and Potter confirmed that he was. Potter Decl. ¶¶ 2-3.

Plaintiff admitted that the comments about wearing a bra may have been in the

context of a biggest loser competition. Pl. Dep. at 196:1-10. Plaintiff cannot offer

evidence rebutting Potter's testimony that he (Potter) made the statement to Plaintiff

about wearing a bra in response to Plaintiff first making fun of Potter's body. Potter

Decl. ¶ 2. Plaintiff can offer no evidence that Potter's statements were anything other

than teasing, and teasing is not actionable. *See Faragher*, 524 U.S. at 788.

Importantly, at least one of Potter's comments was made in the context of a

friendly weight-loss competition among all males in which Plaintiff willingly

participated. *Id.* at 390:1-6. Plaintiff never told Potter that the jokes offended him,

*id*. at 147:9-17, and they stopped "forever" when Potter found out. *Id*. at 208:11-22,

209:4-8, 218:23-219:3. The Army took Plaintiff's complaint seriously and

commissioned a SHARP investigation that Plaintiff admits was "fair." *Id*. at 213:3-

5. Everyone received additional training. *Id.* at 221:1-222:3; Potter Dep. at 50:22-

51:2; Young Dep. at 26:12-17, 27:19-28:8. Potter was disciplined and never did it

---

grabbing plaintiff's buttocks, and issuing two sexually-laden invitations to join the
supervisor in a pool were not pervasive or severe harassment).

again. Pl. Dep. at 208:11-22, 209:4-8, 218:23-219:3; Potter Dep. at 27:8-12. Plaintiff cannot meet the objective element of his hostile work environment claim.

**B.   Summary judgment is warranted on Plaintiff's retaliation claim.**

**1.   Law**

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Courts apply the *McDonnell Douglas* framework to retaliation claims. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). To make out a prima facie case, Plaintiff must show that: (1) he engaged in protected activity; (2) his employer was aware of the protected activity; (3) he suffered an adverse action; and (4) a causal connection existed between the protected activity and the adverse action. *Id*. The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions." *Id.* If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *Id.*

**2.   Discussion**

Plaintiff alleges that Potter and Young retaliated against him. Pl. Dep. 133:5-22. Plaintiff cannot satisfy the elements of his claim against either.

a.   <u>Potter did not retaliate</u>.

21

Plaintiff claims that Potter retaliated against him by denying him a training in 2017, lowering his performance evaluation in 2017, and interfering with his 2019 application for a promotion. Plaintiff cannot claim retaliation based on the denial of training in 2017 or the lower performance evaluation in 2017. Plaintiff raised both claims in his 2017 EEO complaint that was settled. Exhibit 10 – 2017 EEO Counselor's Report. The Court previously held that the "settlement agreement extinguishes Title VII claims that are based upon events that occurred prior to the settlement agreement." (ECF No. 50, PageID.313-314.) This is the law of the case. The allegations in the 2017 EEO complaint cannot form the basis for this lawsuit.

Even if the claims raised in the 2017 EEO complaint were not barred by the settlement, they are not viable on the merits. Plaintiff cannot satisfy the fourth element of his prima facie case because the denial-of-training and lower evaluation both occurred before Plaintiff's protected activity – the 2017 EEO complaint. *See Simmons v. Ohio Rehab. Servs. Comm'n*, No. 13-4496, 2015 WL 13926948, at *3 (6th Cir. Jan. 27, 2015) ("Protected activity that occurs after an adverse action cannot form the basis of a retaliation claim."). Plaintiff cannot meet the second element of his prima facie case because Potter did not know about Plaintiff's 2017 EEO complaint. Potter Dep. at 7:17-8:15. Also, receiving a "success" rating instead of "excellence" is not an adverse employment action. *See Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) ("fully successful" rating "not the type of adverse

employment action contemplated by Title VII"). And Potter attempted to facilitate Plaintiff's training; he did not interfere with it. Potter Decl. ¶¶ 4-5.

Nor can Plaintiff show that Potter retaliated against him by interfering with Plaintiff's candidacy for a captain position in 2019. Potter did not rate Plaintiff any worse than the two other scoring officials, Assistant Chiefs Adam Todd and Lesley Tillman, who, like Potter, rated Plaintiff low compared to other candidates. Todd Decl. ¶ 8; Tillman Decl. ¶ 5; Potter Decl. ¶ 7. Plaintiff does not believe Todd or Tillman discriminated against him. Pl. Dep. at 172:14-16. Plaintiff cannot show that he was more qualified than the successful candidate, Shane Biehl. *See* Pl. Dep. at 175:16-21 (testifying that he does not have any belief as to whether Biehl was more qualified). Plaintiff cannot establish the fourth element of his prima facie case requiring a connection between his protected activity and the denial of the promotion. Nor can he show that Defendant's non-discriminatory reason for his non-selection (i.e., someone else being better qualified) is pretextual.

Finally, Potter did not retaliate by continuing to harass Plaintiff after Plaintiff submitted his 2017 EEO complaint. Again, Potter did not know about the 2017 EEO complaint until his deposition this year. Potter Dep. at 7:17-8:15. The alleged continued harassment thus could not have been retaliatory. Also, Plaintiff testified that his relationship with Potter was "never good," starting all the way back in 2001 – 16 *years* before Plaintiff's protected activity – when Potter "degraded" him and

treated him "like shit." Pl. Dep. 120:9-12, 124:18-125:15, 126:1-5. No retaliatory inference arises where the hostilities between Plaintiff and Potter long predated Plaintiff's protected activity. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (adverse action taken after protected activity not caused by the protected activity if employment action was contemplated prior to the protected activity); *Perkins v. Harvey*, 368 F. App'x 640, 647-48 (6th Cir. 2010) (affirming summary judgment for employer on a coworker retaliation claim where conflict between plaintiff and coworker predated plaintiff's EEO activity and thus "in the nature of a personality conflict, not retaliation for . . . protected activities.").

      b.    <u>Young did not retaliate</u>.

Plaintiff claims that Young retaliated by declining to write him a recommendation letter supporting his candidacy for a part-time position with a county sheriff's department. Pl. Dep. at 137:1-14. The claim fails because Plaintiff cannot satisfy the third or fourth elements of his prima facie case or establish pretext.

"In a retaliation claim, an adverse employment action is one that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Taylor v. Geithner*, 703 F.3d 328, 340 (6th Cir. 2013) (cleaned up). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

Young's refusal to write Plaintiff a recommendation is not an adverse action for two reasons. First, Plaintiff was not harmed. Plaintiff did not complete the application process for the position with the sheriff's department because he was unable to meet one of the physical requirements of the job. Pl. Dep. at 264:20-266:8. *See Taylor*, 703 F.3d at 337 (refusal to write recommendation not adverse action absent "affirmative evidence that [plaintiff] was . . . actually harmed").

Second, the requested letter was not related to Plaintiff's federal employment, but rather related to a non-federal position. For example, the plaintiff in *Robinson v. Renown Reginal Medical Center*, No. 316CV00372MMDWGC, 2018 WL 1463382, at *4 (D. Nev. Mar. 23, 2018), a nurse assistant with a hospital (Renown), alleged discrimination after the hospital refused to write him a letter of recommendation to attend nursing school. *Id.* at *1, 4. The court held that "the refusal to provide a letter of recommendation . . . to apply to nursing school is not an adverse employment action because it did not affect Plaintiff's employment with Renown." *Id.* at *4.[5]

## CONCLUSION

For the reasons stated, summary judgment should be granted to Defendant.

---

[5] Some courts sensibly hold that refusal to write a recommendation is not adverse action because "[a]n employer has no duty to write letters of recommendation." *Mackie v. U.S. Mfg., Inc.*, No. C03-85-LRR, 2005 WL 1532545, at *17 (N.D. Iowa June 29, 2005). A contrary holding might set an uncomfortable precedent; Title VII does compel bosses to put their credibility on the line by forcing them to say nice things about an employee when such sentiments may not be honestly held.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*/s/ Benjamin A. Anchill*
Benjamin A. Anchill (P70968)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9566
benjamin.anchill@usdoj.gov

Dated:  December 19, 2022

**CERTIFICATION OF SERVICE**

I certify that on December 19, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the ECF participants in this case.

*s/Benjamin A. Anchill*
BENJAMIN A. ANCHILL
Assistant U.S. Attorney

**LOCAL RULE CERTIFICATION**

I, Benjamin A. Anchill, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*s/Benjamin A. Anchill*
BENJAMIN A. ANCHILL
Assistant U.S. Attorney