# Transcript of the Testimony of

# Martin Potter

**Date:** November 9, 2022

**Case:** Joe DaSilva, Jr. v. Christine Wormuth

American Reporting, Inc.
Phone: 248-559-6750
Fax: 248-559-9918
Email: scheduling@american-reporting.com
Internet: american-reporting.com

```
 1              MR. ALTMAN:  Yeah.  It just makes for a little bit of
 2       a cleaner record.
 3                          MARTIN POTTER,
 4  a witness herein, after having first been duly sworn, testified
 5  as follows:
 6                          CROSS-EXAMINATION
 7  BY MR. ALTMAN:
 8  Q.   Chief Potter, you would agree that you were found
 9       responsible for sexually harassing Joe DeSilva and the
10       finding was dated approximately the 22nd of May 2018,
11       correct?
12             MR. KONCIUS:  Objection, foundation.
13             Go ahead.
14             MR. ANCHILL:  Objection, compound, form.
15             THE WITNESS:  I have not seen any documentation that
16       says I was founded in sexual harassment.
17  Q.   (By Mr. Altman)  You agree you were found responsible for
18       something in approximately May of 2018, correct?
19  A.   Yes, sir.
20  Q.   What was your understanding of what you were found
21       responsible for?
22  A.   An inappropriate comment.
23  Q.   An inappropriate comment.  That wasn't the first time that
24       Mr. DaSilva had made a complaint against you about your
25       comments, correct?
```

```
 1            MR. ANCHILL:  Objection, foundation.
 2            THE WITNESS:  That is the first time that I became
 3       aware of any complaint from DaSilva.
 4   Q.  (By Mr. Altman)  You weren't aware of a complaint a couple
 5       years before where you signed a consent agreement that
 6       said you were not going to engage in such conduct?
 7            MR. ANCHILL:  Objection --
 8            MR. KONCIUS:  Objection, foundation.  Go ahead.
 9            THE WITNESS:  To my knowledge, I have not signed any
10       consent agreement from 2017.
11   Q.  (By Mr. Altman)  Okay.  So you're saying you were never
12       made aware of a complaint from Mr. DaSilva previously to
13       the instant one we are dealing with?
14            MR. KONCIUS:  Same objection.
15            THE WITNESS:  That is correct.
16   Q.  (By Mr. Altman)  And you never agreed to not engage in
17       such conduct?
18            MR. ANCHILL:  Objection, form.
19            THE WITNESS:  Can you be more specific, sir?
20   Q.  (By Mr. Altman)  You're saying you never agreed to not
21       engage in harassing conduct towards Mr. DaSilva previous
22       to this instant matter?
23   A.  That's correct.
24            MR. KONCIUS:  Objection.
25            You're fine.
```

```
 1   A.   The interrogatories that I explained in the last question.
 2   Q.   All right.  Now, what is your understanding of what you
 3        were found responsible for?
 4   A.   An inappropriate --
 5   Q.   And I am referring to this incident.
 6             MR. ANCHILL:  Objection, asked and answered.  Go
 7        ahead.
 8             THE WITNESS:  An inappropriate comment.
 9   Q.   (By Mr. Altman)  What was the inappropriate comment?
10   A.   In this situation the inappropriate comment was asking
11        about the cost of breast implants.
12   Q.   And why did you make that comment to Mr. DaSilva?
13   A.   It was a morning gathering where all -- it was at shift
14        change.  Quite a few people were in the kitchen area.
15        There was a news channel on at the -- the news channel was
16        going to break and stated that after the break they would
17        discuss the cost of breast implants.  At that point,
18        Mr. DaSilva was walking towards me and I turned as we were
19        passing and said, Joe, how much do breast implants cost.
20   Q.   Now, I'd like you to take a look at what's previously been
21        marked as Exhibit 21.
22             MR. ALTMAN:  Ben, can you hand him the printed copy
23        of that?
24             MR. ANCHILL:  Yes, I just handed it to him.
25   Q.   (By Mr. Altman)  And why don't you take a couple of
```

```
 1           relations with the dispatcher.  That's the extent of my
 2           knowledge.  I did not see any final investigation or know
 3           any more than that.
 4    Q.     Now, as a result of the finding in this particular case,
 5           what sanction were you issued?
 6                 MR. KONCIUS:  Objection to form.  Can you restate
 7           that?  I'm sorry.  I didn't follow, Keith.
 8    Q.     (By Mr. Altman)  As a result of the findings in this
 9           matter, what sanction were you issued?
10    A.     Are we back onto Joe DaSilva's complaint?
11    Q.     Yes, the matter in this case.
12    A.     A letter of counseling.
13    Q.     A letter of counseling.  That's pretty much the lowest
14           level of discipline you can receive, correct?
15                 MR. ANCHILL:  Objection, foundation.
16                 THE WITNESS:  No, sir.  There is a verbal warning
17           that is below that.
18    Q.     (By Mr. Altman)  Now, when Mr. DaSilva was seeking a
19           promotion you served on his promotion panel, correct?
20    A.     Yes, sir.
21    Q.     Who was on the promotion panel?
22    A.     Chief Ball was the lead, but I do not believe he scored.
23           I believe the other individuals would've been Adam Todd,
24           who is the assistant chief of training.  Assistant Chief
25           Leslie Tillman.  I believe one of the others was
```

```
 1        right?
 2   A.   No, sir.
 3   Q.   Now, you sat on the panel for Mr. DaSilva, correct?
 4   A.   Yes, sir.
 5   Q.   So somebody specifically selected you to be on that panel,
 6        correct?
 7            MR. ANCHILL:  Objection, foundation.
 8            THE WITNESS:  I'm assuming that somebody had named me
 9        to that panel.  I didn't name myself.
10   Q.   (By Mr. Altman)  I understand, but you weren't
11        automatically on Mr. DaSilva's panel, correct?
12            MR. ANCHILL:  Objection, foundation.
13            THE WITNESS:  I was not part of the process to select
14        the panel.  I do not know what went into the selecting
15        panel.
16   Q.   (By Mr. Altman)  But I'm saying it wasn't automatic that
17        you would be on Mr. DaSilva's panel just simply because of
18        your position, right?
19            MR. ANCHILL:  Objection, foundation.
20            THE WITNESS:  It was a normal process for the
21        assistant chiefs that were available to sit on a promotion
22        panel.
23   Q.   (By Mr. Altman)  But were the assistant chiefs always on
24        every promotion panel?
25            MR. ANCHILL:  Objection, foundation.
```

American Reporting, Inc.
248-559-6750

```
 1              them.
 2      Q.      And you know it's because of this finding?
 3                      MR. KONCIUS:  Objection to form.
 4                      You can answer, if you can.
 5                      THE WITNESS:  The supervisor during the counseling
 6              session didn't give any indication of a change in
 7              performance other than this incident.  So my only
 8              assumption can be that if my performance was what it had
 9              been up to this point which was outstanding on every
10              evaluation that this was the main factor that affected my
11              evaluation that year.
12      Q.      (By Mr. Altman)  But the evaluator never explicitly told
13              you this, correct?
14      A.      Well, there are multiple performance elements and on the
15              one in regards to EEO that covers all of these elements,
16              he absolutely spoke to this.
17      Q.      Spoke to us?
18      A.      Excuse me?
19      Q.      You said spoke to us?
20      A.      Spoke to this, meaning this action -- this incident.
21      Q.      Oh, I thought you said to us.  Okay.
22                      Did you receive any additional training other than
23              the training that everybody receives?
24      A.      The training that you are referring to that everyone
25              received was what was imposed for the station.  All
```

```
 1         personnel within the fire department, in fact all of the
 2         personnel within DES received all of the same training.
 3    Q.   So you didn't receive anything special as a result of it?
 4              MR. ANCHILL:  Objection, form.
 5              THE WITNESS:  Not that I recall.
 6              If I may, the supervisors received a specific
 7         supervisory EEO SHARP training.  That was directed at the
 8         supervisors only.
 9    Q.   (By Mr. Altman)  I understand, but it wasn't directed at
10         you personally because of this incident?
11              MR. ANCHILL:  Objection, foundation.
12              THE WITNESS:  Not that I recall.
13              MR. ALTMAN:  I have no further questions.  Thank you,
14         Chief Potter.
15              THE WITNESS:  Thank you.
16              Sir, if I may go back to one of the answers you asked
17         in regards to the cases of sexual harassment that I
18         witnessed within the station, there is one follow-on on
19         that in which it involved Mr. DaSilva and an individual
20         during a fire inspection and this individual was pregnant.
21         He had touched her belly unwanted and she had approached
22         the station.  She was accepting of what the supervisor at
23         the time did and did not go forward with a sexual
24         harassment complaint.
25    Q.   (By Mr. Altman)  Is there a question there?
```

CERTIFICATE OF NOTARY - COURT RECORDER

STATE OF MICHIGAN)
                 )
COUNTY OF OAKLAND)

        I, James A. Hengstebeck, a Notary Public in and for the above county and state, do hereby certify that witness MARTIN POTTER remotely appeared before me at the time hereinbefore set forth; that the witness was by me first duly sworn to testify to the truth, the whole truth and nothing but the truth; that thereupon the foregoing questions were asked and foregoing answers made by the witness which were duly recorded by me; that it was later reduced to written form under my direction and supervision, and that this is, to the best of my knowledge and belief, a true and correct transcript.

        I further certify that I am neither of counsel to either party nor interested in the event of this case.

_____
James A. Hengstebeck, CER 4623,
Notary Public, Oakland County,
Michigan
My Commission Expires: 10-30-2028