## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JOE DASILVA, JR.,<br>*Plaintiff,*<br><br>v.<br><br>CHRISTINE WORMUTH,<br>Secretary of the Army, and<br>MARTIN POTTER, in his<br>individual capacity.<br>*Defendants.* | Case No: 2:20-cv-11358<br><br>Honorable Mark A. Goldsmith<br><br>Magistrate Judge Anthony P. Patti |

## PLAINTIFF'S *CORRECTED* RESPONSE TO DEFENDANT MARTIN POTTER'S MOTION FOR SUMMARY JUDGMENT (ECF No. 89)

Keith Altman (P81702)
LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Rd, Suite 375
Farmington Hills, MI 48334
(248) 987-8929
keithaltman@kaltmanlaw.com
*Attorney for Plaintiff*

Dated: January 12, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................2

RESPONSE TO DEFENDANTS' CONCISE STATEMENT OF ISSUES
PRESENTED ........................................................................................4

I.   INTRODUCTON ............................................................................5

II.  PROCEDURAL HISTORY ............................ **Error! Bookmark not defined.**

III.  UNDISPUTED FACTS.................................................................6

IV.  SUMMARY JUDGMENT STANDARD..... **Error! Bookmark not defined.**

V.  ARGUMENT.................................................................................13

   A.  PLAINTIFF HAS A VALID FIRST AMENDMENT RETALIATION
       CLAIM AGAINST POTTER........................................................13
      1.  PLAINTIFF'S CLAIM IS NOT A *BIVENS* CLAIM. ................18

   B.  POTTER IS NOT QUALIFIED FOR SOVEREIGN IMMUNITY .............20

   C.  PLAINTIFF CAN ESTABLISH HOSTILE WORK ENVIRONMENT ......22
      1.  POTTER'S UNWELCOMED ADVANCES AND HARASSMENT
          WERE UNWARRANTED AND NOT CHILDPLAY.............................24

VI.  CONCLUSION ............................................................................27

CERTIFICATE OF SERVICE ............................................................30

1

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523

(1987)..................................................................................................................22

*Arce v. FCA US LLC,* No. 19 -cv-10815, 2020 U.S. Dist. LEXIS 200629, at *1

(E.D. Mich. Oct. 28, 2020) ............................................................................. 23, 24

*Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 438 (6th Cir. 2006)...........24

*Dasilva v. Esper*, Civil Action No. 20-cv-11358, 2022 U.S. Dist. LEXIS 24261, at

*15 (E.D. Mich. Feb. 9, 2022) ....................................................................... 16, 22

*DeMayo v. Nugent*, 517 F.3d 11, at 17 (2008)..........................................................20

*Egbert v Boule*, 213 L Ed 2d 54; 142 S Ct 1793 (2022)..........................................20

*Ex Parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441, 52 L. Ed. 714 (1908).........23

*Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 639 (6th Cir. 2009) ..........15

*Gomez v. Toledo*, 446 U. S. 635, 639, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980) ..21

*Harris v. Forklift Sys.*, Inc., 510 U.S. 17, 21 (1993) ................................................23

*Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995-996 (6th Cir. 2009)............. 15, 16

*Kennedy v. Massachusetts*, Civil Action No. 22-11152-NMG, 2022 U.S. Dist.

LEXIS 215378, at *9 (D. Mass. Nov. 30, 2022) ..................................................20

*Martin v. United States DOT*, No. 1:16-CV-00124-GNS-HBB, 2017 U.S. Dist.

LEXIS 116613, at *9 (W.D. Ky. July 25, 2017) ..................................................23

*Pagán-González v. Moreno*, 919 F.3d 582, at 600-01 (2019) ................................20

*Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 538-39 (6th Cir. 2008)...................22

*Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006)...........................22

*Taylor v. Geithner*, 703 F.3d 328, 331 (6th Cir. 2013).................................... 22, 23

**Statutes**

42 U.S.C.S. § 2000e-16(c) ........................................................................................22

**RESPONSE TO DEFENDANTS' CONCISE STATEMENT OF ISSUES**

**PRESENTED**

**<u>Issues Presented</u>**

I.   Plaintiff Has A Valid First Amendment Retaliation Claim
Against Potter

II.   Potter is Not Entitled to Qualified Immunity

# I.     INTRODUCTON

Plaintiff Joe Dasilva, Jr. ("Plaintiff" or "Dasilva"), by and through the undersigned counsel, and hereby responds to Martin Potter's Motion for Summary Judgment (ECF No. 89) ("Potter" or "Defendant").  In support thereof, Plaintiff states as follows:

Plaintiff was a civilian employee, Firefighter, of the Defendant.  Evidence will show that the Plaintiff filed an EEO Complaint in 2017, for which it was determined that the Plaintiff was sexually harassed at the workplace to extent the harassment rose to the level of a hostile work environment.  It is undisputed that the Defendant, his supervisors, and Potter (harasser and co-Defendant) were aware of the harassment and allowed/condoned said behavior by allowing the adverse treatment to continue without reprisal in violation of the 2017 EEO settlement agreement wherein the Plaintiff did not seek damages but merely requested that the Defendant stop the harassment.   Because the harassment continued by Potter and other superiors were aware of said harassment and participated in retaliation, Plaintiff was ultimately forced to file a SHARP Complaint and a 2018 EEO Complaint.  It is further undisputed that the EEO investigation concluded that the Plaintiff was subjected to harassment in violation of Title VII.  Lastly, it is undisputed that said adverse treatment caused Plaintiff to leave his employ.

## II.   COUNTERSTATEMENT OF MATERIAL FACTS

1.      Uncontested.

2.      Uncontested.

3.      Uncontested.

## III.   UNDISPUTED FACTS[1]

1.      Plaintiff was a Firefighter (Hazmat Tech/Basic Life Support), GS-03081-07. In this position, assigned to a crew, he engaged in structural firefighting, rescue operations, hazardous materials incidents, and performed noninvasive emergency procedures in support of the Detroit Arsenal base population. Plaintiff worked a 72-hour rotating shift to include evenings, weekends, and holidays. (December 13, 2018, EEO Report of Investigation "ROI"; Ex. A DOD Investigation File at DEF-0187 – DEF-0195).

2.      In February 2017, Potter asked Plaintiff, "If his wife was able to wear his "B-cup bra"". (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

3.      In February 2017, Potter said to Plaintiff, "I bet you can hold a pencil under your boobs and not let it drop." (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

---

[1] In response to Plaintiff's 2018 EEO Complaint, the Department of Defense (DOD) conducted an investigation in accordance with Title 29, Code of Federal Regulations Section 1614.108(f). Attached hereto and incorporated herein as **Exhibit A** is a copy of the **DOD Investigative File**. ("DOD Investigation File").

4.      On February 9, 2017, the Plaintiff filed an EEO Complaint. (2017 EEO, Ex. A DOD Investigation File).

5.      On March 6, 2017, Defendant and Plaintiff entered into a settlement agreement for the 2017 EEO agreeing that the adverse treatment would cease, and punishment would be ordered by management.  (SA, Ex. A DOD Investigation File at DEF-0152 – DEF-0153).

6.      On September 14, 2017, Plaintiff received a retaliatory write-up by Potter for allegedly having alleged banned material on his personal computer while in the privacy of his bunkroom at the firehouse, while not performing the functions of his job. (Writeup Ex. A DOD Investigation File at DEF-0269).

7.      On April 3, 2018, Plaintiff while walking through the workplace kitchen Potter looked at his chest and arbitrarily asked him "how much do breast implants cost?" (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

8.      Plaintiff walked out of the kitchen very upset and angry. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

9.      This was not the first time Potter has made this type of comment to him. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

10.     In 2018, Potter said to Plaintiff, "Hey DaSilva, tell us what it's like to get a breast implant. You had it, how much does it cost?" (Ex. B, Plf. Dep. Part I at 162:4-163:6).

7

11.    Chief Tillman was aware and present at the time Potter made comments about Plaintiff's breast in front of everybody in the fire station. (Ex. B, Plf. Dep. Part I at 162:3-17).

12.    Plaintiff's coworkers laughed at Potter's comments making Plaintiff feel emasculated, horrible and embarrassed. (Ex. B, Plf. Dep. Part I at 162:18-20).

13.    Plaintiff immediately left the station and went straight to SHARP because he could not take it anymore.  (Ex. B, Plf. Dep. Part I at 162:18-20).

14.    Potter's comments regarding Plaintiff's bra size were continuous until 2018 when Plaintiff filed the SHARP Complaint. (Ex. B, Plf. Dep. Part I at 147:3-10, 148:4-23).

15.    Also contributing to the hostile work environment Plaintiff was forced to endure Potter saying, "Hey DaSilva, [bet] . . . you can hold . . . this pencil under with your breasts." (Ex. B, Plf. Dep. Part I at 144:14-17).

16.    On April 5, 2018, Plaintiff reported the alleged harassment to Sexual Assault Response Prevention (SHARP) personnel.  (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

17.    In April 2018, Report of Proceedings by Investigating Officer [Robert Porter] on Form AR15, findings held: "I do believe there was harassment from Mr. Potter, but I believe he did not think it was wrong because of the environment of continued harassment from all within the department until he was told a complaint

was filed. Then he realized as part of the chain of command in the department he should not have said or should be participating in any type of harassment but should be the one that should be enforcing a no harassment environment." (Ex. A DOD Investigation File at DEF-0233).

18. On May 22, 2018, email to Arthur Young, Director of Emergency Services from Joseph Moscone, Garrison Manager, he stated: "1. On 5 April 2018, a Commanders Critical Information Report (CCIR) was received which stated that Mr. Martin Potter made Inappropriate comments of a sexual nature to Mr. Joe DaSilva. An investigation was conducted at my direction, and the results were provided to me. 2. After a review of the investigative results, as well as the legal opinion, I have determined that the allegation was founded. I have approved the following as actions to be taken: Consider disciplinary action against Mr. Martin Potter." (Ex. A DOD Investigation File at DEF-0240).

19. On April 29, 2018, Plaintiff submitted a request for an EEO Complaint based on Reprisal of previous complaint of harassment based on sex. (Ex. A DOD Investigation File at DEF-0151).

20. On April 29, 2018, Plaintiff sent an email to Melissa Kleehammer, CIV USARMY ID-SUSTAINMENT (US) and cc'd Porter, Robert G Jr CV USARMY ID-SUSTAINMENT (US) with subject: Reprisal (UNCLASSIFIED) attaching Sharp Complaint. (Notice Email, Ex. A DOD Investigation File at DEF-0128).

21.     On June 1, 2018, Plaintiff filed a EEO Complaint. (2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127).

22.     In the 2018 EEO Complaint, Plaintiff sought relief based on sex and national origin (no claims before the court on national origin).  (2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127).

23.     2018 EEO Complaint, Section V. Matters Giving Rise to Complaint –

Was the aggrieved harassed (sexual) based on his sex (male) and National Origin (Brazilian) when unwanted sexual nature comments were made by Assistant Chief Martin Potter to include "how much do breast implants cost" and remarking that you should be able to wear a "B-cup bra"?

1. In December 2016, the aggrieved alleges that Mr. Potter verbalized to him. "If I become assistant chief. 1 will make sure you don't move up." This was said in front of other staff.

2. The aggrieved stated that he _has changed shifts in order to avoid Chief Potter, although still has to work with him on some days. The aggrieved states when he informed his new supervisor, Mr. Mike Ball, of the harassment, Mr. Ball chooses to stay out of it. The alleged statement that 10 of 11 people have left Chief Potter's team due to harassment issues.

3. The aggrieved states Chief Edwards is aware of this complaint and does riot support him states it is a simple misinterpretation. The aggrieved states Chief Edwards told him. "I don't like you, I just have to work with you."

(2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127).

24.     Melissa Kleehammer, EEO Specialist and Complaints Manager, sent an email to Arthur Young, notifying of Plaintiff's pending EEO Complaint specifically stating the claims sought were based on sex due to unwanted sexual nature comments made by Assistant Chief Martin Potter -

This message serves as notice that an (informal) Equal Employment Opportunity (EEO) pre-complaint of discrimination has been filed against the US Department of the Army regarding matters arising out of Emergency Services Directorate, Fire Division, USAG-Detroit Arsenal, Warren, MI.

Specifically, DaSILVA, Joe, Fire Fighter, GS-0081-07, DES (Aggrieved), DA Docket No. ARDETROIT18MAY01583 has alleged harassment (sexual) based on his sex (male) and National Origin (Brazilian) when unwanted sexual nature comments were made by Assistant Chief Martin Potter to include "how much ·do breast implants cost" and remarking that you should be able to wear a "B-cup bra"?

Mr. DaSilva's relief sought is 1) Behavior to stop; 2) NC Chief Potter to find a new job outside of the Detroit Arsenal; 3) Between 3 and 5 days of paid overtime.

As Aggrieved. has engaged in the EEO complaints process, every effort should be made to avoid even the appearance of reprisal by the Army's management or staff. In addition, please treat this, as with all EEO-related matters, strictly as need-to-know.

(EEO Email to Young, Ex. A DOD Investigation File at DEF-0136).

25.    On May 30, 2018, Arthur Young sent an email to Melissa Kleehammer, EEO Specialist and Complaints Manager stating, "The issue raised in Mr. DaSilva's complaint was adjudicated through an AR 15-6 investigation directed by the Garrison Manager. The Garrison Manager reviewed the finding of the investigating officer with Legal. As a result of the investigation, I am proposing a corrective action directed at AC Potter, this should satisfy the request by Mr. Dasilva for the "behavior to stop". Management will NOT support any request for AC Potter to "find a new job" nor to pay any monetary settlement to Firefighter DaSilva." (Young Reply Email to EEO, Ex. A DOD Investigation File at DEF-0143).

26.    Edwards testified during the 2018 EEO investigation while Potter was watching a story on television about breast implants and Potter asked Plaintiff whether Plaintiff knew how much breast implants cost. (ROI, EX. A DOD Investigation File at DEF-0130 – DEF-0134).

27.    Lesley Tillman, Assistant Fire Chief (Training and Fire Prevention), served as Plaintiff's first-level supervisor. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

28.   Tillman testified that on April 3, 2018, while getting his coffee in the breakroom, he heard Potter ask Plaintiff something to the effect of "Joe, do you know how much breasts implants cost? Those look like a C-cup."  (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

29.    On December 13, 2018, the Department of Defense entered a EEO Report of Investigation ("ROI") on the 2018 EEO. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

30.   On December 19, 2018, the Department of Defense sent a letter to Plaintiff's counsel advising that the investigation in accordance with Title 29, Code of Federal Regulations Section 1614.108(f) was concluded and provided a copy of the investigative file. (DOD Letter, Ex. C at p. 1-2).

31.   On December 13, 2018, a Report of Investigation was entered on the June 2018 EEO Complaint.  (Ex. A, DOD Investigation File).

32.   Plaintiff believed the negotiated settlement agreement [2017 EEO] would curtail the harassing comments; however, the harassment did not stop as evident of this current complaint [2018 EEO]. (ROI, Ex. A, DOD Investigation File at DEF-0130 – DEF-0134).

33.   Defendants lied to Plaintiff that his complaints of hostile work environment were being taken care.  (ROI, Ex. A, DOD Investigation File at DEF-0130 – DEF-0134).

12

34.     Although an EEO investigation was conducted, Plaintiff is not aware of any actual punishment that was assessed on Potter. (ROI, Ex. A, DOD Investigation File at DEF-0130 – DEF-0134).

35.     Potter was not disciplined according to Defendant's policies and procedures, Army Table of Penalties. (Ex. B, Plf. Dep. Part I at 155:8-24) (ROI, Ex. A, DOD Investigation File at DEF-0130 – DEF-0134).

36.     Potter was allowed to make inappropriate comments without fear of consequence and his complaint was not taken seriously. (ROI, Ex. A, DOD Investigation File at DEF-0130 – DEF-0134).

37.     Plaintiff never heard Potter make similar comments to other employees. (ROI, Ex. A, DOD Investigation File at DEF-0130 – DEF-0134).

38.     Potter's negative involvement in Plaintiff's evaluation caused Plaintiff not to receive a promotion.  (Notice Email, Ex. A, DOD Investigation File at DEF-0128).

39.     At the time of Plaintiff's evaluation, Defendant and Potter were aware of Plaintiff's 2017 EEO Complaint and settlement, 2018 EEO Complaint, and SHARP Complaint.  (Notice Email, Ex. A Ex. A, DOD Investigation File at DEF-0128, ROI at DEF-0130 – DEF-0134).

## IV.   ARGUMENT

## A.   PLAINTIFF HAS A VALID FIRST AMENDMENT RETALIATION CLAIM AGAINST POTTER

This honorable Court has already ruled on this issue:

> To establish a prima facie case of retaliation under Title VII, a plaintiff
> must show that (i) the plaintiff engaged in a protected activity under
> Title VII, (ii) the exercise of protected rights was known by the
> plaintiff's employer, (iii) the employer took adverse employment action
> against the plaintiff, and (iv) there was a causal connection between the
> adverse employment action and the protected activity. *Hunter v. Sec'y*
> *of U.S. Army*, 565 F.3d 986, 995-996 (6th Cir. 2009).10 An adverse
> action is one "that a reasonable employee would have found [to be] . . .
> materially adverse, which in this context means it well might have
> dissuaded a reasonable worker from making or supporting a charge of
> discrimination." *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624,
> 639 (6th Cir. 2009) (punctuation modified).

Here, Dasilva alleges that after filing his 2017 EEO complaint, he
applied for multiple promotions and transfers, all of which were denied
due to Potter's negative influence. Am. Compl. ¶¶ 55, 58. A failure to
promote or transfer an employee is clearly an adverse action under
binding precedent. *See, e.g., Hunter*, 565 F.3d at 994 (listing "failure to
promote" and "denial of transfer" as adverse actions).

*Dasilva v. Esper*, Civil Action No. 20-cv-11358, 2022 U.S. Dist. LEXIS 24261, at *15 (E.D. Mich. Feb. 9, 2022).

The evidence supports this Court's prior ruling that Plaintiff has a valid retaliation claim. Assistant Chief Edwards, Plaintiff's second-level supervisor, was aware that Plaintiff filed other EEO complaints which were resolved at the informal stage. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134). On March 6, 2017, Defendant and Plaintiff entered into a settlement agreement for the 2017 EEO agreeing that the adverse treatment would cease, and punishment would be ordered by management. (SA, Ex. A DOD Investigation File at DEF-0152 – DEF-0153). Plaintiff was treated differently by his co-workers once he filed the EEO Complaint, i.e., co-workers refused to sit or eat in the same area, refused to address Plaintiff in the morning, ignored his questions during training and overall vibe changed. (Ex. B, Plf. Dep. Part I at 150:1-10). Chief Edwards, Chief Potter, Firefighter DeArmon, and Sean Beal created a hostile work environment once Plaintiff complained of Potter's unwelcomed, harassing comments by not talking to him, or saying good morning to him. (Ex. B, Plf. Dep. Part I at 138:2-22).

On September 14, 2017, Plaintiff received a retaliatory write-up by Potter for allegedly having alleged banned material on his personal computer while in the privacy of his bunkroom at the firehouse, while not performing the functions of his job. (Writeup, Ex. A DOD Investigation File at DEF-0269).

On April 29, 2018, Plaintiff submitted a request for an EEO Complaint based on Reprisal of previous complaint of harassment based on sex. (Ex. A DOD Investigation File at DEF-0151).   Also on April 29, 2018, Plaintiff sent an email to Melissa Kleehammer, CIV USARMY ID-SUSTAINMENT (US) and cc'd Porter, Robert G Jr CV USARMY ID-SUSTAINMENT (US) with subject: Reprisal (UNCLASSIFIED) attaching Sharp Complaint. (Notice Email, Ex. A DOD Investigation File at DEF-0128).

On June 1, 2018, Plaintiff filed a EEO Complaint. (2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127).   In the 2018 EEO Complaint, Plaintiff sought relief based on sex and national origin (no claims before the court on national origin).   (2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127).   In 2018 EEO Complaint, Section V. Matters Giving Rise to Complaint –

Was the aggrieved harassed (sexual) based on his sex (male) and National Origin (Brazilian) when unwanted sexual nature comments were made by Assistant Chief Martin Potter to include "how much do breast implants cost" and remarking that you should be able to wear a "B-cup bra"?

1. In December 2016, the aggrieved alleges that Mr. Potter verbalized to him. "If I become assistant chief. 1 will make sure you don't move up." This was said in front of other staff.

2. The aggrieved stated that he _has changed shifts in order to avoid Chief Potter, although still has to work with him on some days. The aggrieved states when he informed his new supervisor, Mr. Mike Ball, of the harassment, Mr. Ball chooses to stay out of it. The alleged statement that 10 of 11 people have left Chief Potter's team due to harassment issues.

3. The aggrieved states Chief Edwards is aware of this complaint and does riot support him states it is a simple misinterpretation. The aggrieved states Chief Edwards told him. "I don't like you, I just have to work with you."

(2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127).

Other similarly situated fire fighters were granted the right to go to driver operator school which afforded them a promotion and a step increase pay grade, but

Plaintiff was told that there was no money for him to be trained.  (Ex. B, Plf. Dep. Part I at 142:15-143:1).   In 2019, Defendants and Potter discriminated against Plaintiff in the interview process of Plaintiff for the captain position. (Ex. B, Plf. Dep. Part I at 169:1-4).  Plaintiff sought a promotion for which Potter was assigned to the evaluation panel by Defendant.  At the time of the 2019 captain interview, Defendant and Potter were aware that Plaintiff had made direct complaints of hostile work environment of Potter in the SHARP complaint and EEO charge.  Additionally, at the time of Plaintiff's evaluation, Defendant and Potter were aware of Plaintiff's 2017 EEO Complaint and settlement, 2018 EEO Complaint, and SHARP Complaint. (Notice Email, Ex. A DOD Investigation File at DEF-0128, ROI at DEF-0130 – DEF-0134).  Potter's negative involvement in Plaintiff's evaluation caused Plaintiff not to receive a promotion.  (Notice Email, Ex. A DOD Investigation File at DEF-0128).

After Plaintiff complained of hostile work environment, Plaintiff felt threatened, unsafe, scared and scared at work. (Ex. B, Plf. Dep. Part I at 154:5-23). Plaintiff was made to feel unsafe performing his firefighter duties. (Ex. B, Plf. Dep. Part I at 150:20-151:1).  Plaintiff was asked by his co-workers if they could trust him in a fire if he could change lives because he was "upset with management". (Ex. B, Plf. Dep. Part I at 151:4-7).  Plaintiff's captains told Plaintiff that he was not driving for them ever.  (Ex. B, Plf. Dep. Part I at 151:4-151:9).  In December 2019, Plaintiff's

hostile work environment rose to the level of being life threatening when during a house fire a ceiling came down and completely knocked him out and his co-workers and supervisors refused/failed to pick him up leaving him to be picked up by the other city department. From this instance, Plaintiff felt uncomfortable that if he got hurt, his co-workers and supervisors would not come to get him. (Ex. B, Plf. Dep. Part I at 150:4-23).  Captain Skabilia was the captain on that day and stated that he even moved when the ceiling fell on Plaintiff because he knew it was going to hit Plaintiff. (Ex. B, Plf. Dep. Part I at 151:4-7).  Defendant was aware of the injuries Plaintiff sustained because he was transported to the hospital. (Ex. B, Plf. Dep. Part I at 153:16-19).

Defendants lied to Plaintiff that his complaints of hostile work environment were being taken care.  However, Potter was not disciplined according to Defendant's policies and procedures (Army Table of Penalties).  (Ex. B, Plf. Dep. Part I at 155:8-24). (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

### 1.   PLAINTIFF'S CLAIM IS NOT A *BIVENS* CLAIM.

Because clearly the evidence supports a retaliation claim, Potter attempts to argue that Plaintiff's First Amendment Retaliation Claim is barred by *Egbert v Boule*, 213 L Ed 2d 54; 142 S Ct 1793 (2022).  However, Plaintiff's claim is NOT A *BIVENS* CLAIM AT ALL and the analysis is unwarranted and any argument that

18

Egbert also applies also unjustified and unwarranted. *Bivens* involved federal (DEA) agents. *Egbert* involved border patrol agents. Here, Potter is a firefighter who works for the Army. The facts herein are employment based not a matter of national security as the Supreme Court ruled that *Egbert* arose in a new national security context because the incident occurred close to the Canadian border and involved a Customs and Border Patrol agent. *Id.* at 1800-01, 1806. *Kennedy v. Massachusetts*, Civil Action No. 22-11152-NMG, 2022 U.S. Dist. LEXIS 215378, at *9 (D. Mass. Nov. 30, 2022). Surely, Defendant is not trying to argue that Potter's sex-based harassment and retaliation is a matter of national security. Furthermore, *Egbert* did not overrule *Bivens* nor did it overrule the First Circuit's relevant *Bivens* jurisprudence. *See Pagán-González v. Moreno*, 919 F.3d 582, at 600-01 (2019); *DeMayo v. Nugent*, 517 F.3d 11, at 17 (2008). *Kennedy v. Massachusetts,* Civil Action No. 22-11152-NMG, 2022 U.S. Dist. LEXIS 215378, at *12 (D. Mass. Nov. 30, 2022).

Now that the *Egbert/Bivens* issue is resolved. The point of §1983 is to provide redress—because a remedy "is a vital component of any scheme for vindicating cherished constitutional guarantees." *Gomez v. Toledo*, 446 U. S. 635, 639, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980). Plaintiff is entitled to redress and justice for Potter's adverse, unwelcomed, sex based harassing and retaliatory actions. Likewise, Plaintiff is entitled to redress and justice for Wormuth allowing Potter's

19

actions to continue without any remedial action that was consistent in reprisal and discipline.

**B.     POTTER IS NOT QUALIFIED FOR SOVEREIGN IMMUNITY**

Although it is clear that Congress has waived sovereign immunity for discrimination actions brought against the federal government through Title VII of the Civil Rights Act of 1964, that law is considered the exclusive judicial remedy for claims of discrimination in federal employment. In the Title VII of the Civil Rights Act of 1964 context, it is clear that Congress has waived sovereign immunity for discrimination actions brought against the federal government. As was previously stated by this Court, Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, provides the exclusive judicial remedy for claims of discrimination in federal employment. *Taylor v. Geithner*, 703 F.3d 328, 331 (6th Cir. 2013). *Dasilva v. Esper,* Civil Action No. 20-cv-11358, 2022 U.S. Dist. LEXIS 24261, at *1 (E.D. Mich. Feb. 9, 2022).

Plaintiff is seeking relief for Potter violating his constitutional rights.  It is well settled that government officials may claim qualified immunity "so long as they have not violated a clearly established right."  To defeat qualified immunity, Plaintiff must satisfy a two-step inquiry: First, viewing the facts in the light most favorable to the Plaintiff, has she [he] shown that a constitutional violation occurred? Second, was the right clearly established at the time of the violation?

*Tenn.*, 534 F.3d 531, 538-39 (6th Cir. 2008); *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006). Plaintiff has fulfilled both prongs of defeating qualified immunity for Defendants.  It is undisputable that plaintiff had a right to a workplace free of sex-based harassment and retaliation pursuant to Title VII.  For a right to be "clearly established," a reasonable official must understand that the action violates the claimed right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  The evidence shows that Potter understood that his actions violated Plaintiff's rights. A plaintiff need not demonstrate that the "very action in question has previously been held unlawful . . . but . . . in the light of pre-existing law the unlawfulness must be apparent." *Id.*  Furthermore, 42 U.S.C.S. § 2000e-16(c) provides that an employee may file a civil action ….  Section 2000e-16(a)'s prohibition on discriminatory practices includes executive agencies.  *Taylor v. Geithner,* 703 F.3d 328, 331 (6th Cir. 2013).  Another sovereign immunity exception is when a litigant seeks injunctive or prospective relief in order to prevent future constitutional violations. *Ex Parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441, 52 L. Ed. 714 (1908); *Martin v. United States DOT*, No. 1:16-CV-00124-GNS-HBB, 2017 U.S. Dist. LEXIS 116613, at *9 (W.D. Ky. July 25, 2017).  Plaintiff fulfills this exception inasmuch as Plaintiff has sought injunctive relief to prevent any further sex-based harassment and/or retaliation.

Lastly, Potter is not entitled to sovereign immunity because his actions were outside the scope of his employment. Potter's sex-based comments were not in furtherance of his official duties as Asst./Chief at the firehouse.

## C. PLAINTIFF CAN ESTABLISH HOSTILE WORK ENVIRONMENT

Plaintiff can establish a hostile work environment. Plaintiff's work environment was "permeated with 'discriminatory intimidation, ridicule, and insult' that were 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys*., Inc., 510 U.S. 17, 21 (1993). Again, a hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Arce v. FCA US LLC,* No. 19 -cv-10815, 2020 U.S. Dist. LEXIS 200629, at *1 (E.D. Mich. Oct. 28, 2020). To satisfy this element, a plaintiff must establish that her work environment was subjectively and objectively hostile. The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive. *Arce v. FCA US LLC*, 2020 U.S. Dist. LEXIS 200629, *1. It is unquestionable that Plaintiff had to file two EEO Complaints and a SHARP Complaint seeking redress from sex based, unwelcomed harassment he was made to endure from his superior. To establish a prima facie

claim for hostile work environment same-sex harassment, Plaintiff must establish:

(1) he was a member of a protected class; (2) he faced unwelcome harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment; and (5) his employer is liable. *Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 438 (6th Cir. 2006)." (ECF No. 90, PageID. 704 – 705).

Plaintiff was a Firefighter (Hazmat Tech/Basic Life Support), GS- 03081-07. In this position, assigned to a crew, he engaged in structural firefighting, rescue operations, hazardous materials incidents, and performed noninvasive emergency procedures in support of the Detroit Arsenal base population. Plaintiff worked a 72-hour rotating shift to include evenings, weekends, and holidays (IF pp 68-76). (ROI, Ex. A, DOD Investigation File at DEF-0130 – DEF-0134). Plaintiff as an employee of the Defendant is a member of a protected class. On 2017, Plaintiff filed an EEO Complaint. In the February 13, 2017, EEO Counselor's Report, Section V. Matters addressed Plaintiff's claims of unwelcomed, sex-based harassment and negative performance evaluations. (Ex. A, DOD Investigation File at DEF-0146 – DEF-0150). On December 19, 2018, the Department of Defense sent a letter to Plaintiff's counsel advising that the investigation in accordance with Title 29, Code of Federal Regulations Section 1614.108(f), and provided a copy of the investigative file. (DOD Letter, Ex. C at p. 1-2).

It is unquestionable that internal investigations concluded that the harassment existed. It is unquestionable that the harassment did not cease after the 2017 EEO Complaint and settlement agreement agreeing that the harasser would be punished, and the harassment would stop. Lastly, it is unquestionable that Plaintiff was forced to seek redress in a SHARP Complaint and second EEO Complaint because the unwelcomed, sex-based harassment and retaliation continued to the point of effectuating Plaintiff's employment with a denial of a promotion and worse to the point of fearing for his personal safety while fulfilling the functions of his job.

### 1. POTTER'S UNWELCOMED ADVANCES AND HARASSMENT WERE UNWARRANTED AND NOT CHILDPLAY

Plaintiff first experienced a hostile work environment in 2008. (Ex. B, Plf. Dep. Part I at 139:33-140). Potter made harassing statements to Plaintiff "on and off" beginning in 2008, that he should "wear a bra." (Ex. B, Plf. Dep. Part I at 142:2-7, 143:8-12, 143:23-144:18). The process by which Plaintiff was evaluated and the harassing comments regarding his bra size contributed to his hostile work environment. (Ex. B, Plf. Dep. Part I at 139:6-141:8).

Potter's comments regarding Plaintiff's bra size were continuous until 2018 when Plaintiff filed the SHARP complaint [FCD]. (Ex. B, Plf. Dep. Part I at 147:3-10, 148:4-23). Also contributed to the hostile work environment Plaintiff was forced to endure was Potter saying, "Hey DaSilva, [bet] . . . you can hold . . . this pencil

under with your breasts." (Ex. B, Plf. Dep. Part I at 144:14-17).  In 2018, Potter said

to Plaintiff, "hey DaSilva, tell us what it's like to get a breast implant. You had it,

how much does it cost?" (Ex. B, Plf. Dep. Part I at 162:4-163:6).  Chief Tillman was

aware and present at the time Potter made comments about Plaintiff's breast in front

of everybody in the fire station. (Ex. B, Plf. Dep. Part I at 162:3-17).  Plaintiff's

coworkers laughed at Potter's comments making Plaintiff feel emasculated, horrible

and embarrassed. (Ex. B, Plf. Dep. Part I at 162:18-20). Plaintiff immediately left

the station and went straight to SHARP because he could not take it anymore.  (Ex.

B, Plf. Dep. Part I at 162:21-24).  Potter's comments and the Defendant's failure to

extinguish the adverse actions caused Plaintiff subjection to the ongoing and

continuous harassment which was severe and pervasive to rise to the level of a

hostile work environment.

On April 29, 2018, Plaintiff sent an email to Melissa Kleehammer, CIV

USARMY ID-SUSTAINMENT (US) and cc'd Porter, Robert G Jr CV USARMY

ID-SUSTAINMENT (US) with subject: Reprisal (UNCLASSIFIED) attaching

Sharp Complaint.  ("Notice Email").  The Notice Email reads:

> I'm sending you this email to officially file a Reprisal Complaint on
> A/C Martin Potter on 09 Feb, 2017 I filed a EE[O]C Complaint [Exhibit
> A] on A/C Martin Potter that was resolved in a meeting with a mediator
> and Mr. Young. On 06 March 2017. I was told that A/C Martin Potter
> would stop making inappropriate comments to me. On April 03,2018
> and in the summer of 2017 A/C Martin Potter has not stopped making
> inappropriate sexual comments I feel that this has caused me to refile

my EEO complaint for Reprisal and Retaliation and that he has also been showing some disparate treatment towards me and has played a very big role in my evaluation at the end of the year. I have attached the original EEO complaint and the agreement that was signed by myself and Mr. Young on 3-16-2917 and the emails that show disparate treatment by A/C Potter. I would like this matter to be looked into again I would like to let your office know that I have filed a sexual harassment complaint with SHARP that is currently being investigated at this time by the Garrison Manager and the investigating officer is Mr. Robert Porter. I would like your help in putting this matter to rest again. Thank you for your time in this matter.

(2017 EEO Complaint Ex. A, DOD Investigation File at DEF-0146 – DEF-0150) (Notice Email Ex. A, DOD Investigation File at DEF-0128).

On June 1, 2018, Plaintiff filed a Formal Complaint of Discrimination ("2018 EEO" or "SHARP Complaint").   In the 2018 EEO, Plaintiff stated:

On April 03.2018 Assistant Fire Chief Martin Potter made several harassing comments against me of an unwanted sexual nature such as" how much do breast implants cost and remarks that [ should be able to wear a "B-cop Bra". and before that he has also made statements last summer that" I should do the pencil test l bet you can hold a pencil under your those tits and it will not fall".

(2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127).

It is undisputed that Plaintiff filed two EEO Complaints alleging harassment based on sex.  It is undisputed that Plaintiff stated in said Complaints and during the investigative process that Potter's comments were unwelcomed. Defendant and Potter knew about Potter's discriminatory, harassing and unwelcomed actions at the time of the adverse actions or undisputedly at the time the Plaintiff filed his 2017 EEO Complaint. Defendant cannot contend that she or Potter did not know the

26

advances were "unwelcomed". (2017 EEO Complaint Ex. A, DOD Investigation File at DEF-0146 – DEF-0150). (2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127). It is further undisputed that the Defendant and Potter were aware of Plaintiff's 2017 EEO Complaint, the settlement that arose from same and the EEO Complaint but refused/failed to take any action to stop Potter's and/or other employees under its employ to cease all harassment, discrimination, and ridicule. (2017 EEO Complaint Ex. A, DOD Investigation File at DEF-0146 – DEF-0150). (2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127).

Edwards testified during the 2018 EEO investigation that Potter told him that there was a story on television about breast implants and he decided to ask Plaintiff whether Plaintiff knew how much implants cost. (ROI, EX. A DOD Investigation File at DEF-0130 – DEF-0134).

Lesley Tillman, Assistant Fire Chief (Training and Fire Prevention), served as Plaintiff's first-level supervisor. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134). Tillman testified that on April 3, 2018, while getting his coffee in the breakroom, he heard Potter ask Plaintiff something to the effect of "Joe, do you know how much breasts implants cost? Those look like a C-cup." (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

## VI.   CONCLUSION

Plaintiff has met the burden of proving entitlement to relief on all claims sought before this honorable Court.  All allegations and facts are to be viewed in favor of the Plaintiff in deciding on summary judgment. Inasmuch as, the foregoing facts are in dispute, the Plaintiff will be severely prejudiced if the disputed facts are not presented to a jury for adjudication.  Therefore, the Plaintiff respectfully prays to this honorable Court to deny Defendant's Motion for Summary Judgment in its entirety and set this matter for trial.

Dated: January 12, 2023                    Respectfully submitted,

Keith Altman, Esq.
Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
Tel: (987) 987-8929
*keithaltman@kaltmanlaw.com*
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Keith Altman, certify that this document complies with Local Rule 5.1(a),

including: double-spaced; at least one-inch margins on the top, sides, and bottom;

consecutive page numbering; and 14 point. I also certify that it is the appropriate

length. Local Rule 7.1(d)(3)."

Keith Altman, Esq.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JOE DASILVA, JR.,<br>             *Plaintiff,*<br><br>v.<br><br>CHRISTINE WORMUTH,<br>Secretary of the Army, and<br>MARTIN POTTER, in his<br>individual capacity.<br>             *Defendants.* | Case No: 2:20-cv-11358<br><br>Honorable Mark A. Goldsmith<br><br>Magistrate Judge Anthony P. Patti |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 12, 2023, I served the foregoing PLAINTIFF'S CORRECTED RESPONSE TO DEFENDANT MARTIN POTTER'S MOTION FOR SUMMARY JUDGMENT (ECF No. 89) upon all parties herein by filing copies of same using the ECF System.

Keith Altman, Esq.
Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (987) 987-8929
*keithaltman@kaltmanlaw.com*

*Attorneys for the Plaintiff*

30