## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JOE DASILVA, JR.,<br>*Plaintiff,*<br><br>v.<br><br>CHRISTINE WORMUTH,<br>Secretary of the Army, and<br>MARTIN POTTER, in his<br>individual capacity.<br>*Defendants.* | Case No: 2:20-cv-11358<br><br>Honorable Mark A. Goldsmith<br><br>Magistrate Judge Anthony P. Patti |

---

**PLAINTIFF'S *CORRECTED* RESPONSE TO DEFENDANT CHRISTINE WORMUTH'S MOTION FOR SUMMARY JUDGMENT (ECF No. 90)**

---

Keith Altman (P81702)
LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Rd, Suite 375
Farmington Hills, MI 48334
(248) 987-8929
keithaltman@kaltmanlaw.com
*Attorney for Plaintiff*

Dated: January 12, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................2

RESPONSE TO DEFENDANTS' CONCISE STATEMENT OF ISSUES

PRESENTED ..........................................................................................3

I.    COUNTERSTATEMENT OF MATERIAL FACTS .........................................4

II.   STATEMENT OF ADDITIONAL MATERIAL FACTS , .............................17

III.  ARGUMENT.................................................................................20

  A.  PLAINTIFF CAN ESTABLISH HOSTILE WORK ENVIRONMENT ......20

    1.  POTTER'S UNWELCOMED ADVANCES AND HARASSMENT

    WERE UNWARRANTED AND NOT CHILDPLAY ....................................22

    2.  HARASSMENT WAS BASED ON SEX ...................................................24

    3.  HARASSMENT WAS SEVERE AND PERVASIVE ...............................25

  B.  PLAINTIFF CAN ESTABLISH TITLE VII RETALIATION CLAIM OF

  DISCRIMINATION ...........................................................................25

VI.   CONCLUSION ...........................................................................29

CERTIFICATE OF SERVICE ...............................................................31

## TABLE OF AUTHORITIES

**Cases**

*Arce v. FCA US LLC,* No. 19 -cv-10815, 2020 U.S. Dist. LEXIS 200629, at *1
(E.D. Mich. Oct. 28, 2020) ....................................................................21

*Dasilva v. Esper,* Civil Action No. 20-cv-11358, 2022 U.S. Dist. LEXIS 24261, at
*15 (E.D. Mich. Feb. 9, 2022) ..............................................................26

*Garner v. Cuyahoga Cnty. Juvenile Ct*., 554 F.3d 624, 639 (6th Cir. 2009) ..........26

*Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995-996 (6th Cir. 2009)............. 25, 26

**RESPONSE TO DEFENDANTS' CONCISE STATEMENT OF ISSUES PRESENTED**

## Issues Presented

I.   The Court should deny Defendant's summary judgment in favor of Plaintiff's hostile work environment claim which includes severe and pervasive harassment based on sex.

II.  The Court should deny Defendant's summary judgment in favor of Plaintiff's retaliation claim.

## I.   COUNTERSTATEMENT OF MATERIAL FACTS[1]

1.      Uncontested.

2.      Uncontested.

3.      Uncontested.

4.      Uncontested.

5.      Uncontested.

6.      Uncontested.

7.      Uncontested.

8.      Uncontested.

9.      Uncontested.

10.     Uncontested.

11.     Plaintiff did not tell Potter to stop making these statements or tell Potter that the statements were unwelcome. (Ex. B, Plf. Dep. Part I at 147:9-17). Contested. Plaintiff's filing of the 2017 EEO Complaint, 2018 EEO Complaint, and SHARP Complaint put Potter, supervisors, and Wormuth on notice that statements were unwelcomed. (Notice Email, Ex. A DOD Investigation File at DEF-0128, ROI at DEF-0130 – DEF-0134).

---

[1] Defendant put more one statement of fact with cites within a numbered paragraph.  Plaintiff procedurally objects that this does not comport to the record.  In an attempt to reduce confusion for each paragraph that contains multiple facts, Plaintiff has recited the Defendant's facts, acknowledged "Contested" and provided a rebuttal with cites.

12.     Potter's statements about wearing a bra, the single statement about holding a pencil under Plaintiff's breast, and the single statement about breast implants, are the only acts comprising Plaintiff's harassment claim. (Ex. B, Plf. Dep. Part I at 164:6-10). Contested. Plaintiff's filing of the 2017 EEO Complaint, 2018 EEO Complaint, and SHARP Complaint put Potter, supervisors, and Wormuth on notice that statements were unwelcomed. (Notice Email, Ex. A DOD Investigation File at DEF-0128, ROI at DEF-0130 – DEF-0134).

13.     Uncontested.

14.     Plaintiff admits that Potter's comments did not prevent Plaintiff from performing his job duties as a firefighter. (Ex. B, Plf. Dep. Part I at 271:19-272:8). Contested. Plaintiff states, "So, I have to come to work every single day now knowing that the Army turned their backs on me. I have to be—live with this every single day, coming into work and trying to do my job at 100 percent knowing that you know, I have to sit in a SHARP sexual harassment class." (Ex. B, Plf. Dep. Part I at 79:18-23). Plaintiff states, "once all this started because I couldn't work with him because of all this going on since 2008. (Ex. B, Plf. Dep. Part I at 85:16-21). Plaintiff states, "So, I'd pick an opposite shift of him because I wanted nothing to do with him, and then, you know, it—my wife's like did you get that one, and I'm like no honey, because it's Potter's shift, and she goes okay, forget it, don't do that. So, I had to live with that for a long time of trying to stay away from him and picking

different shifts, but you know, I even used a lot of sick leave because I didn't want to work with him." (Ex. B, Plf. Dep. Part I at 86:5-13). Plaintiff states that this affected his life dramatically. (Ex. B, Plf. Dep. Part I at 227:7). Plaintiff states that verbal remarks regarding his status as a Brazilian person affected him. (Ex. B, Plf. Dep. Part I at 238:20). Plaintiff states that "it was wrong and it has affected me emotionally and mentally. It has hurt me and my family. And it was a continuation in my job. I used to go to work and enjoy it. And it got to the point where it wasn't fun to go to work anymore. It wasn't nice to go to work anymore. It was always looking over your shoulder and being treated differently by the other people and how one person gets treated differently and—I remember when a couple of guys went to driver operator class." (Ex. B, Plf. Dep. Part I at 326:7-15). Plaintiff states "So the mistreatment and the unfair treatment—it's always been there. Then the sexual harassment didn't help. Makes me feel—made me feel unmanly. It hurt. You're in a station with a bunch of guys and stuff like that. So it just wasn't fair. So yeah, it's affected me a lot of ways. I didn't sleep good. (Ex. B, Plf. Dep. Part I at 326:24-327:4). Plaintiff states "I went a couple years and I didn't want to take overtime because it would put me on Potter's shift." (Ex. B, Plf. Dep. Part I at 327:12-13). Plaintiff states "So I went about two years or more not trying to work with him and not taking overtime. And everytime I did that, that was $750 loss that I could've gained because that's how much we make because we work 24-hour shifts." (Ex. B,

Plf. Dep. Part I at 327:20-23). Plaintiff states "And then there was times I had no choice because I got mandatory. And at that case, I didn't have no choice and I had to work it. So that was a miserable working on his shift." (Ex. B, Plf. Dep. Part I at 328:2-5). Plaintiff states "I lost the pain and suffering of being—you know, humiliated at work. Stuff like that." (Ex. B, Plf. Dep. Part I at 328:15-16). Plaintiff states "Not just humiliation but coming to work miserable and leaving work miserable. I'd come home, my wife knew something was wrong at work. That's—it affected everything. My whole family and me." (Ex. B, Plf. Dep. Part I at 328:21-24). Plaintiff states "And I still had to work there. And they promoted the guy. So here is an assistant chief that was found guilty of sexual harassment and now you promote him and he's still my supervisor. Now he's my senior rater. So that made it even horrible. That made it worse." (Ex. B, Plf. Dep. Part I at 329:8-12). Plaintiff states "It made you feel like, wow, this is crazy. This is so insane that this happened." (Ex. B, Plf. Dep. Part I at 329:19-20). Plaintiff states "How do you think I feel as an employee that works there knowing that, huh, the guy that was just found guilty of sexual harassment against me is now promoted to the fire chief. And now I got to work here more and more. It's like, oh, my God. So all that stuff, it affects you even more. It makes everything even worse." (Ex. B, Plf. Dep. Part I at 329:21-330:2). Plaintiff states "It's pretty sad. It makes you—it makes everything hard for a person, an individual that works there. Not just me. It affected everybody in the department.

Because all the guys knew it. They're like, wow, dude. They didn't do anything to him and they promote him" (Ex. B, Plf. Dep. Part I at 330:14-19).  Plaintiff states, "But for five years, right after my first EEO complaint, that's when it started. After he sent me the emails of saying, hey, he showed that he was treating me differently, I'm like, you know what, I can't be anywhere around this guy." (Ex. B, Plf. Dep. Part I at 338:13-17). Plaintiff states, "So from like the 2017 evaluation that I filed my complaint that year, from then on, I never picked up overtime that would put me on—and all the guys at the station knew. They're like so—I'm like, nope, working with Potter. They already knew the answer. I would be outside doing something, they're like, hey, there's overtime, ask DaSilva. And some of the guys would be like who is the AC on duty. They're like, oh, it's Potter. They go, we already know his answers. We knew DaSilva is not going to work with Potter." (Ex. B, Plf. Dep. Part I at 338:18-339:2). Plaintiff states, "And I actually turned down if I knew Chief Potter was going to work that shift. I would turn it down all the time. The guys knew that. I'm like, I'm not working if Potter is coming in. And that was it." (Ex. B, Plf. Dep. Part I at 364:8-12). Plaintiff states, "And I was like, yeah, it's horrible. It's horrible that I got to go in there now and interview for this position and this man is sitting in front of me. It's the worst thing in the world." (Ex. B, Plf. Dep. Part I at 377:14-17). Plaintiff states, "And it was just hard because here I am going on an interview and he's sitting on the board. That was horrible." (Ex. B, Plf. Dep. Part I

at 378:1-3).  Plaintiff states, "I actually went out of my way and paid out of my own pocket to get to training at the Macomb County Community College. I think it was $450. I took a week class. I took time off work to go take it. And I wanted to go into dispatch because Chief Potter doesn't—it's a whole different entity. It's part of the department but he's not in charge of it." (Ex. B, Plf. Dep. Part I at 379:20-380:1).

15.     Contested. In the 2017 EEO Complaint, 2018 EEO Complaint, and SHARP Complaint, Plaintiff states the physical acts of Potter and that Potter's actions were unwelcomed and harassing. (Notice Email, Ex. A DOD Investigation File at DEF-0128, ROI at DEF-0130 – DEF-0134).

16.     Uncontested.

17.     Uncontested.

18.     Uncontested. Plaintiff does not know whether Plaintiff's comment about Potter's stomach triggered Potter to respond by telling Plaintiff that he should wear a bra. Id. Potter confirmed that Plaintiff made fun of his stomach, prompting Potter to joke about Plaintiff's chest. Potter Decl. ¶ 2. Contested.   Plaintiff testified repeatedly that he did not remember making such comments. (Ex. B, Plf. Dep. Part I at 195:5-25).

19.     Contested. Plaintiff said that he and coworkers cursed when hurt at the workplace.  (Ex. B, Plf. Dep. Part I at 109:12-23).

20.     Contested. Plaintiff said that he and coworkers cursed when hurt at the workplace.  (Ex. B, Plf. Dep. Part I at 109:12-23).

21.     Contested. Plaintiff did not make comments of this nature. (Ex. B, Plf. Dep. Part I at 294:20-22).

22.     Contested.  Plaintiff does not remember making such comments. (Ex. B, Plf. Dep. Part I at 248:8-18, 249:3-5).

23.     Plaintiff "might have once or twice" used the term "fat fuck." (Ex. B, Plf. Dep. Part I at 285:22-286:11).  A coworker attested that Plaintiff referred to Firefighter Brian Furman, who is a larger employee, as a "fat fuck." Fern Decl. ¶ 4. Contested. Plaintiff did not remember whether he said this. (Ex. B, Plf. Dep. Part I at 286:3-6). Contested. A coworker attests that Plaintiff used the term "pretty often." Todd Decl. ¶ 5. Contested. Plaintiff said that he and coworkers cursed when hurt at the workplace.  (Ex. B, Plf. Dep. Part I at 109:12-23).

24.     Plaintiff received an informal memo regarding unwelcome conduct after he "unwelcomingly reached out" and "rubbed" the pregnant stomach of a female tenant of the Detroit Arsenal. Exhibit 7 – 9/1/15 Memo; Biehl Decl. ¶ 6; Exhibit 8 – Bramer Decl. ¶ 2. Although Plaintiff signed the memo, he denied at his deposition that it happened. (Ex. B, Plf. Dep. Part I at 276:1-277:4). Contested. Plaintiff and the female tenant stated that Plaintiff never touched her. Plaintiff's testimony specifically states in the deposition.  Furthermore, the "memo" should not

have been removed from the personnel file per the testimony. (Ex. B, Plf. Dep. Part I at 276:1-277:4).   Plaintiff signed the memo, he denied at his deposition that it happened. (Ex. B, Plf. Dep. Part I at 276:1-277:4). Contested. Plaintiff denied. (Ex. B, Plf. Dep. Part I at 276:1-277:4).

25.   Contested. Plaintiff testified that he did not remember saying the comments alleged. (Ex. B, Plf. Dep. Part I at 245:13-15).

26.   Plaintiff received a warning after Potter, while walking past Plaintiff's bunkroom, discovered pornography on Plaintiff's laptop. (Ex. B, Plf. Dep. Part I at 249:6-22, 252:24-253:11); Potter Decl. ¶ 6. Contested. Plaintiff's coworkers have also observed Plaintiff watching pornography, and one heard the noises. Biehl Decl. ¶ 3; Todd Decl. ¶ 6. Contested.  Plaintiff viewed porn on his private computer and wifi, in his private, assigned quarters during his downtime.  No one ever complained to him.  No knowledge that anyone knew he watched. (Ex. B, Plf. Dep. Part I at 249:6-252:8).

27.   According to Inspector Fern, Plaintiff bragged about having "a big dick." After Fern expressed disbelief, Plaintiff exposed his penis within feet of Fern's face while he was resting in his bunkroom. Fern Decl. ¶ 5; Todd Decl. ¶ 7. Plaintiff denied this, (Ex. B, Plf. Dep. Part I at 290:17-291:3, 298:5-13), but is unaware of any motive for Fern to lie and gets along with him "real well." (Ex. B,

Plf. Dep. Part I at 70:1-4, 291:8-12). Contested.  Plaintiff flatly denied all alleged actions/comments. (Ex. B, Plf. Dep. Part I at 290:5-291:12).

28.     Uncontested.

29.     Contested.  The settlement agreement did not preclude Plaintiff from bringing a retaliation or hostile work environment claim for continued harassment and failure to adhere to the settlement agreement for failing to discipline Potter as agreed.  Ex. 11. Settlement Agreement.

30.     Contested.   Potter was aware at the time of filing of Plaintiff's 2017, Notice Email, EEO Complaint and settlement, 2018 EEO Complaint, and SHARP Complaint.  (Notice Email, EX. A Ex. A, DOD Investigation File at DEF-0128, ROI at DEF-0130 – DEF-0134,146-150).

31.     Contested. These claims and facts are disputed and presently before the court.

32.     Uncontested.

33.     Uncontested.  Potter confirmed that he was. Potter Decl. ¶ 3. Contested.

34.     Uncontested.

35.     Plaintiff had no contact with Potter after he filed the SHARP complaint because Potter was moved to a different shift. (Ex. B, Plf. Dep. Part I at 207:17-208:10). Contested. The harassment continued until Plaintiff filed the big complaint.

(Ex. B, Plf. Dep. Part I at 208:19-20). Potter was involved in Plaintiff's evaluation and sat on the promotion committee. (Ex. B, Plf. Dep. Part I at 379:20-380:1).

36.     After Plaintiff filed the SHARP complaint, the harassment from Potter stopped "forever." (Ex. B, Plf. Dep. Part I at 208:11-22, 209:4-8, 218:23-219:3). Contested.  This is when Potter first learned that Plaintiff was offended by his jokes. Potter Decl. ¶ 3.  Contested. Plaintiff states, "And that was—that was the end of everything. I couldn't go to the fire chief because he made the statement about my wife in the kitchen before." (Ex. B, Plf. Dep. Part I at 162:16-25).

37.     Uncontested.

38.     Contested.  Plaintiff admitted that he never told Potter. (Ex. B, Plf. Dep. Part I at 147:9-17). Contested. Plaintiff's EEO complaint put Potter and the Defendant on notice that Potter's actions and comments were unwelcomed.  (Ex. B, Plf. Dep. Part I at 146:9-10).

39.     Uncontested.

40.     Uncontested.

41.     Uncontested.

42.     Director Young was tasked with imposing disciplinary action against Potter in consultation with Management Employee Relations (MER). (Defendants Exhibit 14, Young. Dep. at 12:8-13, 15:15-22, 16:19-25, 17:16-25, 48:10-15). Young initially proposed a letter of reprimand, which is more severe than a letter of

counseling, but was advised by MER that a letter of counseling would be appropriate and sufficient. (Ex. B, Plf. Dep. Part I at 17:10-15, 22:1-15, 31:11-18). The letter of counseling "seemed to have been successful," deterred Potter from making additional comments, and Potter accepted responsibility. (Ex. B, Plf. Dep. Part I at 18:18-19:1, 26:12-17, 27:11-14, 49:22-50:24, 51:15-17). Contested. Plaintiff states, "They told me they took care of the issue, and they told me that proper punishment was given, and it wasn't." (Ex. B, Plf. Dep. Part I at 155:16-17). The Army Table of Penalties it says right there and guess what? He didn't get that, and I still have to work and now you allow this guy to interview me, and you promoted him, so, how does that make me feel? I feel scared coming into work. I feel like oh my God, this is horrible, I got to live with this every day." (Ex. B, Plf. Dep. Part I at 155:19-25).

43.    Contested. it was done continuously until the 2018 that it stopped because that's when I filed the SHARP complaint. So, it was a lot of times. I don't have a number, but it was definitely a lot of times." (Ex. B, Plf. Dep. Part I at 147:4-8).

44.    Uncontested.

45.    Contested. Plaintiff states, "Well, it was because of all of them, but this just added to the list. It's to the point to where it's like I can't take it anymore. This has got to stop. So, it was everything combined but that one, it was just finally too much for me, and that's when I decided to go to SHARP and EEO." (Ex. B, Plf.

Dep. Part I at 209:16-21).  That was like—it made me feel unmanly. It made me feel

emasculated. It's like, wow, this guy is making me feel horrible. So I don't know

why he said it.  I know I didn't feel good about it." (Ex. B, Plf. Dep. Part I at 274:17-

25).

46.    Uncontested.

47.    Uncontested.

48.    Plaintiff does not believe that Assistant Chiefs Todd or Tillman

discriminated against him. (Ex. B, Plf. Dep. Part I at 172:14-16).  Contested. No.

Other than when I applied for captain. (Ex. B, Plf. Dep. Part I at 383:7-10).

49.    Uncontested.

50.    Uncontested.

51.    Uncontested.

52.    Uncontested.

53.    Uncontested.

54.    Uncontested.

55.    In this lawsuit, Plaintiff claims that Potter sexually harassed him by

"periodically" making "unwanted sexual comments," including "that Plaintiff

should wear a bra, that Plaintiff has breast implants, or suggesting that they try the

'pencil test.'" (ECF No. 29, PageID.87.)  Contested. Plaintiff states, "It was said a

lot. That's all I know. The one in the kitchen, that was only one time because after

that they said he had to stay away from me because the investigation was going on. So, that was only said once. The wearing a B-sized bra, that was said numerous times, many, many time. And then to hold a pencil under my breast, that was—that was only one time. So." (Ex. B, Plf. Dep. Part I at 163:24-164:5). Plaintiff states, "Well, it was numerous times throughout—since 2008. It was just constantly said. It did stop after my EEO and SHARP complaint. That's when it stopped completely because it had to. But it was continuous, the B-size bra. The pencil—if I—that was only made once in the kitchen. Then the one about me—about the breast when we were all in the—that was only one time. But the B-size bra was continuous." (Ex. B, Plf. Dep. Part I at 387:18-25).

56.    Uncontested. Plaintiff confirmed that this incident is the same as the one raised in Plaintiff's 2017 EEO complaint. (Ex. B, Plf. Dep. Part I at 194:1-9). Contested Plaintiff testified that there were occurrences subsequent to EEO filing. Plaintiff states, "I don't have to like somebody just because I work with him, that's what Chief Edwards told me. The own fire chief says DaSilva, I don't like you, you just have to work for me. The chief said it in the kitchen in front of everybody, how do you think that makes me feel because of all this, he said it after this EEO and everything." (Ex. B, Plf. Dep. Part I at 90:22-91:2).

57.    Uncontested.

58.    Uncontested.

59.     Plaintiff alleges (paragraphs 29-33) that Potter interfered with Plaintiff's ability to obtain "multiple promotions and/or transfers." (ECF No. 29, PageID.88.) However, Plaintiff clarified that he believes there is only one promotion or transfer that Potter interfered with: his 2019 request for a promotion to captain. (Ex. B, Plf. Dep. Part I at 168:15-169:20). Contested. Plaintiff states, "Well, the EEO lady was there because before my interview I requested Chief Potter to be removed, and I—and I told the whole panel, I said listen, I would like to have an individual on this board removed, and I didn't say a name because I didn't have to. They all knew who it was. (Ex. B, Plf. Dep. Part I at 171:20-25). That was a humiliating thing. It made me—I bombed the interview. I didn't know how to act. I was nervous. I was— I felt unmanly. I felt horrible. I felt—I wanted to cry. It was like wow, I've got to sit here in front of this person that EEO and SHARP found guilty of sexual harassment and now he's got to interview me. How in the hell do you think any normal human being would do? It was horrible. That just showed me why management was even worse." (Ex. B, Plf. Dep. Part I at 172:19-173:11). So his presence in the interview just—I didn't perform as well." (Ex. B, Plf. Dep. Part I at 179:20-23).

60.     Uncontested.

## II.    STATEMENT OF ADDITIONAL MATERIAL FACTS [2],[3]

---

[2] Plaintiff affirms and incorporates herein Defendant's undisputed facts 1-10.
[3] In response to Plaintiff's 2018 EEO Complaint, the Department of Defense (DOD) conducted an investigation in accordance with Title 29, Code of Federal Regulations Section 1614.108(f).

1.     Chief Tillman was aware and present at the time Potter made comments about Plaintiff's breast in front of everybody in the fire station. (Ex. B, Plf. Dep. Part I at 162:3-17). Plaintiff's coworkers laughed at Potter's comments making Plaintiff feel emasculated, horrible and embarrassed. (Ex. B, Plf. Dep. Part I at 162:18-20).

2.     In April 2018, Report of Proceedings by Investigating Officer [Robert Porter] on Form AR15, findings held: "I do believe there was harassment from Mr. Potter, but I believe he did not think it was wrong because of the environment of continued harassment from all within the department until he was told a complaint was filed. Then he realized as part of the chain of command in the department he should not have said or should be participating in any type of harassment but should be the one that should be enforcing a no harassment environment." (Ex. A DOD Investigation File at DEF-0233).

3.     On May 22, 2018, email to Arthur Young, Director of Emergency Services from Joseph Moscone, Garrison Manager, he stated: "1. On 5 April 2018, a Commanders Critical Information Report (CCIR) was received which stated that Mr. Martin Potter made Inappropriate comments of a sexual nature to Mr. Joe DaSilva. An investigation was conducted at my direction, and the results were provided to me. 2. After a review of the investigative results, as well as the legal

---

Attached hereto and incorporated herein as **Exhibit A** is a copy of the **DOD Investigative File**. ("DOD Investigation File").

opinion, I have determined that the allegation was founded. I have approved the following as actions to be taken: Consider disciplinary action against Mr. Martin Potter." (Ex. A DOD Investigation File at DEF-0240).

4.      On April 29, 2018, Plaintiff submitted a request for an EEO Complaint based on Reprisal of previous complaint of harassment based on sex. (Ex. A DOD Investigation File at DEF-0151).

5.      On April 29, 2018, Plaintiff sent an email to Melissa Kleehammer, CIV USARMY ID-SUSTAINMENT (US) and cc'd Porter, Robert G Jr CV USARMY ID-SUSTAINMENT (US) with subject: Reprisal (UNCLASSIFIED) attaching Sharp Complaint. (Notice Email, Ex. A DOD Investigation File at DEF-0128).

6.      Melissa Kleehammer, EEO Specialist and Complaints Manager, sent an email to Arthur Young, notifying of Plaintiff's pending EEO Complaint specifically stating the claims sought were based on sex due to unwanted sexual nature comments made by Assistant Chief Martin Potter. (EEO Email to Young, Ex. A DOD Investigation File at DEF-0136).

7.      On May 30, 2018, Arthur Young sent an email to Melissa Kleehammer, EEO Specialist and Complaints Manager stating, "The issue raised in Mr. DaSilva's complaint was adjudicated through an AR 15-6 investigation directed by the Garrison Manager. The Garrison Manager reviewed the finding of the investigating officer with Legal. As a result of the investigation, I am proposing a corrective action

directed at AC Potter, this should satisfy the request by Mr. Dasilva for the "behavior to stop". Management will NOT support any request for AC Potter to "find a new job" nor to pay any monetary settlement to Firefighter DaSilva." (Young Reply Email to EEO, Ex. A DOD Investigation File at DEF-0143).

8.      Plaintiff believed the negotiated settlement agreement [2017 EEO] would curtail the harassing comments; however, the harassment did not stop as evident of this current complaint [2018 EEO]. (ROI, Ex. A, DOD Investigation File at DEF-0130 – DEF-0134).

9.      Potter was not disciplined according to Defendant's policies and procedures, Army Table of Penalties. (Ex. B, Plf. Dep. Part I at 155:8-24) (ROI, Ex. A, DOD Investigation File at DEF-0130 – DEF-0134).

## III.    ARGUMENT

Plaintiff agrees with Defendant's analysis of the requirements of Title VII and hostile work environment.

## A.    PLAINTIFF CAN ESTABLISH HOSTILE WORK ENVIRONMENT

Plaintiff can establish a hostile work environment.   Plaintiff's work environment was "permeated with 'discriminatory intimidation, ridicule, and insult' that were 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys.*, Inc., 510 U.S. 17, 21 (1993). Again, a hostile work environment occurs when the

workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Arce v. FCA US LLC,* No. 19 -cv-10815, 2020 U.S. Dist. LEXIS 200629, at *1 (E.D. Mich. Oct. 28, 2020). To satisfy this element, a plaintiff must establish that her work environment was subjectively and objectively hostile. The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive. *Arce v. FCA US LLC*, 2020 U.S. Dist. LEXIS 200629, *1. It is unquestionable that Plaintiff had to file two EEO Complaints and a SHARP Complaint seeking redress from sex based, unwelcomed harassment he was made to endure from his superior. The Plaintiff meets all four prongs to establish a prima facie claim for hostile work environment same-sex harassment. *Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 438 (6th Cir. 2006)." (ECF No. 90, PageID. 704 – 705). Plaintiff as an employee of the Defendant is a member of a protected class. On 2017, Plaintiff filed an EEO Complaint. In the February 13, 2017, EEO Counselor's Report, Section V. Matters addressed Plaintiff's claims of unwelcomed, sex based harassment and negative performance evaluations. (Ex. A, DOD Investigation File at DEF-0146 – DEF-0150).

It is unquestionable that internal investigations concluded that the harassment existed. It is unquestionable that the harassment did not cease after the 2017 EEO

Complaint and settlement agreement agreeing that the harasser would be punished, and the harassment would stop.  Lastly, it is unquestionable that Plaintiff was forced to seek redress in a SHARP Complaint and second EEO Complaint because the unwelcomed, sex-based harassment and retaliation continued to the point of effectuating Plaintiff's employment with a denial of a promotion and worse to the point of fearing for his personal safety while fulfilling the functions of his job.

### 1. POTTER'S UNWELCOMED ADVANCES AND HARASSMENT WERE UNWARRANTED AND NOT CHILDPLAY

Plaintiff first experienced a hostile work environment in 2008. (Ex. B, Plf. Dep. Part I at 139:33-140).  Potter made harassing statements to Plaintiff "on and off" beginning in 2008, that he should "wear a bra." (Ex. B, Plf. Dep. Part I at 142:2-7, 143:8-12, 143:23-144:18). The process by which Plaintiff was evaluated and the harassing comments regarding his bra size contributed to his hostile work environment. (Ex. B, Plf. Dep. Part I at 139:6-141:8).

Potter's comments regarding Plaintiff's bra size were continuous until 2018 when Plaintiff filed the SHARP complaint [FCD]. (Ex. B, Plf. Dep. Part I at 147:3-10, 148:4-23).  Also contributed to the hostile work environment Plaintiff was forced to endure was Potter saying, "Hey DaSilva, [bet] . . . you can hold . . . this pencil under with your breasts." (Ex. B, Plf. Dep. Part I at 144:14-17).  In 2018, Potter said to Plaintiff, "hey DaSilva, tell us what it's like to get a breast implant. You had it,

22

how much does it cost?" (Ex. B, Plf. Dep. Part I at 162:4-163:6). Chief Tillman was aware and present at the time Potter made comments about Plaintiff's breast in front of everybody in the fire station. (Ex. B, Plf. Dep. Part I at 162:3-17). Plaintiff's coworkers laughed at Potter's comments making Plaintiff feel emasculated, horrible and embarrassed. (Ex. B, Plf. Dep. Part I at 162:18-20). Plaintiff immediately left the station and went straight to SHARP because he could not take it anymore. (Ex. B, Plf. Dep. Part I at 162:21-24). Potter's comments and the Defendant's failure to extinguish the adverse actions caused Plaintiff subjection to the ongoing and continuous harassment which was severe and pervasive to rise to the level of a hostile work environment.

On April 29, 2018, Plaintiff sent an email to Melissa Kleehammer, CIV USARMY ID-SUSTAINMENT (US) and cc'd Porter, Robert G Jr CV USARMY ID-SUSTAINMENT (US) with subject: Reprisal (UNCLASSIFIED) attaching Sharp Complaint. ("Notice Email"). (2017 EEO Complaint Ex. A, DOD Investigation File at DEF-0146 – DEF-0150) (Notice Email Ex. A, DOD Investigation File at DEF-0128).

On June 1, 2018, Plaintiff filed a Formal Complaint of Discrimination ("2018 EEO" or "SHARP Complaint"). (2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127). It is undisputed that Plaintiff filed two EEO Complaints alleging harassment based on sex. It is undisputed that Plaintiff stated in said Complaints

and during the investigative process that Potter's comments were unwelcomed. Defendant and Potter knew about Potter's discriminatory, harassing and unwelcomed actions at the time of the adverse actions or undisputedly at the time the Plaintiff filed his 2017 EEO Complaint. Defendant cannot contend that she or Potter did not know the advances were "unwelcomed". (2017 EEO Complaint Ex. A, DOD Investigation File at DEF-0146 – DEF-0150). (2018 EEO, Ex. A DOD Investigation File at DEF-0126 – DEF-0127). It is further undisputed that the Defendant and Potter were aware of Plaintiff's 2017 EEO Complaint, the settlement that arose from same and the EEO Complaint but refused/failed to take any action to stop Potter's and/or other employees under its employ to cease all harassment, discrimination, and ridicule. (2017 EEO Complaint Ex. A, DOD Investigation File at DEF-0146 – DEF-0150; 0126 – 0127).

### 2. HARASSMENT WAS BASED ON SEX

It is clearly undisputed that Plaintiff's 2017 and 2018 EEO Complaints and SHARP Complaint, intra Defendant investigative correspondence, EEO Reports and Defendant internal reports all discuss the harassment as based on "sex". (Ex. A DOD Investigation File). The Agency lists Plaintiff's prior EEO activity as two informal complaints filed alleging a hostile work environment naming Fire Chief Sean Edwards, Fire Chief, GS- 0081-l2, and Assistant Chief Martin Potter, GS-0081-10, as the alleged harassers. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-

0134).  The complaints were based on his sex, national origin, and reprisal. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134). Lastly, Plaintiff testified in the EEO investigation and explained to EEO investigator that the comments about his breast size inferred that he was a woman, which demeaned Plaintiff's sexuality and masculinity. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

### 3.  HARASSMENT WAS SEVERE AND PERVASIVE

Lastly, it is undisputed that the adverse actions that the Defendant allowed/condoned were severe and pervasive and caused a hostile work environment evidence of this is the Defendant's own EEO Report finding.  On May 22, 2018, the EEO Investigator's results showed the comment was made by Mr. Porter and provided a list of recommended actions. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

### B.  PLAINTIFF CAN ESTABLISH TITLE VII RETALIATION CLAIM OF DISCRIMINATION

This honorable Court has already ruled on this issue.[4]  The evidence supports this Court's prior ruling that Plaintiff has a valid retaliation claim.  Assistant Chief

---

[4] "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (i) the plaintiff engaged in a protected activity under Title VII, (ii) the exercise of protected rights was known by the plaintiff's employer, (iii) the employer took adverse employment action against the plaintiff, and (iv) there was a causal connection between the adverse employment action and the protected activity." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995-996 (6th Cir. 2009).10 An adverse action is one "that a reasonable employee would have found [to be] . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from

Edwards, Plaintiff's second-level supervisor, was aware that Plaintiff filed other EEO complaints which were resolved at the informal stage. (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).   On March 6, 2017, Defendant and Plaintiff entered into a settlement agreement for the 2017 EEO agreeing that the adverse treatment would cease and punishment would be ordered by management. (SA, Ex. A DOD Investigation File at DEF-0152 – DEF-0153).   Plaintiff was treated differently by his co-workers once he filed the EEO Complaint, i.e., co-workers refused to sit or eat in the same area, refused to address Plaintiff in the morning, ignored his questions during training and overall vibe changed. (Ex. B, Plf. Dep. Part I at 150:1-10).   Chief Edwards, Chief Potter, Firefighter DeArmon, and Sean Beal created a hostile work environment once Plaintiff complained of Potter's unwelcomed, harassing comments by not talking to him, or saying good morning to him.  (Ex. B, Plf. Dep. Part I at 138:2-22)   On September 14, 2017, Plaintiff received a retaliatory write-up by Potter for allegedly having alleged banned material on his personal computer while in the privacy of his bunkroom at the firehouse, while not

---

making or supporting a charge of discrimination." *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 639 (6th Cir. 2009) (punctuation modified).   "Here, Dasilva alleges that after filing his 2017 EEO complaint, he applied for multiple promotions and transfers, all of which were denied due to Potter's negative influence. Am. Compl. ¶¶ 55, 58. A failure to promote or transfer an employee is clearly an adverse action under binding precedent." *See, e.g., Hunter*, 565 F.3d at 994 (listing "failure to promote" and "denial of transfer" as adverse actions). *Dasilva v. Esper,* Civil Action No. 20-cv-11358, 2022 U.S. Dist. LEXIS 24261, at *15 (E.D. Mich. Feb. 9, 2022).

performing the functions of his job. (Writeup, Ex. A DOD Investigation File at DEF-0269).

On April 29, 2018, Plaintiff submitted a request for an EEO Complaint based on Reprisal of previous complaint of harassment based on sex. (Ex. A DOD Investigation File at DEF-0151).   Also on April 29, 2018, Plaintiff sent an email to Melissa Kleehammer, CIV USARMY ID-SUSTAINMENT (US) and cc'd Porter, Robert G Jr CV USARMY ID-SUSTAINMENT (US) with subject: Reprisal (UNCLASSIFIED) attaching Sharp Complaint. (Notice Email, Ex. A DOD Investigation File at DEF-0128).

Other similarly situated fire fighters were granted the right to go to driver operator school which afforded them a promotion and a step increase pay grade but Plaintiff was told that there was no money for him to be trained.  (Ex. B, Plf. Dep. Part I at 142:15-143:1).   In 2019, Defendants and Potter discriminated against Plaintiff in the interview process of Plaintiff for the captain position. (Ex. B, Plf. Dep. Part I at 169:1-4).  Plaintiff sought a promotion for which Potter was assigned to the evaluation panel by Defendant.  At the time of the 2019 captain interview, Defendant and Potter were aware that Plaintiff had made direct complaints of hostile work environment of Potter in the SHARP complaint and EEO charge.  Additionally, at the time of Plaintiff's evaluation, Defendant and Potter were aware of Plaintiff's 2017 EEO Complaint and settlement, 2018 EEO Complaint, and SHARP Complaint.

(Notice Email, Ex. A DOD Investigation File at DEF-0128, ROI at DEF-0130 – DEF-0134). Potter's negative involvement in Plaintiff's evaluation caused Plaintiff not to receive a promotion. (Notice Email, Ex. A DOD Investigation File at DEF-0128).

After Plaintiff complained of hostile work environment, Plaintiff felt threatened, unsafe, scared and scared at work. (Ex. B, Plf. Dep. Part I at 154:5-23). Plaintiff was made to feel unsafe performing his firefighter duties. (Ex. B, Plf. Dep. Part I at 150:20-151:1). Plaintiff was asked by his co-workers if they could trust him in a fire if he could change lives because he was "upset with management". (Ex. B, Plf. Dep. Part I at 151:4-7). Plaintiff's captains told Plaintiff that he was not driving for them ever. (Ex. B, Plf. Dep. Part I at 151:4-151:9). In December 2019, Plaintiff's hostile work environment rose to the level of being life threatening when during a house fire a ceiling came down and completely knocked him out and his co-workers and supervisors refused/failed to pick him up leaving him to be picked up by the other city department. From this instance, Plaintiff felt uncomfortable that if he got hurt, his co-workers and supervisors would not come to get him. (Ex. B, Plf. Dep. Part I at 150:4-23). Captain Skabilia was the captain on that day and stated that he even moved when the ceiling fell on Plaintiff because he knew it was going to hit Plaintiff. (Ex. B, Plf. Dep. Part I at 151:4-7). Defendant was aware of the injuries Plaintiff sustained because he was transported to the hospital. (Ex. B, Plf. Dep. Part

I at 153:16-19).  Ultimately, Defendants lied to Plaintiff that his complaints of hostile work environment were being taken care.  However, Potter was not disciplined according to Defendant's policies and procedures (Army Table of Penalties).  (Ex. B, Plf. Dep. Part I at 155:8-24). (ROI, Ex. A DOD Investigation File at DEF-0130 – DEF-0134).

## VI.   CONCLUSION

Plaintiff respectfully prays to this honorable Court to deny Defendant's Motion for Summary Judgment in its entirety and set this matter for trial.

Dated: January 12, 2023                    Respectfully submitted,

Keith Altman, Esq.
Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
Tel: (987) 987-8929
*keithaltman@kaltmanlaw.com*

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Keith Altman, certify that this document complies with Local Rule 5.1(a),

including: double-spaced; at least one-inch margins on the top, sides, and bottom;

consecutive page numbering; and 14 point. I also certify that it is the appropriate

length. Local Rule 7.1(d)(3)."

Keith Altman, Esq.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JOE DASILVA, JR.,<br>*Plaintiff,*<br><br>v.<br><br>CHRISTINE WORMUTH,<br>Secretary of the Army, and<br>MARTIN POTTER, in his<br>individual capacity.<br>*Defendants.* | Case No: 2:20-cv-11358<br><br>Honorable Mark A. Goldsmith<br><br>Magistrate Judge Anthony P. Patti |

## CERTIFICATE OF SERVICE

I certify that on January 12, 2023, I served the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT CHRISTINE WORMUTH'S MOTION FOR SUMMARY JUDGMENT (ECF No. 90) upon all parties herein by filing copies of same using the ECF System.

Keith Altman, Esq.
Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (987) 987-8929
*keithaltman@kaltmanlaw.com*

*Attorneys for the Plaintiff*