# EXHIBIT C



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

REPLY TO
ATTENTION OF:

IMMI-EE                                                                 19 December 2018

**Certified Mail:  7009 1410 0000 6097 4754**

Solomon Radner
26700 Lahser Rd.
Southfield, MI  48033

                               Complainant of Joe DaSilva, Jr.
                                 v. Mark T. Esper, Secretary of the Army
                               DA Docket NO. ARDETROIT18MAY01583

Dear Mr. Radner,

      Please be advised that the investigation pertaining to a subject complaint(s) of discrimination filed on 29 April 2018 has been completed.  In accordance with Title 29, Code of Federal Regulations Section 1614.108(f), you are hereby provided a copy of the investigative file.  This investigative file does not consitiute a final Army decision on your (your client's) complaint.  Its primary purpose is to develop the facts of the case and provide the basis for deciding this complaint.

      You (you, on behalf of your client) have 30 calendar days from your receipt of this notice to request either a hearing before an Equal Employment Opportunity Commission (EEOC) administrative judge or a final Army decision based on this record.  If you (your client) elect(s) a hearing before an EEOC administrative judge, the enclosed Request for a Hearing must be sent directly EEOC Detroit Field Office, Patrick V. McNamara Building, 477 Michigan Avenue, Room 865, Detroit, MI 48226.  A copy of the Request for a Hearing must be provided to the undersigned.  In or attached to the hearing request to the EEOC, you must certify that a copy of the hearing request form was served on the EEO officer and agency representative, including the date and method of service.

      If you (you, on behalf of your client) request an EEOC hearing, an EEOC administrative judge will be appointed to hear the case.  The administrative judge may make a determination that there are no issues of material fact and issue a final decision without holding a hearing.  Should the administrative judge make such a determination on his or her own initiative, you will be notified and provided an opportunity to respond in writing within 15 calendar days of receipt of the notice.  If a hearing is to be conducted, the date and time of the hearing will be determined by the administrative judge.  The administrative judge will hear the case, make a final dceision on the complaint subject to final action by the Army, including appropriate remedies and relief where discrimination is found, within 180 calendar days of EEOC's receipt of your request for a hearing unless the administrative judge makes a writted determination that good cause exists for extending the time for issuing a decision on the complaint.  The administrative judge will

provide you (and your client) with a copy of the hearing record, including the transcript, if a hearing was help, and the decision. The Army will then consider the administrative judge's decision and issue a final Army Action.

Should you (you, on behalf of your client) decide not to request an EEOC hearing, you may request a final Army decision on the merits of the complaint by returning the enclosed Request for a Final Army Decision to the undersigned within 30 calendar days of your receipt of this notice. The Army will have 60 calendar days from the date of receipt of your request to review the case file and to issue the final Army decision. If you do not respond within 30 calendar days of receipt of this letter, the Army Director of EEO, or designee, will render a decision on the record as it stands.

Sincerely,

Melissa M. Kleehammer
Equal Employment Opportunity Officer (Acting)
USAG-Detroit Arsenal

Copy Curnished:
Complainant
Agency Representative

Enclosures
1. Copy of Investigative File
2. Request for Hearing
3. Request for a Final Army Decision



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI  48397-5000

REPLY TO
ATTENTION OF:

Date _____

EEOC Detroit Field Office
Patrick V. McNamara Building
477 Michigan Avenue, Room 865
Detroit, MI 48226.

      Processing EEO Office:
          USAG-Detroit Arsenal
          IMMI-EE
          6501 E. 11 Mile Road, MS 400
          Warren, MI  48397-5000
          (586)282-8354

Dear Sir or Madam,

I am requesting the appointment of an Equal Employment Opportunity commission
administrative judge pursuant to Title 29, Code of Federal Regulations (CFR), Party
1614.108(g).  I hereby certify that either more than <u>180 calendar days</u> have passed from the date
I filed my complaint(s) or I have received a notice from the Department of the Army that I have
<u>30 calendar days</u> to elect a hearing or a final Army decision.

My name: _____

My address: _____

                    _____

DA Docket Number(s):    ARDETROIT18MAY01583

In accordance with 29 CFR 1614.108(g), I have sent a copy of this request for a hearing to the
activity EEO officer at the address shown above.

                    Sincerely,

                    JOE DASILVA, JR.





**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

REPLY TO
ATTENTION OF:

Date _____

USAG-Detroit Arsenal
IMMI-EE
6501 E. 11 Mile Road, MS 455
Warren, MI 48397-5000

Dear Sir or Madam,

I am requesting a final Army decision without a hearing pursuant to Title 29, Code of Federal Regulations (CFR), Part 1614.110(b).

My name: _____

My address: _____

_____

DA Docket Number(s):      ARDETROIT18MAY01583

I understant that my complaint file will be forwarded to the Director of Army EEO (or his designee) for issuance of the final Army decision.

Sincerely,

JOE DASILVA, JR.



# Privacy Act Data Cover Sheet

To be used on
all documents
containing personal
information

## DOCUMENTS ENCLOSED ARE SUBJECT TO THE PRIVACY ACT OF 1974

Contents shall not be disclosed, discussed, or shared with individuals unless they have a direct need-to-know in the performance of their official duties.  Deliver this/these document(s) directly to the intended recipient.  **DO NOT** drop off with a third-party.

The enclosed document(s) may contain per~~~~~~~~~~~ileged information and should be treated as "For Official Use Only."  Unauthorized discl~~~~~ of this information may result in **CIVIL** and **CRI~~~~~~** ~enalties.  If you ar~ ~~t the intended recipient or believe that you have received this document(s) in error, do not copy, disseminate or otherwise use~~~~~~~~~~~~~~~~  contact the owner/creator or your Privacy Act officer regarding the document(s).

# Privacy Act Data Cover Sheet

000001

# INVESTIGATIVE FILE



### ARDETROIT18MAY01583
DOCKET NUMBER

### JOE DASILVA
COMPLAINANT

### DETROIT ARSENAL FIRE DEPARTMENT
### 6501 E. ELEVEN MILE ROAD
### WARREN, MI 48397
ORGANIZATION FILED AGAINST

### DEPARTMENT OF THE ARMY
COMPONENT FILED AGAINST

# DEPARTMENT OF DEFENSE
CIVILIAN PERSONNEL ADVISORY SERVICE
INVESTIGATIONS AND RESOLUTIONS DIRECTORATE

# INDEX
Investigative File
Complaint of Joe DaSilva
Agency Number ARDETROIT18MAY01583

Page

Investigative File Index.................................................................................3

**Section 1 – Formal Complaint Documents Submitted by Complainant**
Formal Complaint of Discrimination.................................................................6

**Section 2 – EEO Counseling Documents**
2.1 Counselor's Report (with attachments) ........................................................10
      a. Witness Participation Letters ...............................................................18
      a. Complainant's Previous EEO Counselor's Report
         (ARDETROIT17FEB000469) (with attachments) ........................................27
2.2 Notice of Rights and Responsibilities............................................................39
2.3 Notice of Right to File a Formal Complaint of Discrimination.........................48

**Section 3 – Claims to be Investigated**
3.1 Notice of Receipt .................................................................................52
3.2 Notice of Acceptance, June 1, 2018...........................................................54

**Section 4 – Attempts at Resolution**
Reserved................................................................................................59

**Section 5 – Appellate Activity**
Reserved................................................................................................60

**Section 6 – Summary of Evidence**
Report of Investigation ..............................................................................61

**Section 7 – Evidence**
7.1 Agency's Response to Document Request........................................................67
      a. Complainant's Position Description, Firefighter (Hazmat Tech/Basic Life
         Support), GS-0081-07 .......................................................................68
      b. Agency's Response to Request for Organizational Chart ...................................77
      c. Employment Data with Sex and National Origin.............................................78
      d. EEO/Harassment Policy Statements .........................................................79
      e. Data on EEO/Harassment Training ...........................................................86
      f. EEO/Harassment Bulletin Board Items.......................................................93
      g. Documentation of Management's Awareness of Alleged Harassment...............99
      h. Commander's Critical Information Requirements for Allegation
         of Sexual Harassment, April 5, 2018 ......................................................103
      i. Appointment of Investigating Officer .........................................................108
      h. Documents Pertaining to Investigation .......................................................112
      i. Allegation of Sexual Harassment-Investigative Results, May 22, 2018............121

# INDEX
Investigative File
Complaint of Joe DaSilva
Agency Number ARDETROIT18MAY01583

7.2  Additional Documentation from the Agency ................................................................122
     a.  Employment Data with Sex, Race, Age, and Reprisal Data ...........................123
     b.  Complainant's Prior EEO Activity ................................................................125

7.3  Testimony ....................................................................................................................126
     a.  Complainant's Testimony ...............................................................................127
     b.  Supplemental Declaration - Complainant ......................................................133
     c.  Sean Edwards's Declaration ...........................................................................137
     d.  Martin Potter's Declaration with attachments ...............................................142
     e.  Matthew Holtyn's Declaration .......................................................................151
     f.  Lesely Tillman's Declaration ..........................................................................155
     g.  David Ferris' Declaration ...............................................................................161
     h.  Supplemental Declaration - Martin Potter's ..................................................164

7.4  Investigator's Declaration ............................................................................................166

7.5  Miscellaneous Processing Documents ..........................................................................168

Agency sources provided the documents found in this file unless otherwise indicated. These documents have not been altered, unless indicated. Efforts were made to remove duplicate documents; however, duplicate documents may still exist within the case file.

000004

Intentionally
Left
Blank



# SECTION

# 1

# FORMAL COMPLAINT OF DISCRIMINATION

For use of this form, see AR 690-600; the proponent agency is OSA

### PRIVACY ACT STATEMENT (5 U.S.C. §552a)

**AUTHORITY:** Public Law 92-261

**PRINCIPAL PURPOSE:** Used for formal filing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical or mental disability, and/or reprisal by Department of the Army civilian employees, former employees, applicants for employment, and some contract employees.

**ROUTINE USES:** Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (Congress, White House, Equal Employment Opportunity Commission) regarding the status of an EEO complaint or appeal; or (d) to to adjudicate an EEO complaint or appeal.

**DISCLOSURE:** Voluntary, however, failure to complete all appropriate portions of the form may lead to rejection of complaint on the basis of inadequate data on which to continue processing.

| 1. NAME ( Last, First, Middle Initial) DASILVA JOE JR. | 2. SOCIAL SECURITY NUMBER 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 | 3. HOME TELEPHONE NUMBER (734)255-9837 |
|---|---|---|

| 4. HOME ADDRESS 3705 DEXTER ANN ARBOR ROAD ANN ARBOR, MI 48103 | 5. DO YOU CURRENTLY WORK FOR THE FEDERAL GOVERNMENT? ☐ NO ☒ YES (If yes, complete 6, 6a, 6b, 7 and 8.) |
|---|---|

| 6. NAME OF AGENCY WHERE CURRENTLY EMPLOYED US GOVERNMENT DEPARTMENT OF THE ARMY DETROIT ARSENAL FIRE DEPARTMENT | 6a. WORK TELEPHONE NUMBER (685)282-6448 |
|---|---|

| 6b EMPLOYER'S ADDRESS (Complete information to include office symbol) 6501 EAST 11 MILE ROAD WARREN, MI 48397-5000 | 7 PAY PLAN/SERIES/GRADE GS 07 07 |
|---|---|
| | 8. CURRENT JOB TITLE DRIVER OPERATOR/FIRE FIGHTER. E.M.T. |

### SECTION I - COMPLAINT INFORMATION

9. REASON YOU BELIEVE YOU WERE DISCRIMINATED AGAINST (Check below all that apply. Identify specific race, color, sex, age, religion, national origin, and/or disability.)

☒ RACE WHITE ☐ COLOR _____ SEX ☒ Male ☐ Female ☒ AGE 51

DATE OF BIRTH 19670324 ☒ NATIONAL ORIGIN BRAZILIAN ☒ RELIGION CATHLIC

DISABILITY ☐ Mental _____ ☐ Physical _____ ☐ REPRISAL _____

(Date(s) and type of prior EEO activity)

10. EXPLAIN WHEN AND HOW YOU WERE DISCRIMINATED AGAINST (If your complaint involves more than one basis of alleged discrimination, list and number each basis separately and provide specific factual information in support of each allegation of discrimination. If necessary, continue on page 2.)

On April 03,2018 Assistant Fire Chief Martin Potter made several harassing comments against me of an unwanted sexual nature such as " how much do breast implants cost" and remarks that I should be able to wear a "B-cop Bra". and before that he has also made statements last summer that " I should do the pencil test I bet you can hold a pencil under your those tits and it will not fall".

| **DA FORM 2590, FEB 2004** | REPLACES DA FORM 2590-R, AUG 89, WHICH IS OBSOLETE. | PAGE 1 OF 3 APD LC v1 01ES |
|---|---|---|

EXPLAIN WHEN AND HOW YOU WERE DISCRIMINATED AGAINST *(Cont'd) (If necessary, additional sheets may be used.)*

| 11a. NAME OF ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED | 11b. ADDRESS OF ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED |
|---|---|
| DETROIT ARSENAL FIRE DEPARTMENT | 6501 EAST 11 MILE ROAD WARREN,MI 48397-5000 |

12a. HAVE YOU DISCUSSED THE ISSUE *(s)* IN BLOCK 10 WITH AN EEO COUNSELOR? ☐ NO ☒ YES *(If yes, complete 12b, 12c, and 12d below.)*

| 12b. NAME OF EEO COUNSELOR | 12c. DATE OF INITIAL CONTACT WITH EEO OFFICIAL *(YYYYMMDD)* | 12d. DATE NOTICE OF RIGHT TO FILE A FORMAL COMPLAINT OF DISCRIMINATION RECEIVED *(YYYYMMDD)* |
|---|---|---|
| Ms. Melissa Kleehammer | 20180509 | 20180531 |

13. ELECTION OF REPRESENTATION

☐ ATTORNEY ☒ NON-ATTORNEY ☐ NO REPRESENTATION

NAME OF REPRESENTATIVE

ADDRESS

TELEPHONE NUMBER: FAX: E-MAIL:

14. WHAT RELIEF ARE YOU SEEKING TO RESOLVE THIS COMPLAINT? *(State specific corrective action desired for each allegation.)*
I have been told ZERO TOLERANCE for Sexual Harassment in the work place and he still works here. I have not been able to work any over time because we are not allowed to work together until the Garrison Complaint is completed. I have lost money because I have not worked overtime and I feel that the work place is not comfortable to work when around him.

15a. HAVE THE ISSUES IDENTIFIED IN BLOCK 10 BEEN APPEALED TO THE MERIT SYSTEMS PROTECTION BOARD *(MSPB)* OR FILED UNDER A UNION NEGOTIATED GRIEVANCE PROCEDURE? ☒ NO ☐ YES *(If yes, complete 15b, 15c and 15d below)*

| 15b. ☐ MSPB ☐ UNION NEGOTIATED GRIEVANCE | 15c. DATE FILED *(YYYYMMDD)* | 15d. MSPB OR UNION DOCKET NUMBER *(If known)* |
|---|---|---|

16. LIST NAME*(s)* OF WITNESS *(ES)* AND BRIEFLY STATE WHAT INFORMATION WITNESS MAY CONTRIBUTE TO THE INVESTIGATION OF YOUR COMPLAINT.
Witness # 1 Assistant Fire Chief Tillman
Witness # 2 Fire Fighter David Ferris
Witness # 3 Fire Fighter Mathew Holtyn
Witness # 4 Fire Fighter Johnathan Perkins
Witness # 5 Fire Fighter Mathew Kumlin

| 17a. SIGNATURE OF COMPLAINANT | 17b. DATE DA FORM 2590 SIGNED BY COMPLAINANT *(YYYYMMDD)* |
|---|---|
| DASILVA.JOE.JR.109290 2621 Digitally signed by DASILVA.JOE.JR.1092902621 Date: 2018.06.01 09:21 17:-04'00' | 20180601 |

DA FORM 2590, FEB 2004

PAGE 2 OF 3
APD LC v1 01ES

000008

## Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US)

| | |
|---|---|
| **From:** | Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US) |
| **Sent:** | Sunday, April 29, 2018 11:03 AM |
| **To:** | Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) |
| **Cc:** | Porter, Robert G Jr CIV USARMY ID-SUSTAINMENT (US); jdasilva324@comcast.net |
| **Subject:** | Reprisal (UNCLASSIFIED) |
| **Attachments:** | Sharp Complaint.pdf |
| **Signed By:** | joe.dasilva2.civ@mail.mi |

**Classification:**          UNCLASSIFIED

CLASSIFICATION: UNCLASSIFIED

Ms. KLeehammer,

I'm sending you this email to officially file a Reprisal Complaint on A/C Martin Potter on 09 Feb, 2017 I filed a EEC Complaint on A/C Martin Potter that was resolved in a meeting with a mediator and Mr. Young. On 06 March 2017. I was told that A/C Martin Potter would stop making inappropriate comments to me. On April 03,2018 and in the summer of 2017 A/C Martin Potter has not stopped making inappropriate sexual comments I feel that this has caused me to refile my EEO complaint for Reprisal and Retaliation and that he has also been showing some disparate treatment towards me and has played a very big role in my evaluation at the end of the year. I have attached the original EEO complaint and the agreement that was signed by myself and Mr. Young on 3-16-2917 and the emails that show disparate treatment by A/C Potter.   I would like this matter to be looked into again I would like to let your office know that I have filed a sexual harassment complaint with SHARP that is currently being investigated at this time by the Garrison Manager and the investigating officer is Mr. Robert Porter.  I would like your help in putting this matter to rest again.  Thank you for your time in this matter.

Joe DaSilva Jr.
Firefighter/E.M.T/Driver Operator
Installation Management Command
USAG Detroit Arsenal
Building 205,
6501 East 11 Mile Rd.
Warren, Michigan, 48397
Desk: 586-282-6448
DSN: 786-6448

CLASSIFICATION: UNCLASSIFIED

1



# SECTION

# 2.1

| EEO COUNSELOR'S REPORT | 1. DA DOCKET NUMBER |
|---|---|
| For use of this form see AR 690-600, the proponent agency is OSA. | ARDETROIT18MAY01583 |

### PRIVACY ACT STATEMENT (5 U.S.C. §552a)

**AUTHORITY:** Public Law 92-261

**PRINCIPAL PURPOSE:** Used for processing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical and/or mental disability, or reprisal by Department of the Army civilian employees, former employees, applicants for employment and some contract employees.

**ROUTINE USES:** Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts; (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (White House, Congress, Equal Employment Opportunity Commission) regarding the status of a complaint or appeal; or (d) to adjudicate complaint or appeal.

**DISCLOSURE:** Voluntary, however, failure to complete all appropriate portions of this form may lead to delay in processing and/or rejection of complaint on the basis of inadequate data on which to continue processing.

### SECTION I - PRE-COMPLAINT INTAKE INTERVIEW

| 2. NAME OF AGGRIEVED (Print-Last, First, Middle Initial) | 3. JOB TITLE |
|---|---|
| DaSilva, Jr., Joe | Fire Fighter |

| 4. PAY PLAN/SERIES/ GRADE | 5. DUTY ORGANIZATION (Complete address including office symbol) |
|---|---|
| GS-0081-07 | USAG-Detroit Arsenal<br>DES - Fire Division<br>6501 E. 11 Mile Road<br>Warren, MI 48397-5000 |

| 6. WORK TELEPHONE | 7. HOME TELEPHONE | 8. HOME ADDRESS |
|---|---|---|
| (586)282-6448 | (734)255-9837 | 3705 Dexter Ann Arbor Road, Ann Arbor, MI 48103 |

| 9. DATE OF ALLEGED DISCRIMINATORY ACTION (YYYYMMDD) | 10. 45TH CALENDAR DAY AFTER EVENT (YYYYMMDD) | 11. REASON FOR DELAYED CONTACT BEYOND 45 DAYS, IF APPLICABLE |
|---|---|---|
| 20180403 | 20180613 | |

| 12. DATE OF INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 13. 30TH CALENDAR DAY AFTER INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 14. 90TH CALENDAR DAY AFTER INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 15. DATE COUNSELING EXTENSION GRANTED, IF APPLICABLE (YYYYMMDD) |
|---|---|---|---|
| 20180429 | 20180529 | 20180728 | |

| 16. DATE PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED (YYYYMMDD) | 17. PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED: |
|---|---|
| 20180503 | ☐ Telephonically   ☒ In-Person   ☐ Other (facsimile/e-mail) |

### SECTION II - ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED (Complete address including office symbol)

USAG-Detroit Arsenal
DES - Fire Division
6501 E. 11 Mile Road
Warren, MI 48397-5000

### SECTION III - RESPONDING MANAGEMENT OFFICIAL(s) INFORMATION (Include name, complete work address and phone number if known.)

Martin Potter, Assistant Chief
6501 E. 11 Mile Road, Bldg 205
Warren, MI 48397-5000
(586)282-6448
martin.g.potter.civ@mail.mil

000011

| SECTION IV - BASIS OF COMPLAINT *(Identify specific race, color, religion, national origin, disability, age, sex, or reprisal if alleged.)* | | |
|---|---|---|
| ☐ RACE _____ | ☐ COLOR _____ | SEX ☒ Male  ☐ Female |
| ☐ AGE _____  DATE OF BIRTH _____ | ☒ NATIONAL ORIGIN Brazilian | |
| ☐ RELIGION _____  DISABILITY ☐ Mental _____ | | ☐ Physical _____ |
| ☐ REPRISAL _____ | | |
| *(Date(s) of prior EEO activity)* | | |

| SECTION V - MATTER (s) GIVING RISE TO COMPLAINT *(Specify who, what, where, and when.) (Use additional sheet of paper if necessary.)* |
|---|
| Was the aggrieved harassed (sexual) based on his sex (male) and National Origin (Brazilian) when unwanted sexual nature comments were made by Assistant Chief Martin Potter to include "how much do breast implants cost" and remarking that you should be able to wear a "B-cup bra"? |

1. In December 2016, the aggrieved alleges that Mr. Potter verbalized to him, "If I become assistant chief, I will make sure you don't move up." This was said in front of other staff.

2. The aggrieved stated that he has changed shifts in order to avoid Chief Potter, although still has to work with him on some days. The aggrieved states when he informed his new supervisor, Mr. Mike Ball, of the harassment, Mr. Ball chooses to stay out of it. The alleged states that 10 of 11 people have left Chief Potter's team due to harassment issues.

3. The aggrieved states Chief Edwards is aware of this complaint and does not support him, states it is a simple misinterpretation. The aggrieved states Chief Edwards told him, "I don't like you, I just have to work with you."

| SECTION VI - RELIEF SOUGHT |
|---|
| 1) Behavior to stop; 2) A C Chief Potter to either move out of his chain of command or be demoted so is his equal and no longer a block to his career; 3) Between 3 and 5 days of paid overtime; 4) To not have any shifts with Chief Potter |

000012

## SECTION VII - RIGHTS AND RESPONSIBILITIES

THE AGGRIEVED WAS PROVIDED WITH THE AGGRIEVED PERSON'S RIGHTS AND RESPONSIBILITIES NOTICE AND WAS SPECIFICALLY ADVISED OF THE FOLLOWING:

☐ The basis *(es)* for filing pre-complaint formal complaint, and/or class complaint and of right to file a formal complaint of discrimination.-

☐ The pre-complaint, formal and/or class complaint process.

☐ The 45-day calendar requirement from effective date of personnel action or of the date of the matter alleged to be discriminatory

☐ The role of the EEO counselor, including that the counselor is not an advocate for either the aggrieved person or the agency and acts strictly as a neutral.

☐ The activity's Alternate Dispute Resolution *(ADR)* Program and right to elect either ADR *(if offered)* or traditional EEO counseling.

☐ The right to remain anonymous during the pre-complaint process

☐ The right to representation throughout the complaint process.

☐ Responsibility of the aggrieved to notify the EEO office in writing of any change in address and/or phone number

☐ Responsibility of the aggrieved to notify the EEO office in writing of non-attorney or attorney representation, including address and phone number

☐ The possible election requirement between a negotiated grievance procedure, MSPB procedure and the EEO complaint process

☐ The election options in age and wage-based discrimination complaints.

## SECTION VIII - ELECTION OF REPRESENTATION

☐ ATTORNEY   ☐ NON-ATTORNEY   ☐ NON-REPRESENTATIVE

| NAME OF REPRESENTATIVE | | ADDRESS | |
|---|---|---|---|
| TELEPHONE NUMBER | FAX | | E-MAIL |

## SECTION IX - ALTERNATE DISPUTE RESOLUTION *(ADR)*

☒ Matter determined not appropriate for ADR _____ 5-3-18
*(Aggrieved must sign and date)*

☐ Matter determined appropriate for ADR _____
*(EEO Officer must initial and date)*

☐ Wishes to participate in ADR, if offered _____
*(EEO Officer must initial and date)*

Date of written offer of ADR _____

Date of Agreement to Participate in ADR _____

Name of assigned ADR facilitator/mediator _____

Date ADR facilitator/mediator assigned _____

**Result of ADR:**

☐ ADR was successful  Negotiated settlement agreement, signed on _____ *(YYYYMMDD)* is attached

☐ ADR was not successful  The aggrieved was issued a Notice of Right to File a Formal Complaint of Discrimination on _____ *(YYYYMMDD)* and notified of requirement to file a formal complaint within **15 calendar days** after receipt of Notice of Right to File. The aggrieved was provided a DA Form 2590, Formal Complaint of Discrimination.

## SECTION X - TRADITIONAL EEO COUNSELING *(EEO official to complete only those which apply )*

☐ Election of traditional counseling
Name of assigned EEO counselor _____
Date EEO counselor assigned _____

☐ Election to remain anonymous

☐ Election to waive right to remain anonymous

☐ Declined to pursue matter under Title VII

*DA FORM 7510, JUL 2010*

**SECTION XI - WITNESS INQUIRY**

a. Witness Information *(List all witness data here. Number sequentially and include name, title, organization, phone number, and relevant basis(es) information.)*

| | |
|---|---|
| Assistant Chief Lesley (Jerome) Tillman: | David L. Ferris: |
| Assistant Chief for Training/Prevention | Fire Fighter/EMT |
| Installation Management Command. Sustainment Directorate | Installation Management Command |
| USAG Detroit Arsenal, Building 205, Room 1B049-0 | U.S. Army Garrison - Detroit Arsenal, Building 205, |
| 6501 E. 11 Mile Rd. | Room 1C237-0, MS 137 |
| Warren, MI 48397 | 6501 E. 11 Mile Rd. Warren, MI 48397 |
| 586-282-5824 (w), 586-335-7077(c) | 586-282-6448 (w) |

b. Witness Statements

1. Assistant Chief Lesley (Jerome) Tillman:

Meet with Assistant Chief Jerome Tillman at the EEO office on 5.18.18. Mr Tillman stated that on the morning of 03 April 2018 he was in the firehouse kitchen and heard Chief Potter state to Mr. DaSilva "Joe you know how much breast implants cost, don't you?" Mr. Tillman is unsure if other's heard the statement. When asked if anything led up to this incident, Mr. Tillman stated there was a commercial for breast implants on the tv. Mr. Tillman left the kitchen after the incident and received a call from Mr. DaSilva the next day stating he was offended by the remark. Mr. Tillman contacted Chief Edwards the same day to inform him of the incident and was told by Chief Edwards to stay away from Mr. DaSilva and not talk to him. Mr. Tillman does not think any action took place as a result of this incident, as nothing was done. Mr. Tillman stated Chief Edwards was more focused on why DaSilva contacted Mr. Tillman about the incident.

Mr. Tillman stated he thinks Mr. DaSilva is being singled out by Chief Potter and Chief Edwards. Mr. Tillman stated he has been told by Chief Edwards on a few occasions since the 03 April 2018 incident to not talk to Mr. DaSilva. Mr. Tillman has not witnessed any other issues between Mr. DaSilva and Chief Potter. although disclosed he has had to change his schedule in order to prevent Mr. DaSivla and Chief Potter from working together. Mr. Tillman stated he has to work all week and weekend now and would rather be home with his family.

2. Firefighter David Ferris.

Receive an email response from Mr. Ferris on 5.25.18 and a copy of the email is in the file. Mr. Ferris stated he does not recall the event well, does recall Chief Potter mentioning something about Mr. DaSilva having breasts. Mr. Ferris stated he did not see the issue as something to report.

000014

**SECTION XI - WITNESS INQUIRY** *(Cont'd)*

Witness Statements *(Cont'd)*

c   Documents Reviewed *(List)*

Notes from initial interview between Mr. DaSilva and EEO
Email from Mr. Ferris dated 5/25/18
Emails from Mr. Tillman dated 5/18/18
Email from Mr. Young dated 5/30/18

d   Reviewed Documents Revealed

1.

2.  The aggrieved stated that he has changed shifts in order to avoid Chief Potter, although still has to work with him on some days. The aggrieved states when he informed his new supervisor, Mr. Mike Ball, of the harassment, Mr. Ball chooses to stay out of it. The alleged states that 10 of 11 people have left Chief Potter's team due to harassment issues.

**SECTION XII - OUTCOME OF PRE-COMPLAINT INQUIRY**

☒ Resolution was not accomplished, therefore, I conducted the final interview with aggrieved on __20180531__ *(YYYYMMDD)* at which time I informed the aggrieved of the full scope of my inquiry and the reason(s) articulated by management for action(s) taken
I provided the aggrieved with a Notice of Right to File a Formal Complaint of Discrimination and a DA Form 2590, Formal Complaint of Discrimination.  The aggrieved is aware of the requirement to file a formal complaint within **15 calendar days** of the final interview if not satisfied with the results of my inquiry

☐ Resolution was accomplished.  Negotiated settlement agreement, signed on _____ *(YYYYMMDD)* is attached

| PRINTED NAME OF EEO COUNSELOR | SIGNATURE OF EEO COUNSELOR |
|---|---|
| Amy Dombrowski | DOMBROWSKI.AMY.MARIE.1396384155 *(digitally signed)* |

| Attachments | DATE SUBMITTED TO EEO OFFICER *(YYYYMMDD)* |
|---|---|
| 1  Extension of counseling *(if applicable)*<br>2  Copies of reviewed documents | 20180531 |

DA FORM 7510, JUL 2010



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

REPLY TO
ATTENTION OF:

IMMI-EE                                                                    29 MAY 2018

MEMORANDUM FOR Mr. Joe DaSilva, Jr.

SUBJECT: Agreement to Extend Counseling, DA Docket Number: ARDETROIT18MAY01583

1. By signing this agreement, you agree to allow up to an additional <u>30 calendar days for</u> completion of counseling.  This will extend the counseling period to <u>60 calendar days.</u>  At or before the end of this period, the final interview will be conducted and you will be advised of your further rights unless you have entered into a settlement agreement resolving all issues.

2. This voluntary agreement means that counseling on the matter(s) you first brought to the attention of an EEO official on 29 April 2018, will be completed no later than 29 June 2018, 60 days from initial contact.

_____                          _____
Signature Aggrieved                                         Signature EEO Counselor

Printed on ♻ Recycled Paper

000016

## Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US)

| | |
|---|---|
| **To:** | YOUNG, ARTHUR J JR CIV USARMY ID-SUSTAINMENT (US) |
| **Cc:** | Ancrum, Tonja K CIV USARMY ID-SUSTAINMENT (US); Dombrowski, Amy M CIV USARMY (US) |
| **Subject:** | EEO Complaint Notification Message ARDETROIT18MAY01583 |
| **Attachments:** | Dombrowksi May 2018.pdf |

Mr. Young,

This message serves as notice that an (informal) Equal Employment Opportunity (EEO) pre-complaint of discrimination has been filed against the US Department of the Army regarding matters arising out of Emergency Services Directorate, Fire Division, USAG-Detroit Arsenal, Warren, MI.

Specifically, DaSILVA, Joe, Fire Fighter, GS-0081-07, DES (Aggrieved), DA Docket No. ARDETROIT18MAY01583 has alleged harassment (sexual) based on his sex (male) and National Origin (Brazilian) when unwanted sexual nature comments were made by Assistant Chief Martin Potter to include "how much do breast implants cost" and remarking that you should be able to wear a "B-cup bra"?

Mr. DaSilva's relief sought is 1) Behavior to stop; 2) A/C Chief Potter to find a new job outside of the Detroit Arsenal; 3) Between 3 and 5 days of paid overtime.

As Aggrieved has engaged in the EEO complaints process, every effort should be made to avoid even the appearance of reprisal by the Army's management or staff. In addition, please treat this, as with all EEO-related matters, strictly as need-to-know.

Ms. Amy Dombrowski has been assigned as the EEO Counselor to process this pre-complaint. We request full support and cooperation from all parties that may have been identified as having information referencing this complaint. (Please see attached notification.)

We look forward to working with you in seeking a resolution in this matter.

Should you have any questions or concerns regarding this matter, you may contact me at the number listed below.

MK
V/r,

Melissa Kleehammer
EEO Specialist and Complaints Manager
Installation Management Command
US Army Garrison - Detroit Arsenal
Building 230W, Room 1H139, MS 455
6501 East 11 Mile Rd.
Warren, MI 48397
Desk: 282-8354
DSN: 786-8354
Mobile: 586-216-8985

We are the Army's Home - Serving the Rugged Professional.
Learn more at www.imcom.army.mil

1



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

REPLY TO
ATTENTION OF:

IMMI-EE                                                                          18 May 2018

David Ferns

MEMORANDUM FOR ~~Name~~, 6501 E. 11 Mile Rd, Warren, MI 48397

SUBJECT: Witness Participation in Complaint Processing

1. A precomplaint of discrimination has been initiated against the Department of the Army wherein you have been identified as having knowledge concerning the matters alleged. The purpose of the discrimination complaint procedure is to determine whether the alleged discrimination occurred so that appropriate remedial action can be taken.

2. The discrimination complaint procedure consists of a precomplaint and a formal complaint process. During the precomplaint process, an Equal Employment Opportunity (EEO) counselor is assigned to make an inquiry into a matter of concern set forth by an individual. The individual presenting the matter(s) of concern is referred to as an "aggrieved" during the precomplaint process. The EEO counselor cannot reveal the identity of the aggrieved unless authorized to do so by the aggrieved. The precomplaint counseling stage is an informal process for resolving the matter(s) at issue. If the EEO counselor is unable to achieve resolution of the matter(s) of concern, the aggrieved will be advised of his/her right to further pursue the matter(s) by filing a formal complaint of alleged discrimination.

3. If the aggrieved decides to file a formal complaint of alleged discrimination and the complaint is accepted, it will be investigated by an investigator from the Department of Defense Investigations and Resolutions Division (DODIRD). The individual filing a formal complaint of alleged discrimination is referred to as the "complainant" during the formal process.

4. Your role in the complaint process is that of a witness. An EEO counselor may contact you and will solicit your input into the matter(s) of concern. Your participation in the counseling process may serve to assist in resolving the matter(s) quickly. Should the aggrieved decide to file a formal EEO complaint and it is accepted, you may be required to provide testimony at the investigation and at a hearing before an EEO Commission administrative judge.

5. As a witness, you have the right to have a personal representative at the EEO counselor interview and at any other meeting necessary during complaint process. A person of your own choosing, provided the choice of a representative does not involve a conflict of interest or conflict of position, may represent you. You may not be represented by the staff judge advocate or the agency representative (labor counselor).

6. Upon completion of the DODIRD investigation, the investigator will provide the EEO office with a Report of Investigation (ROI). The complainant will be provided a copy of the ROI and

IMMI-EE
SUBJECT:  Witness Participation in Complaint Processing

advised of the right to request either a hearing before an EEO Commission administrative judge
or the issuance of a final Army decision.

7.  If, after the DODIRD investigation, the complainant requests a hearing, the EEO Commission
will appoint an administrative judge to conduct the hearing and issue a decision on the
complaint, including appropriate remedies and relief, if discrimination is found.  In preparation
for and during an EEO Commission hearing, your testimony may be solicited once again.  You
will be afforded the opportunity to review relevant sanitized documents and to testify for the
record.  Again, you have the right to have a representative present during the EEO Commission
hearing.  Upon completion of the hearing, the EEO Commission administrative judge will
forward his/her decision to the Department of Army, Director for EEO Compliance and
Complaints Review for final action.

8.  Any questions or concerns can be addressed to the undersigned at (586)282-3739, or by email
at amy.m.dombrowski.civ@mail.mil.


AMY DOMBROWSKI
Equal Employment Opportunity Counselor
US Army Garrison - Detroit Arsenal


_____          5/25/18
(Witness Receipt Acknowledged)          (Date Received)


2



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E ELEVEN MILE ROAD
WARREN MI 48397-5000

REPLY TO
ATTENTION OF

IMMH-H                                                                       18 May 2018

*Lesley Tillman*

MEMORANDUM FOR Name, 6501 E. 11 Mile Rd. Warren, MI 48397

SUBJECT: Witness Participation in Complaint Processing

A precomplaint of discrimination has been initiated against the Department of the Army wherein you have been identified as having knowledge concerning the matters alleged. The purpose of the discrimination complaint procedure is to determine whether the alleged discrimination occurred so that appropriate remedial action can be taken.

The discrimination complaint procedure consists of a precomplaint and a formal complaint process. During the precomplaint process, an Equal Employment Opportunity (EEO) counselor is assigned to make an inquiry into a matter of concern set forth by an individual. The individual presenting the matter(s) of concern is referred to as an "aggrieved" during the precomplaint process. The EEO counselor cannot reveal the identity of the aggrieved unless authorized to do so by the aggrieved. The precomplaint counseling stage is an informal process for resolving the matter(s) at issue. If the EEO counselor is unable to achieve resolution of the matter(s) of concern, the aggrieved will be advised of his/her right to further pursue the matter(s) by filing a formal complaint of alleged discrimination.

3. If the aggrieved decides to file a formal complaint of alleged discrimination and the complaint is accepted, it will be investigated by an investigator from the Department of Defense Investigations and Resolutions Division (DODIRD). The individual filing a formal complaint of alleged discrimination is referred to as the "complainant" during the formal process.

4. Your role in the complaint process is that of a witness. An EEO counselor may contact you and will solicit your input into the matter(s) of concern. Your participation in the counseling process may serve to assist in resolving the matter(s) quickly. Should the aggrieved decide to file a formal EEO complaint and it is accepted, you may be required to provide testimony at the investigation and at a hearing before an EEO Commission administrative judge.

5. As a witness, you have the right to have a personal representative at the EEO counselor interview and at any other meeting necessary during complaint process. A person of your own choosing, provided the choice of a representative does not involve a conflict of interest or conflict of position, may represent you. You may not be represented by the Staff Judge Advocate or the agency representative (labor counselor).

6. Upon completion of the DODIRD investigation, the investigator will provide the EEO office with a Report of Investigation (ROI). The complainant will be provided a copy of the ROI and

000020

MEMO FOR
SUBJECT: Witness Participation in Complaint Processing

advised of the right to request either a hearing before an EEO Commission administrative judge or the issuance of a final Army decision.

7. If, after the DODIRD investigation, the complainant requests a hearing, the EEO Commission will appoint an administrative judge to conduct the hearing and issue a decision on the complaint, including appropriate remedies and relief, if discrimination is found. In preparation for and during an EEO Commission hearing, your testimony may be solicited once again. You will be afforded the opportunity to review relevant sanitized documents and to testify on the record. Again, you have the right to have a representative present during the EEO Commission hearing. Upon completion of the hearing, the EEO Commission administrative judge will forward his/her decision to the Department of Army, Director for EEO Compliance and Complaints Review for final action.

8. Any questions or concerns can be addressed to the undersigned at (586)282-3736 or by email at amy.m.dombrowski.civ@mail.mil

AMY DOMBROWSKI
Equal Employment Opportunity Counselor
US Army Garrison – Detroit Arsenal

_____        16 MAY 2018
(Witness Receipt Acknowledged)        (Date Received)



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 EAST 11 MILE ROAD
WARREN, MICHIGAN 48397-5000

REPLY TO
ATTENTION
OF:

IMMI-EE                                                                      8 MAY 2018

MEMORANDUM FOR Ms. Amy Dombrowski, EEO Collateral Duty Counselor, ACC-WRN, 6501 E. 11 Mile Road, Warren, Michigan 48397.

FOR Joe DaSilva, Jr., ARDETROIT18MAY01583 (pre-complaint)

SUBJECT: Equal Employment Opportunity Counseling Assignment

1. Effective upon receipt, Ms. Amy Dombrowski, Army collateral-duty Equal Employment Opportunity (EEO) Counselor, has been assigned to complete an inquiry into allegations of discriminatory conduct within IMCOM, Emergency Services Directorate, Warren, MI 48397.

2. In accordance with Equal Employment Opportunity Commission (EEOC) federal regulations, 29 CFR §1614, and Army Regulation (AR) 690-600, we request that all parties provide their full support and cooperation in the execution of EEO Counselor Ms. Dombrowki's duties.

3. You are reminded that all parties involved in an EEO action have the right to have a representative of their choosing present during all communications as long as there is not a conflict of interest.

4. You are further reminded of the confidential nature of EEO actions. All communication relating to this inquiry should be restricted to EEO officials and others on a need-to-know basis only. This is an EEO Inquiry (the first stage of a complaint) for gathering facts and attempting resolution; not an investigation.

5. The aggrieved initiated the counseling process on **3 May 2018,** AR 690-600, Chapter 3, Para 3-8a states, "The EEO Counselor's inquiry is designed to facilitate a resolution of the matters identified by the aggrieved. Usually such inquiries are to be completed within ten (10) days of assignment of the pre-complaint to the EEO counselor." Please complete your inquiry and conduct your final interview with the aggrieved by **1 June 2018**. If you are unable to meet this suspense, please advise the EEO Specialist as soon as practicable. You are to forward your DA 7510, EEO Counselor's Report, within five (5) calendar days of your completion of EEO counseling.

IMMI-EE
SUBJECT:  Equal Employment Opportunity Counseling Assignment

6.  Questions or concerns regarding this assignment should be addressed to Ms.
Melissa Kleehammer, USAG-DTA EEO Specialist at (586) 282-8354.

*Tonja Ancrum*

TONJA ANCRUM
Equal Employment Opportunity Officer
USAG – Detroit Arsenal

## Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US)

**From:** Dombrowski, Amy M CIV USARMY (US)
**Sent:** Wednesday, May 30, 2018 10:35 AM
**To:** Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US)
**Subject:** FW: EEO Complaint ARDETROIT18MAY01583 (UNCLASSIFIED)
**Signed By:** amy.m.dombrowski.civ@mail.mil

FYI

Amy Dombrowski
Contract Specialist
Army Contracting Command - Warren
Installation Support Contracting Division
CCTA-HSA-B
6501 E. 11 Mile Road
Warren, MI 48397-5000
Phone: 586-282-3739
Amy.m.dombrowski.civ@mail.mil

-----Original Message-----
From: YOUNG, ARTHUR J JR CIV USARMY ID-SUSTAINMENT (US)
Sent: Wednesday, May 30, 2018 10:34 AM
To: Dombrowski, Amy M CIV USARMY (US) <amy.m.dombrowski.civ@mail.mil>
Subject: RE: EEO Complaint ARDETROIT18MAY01583 (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

The issue raised in Mr. DaSilva's complaint was adjudicated through an AR 15-6 investigation directed by the Garrison Manager.  The Garrison Manager reviewed the finding of the investigating officer with Legal.  As a result of the investigation, I am proposing a corrective action directed at AC Potter, this should satisfy the request by Mr. Dasilva for the "behavior to stop".

Management will NOT support any request for AC Potter to "find a new job" nor to pay any monetary settlement to Firefighter DaSilva.

ARTHUR J. YOUNG, JR.
Director, Emergency Services
Installation Management Command
U.S. Army Garrison - Detroit Arsenal
Building 203, Room 1F193-O
6501 East 11 Mile Rd.
Warren, Michigan 48397
Desk: 586-282-0614
DSN: 786-0614
Cell: 586-943-8106

We are the Army's Home - Serving the Rugged Professional

1

Learn more at www.imcom.army.mil
Learn more at https://www.facebook.com/ArmyDetroitArsenal


-----Original Message-----
From: Dombrowski, Amy M CIV USARMY (US)
Sent: Wednesday, May 30, 2018 9:44 AM
To: YOUNG, ARTHUR J JR CIV USARMY ID-SUSTAINMENT (US) <arthur.j.young8.civ@mail.mil>
Cc: Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) <melissa.m.kleehammer.civ@mail.mil>
Subject: EEO Complaint ARDETROIT18MAY01583
Importance: High

Mr. Young,
As a follow-up to the notification of the aggrieved, Mr. DaSilva's, pre-complaint filed on 08 May 2018, I am inquiring if management is willing to provide any resolution at this time. As noted on 08 May 2018, the aggrieved sought the following relief: 1) Behavior to stop; 2) A/C Chief Potter to find a new job outside of the Detroit Arsenal; 3) Between 3 and 5 days of paid overtime.

Please advise.

Thank you,

Amy Dombrowski
Contract Specialist
Army Contracting Command - Warren
Installation Support Contracting Division
CCTA-HSA-B
6501 E. 11 Mile Road
Warren, MI 48397-5000
Phone: 586-282-3739
Amy.m.dombrowski.civ@mail.mil


CLASSIFICATION: UNCLASSIFIED

SENDER: COMPLETE THIS SECTION

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

Joe DaSilva, Jr.
3705 Dexter Ann Arbor Rd
Ann Arbor, MI 48103

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                        ☐ Agent
                                         ☐ Address

B. Received by ( Printed Name )   C. Date of Delivery
                                  MAR 07 2018

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☒ Return Receipt for Merchandi
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)              ☐ Yes

Article Number
(Transfer from service label)     7011 1150 0001 7317 7666

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

01-18
MK

Sent To  Joe DaSilva, Jr.
Street, Apt. No.
or PO Box No.  3705 Dexter Ann Arbor Rd
City, State, ZIP+4  Ann Arbor MI 48103

7011 1150 0001 7317 7666

PS Form 3800, August 2006      See Reverse for Instructions

| EEO COUNSELOR'S REPORT | 1. DA DOCKET NUMBER |
|---|---|
| For use of this form see AR 690-600, the proponent agency is OSA. | ARDETROIT17FEB000469 |

**PRIVACY ACT STATEMENT (5 U.S.C. §552a)**

| | |
|---|---|
| **AUTHORITY:** | Public Law 92-261 |
| **PRINCIPAL PURPOSE:** | Used for processing of complaints of discrimination because of race, color, national origin, religion, sex, age, physical and/or mental disability, or reprisal by Department of the Army civilian employees, former employees, applicants for employment and some contract employees. |
| **ROUTINE USES:** | Information will be used (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts, (b) to respond to general requests for information under the Freedom of Information Act; (c) to respond to requests from legitimate outside individuals or agencies (White House, Congress, Equal Employment Opportunity Commission) regarding the status of a complaint or appeal; or (d) to adjudicate complaint or appeal |
| **DISCLOSURE:** | Voluntary, however, failure to complete all appropriate portions of this form may lead to delay in processing and/or rejection of complaint on the basis of inadequate data on which to continue processing. |

**SECTION I - PRE-COMPLAINT INTAKE INTERVIEW**

| 2. NAME OF AGGRIEVED (Print-Last, First, Middle Initial) | | 3. JOB TITLE |
|---|---|---|
| DaSilva, Joe Jr. | | Fire Fighter/EMT |

| 4. PAY PLAN/SERIES/GRADE | 5. DUTY ORGANIZATION (Complete address including office symbol) |
|---|---|
| GS-0081-07 (7) | Detroit Arsenal Fire Department<br>6501 E. Eleven Mile Road, Building 203<br>Warren, MI 48397 |

| 6. WORK TELEPHONE | 7. HOME TELEPHONE | 8. HOME ADDRESS |
|---|---|---|
| (586) 282-6448 | (734) 255-9837 | 3705 Dexter Ann Arbor Road, Ann Arbor, MI |

| 9. DATE OF ALLEGED DISCRIMINATORY ACTION (YYYYMMDD) | 10. 45TH CALENDAR DAY AFTER EVENT (YYYYMMDD) | 11. REASON FOR DELAYED CONTACT BEYOND 45 DAYS, IF APPLICABLE | | |
|---|---|---|---|---|
| 20170203 | | | | |

| 12. DATE OF INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 13. 30TH CALENDAR DAY AFTER INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 14. 90TH CALENDAR DAY AFTER INITIAL CONTACT WITH EEO OFFICIAL (YYYYMMDD) | 15. DATE COUNSELING EXTENSION GRANTED, IF APPLICABLE (YYYYMMDD) |
|---|---|---|---|
| 20170206 | | | |

| 16. DATE PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED (YYYYMMDD) | 17. PRE-COMPLAINT INTAKE INTERVIEW CONDUCTED |
|---|---|
| 20170209 | ☐ Telephonically  ☒ In-Person  ☐ Other (facsimile/e-mail) |

**SECTION II - ORGANIZATION WHERE ALLEGED DISCRIMINATION OCCURRED (Complete address including office symbol)**

Detroit Arsenal Fire Department
6501 E. Eleven Mile Road
Warren, MI 48397

**SECTION III - RESPONDING MANAGEMENT OFFICIAL(s) INFORMATION (Include name, complete work address and phone number if known.)**

Sean Edwards, Fire Chief
Detroit Arsenal Fire Department
6501 E. Eleven Mile Road, Building 203
Warren, MI 48397
(586) 282-6448

Martin Potter, Assistant Fire Chief
Detroit Arsenal Fire Department
6501 E. Eleven Mile Road, Building 203
Warren, MI 48397
(586) 282-6448

**SECTION IV - BASIS OF COMPLAINT** *(Identify specific race, color, religion, national origin, disability, age, sex, or reprisal if alleged.)*

☐ RACE _____ ☐ COLOR _____ SEX ☐ Male ☐ Female

☐ AGE _____ DATE OF BIRTH _____ ☒ NATIONAL ORIGIN Brazilian _____

☐ RELIGION _____ DISABILITY ☐ Mental _____ ☐ Physical _____

☒ REPRISAL December 2015 _____

*(Date(s) of prior EEO activity)*

**SECTION V - MATTER (s) GIVING RISE TO COMPLAINT** *(Specify who, what, where, and when.) (Use additional sheet of paper if necessary.)*

Was aggrieved discriminated against and subjected to a hostile work environment based on National Origin (Brazilian) and reprisal (December 2015) when the following incidents occurred?

a. On 2 February 2017 - Aggrieve alleges Chief Potter rated him as a "2" Successful vs "1" Excellent.  Aggrieved stated there was some disparity when he and two other Fire Fighters submitted their input for performance evaluations.  He mentioned three FFs were late submitting bullets, when two were reprimanded for late submissions, including the aggrieved.  Their comments from Chief Potter was basically, "...one day late is unacceptable. Please ensure tasks are accomplished within set timelines." While one other FF was told, "I appreciate you acknowledging the overdue task. Please ensure tasks are accomplished in set time lines."  Aggrieved stated all three FFs were late submitting the bullets as they sat side-by-side completing the task. Aggrieved stated when he received the "2" and requested to discuss it with his 2nd line (Chief Edwards). Chief Potter stated that Chief Edwards agreed with him and had already signed the performance evaluation (DA Form 7223 BASE System Civilian Evaluation Report).

b. On 3 February 2017 - Aggrieve alleges Chief Edwards made the following comment after he (the aggrieved) picked up lunch for co-workers and the Chief:  "Do not touch my food DaSilva!"; "Do not touch my drink DaSilva!"; and "Thanks for the Hepititus C DaSilva!"  Aggrieved stated he mentioned to Chief Edwards he had to put the cap on his pop when he made the drinks for everyone, yet, the Chief was loud and rude.  The aggrieved states he is uncomfortable everyday and that Chief Edwards ostracizes/ignores him daily.

c. On or about 25 January 2017- Aggrieved stated he requested to attend the Fire Officer I course and Chief Potter denied the training.

d. On or about 6 January 2017- Aggrieved stated Chief Edwards made the following comment in the kitchen in front of his peers: "DaSilva I don't like you, I just have to work with you."  The aggrieved further mentioned his concerns with Chief Edwards behavior since he (Chief Edwards) is the Reviewer of his performance evaluation.

e. From time-to-time during lunch/dinner in the kitchen and depending on the topic of the conversation, Chief Potter will say, "put on a bra. You ought to put on a 38B." Aggrieved stated this happens periodically.

**SECTION VI - RELIEF SOUGHT**

Aggrieved would like to attend the Fire Officer I course; changed performance evaluation from "2" Successful to a "1" Excellent; request a closer look at how management evaluates subordinates (which may include training on Conducting mid-term evaluations and end-of-year performance evaluations); updated information on the upcoming Reduction-in-Force; and request Chief Edwards be removed from his chain of command.

DA FORM 7510, JUL 2010

## SECTION VII - RIGHTS AND RESPONSIBILITIES

THE AGGRIEVED WAS PROVIDED WITH THE AGGRIEVED PERSON'S RIGHTS AND RESPONSIBILITIES NOTICE AND WAS SPECIFICALLY ADVISED OF THE FOLLOWING

[X] The basis (es) for filing pre-complaint, formal complaint, and/or class complaint, and of right to file a formal complaint of discrimination.

[X] The pre-complaint, formal and/or class complaint process

[X] The 45-day calendar requirement from effective date of personnel action or of the date of the matter alleged to be discriminatory

[X] The role of the EEO counselor, including that the counselor is not an advocate for either the aggrieved person or the agency and acts strictly as a neutral

[X] The activity's Alternate Dispute Resolution (ADR) Program and right to elect either ADR (if offered) or traditional EEO counseling.

[X] The right to remain anonymous during the pre-complaint process

[X] The right to representation throughout the complaint process.

[X] Responsibility of the aggrieved to notify the EEO office in writing of any change in address and/or phone number.

[X] Responsibility of the aggrieved to notify the EEO office in writing of non-attorney or attorney representation, including address and phone number

[X] The possible election requirement between a negotiated grievance procedure, MSPB procedure and the EEO complaint process.

[X] The election options in age and wage based discrimination complaints

## SECTION VIII - ELECTION OF REPRESENTATION

| [ ] ATTORNEY | [ ] NON-ATTORNEY | [ ] NON-REPRESENTATIVE |
|---|---|---|

| NAME OF REPRESENTATIVE | | ADDRESS |
|---|---|---|

| TELEPHONE NUMBER | FAX | | E-MAIL |
|---|---|---|---|

## SECTION IX - ALTERNATE DISPUTE RESOLUTION (ADR)

[ ] Matter determined not appropriate for ADR _____
*(Aggrieved must sign and date)*

[X] Matter determined appropriate for ADR _____ JA 2-29-17
*(EEO Officer must initial and date)*

   [X] Wishes to participate in ADR, if offered _____ JA 2-13-17
   *(EEO Officer must initial and date)*

   Date of written offer of ADR _____ 20170209

   Date of Agreement to Participate in ADR _____ 20170213

   Name of assigned ADR facilitator/mediator _____ Lisa Olney

   Date ADR facilitator/mediator assigned _____ 20170224

**Result of ADR:**

[ ] ADR was successful. Negotiated settlement agreement, signed on _____ (YYYYMMDD), is attached.

[ ] ADR was not successful. The aggrieved was issued a Notice of Right to File a Formal Complaint of Discrimination on _____ (YYYYMMDD) and notified of requirement to file a formal complaint within **15 calendar days** after receipt of Notice of Right to File. The aggrieved was provided a DA Form 2590, Formal Complaint of Discrimination.

## SECTION X - TRADITIONAL EEO COUNSELING (EEO official to complete only those which apply)

[ ] Election of traditional counseling
   Name of assigned EEO counselor _____
   Date EEO counselor assigned _____

[ ] Election to remain anonymous

[X] Election to waive right to remain anonymous

[ ] Declined to pursue matter under Title VII

**SECTION XI - WITNESS INQUIRY**

a   Witness Information (List all witness data here. Number sequentially and include name, title, organization, phone number, and relevant basis(es) information.)

Jeffrey Hall, Captain, Detroit Arsenal Fire Department, 282-6448, witnessed comments made by Chief Edwards

Jonathan Perkins, Detroit Arsenal Fire Department, 282-6448, witnessed comments made by Chief Edwards

Michael Fern, Detroit Arsenal Fire Department, 282-6448, witnessed comments made by  Chief Edwards on 3 Feb 17

Matthew Holtyn, Detroit Arsenal Fire Department, 282-6448, witnessed comments made by Chief Edwards on 6 Jan 17

Adam Todd, Detroit Arsenal Fire Department, 282-6448, witnessed comments my Chief Edwards on 6 Jan 17

Leslie Tillman, Asst Chief, Detroit Arsenal Fire Department, 282-6448, witnessed comments made by both Chief Edwards and Potter.

b   Witness Statements

DA FORM 7510, JUL 2010

Page 4 of 5
APD . C vl 00ES

**SECTION XI - WITNESS INQUIRY** *(Cont'd)*

Witness Statements *(Cont'd)*

c  Documents Reviewed *(List)*

d  Reviewed Documents Revealed

**SECTION XII - OUTCOME OF PRE-COMPLAINT INQUIRY**

Resolution was not accomplished, therefore, I conducted the final interview with aggrieved on _____ (YYYYMMDD) at which time I informed the aggrieved of the full scope of my inquiry and the reason(s) articulated by management for action(s) taken  I provided the aggrieved with a Notice of Right to File a Formal Complaint of Discrimination and a DA Form 2590, Formal Complaint of Discrimination.  The aggrieved is aware of the requirement to file a formal complaint within **15 calendar days** of the final interview if not satisfied with the results of my inquiry

[X]  Resolution was accomplished  Negotiated settlement agreement, signed on 20170330 (YYYYMMDD) is attached

| PRINTED NAME OF EEO COUNSELOR | SIGNATURE OF EEO COUNSELOR | |
|---|---|---|
| Tonja Ancrum | Tonja Ancrum | |
| Attachments | | DATE SUBMITTED TO EEO OFFICER |
| 1  Extension of counseling *(if applicable)* | | *(YYYYMMDD)* |
| 2  Copies of reviewed documents | | 20170330 |

DA FORM 7510, JUL 2010

## Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US)

| | |
|---|---|
| **From:** | Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US) |
| **Sent:** | Sunday, April 29, 2018 11:03 AM |
| **To:** | Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) |
| **Cc:** | Porter, Robert G Jr CIV USARMY ID-SUSTAINMENT (US); jdasilva324@comcast.net |
| **Subject:** | Reprisal (UNCLASSIFIED) |
| **Attachments:** | Sharp Complaint.pdf |
| **Signed By:** | joe.dasilva2.civ@mail.mi |

**Classification:**          UNCLASSIFIED

CLASSIFICATION: UNCLASSIFIED

Ms. KLeehammer,

I'm sending you this email to officially file a Reprisal Complaint on A/C Martin Potter on 09 Feb, 2017 I filed a EEC Complaint on A/C Martin Potter that was resolved in a meeting with a mediator and Mr. Young. On 06 March 2017. I was told that A/C Martin Potter would stop making inappropriate comments to me. On April 03,2018 and in the summer of 2017 A/C Martin Potter has not stopped making inappropriate sexual comments I feel that this has caused me to refile my EEO complaint for Reprisal and Retaliation and that he has also been showing some disparate treatment towards me and has played a very big role in my evaluation at the end of the year. I have attached the original EEO complaint and the agreement that was signed by myself and Mr. Young on 3-16-2917 and the emails that show disparate treatment by A/C Potter. I would like this matter to be looked into again I would like to let your office know that I have filed a sexual harassment complaint with SHARP that is currently being investigated at this time by the Garrison Manager and the investigating officer is Mr. Robert Porter. I would like your help in putting this matter to rest again. Thank you for your time in this matter.

Joe DaSilva Jr.
Firefighter/E.M.T/Driver Operator
Installation Management Command
USAG Detroit Arsenal
Building 205,
6501 East 11 Mile Rd.
Warren, Michigan, 48397
Desk: 586-282-6448
DSN: 786-6448

CLASSIFICATION: UNCLASSIFIED

000032

NEGOTIATED SETTLEMENT AGREEMENT IN THE PRECOMPLAINT OF

Joe DaSilva, Jr.
Complainant

v.

Robert M. Speer, Acting, Secretary of the Army
U.S. Army Garrison-Detroit Arsenal
6501 East 11 Mile Road
Warren, Michigan 48397

1. In the interest of promoting the principles of the Equal Employment Opportunity (EEO)
Program, the Parties agree to settle the following complaint on the terms shown in paragraphs
three (3) and four (4) below:

DA Docket Number: ARDETROIT17FEB00469

2. By entering into this settlement, the Army does not admit that the Army, any Army official or
employee has violated Title VII of the Civil Rights Act of 1964, as amended, the Rehabilitation
Act of 1973, as amended, the Age Discrimination in Employment Act, as amended, the Equal
Pay Act or any other Federal or State statute or regulation.

3. The Army agrees to:

   a. To conduct an Inquiry into Fire Chief, Sean Edwards' alleged rude and discourteous
behavior towards the Complainant, Mr. Joe DaSilvia, Jr. The Inquiry shall start within Fifteen
(15) calendar days, and shall conclude within ninety (90) calendar days from the date of the
signed agreement.

   b. Not take any disciplinary action against the Complainant, Mr. Joe DaSilva, Jr. for acts that
occurred prior to 2 March 2017.

4. The complainant agrees to:

   a. Keep confidential all information regarding this EEO case, DA Docket Number
ARDETROIT17FEB00469 and all of its content or resolution efforts with any personnel located
on or affiliated with the Detroit Arsenal.

5. This agreement will become effective on the date it is signed by all parties. Execution of all
actions will be effective as noted in paragraph three (3) from the date this agreement is signed by
all parties.

6. Complainant's signature on this agreement constitutes a full and complete settlement of any
and all issues and claims arising from the circumstances of the aforementioned EEO complaint.
This includes but is not limited to, attorney's fees and costs arising from or related to the
aforementioned complaint. No other agreements shall be binding unless signed by all parties. In

1

Negotiated Settlement Agreement, DA Docket Number: ARDETROIT17FEB00469

addition, the Complainant agrees to waive his right to pursue administrative or judicial action in any forum concerning the matters raised in this complaint and that they will not be made the subject of future litigation.

7. If the complainant believes that the Army has failed to comply with the terms of this settlement agreement, the Complainant shall notify the Director, Equal Employment Opportunity Compliance and Complaints Review (EEOCCR), ATTN: SAMR-EEOCCR, 5825 21st Street, Building 214, Room 129, Fort Belvoir, VA 22060-5921, in writing, of the alleged noncompliance within 30 calendar days of when the Complainant knew or should have known of the alleged noncompliance.  A copy should also be sent to the activity Equal Employment Opportunity Officer, U.S. Army Garrison-Detroit Arsenal, 6501 East 11 Mile Road (Mail Stop 455), Warren, Michigan 48397.  The Complainant may request that the terms of the settlement agreement be specifically implemented, or alternatively, the complaint be reinstated for further processing from the point processing ceased.  If the Director, EEOCCR has not responded to the Complainant in writing or if the Complainant is not satisfied with the attempts to resolve the matter, the Complainant may appeal to the Equal Employment Opportunity Commission (EEOC), Office of Federal Operations, P.O. Box 77960, Washington DC 20013 for a determination as to whether the Army has complied with the terms of the settlement agreement. The Complainant may file such an appeal to the EEOC, 35 calendar days after service of the allegation of noncompliance upon EEOCCR but no later than 30 calendar days after receipt of the Army determination.

8.  The terms of this settlement agreement will not establish any precedent nor will the settlement be used as a basis by the Complainant or any representative organization as justification for similar terms in any subsequent case.

9.  I have read the negotiated settlement agreement and agree to accept its provisions.

| | |
|---|---|
| Joe Dasilva, Jr., Complainant | Arthur J. Young, Jr. , For the Army |
| 3-16-17 | Director, Emergency Services |
| Date Signed by Complainant | Title of Army Official |
| | 6 March 2017 |
| | Date Signed by Army Official |
| | |
| Complainant's Representative (if any) | Agency Representative |
| | 30 March 2017 |
| Date Signed by Complainant's Representative | Date Signed- Agency Representative |

000034

**Holtyn, Matthew J CIV (US)**

| | |
|---|---|
| **From:** | Potter, Martin G CIV USARMY (US) |
| **Sent:** | Thursday, ~~December 22, 20~~16 4:27 PM |
| **To:** | |
| **Subject:** | RE: 2016 Accomplishments |
| **Signed By:** | martin.g.potter.civ@mail.mil |

Mr. Holtyn,

I appreciate you acknowledging the overdue task. Please ensure tasks are accomplished in set time lines.

Thank you,

Martin Potter
Asst. Chief of Operations
Detroit Arsenal Fire and Emergency Services
586-282-6448

-----Original Message-----
███████████████ (US)
Sent: Thursday, December 22, 2016 2:48 PM
To: Potter, Martin G CIV USARMY (US) <martin.g.potter.civ@mail.mil>
Subject: RE: 2016 Accomplishments

A/C Potter,

I apologize for getting this to you late. No excuse.

V/r

Matt

-----Original Message-----
From: Potter, Martin G CIV USARMY (US)
Sent: Thursday, December 08, 2016 2:31 PM
To: Ashwell, Stephen Michael (Fire Dept..... Captain) CIV USARMY IMCOM CENTRAL (US)
<stephen.m.ashwell.civ@mail.mil>; Ball, Michael S CIV USARMY IMCOM CENTRAL (US) <michael.s.ball.civ@mail.mil>;
Biehl, Shane L CIV (US) <shane.l.biehl.civ@mail.mil>; Bowie, Jeremy L CIV (US) <jeremy.l.bowie.civ@mail.mil>; Dasilva,
Joe Jr CIV USARMY IMCOM CENTRAL (US) <joe.dasilva2.civ@mail.mil>; DeArmon, Jeremy D CIV USARMY IMCOM
CENTRAL (US) <jeremy.d.dearmon.civ@mail.mil>; Fern, Michael J CIV (US) <michael.j.fern4.civ@mail.mil>; Ferris, David L
CIV USARMY USAG (US) <david.l.ferris2.civ@mail.mil>; Furman, Brian D CIV USARMY IMCOM (US)
<brian.d.furman.civ@mail.mil>; Germain, Michael A Jr CIV USARMY USAG (US) <michael.a.germain6.civ@mail.mil>; Hall,
Jeffrey D CIV (US) <jeffrey.d.hall14.civ@mail.mil>; Holtyn, Matthew J CIV (US) <matthew.j.holtyn.civ@mail.mil>; Jones,
Christopher T CIV USARMY USAG (US) <christopher.t.jones.civ@mail.mil>; Kubiny, Bruce M CIV (US)
<bruce.m.kubiny.civ@mail.mil>; Kumlin, Matthew L CIV (US) <matthew.l.kumlin.civ@mail.mil>; LaMay, Brett J CIV
USARMY IMCOM CENTRAL (US) <brett.j.lamay.civ@mail.mil>; List, David F CIV USARMY USAG (US)

1

| RATEE'S NAME *(Last, First, Middle Initial)*<br>DaSilva, Joe Jr. | THRU DATE<br>20160101 Thru 20161231 |
|---|---|
| **b. RESPONSIBILITIES** | Specific bullet examples of other than "SUCCESS," are mandatory.<br>Specific bullet examples of "SUCCESS" are optional but encouraged. |

| 1. TECHNICAL COMPETENCE<br>    Technical knowledges, skills, abilities<br>    Doing work right/on time<br>    Sound judgement | -Exceeds expectations set forth in position description.<br>-Employee adequately operates department apparatus, ensuring crew arrive safely.<br>-Is eager to participate in professional development programs, attended flashover training improving knowledge base and preparing self for any conditions he may encounter.<br>-Keeps informed of new technologies in the EMS community, ensuring the department stays abreast to the newest techniques and procedures.<br>-Possesses the ability to identify and enforce life safety violations, regardless of the area or personnel affected. |

EXCELLENCE *(Exceeds std)* ☐  SUCCESS *(Meets std)* ☒  NEEDS IMPROVEMENT ☐  FAILS ☐

| 2. ADAPTABILITY AND INITIATIVE<br>    Adjusting to change - situations/people<br>    Trying new things<br>    Seeking self-development | -Shows inkintive by staying current as CPR Instructor, participated in successfully teaching over 100 installation personnel and 30 department personnel.<br>-Gone above and beyond to assist personnel with CDC practical preparation.<br>-Identified a need to update EMS response bags to provide more efficient and effective response capabilities. |

EXCELLENCE *(Exceeds std)* ☒  SUCCESS *(Meets std)* ☐  NEEDS IMPROVEMENT ☐  FAILS ☐

| 3. WORKING RELATIONSHIPS & COMMUNICATIONS<br>    Supporting team<br>    Respecting others<br>    Expressing ideas clearly<br>    Listening/understanding | -Consistently volunteers for tasks to support the team concept.<br>-Performs tasks in support of the department in off duty times to assist with quality of life.<br>-Excels in gaining approvals and authorizations even when others have failed.<br>-Has the ability to ask penetrating questions, ensuring understanding of procedures and policies; thus improving overall knowledge.<br>-Assisted with the Detroit Arsenal's 2nd annual CFC "Fill the Boot Drive".<br>-Must work on effective and appropriate communication with Leads and Supervisors. |

EXCELLENCE *(Exceeds std)* ☒  SUCCESS *(Meets std)* ☐  NEEDS IMPROVEMENT ☐  FAILS ☐

| 4. RESPONSIBILITY AND DEPENDABILITY<br>    Dependable/reliable<br>    Maintaining facilities/equipment<br>    Conserving supplies/time<br>    People/equipment safety | -Thoroughly inspects equipment, ensuring equipment is mission ready.<br>-Painstakingly enforced code violations within a multi-story facility; prevented a potential major life safety issue, ensuring the safety of hundreds of employees.<br>-Completes most tasks on time and within standards.<br>-Employee questions many tasks assigned by Leads, resulting in inefficient work and a disruption within the working environment. This effects morale and overall effectiveness of the mission. |

EXCELLENCE *(Exceeds std)* ☐  SUCCESS *(Meets std)* ☒  NEEDS IMPROVEMENT ☐  FAILS ☐

**Numbers 5 and 6 apply to positions with some supervisory duties**

| 5. SUPERVISION AND LEADERSHIP<br>    Mission focused/performance oriented<br>    Sets standard/Leads by example<br>    Motivating/developing others<br>    Implementing DA emphasis programs/managing resources | |

EXCELLENCE *(Exceeds std)* ☐  SUCCESS *(Meets std)* ☐  NEEDS IMPROVEMENT ☐  FAILS ☐

| 6. EEO AND AFFIRMATIVE ACTION<br>    Respecting dignity<br>    Achieving planned actions<br>    Providing opportunity<br>    Solving problems | |

EXCELLENCE *(Exceeds std)* ☐  SUCCESS *(Meets std)* ☐  NEEDS IMPROVEMENT ☐  FAILS ☐

| PART VI - SENIOR RATER *(if used)* or<br>RATER *(no senior rater used)* | PART VII - SENIOR RATER *(if used)* |
|---|---|
| OVERALL PERFORMANCE | BULLET COMMENTS *(Performance/Potential)* |

| 1 | ☒ | 3 | ■ 4 | ■ 5 |
|---|---|---|---|---|

SUCCESSFUL    FAIR    UNSUCCESSFUL<br>(MUST Have Senior Rater Review)

A completed DA Form 7223-1 was received with this report and considered in my evaluation and review.

☐ YES   ☐ NO *(Explain)* _____

REVERSE, DA FORM 7223, MAR 2010                            APD LC v1 02ES

| RATEE'S NAME (Last, First, Middle Initial) Perkins, Jonathan T. | THRU DATE 20160101 Thru 20161231 |
|---|---|
| **b. RESPONSIBILITIES** | Specific bullet examples of other than "SUCCESS," are mandatory. Specific bullet examples of "SUCCESS" are optional but encouraged. |

### 1. TECHNICAL COMPETENCE
Technical knowledges, skills, abilities
Doing work right/on time
Sound judgement

-Exceeds expectations set forth in position description.
-Continues to further knowledge by completing Fire Instructor II CDC.
-Is eager to participate in professional development programs, attended flashover training improving knowledge base and preparing self for any conditions he may encounter.
-Life Saver! Responded to man suffering heat stroke on a roof, performed emergency medical care, packaged the patient and set up rigging for removal from the roof.

EXCELLENCE (Exceeds std) [X]   SUCCESS (Meets std) [ ]   NEEDS IMPROVEMENT [ ]   FAILS [ ]

### 2. ADAPTABILITY AND INITIATIVE
Adjusting to change - situations/people
Trying new things
Seeking self-development

-Consistently identifies tactics and procedures which could be improved and develops plan to efficiently and safely accomplish the task.
-Went above and beyond to identify NFPA 1500 deficiencies, provided recommendations to bring the department into NFPA 1500 compliance.
-Works directly with DPW to update pre-fire plans and ensure the department maintains the most up to date information and facility layouts.

EXCELLENCE (Exceeds std) [X]   SUCCESS (Meets std) [ ]   NEEDS IMPROVEMENT [ ]   FAILS [ ]

### 3. WORKING RELATIONSHIPS & COMMUNICATIONS
Supporting team
Respecting others
Expressing ideas clearly
Listening/understanding

-Clearly expresses ideas for the betterment of the department regardless of the topic or who the information is being presented to.
-Doesn't always appropriately deal with the public, work towards improving public image and communication skills.
-Very knowledgeable member of the team, consistently passes knowledge and expertise on to junior members, improving the overall operational capabilities of the team.

EXCELLENCE (Exceeds std) [ ]   SUCCESS (Meets std) [X]   NEEDS IMPROVEMENT [ ]   FAILS [ ]

### 4. RESPONSIBILITY AND DEPENDABILITY
Dependable/reliable
Maintaining facilities/equipment
Conserving supplies/time
People/equipment safety

-Handles challenging situations with confidence, can be relied upon in any situation.
-Completes tasks on time and to high standards.
-Maintains equipment and facilities in operationally ready state, puts the extra effort in to ensure personnel and equipment are mission ready.
-Appropriately maintains Emergency Reporting Database to ensure program equipment is tracked and necessary documentation is available.

EXCELLENCE (Exceeds std) [X]   SUCCESS (Meets std) [ ]   NEEDS IMPROVEMENT [ ]   FAILS [ ]

**Numbers 5 and 6 apply to positions with some supervisory duties**

### 5. SUPERVISION AND LEADERSHIP
Mission focused/performance oriented
Sets standard/Leads by example
Motivating/developing others
Implementing DA emphasis programs/managing resources

EXCELLENCE (Exceeds std) [ ]   SUCCESS (Meets std) [ ]   NEEDS IMPROVEMENT [ ]   FAILS [ ]

### 6. EEO AND AFFIRMATIVE ACTION
Respecting dignity
Achieving planned actions
Providing opportunity
Solving problems

EXCELLENCE (Exceeds std) [ ]   SUCCESS (Meets std) [ ]   NEEDS IMPROVEMENT [ ]   FAILS [ ]

| PART VI - SENIOR RATER (If used) or RATER (no senior rater used) | PART VII - SENIOR RATER (If used) |
|---|---|
| OVERALL PERFORMANCE | BULLET COMMENTS (Performance/Potential) |

[X]  2  3  [ ]  4  [ ]  6

SUCCESSFUL    FAIR    UNSUCCESSFUL
(MUST Have Senior Rater Review)

A completed DA Form 7223-1 was received with this report and considered in my evaluation and review.

[X] YES    [ ] NO (Explain) _____

*REVERSE, DA FORM 7223, MAR 2010*                                                                 APD LC v1.00ES

**Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US)**

| | |
|---|---|
| **From:** | Potter, Martin G CIV USARMY (US) |
| **Sent:** | Thursday, December 22, 2016 1:23 PM |
| **To:** | Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US) |
| **Subject:** | RE: Year end Bullets for 2016 |
| **Signed By:** | martin.g.potter.civ@mail.mil |

Mr. Dasilva,

I appreciate you sending these to me, but one day late is unacceptable. You were notified on December 8, 2016, which means you were afforded plenty of time to accomplish this task. Please ensure tasks are accomplished within the set timeframes.

V/R,

Martin Potter
Asst. Chief of Operations
Detroit Arsenal Fire and Emergency Services
586-282-6448

-----Original Message-----
From: Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US)
Sent: Thursday, December 22, 2016 10:24 AM
To: Potter, Martin G CIV USARMY (US) <martin.g.potter.civ@mail.mil>
Subject: Year end Bullets for 2016

Chief,

Here are my Year end bullets for 2016 sorry that it is a day late I was off for the last three days.

A.
1.      Finished all required (TEDS) Training for the year.

2.      Able to step up and do the following tasks:

3.      Had the special rings made per Chief Ball request for the Fire Hydrants 2/3/2016

4.      Had to make changes to the Ambulance jump bag changed out the Pediatric jump bag made a small new one (blue) in color to not damage the equipment. 4/2016

 5. Volunteer for overtime to help with staffing.

6.      Working during lunch time.

1

# SECTION

# 2.2



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, FORT BRAGG GARRISON COMMMAND (AIRBORNE)
FORT BRAGG, NORTH CAROLINA 28310-5000

REPLY TO
ATTENTION OF

IMMI-EE                                              3 May 2018

MEMORANDUM FOR Mr. Joe DaSilva, Jr.

SUBJECT:  Aggrieved Person's Rights and Responsibilities

1.  **Purpose.**  If you believe you have been discriminated against because of your race, color, religion, sex, national origin, age, physical or mental disability, genetic information and/or subjected to reprisal in an employment matter subject to the control of the Army, you may have a choice of options to pursue your Equal Employment Opportunity (EEO) complaint and have it resolved.  The purpose of this memorandum is to advise you, in writing, of those rights and responsibilities.

2.  **Rights for Employees Outside of a Bargaining Unit**

    a.  If you are not a member of a bargaining unit covered by a union contract, you have the right to pursue a discrimination complaint under the procedures covered by Army Regulation (AR) 690-600.  Your first step under this procedure is to contact an Equal Employment Opportunity (EEO) official within <u>45 calendar days</u> of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within <u>45 calendar days</u> of the effective date of the action.  An EEO official, such as the EEO officer, specialist, assistant or counselor may offer you the opportunity to participate in the precomplaint counseling process or, if determined appropriate, the alternative dispute resolution (ADR) method in lieu of traditional counseling.  An individual contacting an EEO official or EEO counselor at the precomplaint stage is referred to as the "aggrieved."

        (1)  <u>ADR:</u>  Mediation is the ADR process preferred by the Department of the Army, however, other methods may be offered as determined by the activity.  Mediation is a method by which an objective and impartial person (a trained mediator) facilitates communication between the aggrieved and management to resolve concern(s) or dispute(s).  If you are **offered** and choose to participate in mediation, the precomplaint period will be extended an additional 60 calendar days from the date you initiate the pre-complaint phase of the EEO complaint process to accomplish the mediation.

        (a)  If ADR is successful, the participants will sign a negotiated settlement agreement.  A signed settlement agreement is binding on both parties.

        (b)  If ADR is not successful or if some issues remain unresolved after mediation, you will be given a Notice of Right to File a Formal Complaint of Discrimination.

000040

(2) Traditional Counseling: If ADR is not offered or you choose not to participate in ADR, the EEO counselor will continue with traditional EEO counseling.

(a) During the initial interview with the assigned EEO counselor, the claim(s) you previously identified during the initial intake interview will be discussed in order to define and record the specific dates and facts of the incidents or personnel actions you allege to be discriminatory. If you present additional matters not initially recorded during the precomplaint intake interview during the EEO counselor's inquiry, those issues must be recorded in the EEO counselor's report.

(b) You are obligated to cooperate with the EEO counselor in clearly defining the claim(s) and basis(es) for inquiry. The EEO counselor's inquiry is designed to facilitate a satisfactory resolution of your allegations. The EEO counselor will advise you of the results of the inquiry and discuss proposed solutions.

(c) If resolution of your complaint is not achieved, the EEO counselor will conduct a final interview with you within 30 calendar days of the date you initiated the counseling process, unless an extension of the counseling period is executed, in writing. The EEO counselor will then issue you a Notice of Right to File a Formal Complaint of Discrimination.

(d) Upon receipt of the Notice of Right to File a Formal Complaint of Discrimination, you may file a formal complaint of discrimination. The EEO counselor will advise you with whom to file your formal complaint and will explain the formal complaint procedures. Formal complaints of discrimination fall under two separate categories, non-mixed complaints and mixed complaints, and each is processed differently.

• A non-mixed complaint is one in which actions identified as discriminatory are not appealable to the Merit Systems Protection Board (MSPB). Formal complaint procedures in non-mixed cases include an investigation by the Department of Defense Investigations and Resolutions Division (DoDIRD), your choice of requesting either a hearing before an Equal Employment Opportunity Commission (EEOC) administrative judge after which the Director EEO Compliance and Complaints Review (EEOCCR) will issue a final action or a decision by the Director EEOCCR without a hearing by an EEOC administrative judge.

• A mixed complaint of discrimination is a complaint that stems from an alleged discriminatory action that can be appealed to the MSPB (see paragraph b. below). In mixed complaint cases, you have the right to an investigation by the DoDIRD; however, you do not have a right to a hearing by an EEOC administrative judge. The Director EEOCCR will issue a final agency decision upon completion of the investigation by the DoDIRD and will provide you with appeal rights to the MSPB.

b. Merit Systems Protection Board (MSPB): You may pursue a discrimination complaint under the MSPB appeal procedure without using the federal sector EEO complaint process. This procedure is available to you only if the alleged discriminatory

2

action can be appealed to the MSPB. This type of matter is referred to as a mixed case. The case is "mixed" in that it contains an action that may be appealed to MSPB and also alleges the action was discriminatory. Examples of personnel actions that are appealable to the MSPB include, but are not limited to, removal or suspension for more than 14 days of a non-probationary, competitive service employee. If you are subject to a personnel action that is appealable to the MSPB, you will be notified in writing of your right to appeal to the MSPB. The time limit for appeal to the MSPB is 30 calendar days after the effective date of the personnel action that you believe to be discriminatory in nature. Under such an appeal, you are entitled to a hearing by the MSPB. In addition, you may petition the EEOC to review the final decision of the MSPB on the allegation(s) of discrimination.

3. **Options for Employees within a Bargaining Unit.** If you are a member of a bargaining unit covered by a union contract, and if the negotiated grievance procedure excludes discrimination claims, your rights are the same as those shown in paragraphs 2a and 2b above. If you are a member of a bargaining unit covered by a union contract, and if the negotiated grievance procedure in that contract does not specifically exclude discrimination issues, you have the right to select one of the following options:

   a. You may pursue a discrimination complaint under the procedures covered by AR 690-600 as described in paragraph 2a above. This includes the option to participate in ADR, if offered, during the precomplaint process.

   b. You may pursue a discrimination complaint under the Merit Systems Protection Board (MSPB) appeal procedure as described in paragraph 2b above, if the claim(s) giving rise to your complaint are appealable to the MSPB.

   c. You may pursue a discrimination complaint under the negotiated grievance procedure. Your union contract outlines the grievance steps. Note the following:

      (1) Decisions in actions covered by Title 5, United States Code, Section 7512 or 4303 cases are not appealable to the Federal Labor Relations Authority (FLRA).

      (2) In actions not appealable to the MSPB, but covered by the negotiated grievance procedure, you may choose between the grievance procedure or the EEO complaint procedure under AR 690-600.

      (3) You may not seek redress under the EEO complaint procedure and the negotiated grievance procedure. When you select the negotiated grievance procedure by filing a timely written grievance, your decision is considered to be final and you cannot seek redress under the EEO complaint procedure.

      (4) A grievance under the negotiated procedure may be rejected if you have filed a timely appeal with the MSPB or if you have filed a formal discrimination complaint under the EEO complaint procedure.

000042

4. **Administrative Grievance Procedures.**  An employee may not raise allegations of discrimination that are subject to final administrative review by the EEOC in the administrative grievance procedure.  (See DoD Directive 1400.25M, Subchapter 771.)

5. **Additional Option for Age Discrimination in Employment Act of 1967 (ADEA), as amended, discrimination complainants (age 40 and over).**  In lieu of filing a complaint under this regulation, a mixed case appeal with MSPB (if applicable) or a negotiated grievance (if applicable) as described above, you may elect to bypass the administrative procedure and file a civil action directly in an appropriate US District Court, after first filing a written notice of intent to file a civil action with the EEOC within 180 calendar days of the date of the alleged discriminatory action.  Once a timely notice of intent to sue is filed with the EEOC, you must wait at least 30 calendar days before filing a civil action.

   a.  You must be aware that if you elect to file an administrative complaint rather than filing directly in U.S. District Court, you must exhaust your administrative remedies before you can file a civil action.

   b.  In a non-mixed complaint, you will have exhausted your administrative remedies when one of the following occurs:

      (1)  after receiving notice of the final Army decision on your complaint, if no appeal has been filed; or, after 180 calendar days from the date you filed your complaint with the Army and the Army has failed to issue a final decision and no appeal has been filed; or

      (2)  after receiving the EEOC's final decision on your appeal; or after 180 calendar days from the date you filed an appeal with the EEOC and the EEOC has not issued a final decision on the appeal.

   c.  Should you elect to bypass the administrative procedure in an age discrimination complaint, you are responsible for providing the following information in your notice of intent to sue:

      (1)  The date prepared.
      (2)  Statement of intent to file a civil action under Section 15(d) of the ADEA, as amended.
      (3)  Your name, address, and telephone number.
      (4)  Name, address, and telephone number(s) of your designated representative, if any.
      (5)  Name and location of the Federal agency or installation where the alleged discriminatory action occurred.
      (6)  Statement of the nature of the alleged discriminatory action(s).
      (7)  Date(s) the alleged discriminatory action occurred.
      (8)  Your signature or the signature of your designated representative.

d. Attorney's fees and costs are not recoverable in the administrative process and compensatory damages are never an available form of relief.

e. Notices of intent to sue under the ADEA must be submitted to the EEOC by facsimile (202) 663-7022 or sent/hand delivered to the following address:

Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, D.C. 20013 (if sent by mail)
One NOMA Station
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507 (if hand delivered)

6. **Option for Equal Pay Act:**  If you are alleging sex-based wage discrimination under the Equal Pay Act (EPA), you have the right to go directly to the US District Court even though such claims are also cognizable under Title VII.  A civil action must be filed within 2 years of the date of the occurrence, or within 3 years of the date of the alleged violation if the violation is willful.  Notwithstanding the two/three year limitations period applicable to the current action under the EPA, in order to present an administrative EPA claim, the aggrieved must contact an EEO counselor within 45 calendar days of the date the aggrieved becomes aware of or reasonably suspects a violation of the EPA.  The filing of an administrative complaint does not toll the time for filing a civil action.  Attorney's fees and costs and compensatory damages are not recoverable in sex-based wage discrimination claims in the administrative process.

7. **Additional Rights under the EEO Process.**

a. You have the right to remain anonymous during the counseling. The counselor will refrain from revealing your identity except by your authorization.  However, if you choose to participate in ADR, you will not be able to remain anonymous.

b. You have the right to a representative of your choice throughout the complaint process including precomplaint counseling.  This right to a choice of representation will be limited when there is a conflict of interest as defined in AR 690-600. Your right to representation is extended to the ADR process.  However, the ADR neutral will decide the extent to which the representative actively participates in ADR.  Nonetheless, you will have sufficient time to discuss resolution and review any proposed terms with your representative prior to finalizing a settlement agreement.  If your representative is an attorney, all documents will be officially served on your attorney.

c. If traditional EEO counseling is opted, you have the right to receive in writing within 30 calendar days of the first counseling contact (unless you agree in writing to an extension for counseling) a notice terminating counseling and informing you of:

000044

(1)  the right to file a formal individual or class complaint within <u>15 calendar days</u> of receipt of the notice,

(2)  the appropriate official with whom to file a formal complaint, and

(3)  your duty to immediately inform the agency if you retain counsel or a representative.

d.  Any extension of the counseling period may not exceed an additional <u>60 calendar days.</u>  When notice is not provided and no extension is secured, you have the right to file a formal complaint of discrimination after the 30th day.  Exception:  If you agree to participate in mediation and unresolved issues remain after the mediation attempt, the written Notice of Right to File a Formal Complaint of Discrimination will be issued upon completion of the mediation process or within <u>90 calendar days</u> of the initial contact, whichever comes first.

e.  If you file a formal complaint, you have a right to be notified in writing whether the activity EEO officer accepts or dismisses your complaint.  If you do not receive written notice within fifteen (15) calendar days of filing a formal complaint, you should contact the EEO officer.  If your allegations are dismissed entirely or partially, you will be advised in writing of the basis and rationale for any dismissed allegations.

f.   If you file a non-mixed EEO complaint and your allegations are dismissed in their entirety, you will be advised of your right to appeal the dismissal decision to the EEOC.  If some but not all of your allegations are dismissed, the dismissed portion of your claim is not appealable to the EEOC until a final decision/action on the entire complaint is issued.  However, the dismissed portion is subject to review by an administrative judge if a hearing is requested on the remainder of the complaint.

g.   If you file a non-mixed EEO complaint, you have the right to request a hearing before an EEOC administrative judge after <u>180 calendar days</u> from the filing of a formal complaint or after completion of the investigation, whichever comes first.  Further, you have the right to file a civil action in an appropriate US District court:

(1)  within <u>90 calendar days</u> of receipt of a final agency action/decision if no appeal has been filed
(2)  <u>180 calendar days</u> after filing a formal complaint if an appeal has not been filed and a final agency action/decision has not been issued;
(3)  within <u>90 calendar days</u> of receipt of the EEOC's final decision on an appeal; or
(4)  <u>180 calendar days</u> after filing an appeal with EEOC if there has been no final decision by the EEOC.

h.  If you file a mixed EEO complaint and a final agency decision is not issued within <u>120 calendar days</u> after filing, you have the right to either appeal the matter to the MSPB <u>or</u> you may file a civil action.

i.   If you file a mixed EEO complaint and are dissatisfied with the final agency decision, you have the right to appeal the matter to the MSPB, not the EEOC, within <u>30 calendar days</u> after receipt of the final agency decision.

j.  When you have filed two or more complaints, you have the right to receive in writing a notice that the agency is consolidating your complaints; that the investigation will be completed within the earlier of <u>180 calendar days</u> after the filing of the last complaint or <u>360 calendar days</u> of the filing of the first complaint; and that you may request a hearing with an administrative judge at any time after <u>180 calendar days</u> of the filing of the first complaint.

k.  You have the right to amend a pending complaint to add additional incidents or claims that are like or related to those raised in the pending complaint at any time prior to the completion of the investigation.  The agency is required to complete its investigation within the earlier of <u>180 calendar days</u> after the last amendment to the complaint or <u>360 calendar days</u> after the filing of the original complaint.

8. <u>**Responsibilities**</u>

a.  You are responsible for cooperating with those individuals involved in the processing of your complaint.

b.  At all times during the administrative processing of your complaint, you are responsible for updating, in writing, the activity EEO officer and the EEOC of any changes to your current mailing address.  Failure to keep the agency and the EEOC informed of your current address may result in dismissal of your complaint.

c.  You are responsible for filing a formal EEO complaint within <u>15 calendar days</u> after receipt of the Notice of Right to File a Formal Complaint of Discrimination, in the event that you wish to file a formal complaint at the conclusion of traditional EEO counseling or ADR.

d.  You are responsible for electing your avenue of redress.  The formal action you file first (an MSPB mixed case appeal, a discrimination complaint under the EEO complaint procedure, or a written grievance under the negotiated grievance procedure) is considered to be an election to proceed only in that forum as to the alleged discrimination.  Thus, you should be aware that:

(1)  An appeal to the MSPB will not be accepted if you have filed a timely formal complaint in writing under the EEO complaint procedure or a timely written grievance under the negotiated procedure.

(2)  A discrimination complaint filed under the EEO complaint procedure will be dismissed if you have first filed a timely appeal to the MSPB or a timely written grievance under the negotiated procedure on the same matter.

000046

e. If you file a formal complaint, you are responsible for informing the EEO officer whether you are represented, by whom, and the address and telephone number(s) of your representative. You must also inform the EEO officer of any change in representation. You are responsible for electing your avenue of redress.

f. If you request a hearing before an EEOC administrative judge, you are responsible for sending your request directly to the appropriate EEOC field office and providing the EEO officer a copy of that request. You are also responsible for certifying to the administrative judge that you provided the EEO officer with a copy of your request for a hearing, including how it was served.

g. You must also be aware that you have a legal obligation to mitigate damages, i.e. on back pay and out of pocket expenses, regardless of whether it is later determined that you were a victim of unlawful discrimination. A successful complainant claiming back pay will be paid the amount that would have been earned had it not been for discrimination, less any amount actually earned or could have been earned with due diligence, plus interest. Interest on back pay is <u>not</u> payable to Federal employees or applicants who prevail on employment discrimination claims brought under the Age Discrimination in Employment Act or the Equal Pay Act.

h. The rejection of an offer of resolution made by the agency may result in the limitation of the agency's payment of attorney's fees or costs.

i. You are responsible for serving notice of appeal and a copy of the brief (if any) on the agency, i.e., Director for EEOCCR and the agency representative, should you elect to appeal an agency decision to the EEOC, Office of Federal Operations.

9. You are further advised that only matters of discrimination raised in the precomplaint processing, to include those matters of discrimination like or related to matters of discrimination raised in precomplaint processing, may be alleged in a subsequent formal complaint filed with Army.

10. If you have any other questions on this matter, you may contact Melissa Kleehammer, (586)282-9658, email melissa.m.kleehammer.civ@mail.mil.

MELISSA M. KLEEHAMMER
Complaints Manager
USAG-Detroit Arsenal


Aggrieved signature: _____ Date 5~3-18



# SECTION

# 2.3



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

DELIVERED VIA IN PERSON

IMMI-EE                                                                 May 31, 2018

DA Docket Number:  ARDETROIT18MAY01583

MEMORANDUM FOR:  Mr. Joe DaSilva, Jr., 3705 Dexter Ann Arbor Road, Ann Arbor, MI 48103

SUBJECT:  Notice of Right to File a Formal Complaint of Discrimination after Completion of Traditional EEO Counseling

1.  This serves as notice that on31 May 2018 the final counseling interview was held in connection with the claim(s) you presented during the precomplaint intake interview and to me as an Equal Employment Opportunity (EEO) counselor.  Your initial contact with an EEO official was on 29 April 2018, and my initial interview with you was on 3 May 2018.  You alleged that you were harassed (sexual) on 3 April 2018 because of your sex (male) and National Origin (Brazilian) when unwanted sexual nature comments were made by Assistant Chief Martin Potter to include "how much do breast implants cost" and remarking that you should be able to wear a "B-cup bra"?

2.  If you believe that you have been discriminated against on the basis of race, color, religion, sex, national origin, age, genetics, and mental/physical disability and/or in reprisal for participation in protected EEO activity or opposition to prohibited discrimination, you have the right to file a formal complaint of discrimination within 15 calendar days of receipt of this notice.

3.  This complaint must be in writing, preferably on a DA Form 2590, which is provided for your convenience.  (For ease of completion, you may also access this form on the Army's publication website at: http://www.apd.army.mil.)  Your complaint must be filed in person by you or your attorney or by mail with any of the following officials listed below.  If you file your complaint with one of the officials listed below, other than the processing EEO officer, it will be sent to the EEO officer for processing.  Therefore, it is recommended that your complaint be filed with the EEO officer to ensure the most expeditious processing.

      a.  Equal Employment Opportunity Officer
         USAG-Detroit Arsenal
         ATTN: IMMI-EE
         6501 E. Eleven Mile Road, MS 400
         Warren, MI  48397-5000



Printed on Recycled Paper

IMMI-EE
SUBJECT: Notice of Right to File a Formal Complaint of Discrimination DA Docket Number
AREDETROIT18MAY01583.

    b. USAG-Detroit Arsenal
       Attn: Garrison Manager
       6501 E. 11 Mile Rd, MS 502
       Warren, MI 48397-5000

    c. Department of the Army,
       Director of EEO Compliance and Complaints Review
       ATTN: SAMR-EO-CCR
       5825 21st Street, Building 214, Room 129
       Fort Belvoir, VA 22260-5921

    d. Secretary of the Army
       Honorable Mark T. Esper
       ATTN: SAMR-EO-CCR
       5825 21st Street, Building 214, Room 129
       Fort Belvoir, VA 22260-5921

4. The formal complaint must specify the claim(s) and the basis(es) of the complaint discussed during the counseling session(s). It is important that you state the incident(s) that caused you to initiate your complaint as concisely as possible, citing the nature of the action, the date of the action, and the person(s) involved. You may only raise claim(s) and incident(s) discussed, or like or related to those discussed, during counseling. The complaint should also state whether you have filed a grievance under a Negotiated Grievance Procedure or an appeal to the Merit System Protection Board, on the same subject matter, including dates. This information is necessary to determine whether your complaint is appropriate for processing under Title 29, Code of Federal Regulations, Part 1614.

5. If you retain an attorney or any other person as a representative, you must immediately notify the EEO officer, in writing, of the name, complete mailing address and telephone number of your attorney or representative. See the address shown in paragraph 3.a. for the address of the EEO officer. You are advised that:

    a. Unless you state otherwise in writing, after receipt of written notice of the name, address and telephone numbers of your representative, service of all documents will be with the representative, with a copy furnished to you.

    b. If your representative is an attorney, service of all official correspondence will be made on the attorney with a copy furnished to you. However, time frames for the receipt of correspondence will be computed from the date of receipt by the attorney.

IMMI-EE
SUBJECT: Notice of Right to File a Formal Complaint of Discrimination DA Docket Number
AREDETROIT18MAY01583

6. You and/or your representative will receive a written acknowledgement of receipt of
your formal discrimination complaint from the EEO Officer.

Respectfully,

AMY DOMBROWSKI
Equal Employment Opportunity Counselor
USAG-Detroit Arsenal

Received copy 5-31-18

5-31-18

3



# SECTION

# 3.1



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

REPLY TO
ATTENTION OF:

Mr. Joe DaSilva, Jr.
3705 Dexter Ann Arbor Road
Ann Arbor, MI 48103

       Joe DaSilva, Jr.
        v. Mark T. Esper, Secretary of Army
       DA Docket Number:  ARDETROIT18MAY01583

Dear Mr. DaSilva, Jr.,

This acknowledges receipt on June 1, 2018, of your discrimination complaint received in this office on June 1, 2018 and deemed filed on June 1, 2018.

I will review your formal complaint so that I may determine the appropriate disposition of the complaint. Upon my determination whether to accept or dismiss your formal complaint, I will notify you and provide written notice of your rights and the time requirements for exercising those rights.

                 Sincerely,

                 *Tonja Ancrum*

                 **TONJA ANCRUM**
                 Equal Employment Opportunity Officer
                 USAG-Detroit Arsenal

CF:  Agency Representative

---

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Sent To  *Joe DaSilva*

7659 7317 0001 1150 11

Recycled Paper



# SECTION

# 3.2

000054



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

REPLY TO
ATTENTION OF

IMMI-EE                                                                                    1 June 2018

Mr. Joe DaSilva, Jr.
3705 Dexter Ann Arbor
Ann Arbor, MI 48103

Complaint of Joe DaSilva, Jr. v. Mr. Mark T. Esper, Secretary of the
Army, DA Docket No. ARDETROIT18MAY01583

Dear Mr. DaSilva:

This refers to your formal complaint of discrimination filed with our office on June 1, 2018.
You initially contacted us on April 29, 2018 and initiated the informal complaint on April 29,
2018.   We provided you a letter entitled Notice of Right to File a Formal Complaint of
Discrimination on May 31, 2018.

In your formal complaint you allege that you were harassed (sexual) on 3 April 2018 because
of your sex (male) and National Origin (Brazilian) when unwanted sexual in nature comments
were made by Assistant Chief Martin Potter to include "how much do breast implants cost" and
remarking that you should be able to wear a "B-cup bra."

I have reviewed all of the information in the file and have decided to accept your claim for
further investigation.

If you believe the claim in this complaint has not been correctly identified, please notify me,
in writing, within 5 calendar days after you receive this letter.  You must specifically state why
you believe that the claims have not been correctly identified.  If you fail to contact me, I will
conclude you agree that the claim has been properly identified above.  Any statement submitted
in this regard will be placed in the complaint file.

Your complaint will be assigned to an investigator for formal investigation of the accepted
claims.  Once assigned, you will be informed of the investigator's identity and when the
investigation is expected to begin.  The investigation must be completed within 180 calendar
days of the filing of this complaint, unless you agree in writing to extend the period an additional
90 calendar days.  In accordance with Title 29, Code of Federal Regulations, Part 1614.108(e),
the Army may unilaterally extend the 180-day time period, or any period, of extension, for not
more than 30 calendar days when it must sanitize a complaint file that contains classified
information.  If this need for extension should arise, you will be informed of the extension.

After completion of the investigation and if the case has not been settled, the EEO officer will provide you with the Notice of Post-Investigative Options (PIO) and the report of investigation. This notice will inform you that you have the right to, within 30 calendar days from your receipt of the notice, request a hearing before an EEO Commission administrative judge, who will issue a decision subject to final action by the Army, or the right to request that a final Army decision be issued on the record. You may also request a hearing at any time after 180 days have elapsed from the filing of this complaint. If you opt for a hearing, the Request for a Hearing (Enclosure 2) should be sent directly to the EEO Commission, Detroit District Office, Patrick V. McNamara building, 477 Michigan Avenue, Room 865, Detroit, Michigan 48226-9704. A copy of the Request for a Hearing must be provided to the EEO Offices at the addresses indicated on the Request for a Hearing form.

You may amend a complaint at any time prior to the conclusion of the investigation to include claims like or related to that identified above. When a complaint has been amended, the agency is required to conduct an impartial investigation within the earlier of 180 calendar days after the last amendment of the complaint or 360 calendar days have passed since the filing of the original complaint. You may request a hearing from an EEOC administrative judge after 180 calendar days have passed since the filing of the original complaint, if the investigation has not been completed. Prior to a request for a hearing, any amendment must be submitted, in writing, to the undersigned for a determination whether the new claim warrants inclusion in the pending complaint or processing as a new complaint. Additionally, after requesting a hearing, you have the right to file a motion with the administrative judge to amend the complaint to include claims like or related to those raised in the original complaint.

If a new claim, not like or related to a previously filed complaint, provides the basis for a separate complaint, the new claim will be referred to an EEO counselor and will be subject to all regulatory requirements regarding the EEO complaint process. In cases where complaints are consolidated, the agency is required to conduct an investigation within the earlier of 180 calendar days after the filing of the last complaint or 360 calendar days after the filing of the original complaint. However, you may request a hearing from an EEO Commission administrative judge on the consolidated complaint any time after 180 calendar days from the date of the filing of the first complaint.

If you fail to request an EEO Commission hearing or to ask for a final decision by the Army within 30 calendar days after you receive the report of investigation, the processing of this case will proceed. I will submit the entire complaint to the Army Director of EEOCCR or designee for a final Army decision on the merits of the complaint based on the record as it stands.

If you are dissatisfied with the final Army decision/action (with or without a hearing), you may file a notice of appeal with the EEO Commission (EEOC), Office of Federal Operations, (OFO), P.O. Box 77960, Washington, D.C. 20013, within 30 calendar days after receiving the final Army decision/action. A copy of the appeal must be provided to the Director, EEO Compliance and Complaints Review (EEOCCR), ATTN: SAMR-EO-CCR, 5825 21st Street, Building 214, Room 129, Fort Belvoir VA 22060-5921. Also, any brief or statement in support of the appeal should be sent to OFO, with a copy to the Deputy for EEOCCR, within 30 calendar days after filing the notice of appeal. In or attached to the appeal to the EEOC, you must certify

2

that a copy of the appeal was served on the Director for EEOCCR, the date and the method of service. Any appeal to the EEOC should be addressed to the Director for EEOCCR, the date and method of service.

Instead of appealing to EEOC, you may file a civil action in the proper U.S. District Court within 90 calendar days after receiving the final Army decision/ action or, if the Army has not issued a final decision on this complaint, 180 calendar days from the date the formal complaint was filed. If you file a civil action under Title VII of the Civil Rights Act of 1964, as amended, or the Rehabilitation Act of 1973, as amended, and you do not have, or are unable to obtain the services of the attorney, you may request the court to appoint one to represent you. In such circumstances as the court may deem just, the court may appoint an attorney and may authorize the commencement of the action without the payment fees, costs, or security. Any such request must be made within the above-referenced 90-day time limit for filing suit and in such form and manner as the court may require.

You are further notified that, if a civil action is filed by you, you must name the appropriate department head or agency head as the defendant and provide his or her official title. DO NOT NAME JUST THE AGENCY OR DEPARTMENT. Failure to name the department head or agency head or to state his or her official title may result in the dismissal of your case. The appropriate agency is the Department of the Army. The head of the Department of the Army is Mark T. Esper, Secretary of the Army.

If you decide to appeal to the EEOC OFO, you will still have the opportunity to file a civil action in U.S. District Court within 90 calendar days after receiving the EEOC final decision, or 180 calendar days after the date of filing the appeal with the EEOC if there has been no final decision by the EEOC.

The agency representatives are Ms. Teresa Watmore and Ms. Tiffany Hall, Attorney-Advisors, U.S. Army TACOM, ATTN: AMSTA-LA, 6501 East 11 Mile Road, Warren, MI 48397-5000. You may contact Ms. Watmore at telephone number (586) 282-8576 and email address is teresa.j.watmore.civ@mail.mil; and Ms. Hall at (586) 282-8405 and email address is tiffany.j.hall10.civ@mail.mil. You are advised that copies of all official correspondence must be served on the EEO officer and the agency representatives.

If at any time a settlement or resolution of this complaint is reached, the terms of the settlement/resolution will be agreed to in writing by all parties and you will be given a copy.

The DA docket number identified at the top of page 1 of this letter should be used on all correspondence. A copy of the EEO Counselor's Report is enclosed.

Sincerely,

Tonja Ancrum
Equal Employment Opportunity
Officer

Encls

CF:
Agency Representative

4

000058

# SECTION

# 4

# RESERVED



# SECTION

# 6

# REPORT OF INVESTIGATION

December 13, 2018

**Agency Number:**

ARDETROIT18MAY01583

**Activity Filed Against:**

Department of the Army
United States Army Garrison
Detroit Army Arsenal Base
Directorate of Emergency Services
Fire and Protection and Prevention Division
Warren, MI

**Complainant's Name and Address:**

Joe DaSilva, Jr.
3705 Dexter Ann Arbor Road
Ann Arbor, MI 48103

**Representative' Name and Address:**

Solomon Radner, Esq.
Excolo Law, PLLC
26700 Lasher Rd, Suite 401
Southfield, MI 48033

**Date Complaint Filed:**

June 1, 2018

**Dates of Investigation:**

October 18 – December 3, 2018

**Claim:** Was Complainant subjected to a hostile work environment (sexual) and discriminated against based on his sex (male), national origin (Brazilian), age (51; born 1967), race (Latino), and reprisal (filing prior EEO complaints)[1] when on April 3, 2018, Assistant Chief Martin Potter said to him "how much do breasts implants cost" and remarking that he should be able to wear a "B-cup bra" (Investigative File [IF] pages [pp] 55-58)?

## PART I – BACKGROUND

During the timeframe, Complainant was a Firefighter (Hazmat Tech/Basic Life Support), GS-03081-07. In this position, assigned to a crew, he engaged in structural firefighting, rescue operations, hazardous materials incidents, and performed noninvasive emergency procedures in support of the Detroit Arsenal base population. Complainant worked a 72-hour rotating shift to include evenings, weekends, and holidays (IF pp 68-76).

Complainant reported the alleged harassment to Sexual Assault Response Prevention (SHARP) personnel on April 5, 2018 (IF pp 99-101). An Investigating Officer was appointed on April 10, 2108, by the Garrison Manager (IF pp 108-111). On May 22, 2018, the Investigator's results showed the comment was made by Mr. Porter and provided a list of recommended actions (IF page [p] 121). The Agency lists Complainant's prior EEO activity as two informal complaints filed alleging a hostile work environment naming Fire Chief Sean Edwards, Fire Chief, GS-

---

[1] Complainant added the bases of race, age, and reprisal during the course of the investigation (IF pp 7, 128, 200).

DaSilva, ARDETROIT18MAY01583

0081-12, and Assistant Chief Martin Potter, GS-0081-10, as the alleged harassers. The complaints were based on his sex, national origin, and reprisal. One of the complaints did not go formal and the other resulted in a negotiated settlement agreement (IF p 125). For information pertaining to witness participation and provided documents, see the Investigator's Declaration at IF p 167.

## PART II – SUMMARY OF EVIDENCE

### Complainant's testimony
Complainant declares management is aware of his race and national origin because he has talked about taking trips to Brazil to visit family (IF p 134). On April 3, 2018, as he was walking through the kitchen Mr. Potter looked at his chest and arbitrarily asked him "how much do breast implants cost?" He walked out of the kitchen very upset and angry (IF pp 129-130, 133). This was not the first time Mr. Potter has made this type of comment to him. He explains that in February 2017, Mr. Potter asked him if he was able to wear a "B-cup bra and has said to him "I bet you can hold a pencil under your boobs and not let it drop." He believed the negotiated settlement agreement would curtail the harassing comments; however, the harassment did not stop as evident of this current complaint (IF p 130). Although the agency conducted an investigation into the statement made in this complaint, he has not been privy to any punishment/corrective action taken as a result of the SHARP investigation (IF p 132). He adds Mr. Potter is allowed to make inappropriate comments without fear of consequence and his complaint was not taken seriously (IF p 132). He has not heard Mr. Potter make similar comments to other employees (IF p 134).

When asked to explain how he was being discriminated against, he explains the comments about his breast size infers that he is a woman, which demeans his sexuality and masculinity (IF p 134). Mr. Potter once said that he was the "oldest Firefighter in the department." He also believes he is being treated differently because he is the only Firefighter who is from Brazil, Latino and has been told that EEO complaints reflect poorly on promotion boards (IF p 135).

### Management's testimony and documentary evidence
**Mr. Edwards (sex-male; national origin-United States; born 1922; race-Caucasian/Native American)** declares he is Complainant's second-level supervisor. He is aware of Complainant's age, race, sex, and national origin (IF pp 137-138). He is aware Complainant filed other EEO complaints which were resolved at the informal stage (IF pp 138-139).

On April 3, 2018, he was sitting at the kitchen table eating and talking with another Firefighter. The television was on and there were multiple conversations occurring between Firefighters. He did not hear the alleged comment made by Mr. Potter regarding the cost of breast implants. Mr. Potter told him that there was a story on television about breast implants and he decided to ask Complainant whether he (Complainant) knew how much implants cost (IF pp 139, 141). Before he could take action on the comment, Complainant went to SHARP. During the SHARP investigation, Complainant and Mr. Potter did not work together. As a result of the SHARP investigation and as discipline, Mr. Potter received a Letter of Caution (IF p 140). Additionally, as a result of the SHARP investigation, the entire staff was given SHARP training and he

DaSilva, ARDETROIT18MAY01583

instituted random SHARP investigations to ensure the workplace was free of material that might be offensive to employees. He did not hear the comment made regarding Complainant wearing a "B-cup" (IF p 139). No other employees have complained to him about Mr. Potter making similar comments (IF p 140).

**Mr. Potter (sex-male; national origin-European; born 1974; race-Caucasian)** declares he is Complainant's supervisor when they work on the same shift (IF p 142). He is aware of Complainant's age, race, sex, and national origin. He served as a witness in Complainant's previous EEO complaint (IF p 143).

On April 3, 2013, there was a news story playing on the television regarding the cost of breast implants. As he was watching the story, Complainant walked by and the questioned popped in his head to ask him (Complainant) if he knew the cost of breast implants. As a result of making the comment, he received a Letter of Counseling for unprofessional behavior. He explains the comments started several years ago when there was a weight loss challenge among the Firefighters. Complainant would talk about his stomach and he would talk about Complainant's chest size. It was during this bantering that he asked Complainant if he wore a "B-cup size" (IF p 144). He never made the following comments to Complainant: "you're the oldest Firefighter in the department" and "Let's do the pencil test; I bet you can hold a pencil under your boobs and not let it drop" (IF p 164). He has not made similar comments to other employees, or been counseled for making other comments (IF p 144). He denies discriminating against Complainant. He adds Complainant participates in similar behavior and often incites conversation of this nature (IF p 145; see Memorandum for Records at IF pp 147-150).

**Complainant's Rebuttal**
Complainant declined to provide rebuttal (IF p 208).

**Testimony of Other Witness**
**Mr. Matthew Holtyn (sex-male; national origin-United States; born 1973; race-Caucasian; claims no prior EEO activity)**, Firefighter, GS-0081-07, co-worker, declares he was not on shift on the day the comment was made regarding the breast implants. However, he has heard Complainant and Mr. Potter make jokes with each other. Mr. Potter has never made similar comments to him. He does not believe Complainant is being discriminated against (IF pp 151-153).

**Mr. Lesley Tillman (sex-male; national origin-United States; born 1973; race-Black; claims prior EEO activity)**, Assistant Fire Chief (Training and Fire Prevention), GS-0081-10, declares he once served as Complainant's first-level supervisor (IF p 155). On April 3, 2018, while getting his coffee in the breakroom, he cannot say for certain, but he heard Mr. Potter ask Complainant something to the effect of "Joe, do you know how much breasts implants cost? Those look like a C-cup" (IF p 157). Mr. Potter has not made similar comments to him nor have any employees complained to him about comments being made to them (IF p 158). He does not believe the comment had anything to do with discrimination; the comment was poor judgement on the part of Mr. Potter (IF p 159).

3

000064

DaSilva, ARDETROIT18MAY01583

**Mr. David Ferris (sex-male; national origin-United States; born 1983; race-Caucasian; claims prior EEO activity)**, Firefighter, GS-0081-07, co-worker, declares on April 3, 2018, he recalls a comment made about breast implants directed at Complainant. Although he does not recall the exact comment, he saw Complainant get upset and walk out of the kitchen area. He believes Mr. Potter made a very poor choice of words. Mr. Potter has not made similar comments to him or any of his co-workers. He adds that there is a lot of joking in the Firehouse, but nothing is said to offend or degrade anyone (IF p 162). He does not believe the work environment is hostile or harassing (IF p 163).


*Cassandra J. Williams*

Cassandra J. Williams
Investigator

4

Intentionally
Left
Blank

# SECTION

# 7.1



# ARMY POSITION DESCRIPTION

| **PD#:** BV191798 | **Sequence#:** VARIES | **Replaces PD#:** |
|---|---|---|

### FIREFIGHTER (HAZMAT TECH/BASIC LIFE SUPPORT)

#### GS-0081-07

**Organization Title:**

## POSITION LOCATION:

| | |
|---|---|
| **Servicing CPAC:** TACOM, WARREN MI | **Agency:** VARIES |
| **Installation:** VARIES | **Army Command:** VARIES |
| **Region:** NORTH CENTRAL | **Command Code:** VARIES |

**POSITION CLASSIFICATION STANDARDS USED IN CLASSIFYING/GRADING POSITION:**

**Citation 1:** OPM PCS FIRE PROT & PREV SERIES, GS-081, MAR 04

**Supervisory Certification:** *I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.*

**Supervisor Name:** MARTIN POTTER          **Reviewed Date:** 08/28/2015

**Classification Review:** *This position has been classified/graded as required by Title 5, U.S. Code in conformance with standard published by the U.S. Office of Personnel Management or if no published standards apply directly, consistently with the most applicable published standards.*

**Reviewed By:** LTC KEVIN AUSTIN, DCA          **Reviewed Date:** 12/21/2004

| **POSITION INFORMATION:** | **CONDITION OF EMPLOYMENT:** | **POSITION ASSIGNMENT:** |
|---|---|---|
| **Cyber Workforce:** | **Drug Test Required:** VARIES | **Competitive Area:** VARIES |
| • **Primary Work Role:** VARIES | **Financial Management Certification:** | **Competitive Level:** VARIES |
| | | **Career Program:** VARIES |

000068

| | | |
|---|---|---|
| • **Additional Work Role 1:** VARIES<br>• **Additional Work Role 2:** VARIES<br><br>**FLSA:** NON-EXEMPT<br>**FLSA Worksheet:**<br>**FLSA Appeal:** NO<br>**Bus Code:** VARIES<br>**DCIPS PD:** NO<br>• **Mission Category:** VARIES<br>• **Work Category:** VARIES<br>• **Work Level:** VARIES<br><br>**Acquisition Position:** NO<br>• **CAP:**<br>• **Career Category:**<br>• **Career Level:**<br><br>**Functional Code:** 00<br>**Interdisciplinary:** NO<br>**Supervisor Status:** VARIES<br>**PD Status:** VERIFIED | **Position Designation:** VARIES<br>**Position Sensitivity:** VARIES<br>**Security Access:** VARIES<br>**Emergency Essential:**<br>**Requires Access to Firearms:** VARIES<br>**Personnel Reliability Position:** VARIES<br>**Information Assurance:** VARIES<br>**Influenza Vaccination:** NO<br>**Financial Disclosure:** VARIES<br>**Financial Disclosure:** NO<br>**Enterprise Position:** VARIES | **Career Ladder PD:** YES<br>**Target Grade/FPL:** 07<br><br>**Career Pos 1:**<br>BV228830  GS-0081-05<br>**Career Pos 2:**<br>BV228831  GS-0081-06<br>**Career Pos 3:**<br>**Career Pos 4:**<br>**Career Pos 5:**<br>**Career Pos 6:** |

**POSITION DUTIES:**

Supervisory Controls

Work is performed under the general supervision of the supervisor or Lead Firefighter who provides overall objectives and the scope of assignments. The firefighter independently performs primary duties according to preplanned procedures. Work is reviewed for general adequacy and responsiveness to conditions and situations.

MAJOR DUTIES:

Serves as a Firefighter Driver/Operator/Hazardous Materials Technician/Basic Life Support, assigned to a crew engaged in structural firefighting, rescue, Hazardous Materials (HAZMAT) incident response functions. Drives and operates firefighting/rescue vehicles, participates in rescue operations to include confined space, high-angle, and other special operations and performs noninvasive emergency medical procedures to provide Basic Life Support (BLS).

1. Drives and operates firefighting vehicles, such as pumpers, aerial ladder trucks, and HazMat response vehicles. Drives to the scene of the fire following a predetermined route or selecting an alternate when necessary and positions vehicle considering factors, such as wind direction, sources of water, hazards from falling structures, location of known explosive or hazardous materials, etc. Operates pumps, foam generators, boom and ground sweep

nozzles, and other similar equipment. Determines proper pressures, the number of lines, and relays requirements to the booster Pumper. Maintains constant awareness of levels in self-contained breathing apparatus and warns other firefighters when tanks are close to empty. Assists in training other firefighters on driving vehicles and operating equipment. Approx. 25%

2. Performs structural firefighting duties for a variety of facilities, which may include large multistoried buildings, research/development and related industrial areas, and storage facilities. Performs structural firefighting duties at facilities which may be engaged in the production, storage, and testing of fuels, gases, or other chemicals and materials which are capable of producing hazardous toxicological, biological, or radiological products. As a crewmember, participates in controlling and extinguishing fires by operating hoses, ladders, and hydrants. Performs pre-fire planning by physically going through structures to become familiar with the layout, fire hazards, and location of fixed fire protection systems. Participates in regular training and exercises as required. Approx. 25%

3. Performs Hazardous Materials Technician duties. Employs hazard and risk assessment techniques to complete incident analysis to include incident surveys to identify materials and containers involved, predicts likely behavior of a material and/or container and estimating the size of the endangered area. Develops an appropriate strategy for approaching the release site and containing the release. Implements the response to include establishing on scene control procedures, including control zones and decontamination processing. Employs hazardous materials response procedures and equipment, including liquid splash and vapor protective clothing, self contained breathing apparatus, spill containment materials, and extinguishing agents. Continuously evaluates the effectiveness of the situational response and recommends potential alternatives or supplementary actions. Assists other hazardous material technicians and other hazardous materials response personnel. Collaborates on post-incident debriefings and critiques. Prepares incident reports and documentation. Maintains and decontaminates HAZMAT equipment and supplies (variety of protective clothing, respiratory devices, chemical mitigation agents, etc.). Must be familiar and participate with the South Macomb Incident Response Team IAW the Installation Mutual Aid Agreement. Provides containment, decontamination, and other duties assigned IAW South Macomb Incident Response Team guidelines and standard practices. Participates in formalized classroom study and on-the-job training to maintain skills and certification as a Hazardous Materials Technician level responder IAW DOD certification program. Approx. 15%

4. Performs Basic Life Support. Initiates established medical protocols in providing basic life support. Performs noninvasive emergency procedures: conducts initial and on-going patient assessment and physical examination; maintains airway, breathing, and circulation; determines priority of care; monitors patient's baseline vital signs: performs cardiopulmonary resuscitation (CPR) and automatic external defibrillation (AED); controls external bleeding and treats for shock; ascertains patient medical problems and drug history; assists patients in taking emergency medications under the direction of standing orders of a physician; establishes communication with the receiving facility and provides patient information; employs a variety of established emergency medical techniques, methods, and equipment to stabilize the patient for transport; assists intermediate life support or paramedic staff; prepares appropriate and relevant patient care documentation; and uses and maintains care of emergency equipment and replaces medical and expendable supplies. Must obtain and maintain a National Registry or State of Michigan Emergency Medical Technician - Basic license. Approx. 15%

5. Performs fire crew inspections of installation facilities. Physically inspects the various structures on the installation to become familiar with the layout, nature and location of particular hazards, and the location of general operating conditions. Performs fire protection inspections to detect and eliminate such common fire hazards as excess trash accumulation improper storage of common flammable liquids, improper use of electrical appliance and equipment, blocked fire exits, etc. Upon completion of specific training incumbent will be required to issue "Hot Work Permits" on a rotational basis. Makes suggestions to responsible operating officials to correct common hazards, refers more serious problems to supervisor or Fire Prevention Inspector. Participates in Fire Prevention Training. Approx. 10%

6. Performs duties as required in the Communication Center. Will perform all duties assigned to the Communications Center to include but not limited to administrative, emergency and non-emergency telecommunication and alarm monitoring functions, dispatch of apparatus and crews, preparation of duty journals, alarm logs, reports and forms. Answers calls and takes necessary action in emergencies, such as sounding alarms, relaying calls, and dispatching crews and other aid required. Initiates mutual aid responses and contacts with management, command, and other agency personnel as needed. Initiates recall of all off duty firefighters as required. Records all pertinent data/information for reference and reporting purposes. Approx. 5%

7. Maintains firefighting equipment and fire station facilities. Performs functional tests and inspections. Performs preventive maintenance on equipment and housekeeping duties associated with assigned facilities. Approx. 5%

Performs other duties as assigned.

Conditions of Employment:

Incumbent must meet and maintain all required certifications and qualifications as directed by current Federal, DOD, DA, and installation guidance. Required DOD F&ES Certifications (per DoD 6055.06-M, February 23, 2006) include: Fire Fighter Level I and II, Hazmat Awareness and Operations, Apparatus Driver Operator for Pumpers and Aerials, and Hazardous Materials Technician. BLS duties require National Registry or State of Michigan Emergency Medical Technician - Basic license.

Must have valid State driver's license and be able to obtain government driver's license. (Must have and maintain valid MI state driver's license).

Subject to passing firefighter's physical. The incumbent must be able to meet and maintain physical agility and stamina standards, which are established for this position. Must participate in the Department Wellness Program to include: (1) Annual physical examination; (2) and on the spot drug screening.

Position is drug testing required (DA 5019)

Rotating shift work is required. This includes evenings, weekends, and holidays.

Works 72-hour weekly tour of duty. Overtime may be mandatory.

Position is designated as key/emergency. Before appointment to this position, as a condition of employment, the person selected must sign a statement of understanding and an

agreement to continue to perform the duties of this position in the event of a crisis until relieved by proper authority. This may include relocation to a designated alternate site for such time as required and necessary as determined by proper authorities. Members of the Ready Reserve must be exempted from recall either by transfer to the Standby Military Reserve/Retired Reserve or discharge, as appropriate.

ADDITIONAL REQUIREMENTS:

Local certification requirements are Telecommunciator 1 and 2 which will be obtained on the job.

Incumbent is subject to periodic travel.

The work situation is characterized by complex and highly hazardous firefighting operations. (Ordnance & Explosives, Hazardous Chemicals)

Hazards of the job include the possibility of burns and other effects of heat, smoke inhalation, falling materials, explosion, exposure to toxic materials; dealing with victims of fire in varying stages of fright and panic; operating or riding on emergency fire apparatus under adverse conditions.

Is subject to recall after normal tour in cases of emergencies.

May require work in extreme and/or hazardous conditions. May require work in inclement weather. May require to stand for long periods of time. May require lifting of heavy objects, up to and over 40 pounds.

Knowledge required by the Position:

Knowledge of standard fire protection and prevention theory and practices in order to effectively control and extinguish various types of structural fires.

Knowledge of the design, and construction, contents and use of buildings and facilities on the installation is required in order to be familiar with the type and condition of the structure to be protected.

Knowledge of the principles of hydraulics as it relates to water flow, friction, pressure and loss.

Knowledge of the mechanics and operational characteristics of pumping equipment specialized firefighting equipment and related firefighting apparatus is required in order to keep equipment in working condition and to correct mechanical problems.

Ability to drive motorized firefighting vehicles, rescue vehicles under all conditions.

Ability to predict and understand the requirements of firefighting, rescue, and HazMat operations in any situation in order to operate equipment effectively to protect life and property.

Knowledge and skill to respond to emergency situations, maintain self-control and to work under conditions of stress.

Supervisory Controls:

Supervisor assigns specific tasks in a given situation, and the incumbent performs work independently with little or no supervision. Tasks are carried out in accordance with standard firefighting procedures, equipment operations.

Review of other work is accomplished by observation. Firefighting, vehicle and equipment operation are evaluated in terms of results achieved and/or by review of reports.

Guidelines:

Guidelines include Army and installation regulations and procedures; Federal, State and local fire standards and codes. Judgment is exercised by the incumbent in determining and selecting the appropriate guide or technique to be applied. The incumbent varies the order and sequence of procedures when performing duties based upon the recognition of emergency conditions, previous instructions, training and experience.

Complexity:

The work involves the performance of the full range of firefighting duties, the conduct of fire prevention inspections to eliminate or control hazardous conditions, the operation of maintenance of motorized firefighting equipment. The accomplishment of duties requires the selection and performance of different alternatives, methods, techniques or procedures. The incumbent must be prepared to avoid unnecessary dangers and to deal effectively with hazardous situations. The choices on what needs to be done when rendering emergency care and treatment is based upon the differing needs of the victim, and what to do in rescue, firefighting and HazMat operations depends on the nature of the emergency encountered.

Scope and Effect:

The work consists of providing fire prevention and suppression, HazMat incident response, rescue services, Emergency Medical services to personnel and property on the installation and in the local community during Mutual Aid response. The work contributes to the control and elimination of hazards, minimizes the risk of injury to personnel and damage to property, and contributes to the completion of medical care and the recovery of ill or injured personnel.

Personal Contacts:

Contacts are with F&ES personnel, other emergency responders and medical personnel, installation and community leaders and residents some of who may be injured or victims of critical incidents.

Purpose of Contacts:

Contacts are for the purpose of providing emergency and non-emergency services to include obtaining and exchanging information related to work activities and conditions, and to report on findings.

Physical Demands:

Duties require considerable and strenuous physical exertion, climbing of ladders, standing,

walking, crouching, lifting and carrying heavy objects and/or persons in hazardous atmospheres and movement restricted environments. Operates and is exposed to numerous mechanical tools and heavy equipment. These conditions include activities in military industrial shops with fuel storage facilities, high voltage electrical and communications equipment, and confined spaces or unventilated areas. When engaged in emergency response activities works in all kinds of weather and is exposed to the possibility of burns, falls, broken bones, smoke inhalation, falling materials, explosives or toxic materials, and the potential for loss of live. Performance of emergency medical duties involves risk of exposure to pathological and infectious materials. Employee will normally be required to work 72 hours per week.

Work Environment:

When engaged in emergency response activities In all types of weather works under conditions of exposure to fire, heat, smoke and variety of toxic materials. Incumbent is exposed to the possibility of burns, falls, broken bones, smoke inhalation, falling materials, explosives or toxic materials, and the potential for loss of live exist. Performance of EMT duties involves risk of exposure to pathological agents and infectious materials. Employee will normally work a minimum of 72 hours per week with frequent overtime shifts required.

**Fair Labor Standards Act (FLSA) Determination**

> **1. Availability Pay Exemption -** (e.g., Criminal Investigators, U.S. Customs and Border Protection pilots who are also Law Enforcement Officers).

> **2. Foreign Exemption -** (Note: Puerto Rico and certain other locations do not qualify for this exemption – See 5 CFR 551.104 for a list of Nonexempt areas.)

> **3. Executive Exemption:**

>> a. Exercises appropriate management responsibility (primary duty) over a recognized organizational unit with a continuing function, AND

>> b. Customarily and regularly directs 2 or more employees, AND

>> c. Has the authority to make or recommend hiring, firing, or other status-change decisions, when such recommendations have particular weight.

> Note: Shared supervision or "matrix management" responsibility for a project team does not meet the above criteria. Limited "assistant manager" functions or "acting in the absence" of the manager does not meet the above criteria.

**4. Professional Exemption:**

a. Professional work (primary duty)

b. Learned Professional, (See 5 CFR, 551.208 ) (Registered Nurses, Dental Hygienists, Physician's Assistants, Medical Technologists, Teachers, Attorneys, Physicians, Dentists, Podiatrists, Optometrists, Engineers, Architects, and Accountants at the independent level as just some of the typical examples of exempt professionals). Or

c. Creative Professional, (See 5 CFR, 551.209 ) (The primary duty requires invention and originality in a recognized artistic field (music, writing, etc.) and does not typically include newspapers or other media or work subject to control by the organization are just some examples of Creative Professionals). Or

d. Computer Employee, (See 5 CFR, 551.210 ) ( must meet salary test and perform such duties as system analysis, program/system design, or program/system testing, documentation, and modification). Computer manufacture or repair is excluded (non-exempt work).

**5. Administrative Exemption:**

a. Primary duty consistent with 5 CFR 551 (e.g.; non-manual work directly related to the management or general business operations of the employer or its customers), AND job duties require exercise of discretion & independent judgment.

**FLSA Conclusion:**

**Exempt**

**Non Exempt**

**FLSA Comments/Explanations:**

5 CFR 551 Evaluation Outline

Fair Labor Standards Act (FLSA) Evaluation Outline

Position Description (PD) #BV191798 Pay Plan-Series-Grade GS-0081-07

____ Availability Pay Exemption (e.g., Criminal Investigators, U.S. Customs and Border Protection pilots who are also Law Enforcement Officers)

____ Foreign Exemption (Note: Puerto Rico and certain other locations do not qualify for this Exemption – see 5 CFR 551.104 for a list of Nonexempt areas.)

___ Executive Exemption
___ Exercises appropriate management responsibility (primary duty) over a recognized organizational unit with a continuing function, AND
___ Customarily and regularly directs 2 or more employees, AND
___ Has the authority to make or recommend hiring, firing, or other status-change decisions, when such recommendations have particular weight.

Note: Shared supervision or "matrix management" responsibility for a project team does not meet the above criteria. Limited "assistant manager" functions or "acting in the absence" do not meet above criteria.

___ Professional Exemption
___ Professional work [NOTE: TRAINEES lack necessary discretion/judgment]

___ Learned Professional, (See 5 CFR 551.208)
Registered Nurses, Dental Hygienists, Physician's Assistants, Medical Technologists, Teachers, Attorneys, Physicians, Dentists, Podiatrists, Optometrists, Engineers, Architects, and Accountants at the independent level are just some of the typical examples of Exempt professionals
or
___ Creative Professional, (See 5 CFR 551.209),
or
___ Computer Employee (See 5 CFR 551.210; must meet salary test and perform such duties as systems analysis, program/system design, or program/system testing, documentation, and modification). Computer manufacture or repair is excluded (non-Exempt work)

___ Administrative Exemption [NOTE: TRAINEES lack necessary discretion/judgment]
___ Primary duty consistent with 5 CFR 551 (e.g., non-manual work directly related to the management or general business operations of the employer or its customers), AND job duties require exercise of discretion & independent judgment.

Comments/Explanations: _____

_____

Conclusion: NON EXEMPT

**CONDITIONS OF EMPLOYMENT & NOTES:**

**POSITION EVALUATION:**

Not Listed



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

REPLY TO
ATTENTION OF:

IMMI-ESF                                                          13 January 2018

MEMORANDUM FOR Asst. Chief Ball, Asst. Chief Potter, and Asst. Chief Tillman

SUBJECT: Supervisor Assignments

1.  Supervisor assignments are listed below. Supervisors are responsible for all initial
    counseling and evaluations for personnel listed for the 2018 rating period.

**Fire Chief**
A/C Potter
A/C Ball
A/C Tillman

| **A/C Potter** | **A/C Ball** | **A/C Tillman** |
| --- | --- | --- |
| Kubiny | Hall | Todd |
| Scibilia | DeArmon | Fern |
| Jones | Ashwell | |
| Ross | Bowie | |
| Mietling | Furman | |
| Germain | Holtyn | |
| Brahm | Kumlin | |
| Redwood | Biehl | |
| List | DaSilva | |
| Ulman | Nicol | |
| Ferris | Perkins | |
| Dykema | McGowan | |

SIGNED
Sean Edwards
Fire Chief
USAG Detroit Arsenal

| Name | Series | Rank | Title | Sex | National Origin |
|------|--------|------|-------|-----|-----------------|
| Edward, Sean | 0081 | GS-12 | Fire Chief | Male | White |
| Ball, Michael | 0081 | GS-10 | Asst. Chief | Male | White |
| Potter, Martin | 0081 | GS-10 | Asst. Chief | Male | White |
| Tillman, Leslie | 0081 | GS-10 | Asst. Chief | Male | Black or African American |
| Ashwell, Stephen | 0081 | GS-08 | Captain | Male | White |
| DeArmon, Jeremy | 0081 | GS-08 | Captain | Male | White |
| Hall, Jeffrey | 0081 | GS-08 | Captain | Male | White |
| Jones, Christopher | 0081 | GS-08 | Captain | Male | White |
| Scibilia, Matthew | 0081 | GS-08 | Captain | Male | White |
| Biehl, Shane | 0081 | GS-07 | Firefighter | Male | White |
| Bowie, Jeremy | 0081 | GS-07 | Firefighter | Male | Black or African American |
| Brahm, Michael | 0081 | GS-07 | Firefighter | Male | White |
| DaSilva, Joe | 0081 | GS-07 | Firefighter | Male | Hispanic or Latino |
| Dykema, Brett | 0081 | GS-07 | Firefighter | Male | White |
| Fern, Michael | 0081 | GS-07 | Firefighter | Male | White |
| Ferris, David | 0081 | GS-07 | Firefighter | Male | White |
| Furman, Brian | 0081 | GS-07 | Firefighter | Male | White |
| Germain, Michael | 0081 | GS-07 | Firefighter | Male | White |
| Holtyn, Matthew | 0081 | GS-07 | Firefighter | Male | White |
| Kubiny, Bruce | 0081 | GS-07 | Firefighter | Male | White |
| Kumlin, Matthew | 0081 | GS-07 | Firefighter | Male | White |
| List, David | 0081 | GS-07 | Firefighter | Male | White |
| McGowan, Scott | 0081 | GS-07 | Firefighter | Male | White |
| Mietling, James | 0081 | GS-07 | Firefighter | Male | White |
| Nicol, Duane | 0081 | GS-07 | Firefighter | Male | White |
| Perkins, Jonathan | 0081 | GS-07 | Firefighter | Male | White |
| Redwood, Rodney | 0081 | GS-07 | Firefighter | Male | White |
| Ross, Jason | 0081 | GS-07 | Firefighter | Male | White |
| Todd, Adam | 0081 | GS-07 | Firefighter | Male | White |
| Ulman, Cary | 0081 | GS-07 | Firefighter | Male | White |



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E.ELEVEN MILE ROAD
WARREN, MICHIGAN 48397-5000

REPLY TO
ATTENTION OF:

IMMI-EE

SEP 2 0 2017

MEMORANDUM FOR US Army Garrison-Detroit Arsenal (USAG-DTA) Personnel

SUBJECT: Command Policy 02, Equal Employment Opportunity (EEO) and Notification and Federal Employee Anti-Discrimination and Retaliation Act (No FEAR)

1. REFERENCE.

    a.  Title VII of the Civil Rights Act of 1964, as amended.

    b   29 C.F.R. Part 1614

    c.  AR 690-12, Equal Employment Opportunity (EEO) and  Diversity, 22 Dec 16

    d.  AR 600-20, Army Command Policy, 6 Nov 14

    e.  AR 690-600, EEO Discrimination Complaints, 9 Feb 04

    f.  Notification and Federal Employee Anti-discrimination and Retaliation Act of 2002

    g.  Public Law 107-174, Title I, General Provisions, section 101(1)

2. PURPOSE.  Provide EEO guidance to all Garrison personnel assigned to Detroit Arsenal.

3. APPLICABILITY.  This policy is applicable to all civilian and military personnel assigned to and/or supported by the operations of the USAG-DTA.

4. POLICY.

    a.  I am personally committed to making the Garrison a model employer of choice with a diverse and effective workforce.  A workplace free from discrimination is vital to developing and maintaining a mission ready workforce.  Leaders, managers, and supervisors must create an atmosphere where there is respect.  When any employee or job applicant is discriminated against, our ability to accomplish our mission suffers, opportunities for achievement are lost, and the ability of each employee to reach his/her full potential is jeopardized.

IMMI-EE
SUBJECT:  Command Policy 02, Equal Employment Opportunity (EEO)

b.  I expect all leaders, managers, and supervisors to share a commitment to sound management practices and EEO principles.  We must eliminate all barriers to equal employment opportunity for employees and applicants for employment.  All supervisors and managers must ensure employees receive equal opportunity for maintaining core competencies and developing to their full potential.  We must ensure recruitment and selection processes support the full consideration of talented individuals.  All personnel actions must be based upon merit factors, without bias or prejudice.

c.  People are the cornerstone of readiness.  They must know they will be treated fairly, with dignity and respect.  They have the right to work in an environment where there is opportunity to reach their full potential.

d.  It is the policy of this command to provide EEO to all associates and applicants for employment, and maintain a model workplace free from harassment and other forms of discrimination regardless of race, color, religion, age, sex (including harassment of a sexual or non-sexual nature, pregnancy, gender identity and sexual orientation), national origin, disability, genetic information or reprisal.  I am committed to EEO principles and will not tolerate discrimination in any form, in any aspect of employment at the USAG-DTA.

d.  Equal Opportunity is the law, and an essential element of good leadership.  I expect all leaders, both military and civilian, to demonstrate the same dedication and involvement in achieving Department of Army EEO goals as they have displayed in accomplishing other missions and objectives.  Moreover, all managers and supervisors shall adhere to diversity and affirmative employment objectives when fulfilling personnel management responsibilities as we work together to shape the workforce.

e.  Civilian associates or applicants, who perceive they have been subjected to discrimination, including sexual harassment, have the responsibility to voice their opposition to these behaviors by reporting incidents promptly to their chain-of-command or the Garrison EEO office.  Complaints will be quickly and thoroughly investigated, ensuring that the rights of both the victim and the accused are protected.  Confidentiality will be maintained throughout.  When necessary, swift, fair and effective corrective actions will be taken.

f.  The No FEAR Act requires the Garrison to be accountable for violations of anti-discrimination and whistleblower protection laws.

g.  The Act protects individuals from coercion, intimidation, threat, harassment, or interference in their exercise of their own rights.  Retaliation occurs when an employer,

2

IMMI-EE
SUBJECT·  Command Policy 02, Equal Employment Opportunity (EEO)

employment agency, or labor organization takes an adverse action against a covered
individual because he or she engaged in a protected activity.

   h.   Any member of the Garrison who thinks he/she is experiencing discrimination
and/or retaliation will report the incident immediately to the Garrison EEO office
Directors will protect complainants from acts or threats of reprisal. The Garrison will
treat all allegations of discrimination and/or retaliation with the seriousness it
deserves.

5.  PROCEDURES.  A copy of this policy will be posted in Directorate's areas of
responsibility, on all official bulletin boards, web sites, and made available, upon
request.

6.  PROPONENT.  The EEO office is the proponent for this policy and may be reached
by commercial phone at (586) 282-9658/8354 or DSN 786-9658/8354.

7  RECISION. USAG Policy Memorandum #08, EEO, dated 28 September 2016

JOSEPH MOSCONE
Garrison Manager

3



**DEPARTMENT OF THE ARMY**
**INSTALLATION MANAGEMENT COMMAND**
**HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL**
**8501 E.ELEVEN MILE ROAD**
**WARREN, MICHIGAN 48397-5000**

REPLY TO
ATTENTION OF:

IMMI-EE

SEP 2 0 2017

MEMORANDUM FOR US Army Garrison-Detroit Arsenal (USAG-DTA) Personnel

SUBJECT: Command Policy 05, Prevention of Unlawful Harassment and Workforce Disruption

1. REFERENCE.

    a. 29 C.F.R. Part 1614

    b. AR 600-20, Army Command Policy, 6 Nov 14

    c. AR 690-12, Equal Employment Opportunity (EEO) and Diversity, 22 Dec 16

2. PURPOSE. Provide a workplace free from unlawful harassment.

3. APPLICABILITY. This policy is applicable to all civilian personnel assigned and/or under the operational control of USAG-DTA.

4. POLICY.

    1. Unlawful harassment of any form will not be tolerated.

    a. Unlawful harassment includes unwelcome intimidation, ridicule, insults, comments, derisive communication, gestures, and/or physical threat based on race, color, religion, sex (including harassment of a sexual or non-sexual nature, pregnancy, gender identity and sexual orientation), national origin, age, disability, or retaliation. All personnel are prohibited from engaging in conduct that could be perceived as unlawful harassment. Supervisors at all levels within the USAG-DTA must seek to prevent unlawful hostile or abusive conduct. The goal is to ensure that all employees assigned to the Garrison work in an environment that is free of harassment.

    b. Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical harassment of a sexual nature when this conduct explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile, or offensive work environment.

IMMI-EE
SUBJECT:  Command Policy 05, Prevention of Unlawful Harassment and
Workforce Disruption

2. Allegations of harassment will be taken seriously at all levels.

a. Harassment in the workplace violates federal law whether the discriminatory
treatment is based race, color, religion, sex (including harassment of a sexual or non-
sexual nature, pregnancy, gender identity and sexual orientation), national origin, age,
disability, or retaliation.  Offensive conduct constitutes harassment if it alters the
conditions of the victim's employment either by culminating in a tangible employment
action or by being sufficiently severe or pervasive to create a hostile work
environment

b. All personnel are encouraged to inform the harasser directly that the conduct
is unwelcome and must stop; this is a key effort to put them on notice of their ill
conduct.  Employees should also report harassment to management at an early
stage to prevent its escalation and to give management the opportunity to take
prompt remedial action, as necessary.   Harassment activities stemming from
external sources to USAG-DTA but impacting USAG-DTA operations shall be
reported through supervisory channels to me as the Garrison Manager for resolution.

c.  Any person in a supervisory or command position has a responsibility to
exercise reasonable care to prevent and promptly correct any harassment in the
workplace, before it rises to the level of a violation of federal law, regulation, or policy.
All employees have a responsibility to avoid the potential harm of harassment by
using the complaint process or otherwise reporting the harassment before it becomes
severe or pervasive.  No employee or applicant for employment will be retaliated
against for filing a complaint or reporting harassment.

d.  Everyone needs to be mindful that our thoughts, words, and actions may
affect our coworkers.

5.  PROCEDURES.  A copy of this policy will be posted in Directorate's areas of
responsibility, on all official bulletin boards, web sites, and made available, upon
request.

6.  PROPONENT.  The EEO office is the proponent for this policy and may be reached
by commercial phone at (586) 282-9658/8354 or DSN 786-9658/8354.

7.  RECISION. USAG Policy Memorandum 10, Prevention of Unlawful Harassment
and Workforce Disruption, dated 28 September 2016

JOSEPH MOSCONE
Garrison Manager

2



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

SEP 2 0 2017

IMMI-ZA

MEMORANDUM FOR US Army Garrison-Detroit Arsenal (USAG-DTA) Personnel

SUBJECT:  Command Policy 12 Sexual Harassment/Assault Response & Prevention (SHARP) for Military and Civilian Personnel

1. REFERENCE:

    a. AR 600-20, Army Command Policy, Chapters 7 & 8, 6 November 2014

    b. Army Directive 2015-40 (Implementing Procedures for Anti-Harassment Policy) 30 October 2015

2  This organization has a zero-tolerance when it comes to sexual harassment and/or sexual assault.  Sexual Harassment is a form of gender discrimination defined as unwelcomed sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature which is made a term or condition of a person's employment and/or is used as a basis for career employment decisions affecting a person.  It interferes with the performance of military and civilian employees, creating an intimidating, hostile, and offensive working environment.  As the Garrison Manager, I will not condone or tolerate any form of sexual harassment.  I am fully committed to providing an environment free of sexual harassment, offensive behavior and retaliation for all members of this command, military and civilian; and I charge all military and civilian leaders, directors, supervisors and managers to execute this mission to standard.

3. Sexual Assault is a crime under the Uniform Code of Military Justice (UCMJ), Federal and State laws and is defined as the intentional sexual contact, characterized by the use of force, physical threat, or abuse of authority or when the victim does not or cannot consent.  It is incompatible with Army values, and has no place in any organization that takes pride in its most valued asset; our men and women who work side-by-side toward a common goal.  It rips apart the synergy, morale, and trust within an organization and dramatically reduces a unit's ability to perform its mission.

4. Commanders and leaders at all levels will take an active role in assessing risk and taking preventative actions to eliminate threats that contribute to sexually offensive behavior, sexual harassment and/or sexual assault, and retaliation for participating in the SHARP process.

IMMI-ZA
SUBJECT: Command Policy 12 Sexual Harassment/Assault Response & Prevention (SHARP) for Military and Civilian Personnel

5. Soldiers, their Family members, Department of the Army Civilians (DAC) who experience sexual harassment should contact their appropriate Chain of Command, their respective organization's SHARP Sexual Assault Response Coordinator (SARC), or SHARP Victim Advocate (VA). You may access the SHARP Office though the Open Door Policy. The Garrisons SHARP Office is located in Building 230W, Room 1H187-O, first floor, or may be reached by calling (586) 282-0476 or (586) 945-2094.

6. There are two types of sexual assault reports: RESTRICTED or UNRESTRICTED. A restricted report allows the survivor to receive medical care, counseling, legal services via the Special Victim Counsel (SVC), and victim advocacy services, however, it will not notify the chain of command or initiate an investigation. It is important to recognize that in order to report a sexual assault utilizing the restricted report option; a survivor may only report the assault to a SHARP VA, SHARP SARC, or a Health Care Provider. A Chaplain may be consulted, however, they cannot initiate a report of sexual assault. The unrestricted report allows the survivor the same services as the restricted report, however, the chain of command is notified and a criminal investigation is begun.

7. Each and every member of the Garrison Family must feel comfortable to raise the issue of sexual harassment, sexual assault or retaliation for reporting either of these to their chain of command without fear of reprisal or intimidation. The Garrison maintains a 24/7 SHARP Hotline for the Detroit Arsenal. This helpline is available to all Detroit Arsenal Soldiers, Family member and Civilian personnel, and may be reached by calling (313) 269-0199. Any questions, issues or concerns regarding this policy letter may be directed to the SHARP Office at (586) 282-0476.

JOSEPH MOSCONE
Garrison Manager

2

## FD Training Session 1
## 16 September 2016

| | PRINTED NAME | SIGNATURE |
|---|---|---|
| 1 | Martin Potter | |
| 2 | David Ulman | |
| 3 | Rod Redburn | |
| 4 | Jeremy Bowie | |
| 5 | Jonathan Perkins | |
| 6 | JOE DASILVA JR | |
| 7 | MATT HAMLIN | |
| 8 | Brett LaMay | |
| 9 | JEFFREY Hall | |
| 10 | Shane Biehl | |
| 11 | JEREMY DEARMON | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |

000087

## FD Training Session 3
## 28 September 2016

| | PRINTED NAME | SIGNATURE |
|---|---|---|
| 1 | SEAN EDWARDS | |
| 2 | Stephen Ashwell | |
| 3 | Lesley Jerome Tillman | |
| 4 | Shane Biehl | |
| 5 | Max Johnson | |
| 6 | Brian Furman | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |



# DEPARTMENT OF THE ARMY

## CERTIFICATE OF TRAINING

### This is to certify that
*LESLEY J TILLMAN*
*ASSISTANT CHIEF*

## has successfully completed

*2015 EEO, ANTI-HARASSMENT AND NO FEAR TRAINING -*
*SUPERVISORS*
*1 Hour(s)*

Date: August 06, 2015

Certificate No. 9251627

*Dr. Valerie DeVries*
**DR. VALERIE DEVRIES**
NH-04
Deputy Chief of Staff for Human Capital



# DEPARTMENT OF THE ARMY

# CERTIFICATE OF TRAINING

## This is to certify that

*SEAN L EDWARDS*
*FIRE CHIEF*

## has successfully completed

*EEO TRAINING - SUPERVISORS*
*1 Hour(s)*

Date: May 25, 2017

Certificate No. 11839479

*Dr. Valerie DeVries*
DR. VALERIE DEVRIES
NH-04
Deputy Chief of Staff for Human Capital

USAG Detroit Arsenal Directorate Emergency Services
Law Enforcement/PM Division
TRAINING ATTENDANCE RECORD

**Department**

DATE: 24Mar2015    TITLE OF COURSE:  EEO

NAME OF INSTRUCTOR(S):

| | Printed Name | Signature |
|---|---|---|
| 1. | SHOBE, GERALD | |
| 2. | ADAMS, ALFONSO | |
| 3. | ANDERSON, CHRIS | |
| (4) | KIND, GENE | (No Show) |
| 5. | DRAIN, DEREK | |
| 6. | HALL, JULIE | |
| (7) | CAMIRE, RICKY | (Working) |
| 8. | ROLAND, WILLIAM | |
| 9. | WILLIAMS, MARVIN | |
| 10. | DEMKO, JAMES | |
| 11. | REYNOLDS, DANIEL | |
| 12. | | |
| 13. | HACKETT, MICHAEL | |
| 14. | WOLGAMOTT, MARK | |
| 15. | RUSSELL, KERRY | |
| 16. | TAYLOR, ORIAL | |
| 17. | MORRISH, BENJAMIN | |
| 18. | MAHON, MEGAN | |
| 19. | KOSINSKI, ROBERT | |
| 20. | WASHINGTON, ANDREW | |
| 21. | | |
| (22) | HURLEY, JAMES | Working VCC |
| 23. | James Benson | |
| 24. | Eric Persson | |
| 25. | Fran Moran | |
| 26. | Linnon . Farru | |
| 27. | Art Young | |
| 28. | Elvert Early | |

Signature of Instructor(s):

000090

USAG Detroit Arsenal Directorate Emergency Services
Law Enforcement/PM Division
TRAINING ATTENDANCE RECORD
Department

DATE: 22Mar16 · TITLE OF COURSE: ~~Web~~ EEO
NAME OF INSTRUCTOR(S): M. Kleehammer

| | Printed Name | Signature |
|---|---|---|
| 1. | Shobe, Gerald | |
| 2. | Adams, Alfonso | |
| 3. | Anderson, Chris | |
| 4. | Williams, Marvin | |
| 5. | Camire, Rickey | |
| 6. | Hall, Julie | |
| 7. | Morrish, Benjamin | |
| 8. | Hackett, Mike | |
| 9. | Wolgamott, Mark | |
| 10. | Russell, Kerry | |
| 11. | Mahon, Megan | |
| 12. | Taylor, Orial | |
| 13. | Peorson, Eric | |
| 14. | Demko, James | |
| 15. | Reynolds, Daniel | Excused |
| 16. | Washington, Andrew | |
| 17. | Kosinski, Robert | |
| 18. | Cross, Mark | |
| 19. | Duncan, Michael | |
| 20. | | |
| 21. | Lada, Steve | |
| 22. | Roland, William | |
| 23. | Carver, Ron | |
| 24. | Early, Elvert | |
| 25. | Sheard, Tony | |
| 26. | Archambeau, Eric | |
| 27. | Young, Dennis | |
| 28. | GREEN Kevin | |
| | Cutler Robert | |

Signature of Instructor(s):
Kenon Eric

**FD Training Session 2**
**27 September 2016**

| | PRINTED NAME | SIGNATURE |
|---|---|---|
| 1 | David Ferris | |
| 2 | Matt Scibilia | |
| 3 | Duane Nicol | |
| 4 | David Lird | |
| 5 | Brandon Ouellette | |
| 6 | Michael German | |
| 7 | JASON ROSS | |
| 8 | BRUCE KUBINY | |
| 9 | Michael BALL | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |

February 2017

Tip: **SPEAK UP!** Employees should Speak Up about their workplace concerns to a manager, HR or EEO to maintain a civil workplace.  Managers must state that employees will not be punished for reporting harassment or participating in an EEO activity.

A Civility Quote:

A thought to consider:  "**Courteousness** is consideration for others; **politeness** is the method used to deliver such considerations."     ~~Bryant H. McGill, Author, Poet, Broadcaster

May 2017

Tip: **Professionalism and ethical behavior** in the workplace can benefit and improve your working environment. Be conscious of how you treat co-workers and your workplace attitude, productivity and effectiveness can increase.

A Civility Quote:

A thought to consider: "We have a choice about how we behave, and that means we have the choice to opt for civility and grace." ~Dwight Currie, Author

**From:**     USARMY Detroit Arsena. IMCOM Central Mailbox Garrison-EQ:
**To:**       USARMY Detroit Arsena. IMCOM Central List USAG-DTA All
**Subject:**  EEO Tips, Tidbits and Helpful Information - July (UNCLASSIFIED)
**Date:**     Thursday, July 13, 2017 2:47:19 PM

CLASSIFICATION: UNCLASSIFIED

ATTENTION  ATTENTION

ALL GARRISON TEAMMATES

*****PLEASE DO NOT REPLY TO SENDER.*****

SUBJECT: EEO Tips. Tidbits and Helpful Information - July

Remember, the goal of this information is for all employees at all levels to create an Inclusive and harassment free workplace. We continue to strive as a Garrison to be a Model EEO Organization.

Tip:  Managers and Supervisors, inquiry and remedy promptly any seemingly minor acts of harassment or discrimination to avoid the development of something more severe.

A Civility Quote:

A thought to consider:  "Civility costs Nothing and buys Everything." -Mary Wortley Montagu

POC is the Garrison EEO Office and may be reached by contacting Tonja Ancrum, or Melissa Klechammer at tonja.k.ancrum.civ @ mail.mil (586)282-9658 or melissa.m.kleehammer.civ @ mail.mil (586)282-8354.

CLASSIFICATION: UNCLASSIFIED

| From: | Sanders, Ralph A Jr CIV USARMY ID-SUSTAINMENT (US) |
|---|---|
| To: | USARMY Detroit Arsenal IMCOM Central List USAG-DTA All |
| Subject: | EEO Tips, Tidbits and Helpful Information (UNCLASSIFIED) |
| Date: | Thursday, April 13, 2017 11:10:12 AM |

CLASSIFICATION: UNCLASSIFIED

*****PLEASE DO NOT REPLY TO SENDER.*****

Teammates.

Remember, the goal of this information is for all employees at all levels to create an Inclusive and harassment free workplace. We continue to strive as a Garrison to be a Model EEO Organization.

Tip: Be alert to harassment or discrimination. Stop, address and prevent harassment and discrimination.

Civility Quote:
A thought to consider: "Every action done in company ought to be with some sign of respect to those that are present."    George Washington

POC is the Garrison EEO Office and may be reached by contacting Tonja Ancrum, or Melissa Kleehammer at tonja.k.ancrum.civ@mail.mil (586)282-8354 or melissa.m.kleehammer.civ@mail.mil (586)282-9658.

V r,

Melissa Kleehammer
EEO Specialist
US Army Garrison - Detroit Arsenal
282-8354, DSN 786
Comm: 586-282-8354
BB: 586-216-8985

We are the Army's Home!

Check Out USAG-DTA's Facebook Fan Page
http://www.facebook.com.group.php?gid_296138145953#!/pages_Warren-MI-US-Army-Garrison-Detroit-Arsenal/348605076817

Please use the Interactive Customer Evaluation (ICE) system to provide comments on service received.
https://ice.disa.mil.index.cfm?fa=site&site_id_645

ATTENTION! The information contained in this e-mail must be protected in accordance with DoD Directive 5400.11R, F3.1.1 and is 'For Official Use Only.' It is intended solely for the individual to whom it is addressed and should be protected so that the security and confidentiality of the information is preserved. If you received this e-mail in error, please notify me immediately by return e-mail or by calling 586-282-9658.

CLASSIFICATION: UNCLASSIFIED

 # EEO Article: Dos and Don'ts When An Employee Is Involved With the EEO Complaint Process

### *What to know and do when an employee contacts the EEO Office, files an EEO complaint, or is a witness in an active EEO complaint*

First: Attempt to resolve wrongs, violations of law, regulations, or policies at the lowest level before contact is made to the EEO Office.

**_Dos:_**

- Continue to work with the employee in a normal manner.
- Cooperate with the counselor or investigator.
- Contact your servicing Staff Judge Advocate Legal Office for assistance. The Staff Judge Advocate Legal Office represents the Army, but can assist through the process.
- Consider whether mediation will be helpful in resolving the complaint.
- Afford the employee reasonable amount of time to present their complaint and respond to agency requests for information.
- If the employee attempts to discuss the allegation with you: give a neutral, non-committal response; assure the employee that it is their right to file a complaint; assure the employee of your willingness to provide assistance if they have a problem on the job; prepare an MFR of these conversations.
- If you are unaware there is a problem, attempt to resolve wrongs, violations of law, regulations, or policies.
- Maintain a positive attitude and do not take the action personally.
- If you feel a hostile environment is brewing, discuss it with your supervisor or an EEO Staff Member.

**_Don'ts:_**

- Do not confront the employee about the complaint or persuade the employee to drop the complaint.
- Do not avoid the employee; conduct business as usual.
- Never comment on the merits of the complaint or try to explain how the employee misunderstood your actions.
- Do not fault the employee for using the complaint process (avoid critical comments; avoid a negative attitude toward the employee   it could be used in support of a reprisal complaint).
- Do not participate in employee-created situations problem (probing about the allegation; heightened sensitivity; making trouble—some employees may attempt to provoke you into reacting in a hostile manner).
- Do not terminate, discipline, or threaten the employee.
- Do not assign more unfavorable tasks or duties that are above the normal workload previous to filing a charge.
- Do not give a bad performance review after the charge is filed when previous evaluations were good.
- Do not deny a promotion for which the employee was in line for.
- Do not over supervise   unless you can document reasons for doing so.
- Do not discuss the merits of the complaint with anyone that does not have a need to know.

Garrison Equal Employment Opportunity Office, Detroit Arsenal, Building 230, Room 1H139

EEO Officer: Tonja Ancrum ✗ (586)282-9658 ✗ tonja.k.ancrum.civ@mail.mil

EEO Specialist: Melissa Kleehammer ✗ (586)282-8354 ✗ melissa.m.kleehammer.civ@mail.mil

*February 2018*






# EEO Article:  Dos and Don'ts When An Employee Is Involved With the EEO Complaint Process

## *What to know and do when an employee contacts the EEO Office, files an EEO complaint, or is a witness in an active EEO complaint*

First: Attempt to resolve wrongs, violations of law, regulations, or policies at the lowest level before contact is made to the EEO Office.

### *Dos:*

- Continue to work with the employee in a normal manner.
- Cooperate with the counselor or investigator.
- Contact your servicing Staff Judge Advocate Legal Office for assistance.  The Staff Judge Advocate Legal Office represents the Army, but can assist through the process.
- Consider whether mediation will be helpful in resolving the complaint.
- Afford the employee reasonable amount of time to present their complaint and respond to agency requests for information.
- If the employee attempts to discuss the allegation with you:  give a neutral, non-committal response; assure the employee that it is their right to file a complaint; assure the employee of your willingness to provide assistance if they have a problem on the job;  prepare an MFR of these conversations.
- If you are unaware there is a problem, attempt to resolve wrongs, violations of law, regulations, or policies.
- Maintain a positive attitude and do not take the action personally.
- If you feel a hostile environment is brewing, discuss it with your supervisor or an EEO Staff Member.

### *Don'ts:*

- Do not confront the employee about the complaint or persuade the employee to drop the complaint.
- Do not avoid the employee; conduct business as usual.
- Never comment on the merits of the complaint or try to explain how the employee misunderstood your actions.
- Do not fault the employee for using the complaint process (avoid critical comments; avoid a negative attitude toward the employee   it could be used in support of a reprisal complaint).
- Do not participate in employee-created situations problem (probing about the allegation; heightened sensitivity; making trouble—some employees may attempt to provoke you into reacting in a  hostile manner).
- Do not terminate, discipline, or threaten the employee.
- Do not assign more unfavorable tasks or duties that are above the normal workload previous to filing a charge.
- Do not give a bad performance review after the charge is filed when previous evaluations were good.
- Do not deny a promotion for which the employee was in line for.
- Do not over supervise—unless you can document reasons for doing so.
- Do not discuss the merits of the complaint with anyone that does not have a need to know.

---

Garrison Equal Employment Opportunity Office, Detroit Arsenal, Building 230, Room 1H139

EEO Officer:  Tonja Ancrum ∞ (586)282-9658 ✗ tonja.k.ancrum.civ@mail.mil

EEO Specialist:  Melissa Kleehammer ✗ (586)282-8354 ✗ melissa.m.kleehammer.civ@mail.mil

*February 2018*



**Commander's Critical Information Requirements (CCIR)**
**TACOM LCMC OPORD 14-001, Appendix 5**
**Sexual Assault/Sexual Harassment**

Please submit ENCRYPTED within 24 hours:

Line 1 - CCIR Number Unknown at present time:

Date of CCIR:   5 April 2018

Date and Time Incident Reported? 0800 5 April 2018

Who reported incident?  Joe DeSilva (complainant) To whom was incident reported?
Heather Llewellyn (SARC)

Line 2 - Type of Incident (Sexual Harassment or Sexual Assault): Sexual Harassment

Line 3 - Date and Time of Incident: 3 April 2018 (between 0745-0800)

Line 4 - Personnel Involved: Joe DeSilva/ Asst. Fire Chief Potter

Alleged Victim:

    (a)  Name:  Joseph DeSilva

    (b)  Rank or Grade: GS-7

    (c)  Position:  Firefighter

    (d)  Security Clearance:  n/a

    (e)  Unit and Station of Assignment:  Garrison/ Firefighter

    (f)  Duty Status:  On duty when incident occurred

Alleged Perpetrator:

    (a)  Name:  Martin Potter

    (b)  Rank or Grade: GS-10 or GS-11 (unknown for sure)

    (c)  Position:  Assistant Fire Chief

    (d)  Security Clearance:  n/a

    (e)  Unit and Station of Assignment:  Garrison/Firefighter

    (f)  Duty Status:  On duty when incident occurred

Line 5 - Summary of Incident – DO NOT INTERVIEW WITNESSES – just get all details of

the victim's allegation.  Do not include extraneous information:

    (a)    BLUF

        Asst. Fire Chief Potter stated to Firefighter DeSilva "How much do breast
implants cost" in the firehouse.  This occurred during the shift change and there
were other firefighters present at the time this occurred. The Fire Chief Edwards was
present and also laughed when this was said.  It occurred approximately 0745-0800
on the 3rd April.  Firefighter DeSilva had switched his regular shift which is why he
was working with Asst. Fire Chief Potter.  There has been prior history between
these two- Firefighter DeSilva indicated that he filed an EEO complaint against Asst.
Chief Potter last year for making comments about Firefighter DeSilva being able to
wear a "B-cup bra". Asst. Fire Chief Potter was told to refrain from these comments
and according to Firefighter DeSilva he has, but he also doesn't work with him that
frequently.  His boss is Asst. Fire Chief Ball.  He has a meeting with Asst. Fire Chief
Ball today to make him aware that this has occurred and that he is filing a SHARP
complaint.

    (b)  New Issues:  Statement about breast implants

    (c)  Background/Action Taken: Have the alleged victim and perpetrator been separated?
They do not normally work together. They worked only this shift because Firefighter
DeSilva switched shifts.

    (d)  Road Ahead: Screening team to make a determination.

    (e)  Who has been notified and coordination made with:  EEO and Legal are being
sent a copy of this CCIR.

    (f)  Impact: n/a

    (g)  Is a victim statement attached?  no

    (h)  Has the victim been notified of and acknowledged (in writing) the right to file an

EEO complaint within 45 calendar days of the incident? Verbally discussed, can

provide written later.  He indicated an unwillingness to go through the EEO process

because he feels that it is not helpful.

Line 6 - Remarks: none

Line 7 - Publicity:    none

Line 8 - Official Reporting:

        Name: Heather Llewellyn
        Phone: 282-0476

000100

Email: heather.m.llewellyn.civ@mail.mil

Additional Comments/Information: n/a

| From: | Llewellyn, Heather M CIV USARMY USAG (US) |
|---|---|
| To: | YOUNG, ARTHUR J JR CIV CIV USARMY ID-SUSTAINMENT (US) |
| Subject: | RE: Sexual Harassment Complaint (UNCLASSIFIED) |
| Date: | Thursday, April 5, 2018 1:06:01 PM |

Mr. Art--

I believe that is you- I called Legal for guidance and am hoping they will call me back with an answer to provide you.

Thanks.

Heather

-----Original Message-----
From: YOUNG, ARTHUR J JR CIV USARMY ID-SUSTAINMENT (US)
Sent: Thursday, April 5, 2018 12:55 PM
To: Llewellyn, Heather M CIV USARMY USAG (US) <heather.m.llewellyn.civ@mail.mil>
Subject: RE: Sexual Harassment Complaint (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

Acknowledged;

Who is appointing the Investigating Officer?

ARTHUR J. YOUNG, JR.
Director, Emergency Services
Installation Management Command
U.S. Army Garrison - Detroit Arsenal
Building 203, Room 1F193-O
6501 East 11 Mile Rd.
Warren, Michigan 48397
Desk: 586-282-0614
DSN: 786-0614
Cell: 586-943-8106

We are the Army's Home - Serving the Rugged Professional

Learn more at www.imcom.army.mil
Learn more at https://www.facebook.com/Army.Detroit.Arsenal

-----Original Message-----
From: Llewellyn, Heather M CIV USARMY USAG (US)
Sent: Thursday, April 05, 2018 12:53 PM
To: YOUNG, ARTHUR J JR CIV USARMY ID-SUSTAINMENT (US) <arthur.j.young8.civ@mail.mil>
Subject: Sexual Harassment Complaint

Mr. Young-

This is an early notification to you that there has been a sexual harassment complaint filed with my office- this involves Firefighter DeSilva (complainant) and Assistant Chief Potter (alleged offender) with Chief Edwards allegedly having a part in not stopping the comments that were made immediately.

Ms. Tiffany Hall will be providing you with a letter to help guide you in what your role is. I will also be providing notification to Mr. Moscone/Ms. Mead (and their acting's).

If there are any questions, concerns or issues, please let me know. I will be leaving the office today at 1300 to head for a training at Selfridge and out tomorrow on RDO but will be available by cell at 586-945-2094.

Thank you.
Heather

Heather M. Llewellyn. MS
Garrison SARC
Installation Management Command
Sustainment Directorate
USAG Detroit Arsenal
Building 230. Room 111187-O
6501 East 11 Mile
Warren. MI 48397
Desk: 586-282-0476
DSN: 786-0476
Cell: 586-945-2094
SHARP 24 Hour Hotline: 313-269-0199

SAFE HELPLINE: 877-995-5247
www.safehelpline.org

We are the Army's Home- Serving the Rugged Professional

Learn more at www.imcom.army.mil
Learn more at http://on.fb.me/Detroit-Arsenal

CLASSIFICATION: UNCLASSIFIED

| From: | Hall, Tiffany J.L. CIV USARMY HQDA CALS (US) |
| To: | Moscone, Joseph CIV USARMY IMCOM (US) |
| Cc: | YOUNG, ARTHUR J JR CIV USARMY IP-SUSTAINMENT (US); Watmore, Teresa J CIV USARMY TACOM (US); Llewellyn, Heather M CIV USARMY USAG (US) |
| Subject: | SHARP Allegation DeSilva/ Potter |
| Date: | Monday, April 9, 2018 9:48:21 AM |
| Attachments: | Notification memo to perp Potter. DeSilva.docx |
| | Notification memo to Victim DeSilva.docx |
| | CCIR Form-DeSilva.docx |
| | Std Screening Results to Mgmt DeSilva.pdf |

Hi Mr. Moscone,

An allegation of sexual harassment was made by Joe DeSilva. The allegation has been screened by the SHARP team and the determination was made that it potentially rises to the level of sexual harassment warranting a SHARP Investigation. If you agree, please add your signature block to the bottom of the memo, sign, date and return to me.

Attached are:

1. The SHARP team screening results:
2. The notification template for the alleged victim;
3. The notification template for the alleged perpetrator;
4. CCIR.

Please notify management that the notification memos must be provided to both parties as soon as possible and they will each party will need to be updated about the progress of the investigation every 30 days until the completion.

Please identify an Investigating Officer (IO) who is higher in grade/rank than both parties. After you identify an IO I will draft an Appointment letter and provide it to you for signature

Should you have questions, please contact me. Thanks!

Tiffany J.L. Hall
Attorney Advisor
AMC Legal Center - Warren
: 586-282-8405 Fax:282-5694/DSN: 786
: tiffany.j.hall10.civ @mail.mil

THE INFORMATION CONTAINED IN OR ATTACHED TO THIS ELECTRONIC MESSAGE IS ATTORNEY WORK-PRODUCT. SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE OR OTHERWISE CONFIDENTIAL AND IS INTENDED STRICTLY FOR THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY EXAMINATION, USE, DISSEMINATION, DISTRIBUTION, DUPLICATION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED AND MAY CONSTITUTE A VIOLATION OF LAW. ANY MISUSE OR UNAUTHORIZED DISCLOSURE MAY RESULT IN BOTH CIVIL AND CRIMINAL PENALTIES. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY DELETE THE ORIGINAL MESSAGE, DESTROY ANY HARD COPIES AND NOTIFY THIS OFFICE BY TELEPHONE AT NUMBER INDICATED ABOVE.

| From: | Edwards, Sean L CIV USARMY ID-SUSTAINMENT (US) |
|---|---|
| To: | YOUNG, ARTHUR J JR CIV USARMY ID-SUSTAINMENT (US) |
| Subject: | RE: Pending SHARP Investigation (UNCLASSIFIED) |
| Date: | Friday, April 6, 2018 5:51:17 AM |

CLASSIFICATION: UNCLASSIFIED

Good morning. I have not taken any action on any employee regarding this incident. I will inform Mr. Potter to refrain from any conversations or actions that would be considered reprisal.


-----Original Message-----
From: YOUNG, ARTHUR J JR CIV USARMY ID-SUSTAINMENT (US)
Sent: Thursday, April 5, 2018 3:05 PM
To: Edwards, Sean L CIV USARMY ID-SUSTAINMENT (US) < sean.l.edwards.civ a mail.mil ·
Subject: Pending SHARP Investigation (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

Chief,

The GM just called me. He will be in sometime tomorrow (he returns from TDY in the morning) to discuss process with Legal. Of course, he wanted to ensure no "actions" were taken with anyone involved in the incident until the investigation is completed. His first impression was to refer the investigation to me, but will discuss process with Legal and SHARP.

I am on leave tomorrow but will be monitoring my BB. The GM plans to contact me when he has determined how the investigation will be conducted.

Art.


ARTHUR J. YOUNG, JR.
Director, Emergency Services
Installation Management Command
U.S. Army Garrison - Detroit Arsenal
Building 203, Room II 193-O
6501 East 11 Mile Rd.
Warren, Michigan 48397
Desk: 586-282-0614
DSN: 786-0614
Cell: 586-943-8106

We are the Army's Home - Serving the Rugged Professional

Learn more at www.imcom.army.mil
Learn more at https://www.facebook.com/ArmyDetroitArsenal

CLASSIFICATION: UNCLASSIFIED
CLASSIFICATION: UNCLASSIFIED



**From:** Edwards, Sean L CIV USARMY ID-SUSTAINMENT (US)
**To:** Moscone, Joseph CIV USARMY IMCOM (US); YOUNG, ARTHUR J JR CIV USARMY ID-SUSTAINMENT (US)
**Subject:** RE: 15-6 (UNCLASSIFIED)
**Date:** Tuesday, April 10, 2018 6:04:34 AM

CLASSIFICATION: UNCLASSIFIED

Sir.

Good morning. I assure you that no one is going to disrupt the process of the investigation. All supervisory personnel have been advised of the consequences of reprisal and or convolution of an official investigation.

V r.

Sean Edwards
Fire Chief, CFO
Installation Management Command
USAG Detroit Arsenal
Building 205, Room IC 200
6501 East 11 Mile Rd.
Warren. Michigan 48397
Desk: 586-282-0140
DSN: 786-0140
Cell: 586-298-7156

We are the Army's Home - Serving the Rugged Professional

Learn more at www.imcom.army.mil
Learn more at https://www.facebook.com.Army.Detroit.Arsenal

-----Original Message-----
From: Moscone. Joseph CIV USARMY IMCOM (US)
Sent: Monday, April 9. 2018 4:31 PM
To: Edwards. Sean L CIV USARMY ID-SUSTAINMENT (US) <sean.l.edwards.civ a mail.mil>; YOUNG. ARTHUR J JR CIV USARMY ID-SUSTAINMENT (US) <arthur.j.young8.civ a mail.mil>
Subject: 15-6

Gents---just informing I've gone ahead and launched the 15-6 ref Dasilva's allegations (wrt alleged cmts made toward him by another employee). which SHARP and SJA pushed to me. I was not in favor of this being worked at my level, but after discussion on other details which I won't get into here. I agreed to go that route.

In any event. again FYI. I appointed Mr. Porter as IO----he will be moving fwd with statements etc . so just wanted you to be aware so you can ensure full support for him.  I don't know what the climate is down there on all this. but I want to be sure that the process is executed without drama. Want our personnel focused on the mission. while letting this thing carry itself out. Hopefully we'll get this done quickly.

Lastly. I want to keep this issue separate from the other copier-IG thing. which after my discussion with Sean today. should be a closed deal.

We'll talk after this concludes on some other guidance I have on the way ahead.

Let me know if there are any questions. Many thanks.

Joseph (Joe) Moscone
Garrison Manager
Installation Management Command
U.S. Army Garrison-Detroit Arsenal
Building 229
6501 East 11 Mile Road
Warren, Michigan 48397
Desk: 586-282-5115  DSN: 786-5115


CLASSIFICATION: UNCLASSIFIED



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

IMMI-ZB                                                                    10 Apr 2018

MEMORANDUM FOR Robert Porter

SUBJECT: Appointment as Investigating Officer

1. Appointment. You are hereby appointed as an Investigating Officer (IO) pursuant to Army Regulation (AR) 15-6, Procedures for Administrative Investigations and Boards of Officers, to conduct an informal administrative investigation into the facts and circumstances regarding incidents involving Mr. Joe DeSilva and Mr. Martin Potter. Your responsibilities as an IO take precedence over all other duties. You have 30 days from the date of this appointment to conduct this investigation. Coordinate any requests for extensions through your legal advisor.

2. General Instructions

    a. The purpose of an AR 15-6 investigation is to elicit facts. You are directed to conduct an investigation into the matters set forth in paragraph 3, below. Your investigation should explore any issues or deficiencies with policy, procedures, resources, doctrine, training, and leadership that might have contributed to this incident. Upon completion of this investigation, you will complete a report of investigation that conforms to the requirement in paragraph 5 of this memorandum and AR 15-6. You will provide your report to your legal advisor, who will arrange for a legal review.

    b. If, at any time in the conduct of your investigation, something happens that could cause me to consider enlarging, restricting or terminating your investigation, or otherwise modifying any instruction in this memorandum of appointment, immediately report this situation to me, together with your recommendations as to the action I should take in response.

3. Scope of Investigation/Specific Instructions.

    a. You are hereby directed to conduct an investigation into an allegation of sexual harassment. Such review should include a thorough analysis of whether the circumstances alleged are accurate and merit correction. You should also report whether any personnel should be held accountable for any shortcomings or failures.

    b. During your investigation you will, at a minimum, ascertain the following:

        1. Did Mr. Potter make harassing comments of a sexual nature to Mr. DeSilva? If so, when and what were the comments?

2. Specifically did Mr. Potter ask Mr. DeSilva about breast implants and about his bra size?

3. Did Mr. DeSilva solicit or initiate any of the comments?

4. How did Mr. DeSilva respond to the comments?

5. How long have the comments been occurring?

6. Has anyone else heard these comments being made? If so, who?

7. Did Mr. DeSilva ever tell Mr. Potter that these comments were unwelcome?

8. How many times did Mr. DeSilva indicate that the comments were unwelcome?

9. Did the comments continue?

10. Did Mr. DeSilva report any of these incidents to his chain of command? If so, when and to who?

11. What did management do after the incident(s) were reported?

12. Did anyone else make inappropriate comments to Mr. Silva? If so, who and when?

13. Were inappropriate comments made to anyone else in general? To whom, by whom and when?

14. How long have these comments and/or emails been happening?

4. Conduct of the Investigation.

   a. Tiffany Hall, Attorney-Advisor, is your legal advisor. You will consult with your legal advisor before making substantive efforts regarding your investigation. You may request that additional individuals or subject matter experts be appointed, in writing, to accompany you and assist you in your investigation. Coordinate such requests with your legal advisor, she can be reached at 586-282-8405.

   b. Evidence Collection.

1.  You are to conduct this investigation using the procedures outlined in Chapter 4, and the general guidance provided in Chapter 3, AR 15-6. No individual has been named a respondent at this time.

2.  To the extent possible, witness statements will be written and sworn. You should record witness statements on a DA Form 2823 (Sworn Statement). If it is impractical to obtain a written and/or sworn statement from a particular witness, you will attest to the accuracy of any transcription or summary of such witness testimony in whatever form it appears within your report of Investigation. In accordance with AR 340-21, provide a Privacy Act statement to a witness if you do not use a DA Form 2823 to record the statement of that witness, and your report will be filed in a system of records from which is can be retrieved by reference to the name or other personal identifier of that witness. No U.S. military or civilian witness can be ordered to provide information that may incriminate him or herself. You may order a military or Federal Government civilian employee witness to provide a statement if you believe that they have relevant information that would not incriminate themselves. If, in the course of your investigation you come to suspect a person may have engaged in criminal conduct, you will consult with your legal advisor and inform me. Under no circumstances should you attempt to elicit any information from a suspect without first advising that person of his/her rights under Article 31, UCMJ, or the Fifth Amendment of the U.S. Constitution, as appropriate. Document your rights advisement and witness waivers of their Article 31 or Fifth Amendment rights on a DA Form 3881 (Rights Warning Procedure/Waiver Certificate).

3.  Where a civilian employee is a member of a bargaining unit and reasonably believes that the inquiry could lead to disciplinary action against him or her, the employee may have a representative from the bargaining unit present during questioning. You will consult your legal advisor if you have any questions regarding these procedures.

¶.  Report of Investigation.

a.  General. Your report of investigation will be written. Use a DA Form 1574-1, Report of Proceedings by Investigating Officer, and attach all required enclosures and exhibits.

b.  Assembly. Your completed AR 15-6 investigation will include:

1.  This memorandum of appointment;

2.  A completed DA Form 1574-1, Report of Proceedings by Investigating Officer, to include a memorandum with your findings and recommendations;

3.  A detailed chronology of the daily actions you took during the investigation;

4.  An index of all attached exhibits;

5. All exhibits, labeled and numbered;

6. A list of the witnesses you interviewed;

7. If applicable, proper classification markings for each paragraph, page, and exhibit included within your report of investigation; and

8. Findings. You will reach your findings by a preponderance of the evidence that you gather. A finding is a clear and concise statement of facts that can be readily deduced from evidence in the record. In your report, develop specific findings and cite the evidence that supports your findings. If evidence conflicts (e.g., conflicting witness statements), make a finding as to which evidence is more credible and why you believe it to be more credible.

9. Recommendations. Based on your findings, make recommendations as to what changes, if any, are needed in terms of policy, procedures, resources, doctrine, training, and leadership to avoid incidents of this nature in the future, as well as recommendations consistent with your findings concerning other items your investigation revealed. Each recommendation will cite to the finding that supports it, and should comport with the guidance in AR 15-6.

6. Submission. Submit your report of investigation in hard copy and an electronic copy on a compact disc after you have obtained a legal review. You may not release any information related to this investigation to anyone, other than your legal advisor, without my prior approval.

JOSEPH MOSCONE
Garrison Manager

## REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS
For use of this form, see AR 15-6; the proponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

### SECTION I - APPOINTMENT

Appointed by ___Joseph Moscone___

*(Appointing authority)*

on ___10 April 2018___ *(Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)*
*(Date)*

### SECTION II - SESSIONS

The *(investigation) (board)* commenced at ___United States Army Garrison Detroit Arsenal___ at ___0755___
*(Place)* *(Time)*

on ___16 April 2018___ *(If a formal board met for more than one session, check here ☐ . Indicate in an inclosure the time each session began and*
*(Date)*
ended, the place, persons present and absent, and explanation of absences, if any.) The following persons *(members, respondents, counsel)* were
present: *(After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*

The following persons *(members, respondents, counsel)* were absent: *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*

The *(investigating officer) (board)* finished gathering/hearing evidence at ___1200___ on ___19 April 2018___
*(Time)* *(Date)*

and completed findings and recommendations at ___1300___ on ___3 May 2018___
*(Time)* *(Date)*

### SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO[1] | NA[2] |
|---|---|---|---|
| 1  Inclosures  *(para 3-15, AR 15-6)* | | | |
| Are the following inclosed and numbered consecutively with Roman numerals:  *(Attached in order listed)* | | | |
| a. The letter of appointment or a summary of oral appointment data? | ☒ | ☐ | |
| b. Copy of notice to respondent, if any? *(See item 9, below)* | ☒ | ☐ | |
| c. Other correspondence with respondent or counsel, if any? | ☐ | ☐ | ☒ |
| d. All other written communications to or from the appointing authority? | ☐ | ☐ | ☒ |
| e. Privacy Act Statements *(Certificate, if statement provided orally)*? | ☒ | ☐ | |
| f. Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered  *(e.g., absence of material witnesses)*? | ☐ | ☐ | ☒ |
| g. Information as to sessions of a formal board not included on page 1 of this report? | ☐ | ☐ | ☒ |
| h. Any other significant papers  *(other than evidence)*  relating to administrative aspects of the investigation or board? | ☐ | ☐ | ☒ |

FOOTNOTES:  1. Explain all negative answers on an attached sheet.
2. Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

DA FORM 1574, MAR 1983   EDITION OF NOV 77 IS OBSOLETE.   Page 1 of 4 pages   APD LC v1.30

| | | YES | NO[1] | NA[2] |
|---|---|---|---|---|
| 2 | Exhibits  *(para 3-16, AR 15-6)* | | | |
| | a. Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | ☒ | ☐ | ☐ |
| | b. Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | ☒ | ☐ | ☐ |
| | c. Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | ☒ | ☐ | ☐ |
| | d. Are copies, descriptions, or depictions substituted for real or documentary evidence) property authenticated, and the location of the original evidence indicated? | ☐ | ☐ | ☒ |
| | e. Are descriptions or diagrams included of locations visited by the investigating officer or board  *(para 3-8b, AR 15-6)?* | ☐ | ☐ | ☒ |
| | f. Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | ☒ | ☐ | ☐ |
| | g. If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit  *(para 3-16d, AR 15-6)?* | ☐ | ☐ | ☒ |
| 3 | Was a quorum present when the board voted on findings and recommendations  *(paras 4-1 and 5-2b, AR 15-6)?* | ☐ | ☐ | |
| **B.** | **COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS  *(Chapter 5, AR 15-6)*** | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment  *(para 5-3b, AR 15-6)?* | ☐ | ☐ | |
| 5 | Was a quorum present at every session of the board  *(para 5-2b, AR 15-6)?* | ☐ | ☐ | |
| 6 | Was each absence of any member property excused  *(para 5-2a, AR 15-6)?* | ☐ | ☐ | |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required  *(para 3-1, AR 15-6)?* | ☐ | ☐ | |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence  *(para 5-2d, AR 15-6)?* | ☐ | ☐ | |
| **C.** | **COMPLETE ONLY IF RESPONDENT WAS DESIGNATED  *(Section II, Chapter 5, AR 15-6)*** | | | |
| 9 | Notice to respondents  *(para 5-5, AR 15-6):* | | | |
| | a. Is the method and date of delivery to the respondent indicated on each letter of notification? | ☐ | ☐ | |
| | b. Was the date of delivery at least five working days prior to the first session of the board? | ☐ | ☐ | |
| | c. Does each letter of notification indicate | | | |
| | (1)   the date, hour, and place of the first session of the board concerning that respondent? | ☐ | ☐ | |
| | (2)   the matter to be investigated, including specific allegations against the respondent, if any? | ☐ | ☐ | |
| | (3)   the respondent's rights with regard to counsel? | ☐ | ☐ | |
| | (4)   the name and address of each witness expected to be called by the recorder? | ☐ | ☐ | |
| | (5)   the respondent's rights to be present, present evidence, and call witnesses? | ☐ | ☐ | |
| | d. Was the respondent provided a copy of all unclassified documents in the case file? | ☐ | ☐ | |
| | e. If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | ☐ | ☐ | |
| 10 | If any respondent was designated after the proceedings began  *(or otherwise was absent during part of the proceedings):* | | | |
| | a. Was he property notified  *(para 5-5, AR 15-6)?* | ☐ | ☐ | |
| | b. Was record of proceedings and evidence received in his absence made available for examination by him and his counsel  *(para 5-4c, AR 15-6)?* | ☐ | ☐ | |
| 11 | Counsel  *(para 5-8, AR 15-6):* | | | |
| | a. Was each respondent represented by counsel? | | | |
| | Name and business address of counsel: | | | |
| | | | | |
| | *(If counsel is a lawyer, check here ☐ )* | | | |
| | b. Was respondent's counsel present at all open sessions of the board relating to that respondent? | ☐ | ☐ | ☐ |
| | c. If military counsel was requested but not made available, is a copy  *(or, if oral, a summary)* of the request and the action taken on it included in the report  *(para 5-8b, AR 15-6)?* | ☐ | ☐ | ☐ |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality  *(para 5-7, AR 15-6):* | | | |
| | a. Was the challenge property denied and by the appropriate officer? | ☐ | ☐ | |
| | b. Did each member successfully challenged cease to participate in the proceedings? | ☐ | ☐ | |
| 13 | Was the respondent given an opportunity to  *(para 5-8a, AR 15-6):* | | | |
| | a. Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | ☐ | ☐ | |
| | b. Examine and object to the introduction of real and documentary evidence, including written statements? | ☐ | ☐ | |
| | c. Object to the testimony of witnesses and cross-examine witnesses other than his own? | ☐ | ☐ | |
| | d. Call witnesses and otherwise introduce evidence? | ☐ | ☐ | |
| | e. Testify as a witness? | ☐ | ☐ | |
| | f. Make or have his counsel make a final statement or argument  *(para 5-9, AR 15-6)?* | ☐ | ☐ | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses  *(para 5-8b, AR 15-6)?* | ☐ | ☐ | ☐ |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it  *(para 5-11, AR 15-6)?* | ☐ | ☐ | ☐ |

FOOTNOTES:  1/ Explain all negative answers on an attached sheet

2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

APD LC v1.30

Detailed chronology of the daily actions taken during the 15-6 investigation between Joe DaSilva and Martin Potter.

1. On 4/10/2018, I received and read over my appointment Memo.
2. On 4/10/2018, I reviewed the CCIR and developed my plan of action.
3. On 4/11/2018, I received confirmation from DGM that I could start interviewing witnesses.
4. On 4/16/2018, I interviewed the complainant, which was the first day he was available.
5. On 4/16/2018, I also started conducting interviews with witnesses.
6. On 4/19/2018, this was the next day that witnesses was available to continue interviews
7. On 4/19/2018, I completed all witness interviews.
8. On 5/3/2018 I completed my inquiry and send copy to Legal for Review.

An index of all attached exhibits to include Privacy Act Statement for each DA Form 2823.

A. DA Form 2823-DaSilva, Joe
B. DA Form 2823-Tillman, Lesley
C. DA Form 2823-Kulmin, Matthew
D. DA Form 2823-Ferris, David
E. DA Form 2823-Holtyn, Matthew
F. DA Form 2823-Edwards, Sean
G. DA Form 2823-Potter, Martin
H. DA Form 2823-Perkins, Jonathan
I. Appointment as Investigating Officer
J. Update Regarding Allegation of Sexual Harassment (Mr. Joe DaSilva)
K. Update Regarding Allegation of Sexual Harassment (Mr. Martin Potter)
L. Allegation of Sexual Harassment Screening Results
M. Commanders Critical Information Requirements
N. EEO Counselors report from Joe DaSilva

List of witnesses you interviewed.

1. DaSilva, Joe
2. Tillman, Lesley
3. Kulmin, Matthew
4. Ferris, David
5. Holtyn, Matthew
6. Edwards, Sean
7. Potter, Martin
8. Perkins, Jonathan


Memorandum with Findings

Findings

1. Did Assistant Chief Potter make harassing comments of a sexual nature to Fire Fighter DaSilva? When and what were the comments? As for the incidents on or about 3 April 2018, I do not believe sexual harassment was the issue, but Assistant Chief Potter did ask Fire Fighter DaSilva about the cost of breast implants and it was perceived by Fire Fighter DaSilva to be sexual harassment, because he believed it related back to other encounters with Assist Chief Potter. I do believe there was harassment from Mr. Potter, but I believe he did not think it was wrong because of the environment of continued harassment from all within the department, until he was told a complaint was filed. Then he realized as part of the chain of command in the department he should not have said or should be participating in any type of harassment, but should be the one that should be enforcing a no harassment environment.

2. Specifically, did Assistant Chief Potter ask Fire Fighter DaSilva about breast implants and about his bra size and pencil test? He did ask Fire Fighter DaSilva about breast implants, but he stated he did not ask Mr. DaSilva about his bra size and I only found evidence of it

happening in the past from a few.

3.

4. Did Fire Fighter DaSilva solicit or initiate any of the comments? Not on this date, but he has engaged in off color comments and engaged back in other similar conversations.

5. How did Fire Fighter DaSilva respond to the comments? Not on this date, but has engaged in off color comments and engaged back in other similar conversations.

6. How long have the comments been occurring? Over years between all in the fire department.

7. Has anyone else heard these comments being made? If so, who? Probably, but no specific individual.

8. Did Fire Fighter DaSilva ever tell Assistant Chief Potter that these comments were unwelcome? I could not find evidence that he did.

9. How many times did Fire Fighter DaSilva indicate that the comments were unwelcome? I could not find evidence that he did.

10. Did the comments continue? I could not find evidence for this day

11. Did Fire Fighter DaSilva report any of these incidents to his chain of command? If so, when and to whom? Yes, when he filed an EEO complaint, but not on this incident.

12. What did management do after the incident(s) were reported? I do not have official knowledge from past incidents, but this one prompted this investigation by the Garrison Manager. No, not on this day, but it appears that all in the fire department engage in this type of behavior all the time.

13. Did anyone else make inappropriate comments to Fire Fighter Silva? If so, who and when? No, not on this day, but it appears that all in the fire department engage in this type of behavior all the time.

14. Were inappropriate comments made to anyone else in general? To whom, by whom and when? No, not on this day, but it appears that all in the fire department engage in this type of behavior all the time.

15 How long have these comments and/or emails been happening? It appears that it has been happening in the fire department for a period of years.

16. Would you like to add anything to your statement about harassing comments in and around the Fire Station? It appears that all in the fire department engage in this type of behavior all the time

**SECTION IV - FINDINGS**   *(para 3-10, AR 15-6)*

The *(investigating officer) (board)* , having carefully considered the evidence, finds:

1. Did Assistant Chief Potter make harassing comments of a sexual nature to Fire Fighter DaSilva? When and what were the comments? As for the incidents on or about 3 April 2018, I do not believe sexual harassment was the issue, but Assistant Chief Potter did ask Fire Fighter DaSilva about the cost of breast implants and it was perceived by Fire Fighter DaSilva to be sexual harassment, because he believed it related back to other encounters with Assist Chief Potter. I do believe there was harassment from Mr. Potter, but I believe he did not think it was wrong because of the environment of continued harassment from all within the department, until he was told a complaint was filed. Then he realized as part of the chain of command in the department he should not have said or should be participating in any type of harassment, but should be the one that should be enforcing a no harassment environment.

2. Specifically, did Assistant Chief Potter ask Fire Fighter DaSilva about breast implants and about his bra size and pencil test? He did ask Fire Fighter DaSilva about breast implants, but he stated he did not ask Mr. DaSilva about his bra size and I only found evidence of it happening in the past from a few.

3. Did Fire Fighter DaSilva solicit or initiate any of the comments? Not on this date, but he has engaged in off color comments and engaged back in other similar conversations.

4. How did Fire Fighter DaSilva respond to the comments? Not on this date, but has engaged in off color comments and engaged back in other similar conversations.

5. How long have the comments been occurring? Over years between all in the fire department.

6. Has anyone else heard these comments being made? If so, who? Probably, but no specific individual.

7. Did Fire Fighter DaSilva ever tell Assistant Chief Potter that these comments were unwelcome? I could not find evidence that he did.

8. How many times did Fire Fighter DaSilva indicate that the comments were unwelcome? I could not find evidence that he did.

9. Did the comments continue? I could not find evidence for this day.

10. Did Fire Fighter DaSilva report any of these incidents to his chain of command? If so, when and to whom? Yes, when he filed an EEO complaint, but not on this incident.

11. What did management do after the incident(s) were reported? I do not have official knowledge from past incidents, but this one prompted this investigation by the Garrison Manager. No, not on this day, but it appears that all in the fire department engage in this type of behavior all the time.

12. Did anyone else make inappropriate comments to Fire Fighter Silva? If so, who and when? No, not on this day, but it appears that all in the fire department engage in this type of behavior all the time.

13. Were inappropriate comments made to anyone else in general? To whom, by whom and when? No, not on this day, but it appears that all in the fire department engage in this type of behavior all the time.

14. How long have these comments and/or emails been happening? It appears that it has been happening in the fire department for a period of years.

15. Would you like to add anything to your statement about harassing comments in and around the Fire Station? No, not on this day, but it appears that all in the fire department engage in this type of behavior all the time.

**SECTION V - RECOMMENDATIONS**   *(para 3-11, AR 15-6)*

**SECTION VI - AUTHENTICATION**   *(para 3-17, AR 15-6)*

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)*

| | |
|---|---|
| _____ | Robert G. Porter |
| *(Recorder)* | *(Investigating Officer) (President)* |
| _____ | _____ |
| *(Member)* | *(Member)* |
| _____ | _____ |
| *(Member)* | *(Member)* |

**SECTION VII - MINORITY REPORT**   *(para 3-13, AR 15-6)*

To the extent indicated in Inclosure _____ , the undersigned do(es) not concur in the findings and recommendations of the board.

*(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

| | |
|---|---|
| _____ | _____ |
| *(Member)* | *(Member)* |

**SECTION VIII - ACTION BY APPOINTING AUTHORITY**   *(para 2-3, AR 15-6)*

The findings and recommendations of the *(investigating officer) (board)* are *(approved) (disapproved) (approved with following exceptions/ substitutions).* *(If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

APD LC v1 30

**SWORN STATEMENT**

For use of this form, see AR 190-45; the proponent agency is PMG

**PRIVACY ACT STATEMENT**

| | |
|---|---|
| **AUTHORITY:** | Title 10, USC Section 301, Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN) |
| **PRINCIPAL PURPOSE:** | To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents |
| **ROUTINE USES:** | Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement and other personnel actions |
| **DISCLOSURE:** | Disclosure of your SSN and other information is voluntary |

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| USAG-Detroit Arsenal (DTA), MI | 20180416 | 0755 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| DaSilva, Joe, Jr. | ▓▓▓▓▓ | GS07 |

**8. ORGANIZATION OR ADDRESS**
Directorate of Emergency Services, Fire Protection and Prevention Division

**9.**

I, Joe DaSilva Jr. _____, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH

(Q1) Did Mr. Potter make harassing comments of a sexual nature to you? when and what were the comments?

(A) Yes, in the fire station kitchen during lunch/ Dinner for the last two years many times he would state I bet you can put on a B size BRA even after I have filed an EEO complaint in 2/3/2017. Last summer he made a statement of DaSilva lets do the pencil test I did not know what he was talking about. He then said to me I bet you can hold a pencil under your boobs and not let it drop. that was the test. I walked out of the kitchen very upset I then went about my job. On 4/3 18 I walked in the kitchen to put a cup in the dish washer as I walked into the kitchen A/C Potter made the statement to me DaSilva you know how much breast Implants cost don't you. as he was saying that he was looking at my chest. My witness to the B size statements are A C Tillman, FF Kumlin, FF Holytn, FF Perkins. My witness to the pencil test statement was FF Kumlin. My witness to the 4/3 18 statements about cost of breast implants are A/C Tillman and FF Ferris.

Q2) Specifically did Mr. Potter ask you about breast implants and about his bra size?

(A) yes, he did in the kitchen was the breast implants statement on 4/3/18 and the bra size statements were made several time through the last two years even after my EEO complaint on 2/3/2017.

(Q3) Did you solicit or initiate any of the comments?
(A) Never.

(Q4) How did you respond to the comments?
(A) I walked away never made any statements.

(Q5) How long have the comments been occurring?
(A) The comments have be ongoing for the last two years.

(Q6) Has anyone else heard these comments being made? If so, who?
(A) A/C Tillman, FF Perkins, FF Holytn, FF Kumlin, FF Ferris.

[signature] 4-16-18

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | | |
|---|---|---|---|
| A | [initials] | PAGE 1 OF 3 PAGES | |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ____ TAKEN AT ____ DATED ____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.*

**DA FORM 2823, NOV 2006**     PREVIOUS EDITIONS ARE OBSOLETE     APD LC v1.01ES

USE THIS PAGE IF NEEDED.  IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF _Joe DaSilva Jr._____  TAKEN AT _0755_____  ,  DATED _____- 20180416_

**9  STATEMENT** *(Continued)*

Q7) Did you ever tell Mr. Potter that these comments were unwelcome?
(A) Yes. I did not personally tell him but, when I filed my EEO Complaint on 2/3/2017. He was well notified

(Q8) How many times did you indicate that the comments were unwelcome?
(A) Once in my EEO Complaint that should have been enough.

(Q9) Did the comments continue?
(A) Yes. even after my EEO complaint and up to 4/3/18.

(Q10) Did you report any of these incidents to his chain of command? If so, when and to who?
(A) I did through my Previous EEO Complaint not this one this time from 4/3/18.

(Q11) What did management do after the incident(s) were reported?
(A) I do not know, I was told it would be taken care of by Mr. Young in my EEO agreement.

(Q12) Did anyone else make inappropriate comments to you? If so, who and when?
(A)Yes. Chief Edwards that resulted in an EEO Complaint.

(Q13) Were inappropriate comments made to anyone else in general? To whom, by whom and when?
(A) NO

(Q14) How long have these comments and/or emails been happening?
(A) the last Two years.

The outcome I would like to see regarding this matter that has been on going for the last two year of my career  I would like to see A/C Potter removed from his position.  I feel very strongly about this because is has been very painful for me and my family and I believe in this management will do the right thing.  Remember ( ZERO TOLLORANCE ).

End of statement.

4-16-18

INITIALS OF PERSON MAKING STATEMENT

PAGE  2  OF  3  PAGES

DA FORM 2823, NOV 2006                                                                                                    APD LC v1 01ES

STATEMENT OF Joe DaSilva Jr. _____ TAKEN AT 0755        DATED        20180416

9. STATEMENT *(Continued)*
End of statement.

4-16-18

**AFFIDAVIT**

I, Joe DaSilva Jr. _____ HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE __2__ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

*(Signature of Person Making Statement)*

WITNESSES.        Subscribed and sworn to before me, a person authorized by law to
                  administer oaths, this __16th__ day of ____April____ . 2018
None              at USAG-DTA, Warren MI

ORGANIZATION OR ADDRESS        *(Signature of Person Administering Oath)*

ROBERT G. PORTER
            *(Typed Name of Person Administering Oath)*
Investigating Officer
ORGANIZATION OR ADDRESS        *(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT        PAGE 3 OF 3 PAGES

DA FORM 2823, NOV 2006        APD LC v1 01ES

000120



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

IMMI-ZA                                                          22 May 2018

MEMORANDUM FOR   Mr Art Young  Director of Emergency Services

SUBJECT· Allegation of Sexual Harassment – Investigative Results


1. On 5 April 2018, a Commander's Critical Information Report (CCIR) was received which stated that Mr. Martin Potter made inappropriate comments of a sexual nature to Mr. Joe DaSilva. An investigation was conducted at my direction, and the results were provided to me.

2. After a review of the investigative results, as well as the legal opinion, I have determined that the allegation was founded. I have approved the following as actions to be taken:

-Consider disciplinary action against Mr. Martin Potter.
-Schedule and ensure that all DES personnel are given annual mandatory training on the following subjects/topics:
*Sensitivity training (ICW the EEO Office, execute this training w/in 45 days of this date)
*EEO training (annual mandate)
*Prevention of Sexual Harassment training (annual mandate)
*Diversity and cultural awareness training (annual mandate)

3. This matter is now being sent to you for appropriate action. Please meet with the CPAC-Management Employee Relations (MER) personnel, and an attorney from the General Law Division and make a determination regarding any discipline you find to be warranted. I have attached for your use in reaching your decision the applicable witness statements.

4. Once you have taken the actions that are appropriate, inform Tiffany Hall of the General Law Division. As the TACOM SHARP Legal POC, Ms. Hall will ensure all necessary reporting is done until this case has been concluded.

5. Additionally, it is essential that you notify Mr. Potter and Mr. DaSilva of the final actions taken. To do this, use the templates which are also attached. Be sure to provide a copy of the memo you send to Ms. Hall of the Legal Office.

6. If you have any questions please contact Ms. Hall, AMSTA-LA, 586-282-8405.

7. I expect that all actions concerning this matter and as directed in this correspondence be completed, with notification to me NLT 8 June 2018.


Joseph  oscone
Garrison Manager



**SECTION**

**7.2**

## Document # 2

| Name | Series | Rank | Title | Sex | National Origin | Race | Age | Religion | Prior EEO Activity |
|------|--------|------|-------|-----|-----------------|------|-----|----------|--------------------|
| Edwards, Sean | 0081 | GS-12 | Fire Chief | Male | UNK | White | 46 | UNK | No |
| Ball, Michael | 0081 | GS-10 | Asst. Chief | Male | UNK | White | 42 | UNK | No |
| Potter, Martin | 0081 | GS-10 | Asst. Chief | Male | UNK | White | 44 | UNK | No |
| Tillman, Leslie | 0081 | GS-10 | Asst. Chief | Male | UNK | Black or African American | 45 | UNK | Yes |
| Ashwell, Stephen | 0081 | GS-08 | Captain | Male | UNK | White | 49 | UNK | No |
| DeArmon, Jeremy | 0081 | GS-08 | Captain | Male | UNK | White | 42 | UNK | No |
| Hall, Jeffrey | 0081 | GS-08 | Captain | Male | UNK | White | 50 | UNK | No |
| Jones, Christopher | 0081 | GS-08 | Captain | Male | UNK | White | 37 | UNK | No |
| Scibilia, Matthew | 0081 | GS-08 | Captain | Male | UNK | White | 43 | UNK | No |
| Biehl, Shane | 0081 | GS-07 | Firefighter | Male | UNK | White | 38 | UNK | No |
| Bowie, Jeremy | 0081 | GS-07 | Firefighter | Male | UNK | Black or African American | 45 | UNK | No |
| Brahm, Michael | 0081 | GS-07 | Firefighter | Male | UNK | White | 39 | UNK | No |
| DaSilva, Joe | 0081 | GS-07 | Firefighter | Male | UNK | Hispanic or Latino | 51 | Catholic | Yes |
| Dykema, Brett | 0081 | GS-07 | Firefighter | Male | UNK | White | UNK | UNK | No |
| Fern, Michael | 0081 | GS-07 | Firefighter | Male | UNK | White | 36 | UNK | No |
| Ferris, David | 0081 | GS-07 | Firefighter | Male | UNK | White | 35 | UNK | No |
| Furman, Brian | 0081 | GS-07 | Firefighter | Male | UNK | White | 44 | UNK | Yes |
| Germain, Michael | 0081 | GS-07 | Firefighter | Male | UNK | White | 43 | UNK | No |
| Holtyn, Matthew | 0081 | GS-07 | Firefighter | Male | UNK | White | 45 | UNK | No |
| Kubiny, Bruce | 0081 | GS-07 | Firefighter | Male | UNK | White | 45 | UNK | No |
| Kumlin, Matthew | 0081 | GS-07 | Firefighter | Male | UNK | White | 38 | UNK | No |
| List, David | 0081 | GS-07 | Firefighter | Male | UNK | White | 34 | UNK | No |
| McGowan, Scott | 0081 | GS-07 | Firefighter | Male | UNK | White | 51 | UNK | No |
| Mietling, James | 0081 | GS-07 | Firefighter | Male | UNK | White | 37 | UNK | No |
| Nicol, Duane | 0081 | GS-07 | Firefighter | Male | UNK | White | 40 | UNK | No |
| Perkins, Jonathan | 0081 | GS-07 | Firefighter | Male | UNK | White | 41 | UNK | No |
| Redwood, Rodney | 0081 | GS-07 | Firefighter | Male | UNK | White | 37 | UNK | No |

| Ross, Jason | 0081 | GS-07 | Firefighter | Male | UNK | White | 44 | UNK | No |
| Todd, Adam | 0081 | GS-07 | Firefighter | Male | UNK | White | 38 | UNK | No |
| Ulman, Cary | 0081 | GS-07 | Firefighter | Male | UNK | White | 48 | UNK | No |

Note: Our agency does not track Religion, therefore, unless it is known or stated, we are unable to provide.

## DOCUMENT # 3

1.  Prior EEO Activity:  Informal Complaint
ARDETROIT15NOV04630;
11/16/2015-12/15/2015;
Harassment – Sexual, Basis(es):  Sex (Male);
Notice of Right to File Formal issued, never filed formal;
Chief Sean Edwards

2. Prior EEO Activity:  Informal Complaint:
ARDETROIT17FEB00469;
02/09/2017 – 03/06/2017;
Hostile Work Environment and reprisal, Basis(es) National Origin
(Brazilian) and Prior EEO Activity (ARDETROIT15NOV04630)
NSA Signed
Chief Sean Edwards, Assistant Chief Martin Potter



# SECTION

# 7.3

000126

DaSilva, ARDETROIT18MAY01583

## Declaration under Penalty of Perjury

I, **Joe Dasilva, Jr.**, in accordance with 28 U.S.C. §1746, make the following statement:

EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.

AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended: Executive Order 10577; and 29 CFR 1614.

PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.

Question (Q): What is your full name (to include your middle initial)?
Response (R):  Joe DaSilva, Jr.

Q: What is your position title, pay plan, series, and pay grade?
R:  Firefighter Driver Operator ,(Hazmat Tech/Basic Life Support), GS-0081-07

Q: How long have you held this position (from and to date)?
R:  I have held this position since 2007 to date.

Q: Who was your first and second-level supervisor during the period at issue [April 2018]?
R:  My first line supervisor is Assistant Chief Mike Ball and my Second-line is Fire Chief Sean Edwards. (no longer with the Department as of 11/9/18)

Q: Who do you believe discriminated against you for this complaint?
R:  Assistant Chief Martin Potter

## Bases for Discrimination

DaSilva, ARDETROIT18MAY01583

Q: What is your sex?
R: Male

Q: What country were you born or what country did your family originate from [national origin]?
R: I was Born in Santos Brasil. My family originated from Barsil

*Note: According to your formal complaint, you checked the following additional bases for the reason your belief that you were discriminated against: race, age, and religion. Per a conversation you had with Ms. Kleehammer on October 16, 2018, you indicated that you would like to include all of the bases listed above to include adding Reprisal. If this true, please respond to the questions below. If the bases listed are not one that you consider a reason for the alleged discrimination, please state that the basis is not a reason for the alleged discrimination.*

Q: What is your race?
R: Latino (Brazilian)

Q: What is your date of birth? What was your age on April 3, 2018?
R: My date of birth is 24 March 1967. My age on April 3,2018 is (51) years old.

Q: What is your religion?
R: Catholic

Q: Besides this EEO Complaint, have you filed another EEO complaint?
R: Yes I filed a previous EEO complaint against Assistant Chief Martin Potter back on 03 February 2017. I then filed for same disparity treatment. I also stated that I wanted the sexual statements about me wearing a 38-B size bra to stop in front of fellow firefighter and an Assistant Chief Tillman at which time I felt humiliated and degraded.

Q: When did you participate in the previous EEO activity (file your previous EEO complaint)?
R: I file an EEO back on 03 February 2017.

Q: What was the outcome/status of the previous EEO activity?
R: To the best of my acknowledge my self and Mr. Young, the Director of Emergency Services and a mediator. We had a meeting, an agreement was made, that everything in reference to the 03 Feb 2017 EEO complaint would not happen again (that no demeaning or sexual comments were to be made). I believe Mr. Young and management would put a stop to it all. I did not find out until, March 16, 2017 that this was done.

Q: Are the management officials who were involved in the prior EEO activity, involved in this complaint? Who are the management officials and what is their organizational relationship to

*Page 2 of 6 pages*
*Declarant's Initials*

000128

DaSilva, ARDETROIT18MAY01583

you (please address each management official)?

R:

Yes Sean Edwards who is the Detroit Arsenal Fire Department Fire Chief.

Yes Mr. Author J. Young who is the Director of Department of Emergency Services.

Yes Assistant Chief Martin Potter, who was present buy not my supervisor at the time to the EEO complaint of April 03,2018.

Q: If the management officials who are involved in this current EEO complaint were not involved in your prior EEO activity, how would they know about your prior EEO activity (please explain your response and address each management official)?

R:

To the best of my knowledge, Fire Chief Sean Edward, was advised about my EEO complaint back on 03 February 2017 his name is on the EEO Counselor's Report in Section III.

To the best of my knowledge, Mr. Arthur J. Young was involved in the meeting, with my self and a mediator that was when we came to an agreement. Mr. Young advised me that all of this would stop.

Assistant Chief Martin Potter was the person who I filed my EEO complaint against so I know he was involved.

Q: If you did not file a prior EEO complaint, please explain your use of the basis Reprisal.

R: I did file an EEO prior to this.

**Allegation of Discrimination and Harassment (follows Incident listed in Notice of Acceptance dated June 1, 2018)**

Q: Regarding the incident on April 3, 2018, wherein Assistant Chief Martin Potter made the following comment "how much do breast implants cost" and remarking that he should "wear a B-Cup Bra" -- were there any witnesses to this comment? If so, who witnessed the comment?

R:Yes there we're several I believe Assistant Chief Tillman, Firefighter Ferris, were the ones that were present when he made the statement about "how much do breast implants cost". I don't have access to my list of witness anymore I turned it in when they requested it when they were doing the 15-6 investigation.

I was able to get a copy of it but my witness however, the list does not show the names anymore which I believe is inappropriate for me to follow a proper complaint.

DaSilva, ARDETROIT18MAY01583

Q: What was being discussed prior to the comment being made?
R: I believe there was no discussion I just walked into the kitchen and put something in the dish washer and A/C Martin Potter looked straight at my chest and just made that statement "How much do breast implants cost.

Q: What was your response to Assistant Chief Martin Potter's comment?
R: I was very upset and very unhappy and angry I walked straight out of the kitchen.

Q: How long have these type of comments been occurring?
R:Since 03 February 2017

Q: What other comments have Assistant Chief Martin Potter's made of this nature? If so, when?
R: In the summer of 2017 Assistant Chief Martin Potter made a statement to me when I walked into the kitchen, "DaSilva lets do the pencil test". I did not know what he was talking about. He then said to me "I bet you can hold a pencil under your boobs and not let it drop", that was the test. I walked out of the kitchen very upset and when to finish my job. Firefighter Mathew Kumlin also was in the presence of the comments.

Q: Did you complain to any management official about the harassment? If yes, when did you complaint? Who did you complain to? What specifically did you tell this person?
R:Yes in my pervious EEO complaint back on 03 February 2017. I wanted to inform them of this type of statements, being about me. That I was unable to fit in B- size Bra statement, to stop as we came to an agreement on 16 March 2017.

Q: Did you tell management that the harassment was based on your sex, national origin, race, age, religion, or reprisal? What specifically did you tell this person?
R: Yes, I made a complaint through EEO about the sexual comment. Which made me feel emasculated in front of my peers.

Q: What did you ask management to do?
R: After following complaint through proper channels, requested an investigation and to be completed in a timely manner through EEO.

Q: What action did management take after you reported the comment?
R: To the best of my knowledge, 15-6 investigation was opened and being conducted.

Q: Was there an investigation into the alleged comment?
R: Yes there was a 15-6 Investigation conducted.

Q: What was the outcome of the investigation?

*Page 4 of 6 Pages*
*Declarant's Initials*

DaSilva, ARDETROIT18MAY01583

R: On 23 May, 2018 I received a letter from Mr. Aurthor J. Young Director of Emergency Services as to the update of the complaint.

Q: Why do you think that Assistant Chief Martin Potter actions were motivated based on your sex (please explain your response)?
R: In my opinion, he purposely emasculated me in the presence of peers and supervisors as a form of power of authority.

Q: Why do you think that Assistant Chief Martin Potter actions were motivated based on your National Origin (please explain your response)?
R: Unknown

Q: Why do you think that Assistant Chief Martin Potter actions were motivated based on your race (please explain your response)?
R: Unknown

Q: Why do you think that Assistant Chief Martin Potter actions were motivated based on your age (please explain your response)?
R: Unknown
Q: Why do you think that Assistant Chief Martin Potter actions were motivated based on your religion (please explain your response)?
R: Unknown

Q: Why do you think that Assistant Chief Martin Potter actions were motivated based on your reprisal (please explain your response)?
R: Because, back on 03 February 2017, an EEO complaint was filed by me for the same type of comments and demeanor towards me and in the presence of others.

Q: Have you previously provided a statement in this matter? If so, when and would you like to include the document as part of your testimony [please provide a copy]?
R: Yes I provided similar statement to the investigator who was doing the 15-6. and was given to your office per my request.

**Conclusion**
Q: Do you have anything to add that is relevant to the accepted claims for investigation?
R: As far back as 3 February 2017 to current date. Assistant Chief Martin Potter has demonstrated, his use of authority, on several occasions that in-appropriate comments made by a person in his position continue with-out any ramifications. Not only that comments that are sexual in nature, but comments to demean or impune person(s) in front of others.
Even knowing that in close quarters working relationships in a Fire Departments working environments, one goes out of their way to make me feel inadiquate and not part of the team or missions when I have a important role in the DAFD Mission.

*Page 5 of -6 pages*
*Declarant's Initials*

DaSilva, ARDETROIT18MAY01583

From the dates of February 3rd 2017 to the filing of the current complaint. It is well known that Assistant Chief Potter has always made such comments in and around personal, even when requested to stop. He, however continued as if he was untouchable.

Q: Do you have any documents or know of any documents that would support your testimony and claim?  Please provide a copy and outline them in accordance with your Declaration.

R: Yes I would request that your office obtain the 15-6 that was done regarding this matter so your office can get all the statements that we're made when all of this happened and was more clear on everyone mind of what happened.

As a victim of Sexual Harassment by a supervisor, I was failed by Command of the punishment Assistant Chief Potter was given. It appears and is perceived that my complaint was not taken seriously, and is being over looked because of positional title.

I also would like your office to obtain all the witness statements that we're used in the 15-6 investigation to be used with my complaint.

## END OF STATEMENT

I, **Joe DaSilva, Jr.,** declare under penalty of perjury, that the foregoing is true and correct.

_(Declarant's Signature)_          _11-15-18_
                                    (Date)

*Page 6 of 6 Pages*
*Declarant's Initials*

000132

DaSilva, ARDETROIT18MAY01583

### Declaration under Penalty of Perjury

I, **Joe Dasilva, Jr.**, in accordance with 28 U.S.C. §1746, make the following statement:

EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.

AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended: Executive Order 10577; and 29 CFR 1614.

PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.

Question (Q): What is your full name (to include your middle initial)?
Response (R): Joe DaSilva, Jr.

Q: What is your position title, pay plan, series, and pay grade?
R: Firefighter Driver Operator (Hazmat Tech/Basic Life Support), GS-0081-07

Q: Based on our telephonic conversation on November 20, 2018, you indicated that you would like to remove religion as a basis in this complaint, is that correct?
R: Yes I would like to remove the Religion aspect part of the complaint.

Q: On your formal complaint, you list White as you Race. However, on your Declaration [page 2 of 6 of your original Declaration] you list your race as Latino. Please confirm your race.
R: As per my attorneys information I was informed that my race is Latino (Brazilian). So, thus the change in the declaration.

Q: Please explain how Assistant Chief Potter would know that you were Latino and from Brazil.
R: I have known / worked with Assistant Chief Potter for approximately 17 years and it is common knowledge that was born / raised in Brasil till age 7. I have taken several trips in the

*Page 1 of -4 Pages*
*Declarant's Initials____*

DaSilva, ARDETROIT18MAY01583

past to Brazil to visit family members, ie: funeral leave. I have a Brazilian Passport for that reason, which was retrieved, at that time, by my security clearance advisor. Assistant Chief Potter has made derogatory remarks to me, in front of peers / supervisors in reference of my nationality.

Q: To clarify, the only comment made on April 3, 2018 by Assistant Chief Potter was "how much do breast implants cost," is this correct?
R: As stated in my last Declaration paged that was signed on 11-15-18 on page 4. question #1.

Q: Did you in anyway solicit these comments from by Assistant Chief Potter [please explain your response]?
R: As stated in my last Declaration paged signed on 11-15-18 I just walked in to the kitchen.

Q: Regarding the question, what was the outcome/conclusion of the AR 15-6 investigation (page 5 of 6 of the original Declaration), what did the letter dated May 23, 2018 say from Mr. Arthur Young?
R: All documents we're forwarded to your office through channels, at this time I was not privy to said punishment / corrective action.

Q: Have you heard Assistant Chief Potter make similar comments of this nature [regarding breast implants, bra size, etc] to any other employees [male and/or female]? If so, please provide the name of the employee(s), approximately when, and what was said?
R: No not to the best of my knowledge.

Q: Have you heard any other managers make similar comments of this nature [regarding breast implants, bra size, etc] to any other employees [male and female]? If so, please provide the name of the manager, the managers organizational relationship to you, the name of the employee(s), approximately when, and what was said?
R: No not to the best of my knowledge.

Q: Do you have any belief regarding why Assistant Chief Potter singles you out when making these comments [please explain your response]?
R: I do not know why.

Q: Have you heard Assistant Chief Potter or anyone in your management chain-of-command make negative comments about you being male? If so, please provide the name of the management official, approximately when, and what was said?
R: No, I have not.

Q: Please explain why and what evidence supports your belief regarding why you believe you were discriminated against based on the fact that you are male.
R: His statements was he was inferring that the size of my breast were that of a women thus in need of a BRA, demeaning my sexuality and my Masculinity in front of my peers and other command staff that were present.

Q: Have you heard Assistant Chief Potter or anyone in your management chain-of-command

*Page 2 of 4 Pages*
*Declarant's Initials*

000134

DaSilva, ARDETROIT18MAY01583

make negative comments about you being older or older employees? If so, please provide the name of the management official, approximately when, and what was said?
R: I do recall that when there were several of us in the kitchen, when, Assistant Chief Potter sarcastically said, after the last Captain retired "your the oldest Firefighter in the department".

Q:  Please explain why and what evidence supports your belief regarding why you believe you were discriminated against based on your age.
R:As I stated above, I was referred to as the old man. Which was witness by Firefighter Kumlin (unk on time/date).

Q:  Have you heard Assistant Chief Potter or anyone in your management chain-of-command make negative comments about you or any other employees being Latino?  If so, please provide the name of the management official, approximately when, and what was said?
R:No, not to the best of my knowledge. I am the only one, who is Latino.

Q:  Please explain why and what evidence supports your belief regarding why you believe you were discriminated against based on your race.
R:Due to Assistant Chief Potter's position, one could presume his role and position as Chief makes him a more of a informed supervisor.

Q:  Have you heard Assistant Chief Potter or anyone in your management chain-of-command make negative comments about you or any other employees being from Santos Brazil?  If so, please provide the name of the management official, approximately when, and what was said?
R:Yes, Fire Chief Ronald Hall( past Chief), called me a dumb Brazilian in the ladder bay. This happened approximately two years ago.

Q:  Please explain why and what evidence supports your belief regarding why you believe you were discriminated against based on your national origin.
R:To the best of my knowledge, I am the only one born in another country. And,  it is common knowledge.

Q:  Have you heard Assistant Chief Potter or anyone in your management chain-of-command make negative comments about you or any other employees who file EEO complaints?  If so, please provide the name of the management official, approximately when, and what was said?
R:Yes, Fire Chief Sean Edwards (reassigned to another department), has stated that EEO complaints made by personnel would reflect poorly on promotions board.

Q:  Please explain why you believe you have been discriminated against for reprisal –filing previous EEO complaint.
R:Because past complaints resolutions were not met with positive results.

Page 3 of · of Pages
Declarant's Initials

DaSilva, ARDETROIT18MAY01583

**END OF STATEMENT**

I, __Joe DaSilva, Jr.__ declare under penalty of perjury, that the foregoing is true and correct.

_____     _11-29-18_____
(Declarant's Signature)     (Date)

*Page 4 of __ Pages*
*Declarant's Initials_____*

DaSilva, ARDETROIT18MAY01583

### Declaration under Penalty of Perjury

I, **Sean Edwards,** in accordance with 28 U.S.C. §1746, make the following statement:

EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.

AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended: Executive Order 10577; and 29 CFR 1614.

PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.

Question (Q): What is your full name (to include your middle initial)?
Response (R):  Sean L. Edwards

Q:  What is your position title, pay plan, series, and pay grade?
R:  Fire Chief, GS-0081-12.  I am currently the Fire chief at Fort Detrick, MD.

Q: How long did you hold the position at the Detroit Arsenal?
R:  I was Fire Chief June 2015 until November 2018

Q: Who was your first and second-level supervisor during the period at issue?
R:  Arthur Young and Carrie Meade

Q:  What is your organizational relationship to Mr. DaSilva (1st, 2nd, 3rd level supervisor, co-worker, servicing HR personnel, personal friend)?
R:  I was his second level supervisor

Q:  If you are his supervisor, how long have you supervised him?
R:  June 2015 until November 2018

DaSilva, ARDETROIT18MAY01583

## Bases for Discrimination

Q: What is your sex?
R: Male

Q: Do you agree that Mr. DaSilva is a male?
R: Male

Q: What country were you born or what country did your family originate from [National Origin]?
R: United States. I would not be able to tell you my lineage

Q: What is Mr. DaSilva's National Origin [country where his family originated]?
R: Based on a conversation I had with him, he told me that he was born and raised in Brazil. His family then came to the United States due to his Father's job.

Q: What is your Race?
R: Caucasian/Native American

Q: What is Mr. DaSilva's Race?
R: I am guessing Brazilian – we never discussed his ethnic background

Q: What is your year of birth [not entire birthdate]?
R: 1972

Q: What is your belief of Mr. DaSilva's age (approximate is okay)?
R: I believe he approximately 52 years of age. Before I left, we had a conversation and he said that he only had a few years left to retirement. The Firefighter's mandatory retirement age is 57

Q: What is your religion?
R: Christian

Q: What is Mr. DaSilva's religion?
R: I do not know

Q: What is your belief of Mr. DaSilva's religion?
R: I cannot answer this question because I am not aware of his religion.

Q: Besides this EEO Complaint, have you served as witness in another EEO complaint, filed your own EEO complaint, or opposed any discriminatory practice through your management chain-of-command (answer yes or no only)?
R: Yes

Q: Besides this EEO Complaint, are you aware of another EEO Complaint filed by Mr. DaSilva?

*Page 2 of -5 Pages*
*Declarant's Initials SLE*

000138

DaSilva, ARDETROIT18MAY01583

R:  Yes, I believe he has filed other EEO complaints.  However, I was not involved in the complaints.  I believe they occurred before my time and were resolved at the informal stage.

Q:  When and how did you find out about Complainant's this current complaint?
R:  I found out a couple of months ago from Mr. Young. He contacted me because he was gathering demographic data for this investigation.

**Allegation of Discrimination and Harassment**

Q:  Regarding the incident on April 3, 2018, did you witness Assistant Chief Martin Potter make the following comment "how much do breast implants cost?"  If yes, what did you hear?  If not, was a comment made of that nature?  If so, what did you hear?
R:  I was sitting at the kitchen table eating my breakfast and engaged in a conversation with FF Dykema.  I add that there were several people in the room, there were multiple conversations, and the TV was on.

Q:  What was being discussed prior to the comments above being made?
R: As stated, I do know what was being discussed between Assistant Chief Potter and Mr. DaSilva because I did not hear their conversation.

Q:  Mr. DaSilva alleges that you laughed when the comment was made.  Is this a true statement?
R:  I did not laugh because I was unaware that the conversation took place between Assistant Chief Potter and Mr. DaSilva.

Q:  Did you hear Assistant Chief Martin Potter say that Mr. Dasilva should "wear a B-Cup Bra."  If yes, what did you hear?  If not, was a comment made of that nature?  If so, what did you hear?
R:  I did not.  Assistant Chief Potter told me that this comment took place approximately 10 years ago.

Q:  Based on information received for this complaint, I understand that there was an investigation conducted regarding the comments.  Who requested the investigation?
R:  Mr. Joseph Moscone the Garrison Commander

Q:  What was the finding and recommendation for the investigation?
R: Assistant Fire Chief Potter admitted to making the comment.  I do not know all of the recommendations.

Q:  Was your staff trained?
R: Yes, the entire Firefighter staff and I believe the Police Officers were given SHARP Training.  As an added step, I instituted random SHARP investigations to ensure the workplace was free of material that might be offensive to employees.

DaSilva, ARDETROIT18MAY01583

Q:  What action [disciplinary or non-disciplinary] was taken against Chief Potter for making the comments (please explain your response)?
R: Mr. Young gave him a formal disciplinary action – Letter of Caution.

Q: Do Mr. DaSilva and Assistant Chief Potter ever work on the same shift?  If so, please explain why.
R: During the SHARP investigation, I changed Mr. Potter schedule so that they would not be on the same shift.  After investigation was complete, I was told that I could put employees back on their normal schedule.

Q:  Have other employees complained to you about similar comments of this nature being made by Assistant Chief Potter?  If so, who complained, approximately when, what did he/she say was Assistant Chief Potter's comment?  AND, what action did you take [you must answer all questions]?
R:  No one else has complained to me about comments made by Mr. Potter of this nature.

Q:  During the course of this investigation, witnesses have said that you are singling out Mr. DaSilva and they have been told not to talk with Mr. DaSilva.  Is this a true statement?  If not, why not [please explain your response]?
R:  That is not a true statement.  When the SHARP investigation was being conducted, I changed AC Potter's schedule during the course of the investigation.  After it was completed the employees back to their normal schedule.  I never told any of the employees that they could not engage in conversation with Mr. DaSilva.

Q:  Please explain why you did not take immediate action based on the comment regarding breast implants.
R: I did not take immediate action because Mr. DaSilva went straight to SHARP.  I did not want to convolute the process.  Mr. DaSilva had every right to go straight to SHARP for assistance.

Q:  Mr. DaSilva alleges that based on his inability to work certain shifts, he is being treated differently because he cannot work overtime.  Is this a true statement [please explain your response]?
R:  No, it is not.  Mr. DaSilva sent me an e-mail asking why his overtime was restricted.  I told him that it was not restricted and he could volunteer, like any other employee, to work overtime.

Q:  Were you aware of any policies in place designed to prevent harassment or hostile work environment?  If so, where are these policies located?
R: The EEO Office has Garrison Wide Policies and we post the policies on the bulletin board for everyone to view.

Q:  Have you attended any training regarding anti-harassment/hostile work environment?  If so, what was the training and when did you take it?
R:  June 2018

DaSilva, ARDETROIT18MAY01583

Q: Mr. DaSilva contends he was subjected to unwelcome, offensive, or objectionable comments which are motivated by the fact that he is **male, from Brazil, older, based on his religion, and the fact that he filed a prior EEO complaint.**  What is your response to his contention?
R:  I really cannot explain why the comment was made; therefore, I cannot give my opinion. When I talked to Asst Chief Potter – he said the reason why he asked the question is because there was a story on TV that was reporting on the cost of breast implants.  And, he asked Mr. DaSilva.

**Conclusion**
Q: Do you have anything to add that is relevant to the accepted claims for investigation?
R:  No, I do not.

Q: Do you have any documents or know of any documents that would support your testimony and claim?  Please provide a copy and outline them in accordance with your Declaration.
R:  No, I do not.

### END OF STATEMENT

I, **Sean Edwards**, declare under penalty of perjury, that the foregoing is true and correct.

_Sean L. Edwards_____     20181127_____
     (Declarant's Signature)                    (Date)



December 19,2018

Dear Customer:

The following is the proof-of-delivery for tracking number **782244720704**.

## Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery location: | 6501 E 11 MILE RD<br>WARREN, MI 48397 |
| Signed for by: | D.TERRY | Delivery date: | Aug 14, 2018 10:27 |
| Service type: | FedEx 2Day | | |
| Special Handling: | Deliver Weekday | | |



## Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 782244720704 | Ship date: | Aug 10, 2018 |

Reciplent:
W4GH TANK-AUTOMOTIVE REEC
TARDEC
6501 E 11 MILE RD BLDG 200 D
WARREN, MI 48397 US

**Reference**

Shipper:
DEMETRIUS WILLIAMS
GENERAL DYNAMICS LAND SYSTEMS
3700 150TH AVE CT E
SUMNER, WA 98390 US

W5K9JB8221DW000XX

Thank you for choosing FedEx.

DaSilva, ARDETROIT18MAY01583

### Declaration under Penalty of Perjury

I, **Martin Potter,** in accordance with 28 U.S.C. §1746, make the following statement:

EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.

AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CFR 1614.

PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.

Question (Q): What is your full name (to include your middle initial)?
Response (R):  Martin G. Potter

Q: What is your position title, pay plan, series, and pay grade?
R:  Assistant Fire chief, GS-0081-10

Q: How long have you held this position (from and to date)?
R:  I have been in this position for five years.

Q: Who was your first and second-level supervisor during the period at issue [April 2018]?
R:  Fire Chief Edwards and Arthur Young

Q: What is your organizational relationship to Mr. DaSilva (1st, 2nd, 3rd level supervisor, co-worker, servicing HR personnel, personal friend)?
R:  I supervise a shift that he works, but I do not supervise him.  We are co-workers.

**Bases for Discrimination**

Q: What is your sex?
R: Male

000142

DaSilva, ARDETROIT18MAY01583

Q: Do you agree that Mr. DaSilva is a male?
R: Yes

Q: What country were you born or what country did your family originate from [National Origin]?
R: I am of European descent

Q: What is Mr. DaSilva's National Origin [country where his family originated]?
R: He told me that he is from Brazil.

Q: What is your Race?
R: Caucasian

Q: What is Mr. DaSilva's Race?
R: I have no idea.

Q: What is your belief of Mr. DaSilva's Race?
R: If I had to answer the question, I would say Caucasian

Q: What is your year of birth [not entire birthdate]?
R: 1974

Q: What is your belief of Mr. DaSilva's age (approximate is okay)?
R: I would guess he is in his 40's

Q: What is your religion?
R: Methodist

Q: What is your belief of Mr. DaSilva's religion?
R: I have no idea

Q: Besides this EEO Complaint, have you served as witness in EEO another complaint, filed your own EEO complaint, or opposed any discriminatory practice through management chain of command (answer yes or no only)?
R: Yes

Q: Besides this EEO Complaint, are you aware of another EEO Complaint filed by Mr. DaSilva?
R: Yes

Q: When and how did you find out about Complainant's previous complaint?
R: Sometime between 2010 and 2012. The complaint was against the former Fire Chief regarding abuse of power.

000143

DaSilva, ARDETROIT18MAY01583

Q: Did you participate in the prior EEO activity?  If so, please explain your role, e.g. responsible management official, witness.
R: I was a witness; I was not the responsible management official.

## Allegation of Discrimination and Harassment

Q: Regarding the incident on April 3, 2018, wherein Assistant Chief Martin Potter made the following comment "how much do breast implants cost" - please explain why you made the comment.
R: There was a news story playing on the TV in the kitchen about breast implants.  As I was watching the news story, he walked in front of me. I do not know why I asked the question, the question just popped into my head.

Q: What was being discussed prior to the comments above being made?
R: There was no prior conversation prior to the comment being made.  He was just walking past me.

Q: Please explain why you made the comment that he should "wear a B-Cup Bra."  Approximately when did you make this comment?  And what was being discussed prior to the comment being made?
R: This comment was made approximately 6 to 8 years ago.  We were having a weight loss competition within the department.  He was saying that he weighs less than me.  We started bantering back and forth, he said something about my stomach size and I came back with a comment regarding his chest size.

Q: Do you currently work on the same shift with Mr. DaSilva, if not, why not?
R: We work one 24 hour shift together.

Q: Based on information received for this complaint, I understand that the investigation conducted by the agency concluded that the comment listed above was made by Assistant Chief Potter.  What type of action [disciplinary] was taken against you based on making the comment above?
R: A received a Letter of Counseling for unprofessional behavior.

Q: Please provide the name and title of the person that took the disciplinary action.
R: Mr. Arthur Young

Q: Have you made similar comments to Mr. DaSilva?  If so, what did you say and approximately when?
R: No, not that I can recall.

Q: Have you received any other disciplinary action for other comments made to other employees?  If so, approximately when and what type of action was taken?
R: No, I have not.

000144

DaSilva, ARDETROIT18MAY01583

Q: Have you been verbally counseled by your management for comments made to other employees of similar nature?  If so, who counseled you, approximately when, which employee did you make the comment to, and what did you say [you must answer each part of the question]?
R: No, I have not.

Q: Please provide the name and title of the person that took the disciplinary action.
R: This question is not applicable based on the comment above.

Q: During the course of this investigation, witnesses have said that you are singling out Mr. DaSilva and they have been told not to talk with Mr. DaSilva.  Is this a true statement?  If not, why not [please explain your response]?
R: I have never told anyone to not talk with Mr. DaSilva

Q: Were you aware of any policies in place designed to prevent harassment or hostile work environment?  If so, where are these policies?
R: Yes, the policies are on bulletin boards

Q: Have you attended any training regarding anti-harassment/hostile work environment?  If so, what was the training and when did you take it?
R: Yes, during the August/September 2018 timeframe.

Q: Mr. DaSilva contends he was subjected to unwelcome, offensive, or objectionable comments which are motivated by the fact that he is **male, from Brazil, older, Catholic, and filed a prior EEO complaint**.  What is your response to his contention?
R: No, he is not.

### Conclusion
Q: Do you have anything to add that is relevant to the accepted claim for investigation?
R: I would say Mr. DaSilva participates in these types of conversation.  In fact, he sometimes initiates these types of conversation, to incite conversations use this information against the employee at a later date.  It also appears that when he is facing some type of disciplinary action, he will bring instances of this nature to use to his advantage.

Q: Do you have any documents or know of any documents that would support your testimony and claim?  Please provide a copy and outline them in accordance with your Declaration.
R: I have memorandums which documents his actions.

0000146

DaSilva, ARDeTROIT18MAY01583

## END OF STATEMENT

I, **Martin Potter**, declare under penalty of perjury, that the foregoing is true and correct.

_____
(Declarant's Signature)

2018/1/27
_____
(Date)

*Page 5 of -5 Pages*
*Declarant's Initials*



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

REPLY TO
ATTENTION OF

IMMI-ESF                                                                       7 March 2017

MEMORANDUM FOR RECORD

SUBJECT

1. I received a statement from Mr. Ulman on 8 February 2017 regarding statements Mr. DaSilva had made pertaining to management. These statements were derogatory in nature.

2. I interviewed Mr. Ulman regarding the incident and the nature of the conversation. He stated the conversation took place in the kitchen area between Mr. DaSilva and Mr. Perkins.

3. I interviewed Mr. Perkins and he confirmed the conversation and the derogatory comments about management. I asked Mr. Perkins to write a statement regarding the conversation and submit it me when complete. I received Mr. Perkin's statement on 3 March 2017.

4. I met with Mr. DaSilva on 7 March 2017 to discuss the comments. He admitted to saying the comments, but felt it was a personal conversation between Mr. Perkins and himself. I let him know that Mr. Ulman was present and found the conversation offensive and reported the conduct. I advised Mr. DaSilva to discontinue this behavior and further acts of this nature may result in formal punishment. Mr. DaSilva stated he understood, but then went on to say he hears comments of this nature on a regular basis. He would not give specifics regarding those statements.

5. Statements from Mr. Ulman and Mr. Perkins are attached.


//////Signed\\\\\
Martin G. Potter
Asst. Chief, Fire and Emergency Services

On February 7th while sitting in the kitchen, Firefighter DaSilva sat down across from me and voiced his displeasure about a situation involving Chief Edwards. During the span of his statements, Firefighter DaSilva made his opinion known of his feelings about management to include calling the Assistant Chiefs "snakes". As Firefighter DaSilva continued on with his statements the disparaging remark of calling management "F$#@ing dumb asses". This conversation was held with others within arm's length of the kitchen table. It is at this time that I cannot recall the individuals that where around.


Firefighter,


Jonathan Perkins

Witness Statement


On 7 February, 2017, I witnessed Firefighter DaSilva talk to FF Perkins regarding being a witness to an alleged statement Chief Edwards made. This conversation took place in the kitchen of the fire station where everyone could hear it. In that conversation, Mr. DaSilva stated that management were "f---ing dumb asses", and on another occasion on the same day, called management "snakes". Through my year here at the Detroit Arsenal Fire Department, I have heard him say despairing remarks about captains and assistant chiefs. His comments are degrading and do not reflect the core values of the United States Army. FF DaSilva's repeated comments are a threat to leadership, morale, and makes it a hostile work environment. His continuous fight against authority and comments about other firefighters make working with him very difficult. These are my official comments and I stand witness to them.



Cary David Ulman

Firefighter/EMT

US Army Garrison-Detroit Arsenal



**DEPARTMENT OF THE ARMY**
INSTALLATION MANAGEMENT COMMAND
HEADQUARTERS, UNITED STATES ARMY GARRISON-DETROIT ARSENAL
6501 E. ELEVEN MILE ROAD
WARREN MI 48397-5000

REPLY TO
ATTENTION OF

IMMI-ESF                                                            14 September 2017

MEMORANDUM FOR RECORD

SUBJECT: Incident Involving Joe DaSilva

1.  The Detroit Arsenal Fire Department received a supervisory alarm to building 212B at approximately 1515 hours. Crews responded and mitigated the incident. I remained on scene to discuss the situation with building occupants. All other crews returned to quarters.

2.  After I returned to quarters, I needed to speak with Mr. Mietling concerning apparatus setup on the call. I went to the bunkroom to look for him. As I passed Mr. DaSilva's bunkroom, I noticed his curtain was open and his computer open. The computer displayed a pornographic website. I then left the bunkroom to look for Mr. DaSilva.

3.  I located Mr. DaSilva in the apparatus bay and asked him where his bunkroom was located. He confirmed the location was the bunkroom with the computer on. I informed him the content on his screen was highly inappropriate and not authorized to be viewed on the installation. He commented "I don't even remember what's on it, what is it porn". I requested he remove the material from the screen and informed him of the severity of accessing such content while on a government installation. Mr. DaSilva complied and proceeded to his bunkroom area.

Martin G. Potter
Asst. Chief, Fire and Emergency Services

DaSilva, ARDETROIT18MAY01583

**11Declaration under Penalty of Perjury**

I, **Matthew Holtyn,** in accordance with 28 U.S.C. §1746, make the following statement:

EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.

AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended: Executive Order 10577; and 29 CFR 1614.

PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.

Question (Q): What is your full name (to include your middle initial)?
Response (R):  Matthew J. Holtyn

Q:  What is your position title, pay plan, series, and pay grade?
R:  Fire Fighter/EMT 0081 GS-07

Q:  How long have you held this position (from and to date)?
R:  February 2006 to Present

Q:  Who was your first and second-level supervisor during the period at issue [April 2018]?
R:  Assistant Chief Michael Ball (First Line) Fire Chief Sean Edwards (Second Line)

Q:  What is your organizational relationship to Mr. DaSilva (1st, 2nd, 3rd level supervisor, co-worker, servicing HR personnel, personal friend)?
R: Co-worker

**Bases for Discrimination**

Q:  What is your sex?
R:  Male

DaSilva, ARDETROIT18MAY01583

Q: What country were you born or what country did your family originate from [National Origin]?
R: USA

Q: What is your Race?
R: Caucasian

Q: What is your year of birth [not entire birthdate]?
R: 1973

Q: What is your religion?
R: Roman Catholic

Q: Besides this EEO Complaint, have you served as witness in another complaint, filed your own EEO complaint, or opposed any discriminatory practice (answer yes or no only)?
R: No

**Allegation of Discrimination and Harassment**

Q: Regarding the incident on April 3, 2018, did you witness Assistant Chief Martin Potter make the following comment "how much do breast implants cost?" If yes, what did you hear? If not, was a comment made of that nature? If so, what did you hear?
R: No, I was not on shift that day.

Q: Did you hear Assistant Chief Martin Potter say that Mr. Dasilva should "wear a B-Cup Bra." If yes, what did you hear? If not, was a comment made of that nature? If so, what did you hear?
R: No

Q: What was being discussed prior to the comments above being made?
R: I do not know.

Q: Have you heard Assistant Chief Potter or Chief Edwards make similar comments to Mr. DaSilva in the past? If so, what was said?
R: Mr. Dasilva and Assistant Chief Potter would rib each other back and forth since I have been employed here.

Q: Have other employees complained to you about similar comments of this nature being made by Assistant Chief Potter? If so, who complained, approximately when, what did he/she say was Assistant Chief Potter's comment?
R: To my knowledge, no other employees complained about comments made by Assistant Chief Potter.

Q: Has Assistant Chief Potter ever made similar comments about you? If so, approximately when, who did you complain to? AND, what action did the management official take [you must answer all questions]?

*Page 2 of -4 Pages*
*Declarant's Initials*

DaSilva, ARDETROIT18MAYQ1583

R: No never.

Q: Do you believe Mr. DaSilva is being singled out by Assistant Fire Chief Potter and Fire Chief Edwards?  If so, please explain why.
R: I do not believe Assistant Chief Potter was singling out Mr. DaSilva. As far as Fire Chief Edwards I don't think he was singled out for anything, I do know that there was friction between Mr. Dasilva and Chief Edwards. As it applies to comments made on April 3rd, 2018 I cannot say as I was not here to witness the situation.

Q: Were you aware of any policies in place designed to prevent harassment or hostile work environment?  If so, where are these policies?
R: As far a policy posted I am not aware of any. We are all aware of the Army's policy on harassment and hostile work environments. We do have SOPs that support the Army's policy and general station behavior. These are located on Emergency Reporting which all station personnel have access to using the internet.

Q: Have you attended any training regarding anti-harassment/hostile work environment?  If so, what was the training and when did you take it?
R: I have had several EEO/Sharps classes during my employment here at the Detroit Arsenal, also while in the Air National Guard, and while on active duty with the Navy. I have had classes on TEDs and in a classroom setting. I could not site specific dates for these classes, I can say that with reasonable certainty that I have had classes in one form or another at least annually for the last 20 years and several classes this year.

Q: Do you believe Mr. DaSilva was subjected to unwelcome, offensive, or objectionable comments which are motivated by the fact that he is **male, White and from Brazil, older than most employees, and Catholic?** If so, what supports your belief?
R: No I don't believe Mr. DaSilva's gender, color, creed, race, origin, or religion are the reason for the comments that are stated to be made. Again I was not present that day.

**Conclusion**
Q: Do you have anything to add that is relevant to the accepted claims for investigation?
R: Not at this time.

Q: Do you have any documents or know of any documents that would support your testimony and claim?  Please provide a copy and outline them in accordance with your Declaration.
R: None

**END OF STATEMENT**

DaSilva, ARDETROIT18MAY01583

I, **Matthew Holtyn,** declare under penalty of perjury, that the foregoing is true and correct.

_____          _____
(Declarant's Signature)                                        (Date)
                                                                          20NOV2018

Page 4 of -4 Pages
*Declarant's Initials*

DaSilva, ARDETROIT18MAY01583

## Declaration under Penalty of Perjury

I, **Lesly Tillman,** in accordance with 28 U.S.C. §1746, make the following statement:

EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.

AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended: Executive Order 10577; and 29 CFR 1614.

PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.

Question (Q): What is your full name (to include your middle initial)?
Response (R): Lesley Jerome Tillman

Q: What is your position title, pay plan, series, and pay grade? R:
Assistant Fire Chief, 0081, and GS-10

Q: How long have you held this position (from and to date)?
R: March 2015 to Present

Q: Who was your first and second-level supervisor during the period at issue [April 2018]? R:
First level supervisor Fire Chief Sean Edwards and second level Art Young

Q: What is your organizational relationship to Mr. DaSilva (1st, 2nd, 3rd level supervisor, coworker, servicing HR personnel, personal friend)?
R: I am the Training and Fire Prevention Chief. I have no direct supervision.

Q: If you are his supervisor, how long have you supervised him?
R: I am not Mr. DaSilva supervisor. Mr. DaSilva 1st line supervisor Michael Ball, 2nd line supervisor Sean Edwards, and 3rd line supervisor Art Young.

DaSilva, ARDETROIT18MAY01583

## Bases for Discrimination

Q: What is your sex?
R: Male

Q: Do you agree that Mr. DaSilva is a male?
R: I have no personnel knowledge

Q: What country were you born or what country did your family originate from [National Origin]?
R: United States of America

Q: What is Mr. DaSilva's National Origin [country where his family originated]?
R: Mr. DaSilva has made several public statements that his National Origin is Brazilian however at no point have I did any fact finding to agree or disagree.

Q: What is your Race?
R: Black

Q: What is Mr. DaSilva's Race?
R: Mr. DaSilva has made several public statements that his National Origin is Brazilian however at no point have I did any fact finding to agree or disagree.

Q: What is your year of birth [not entire birthdate]?
R: 1973

Q: What is your belief of Mr. DaSilva's age (approximate is okay)?
R: Mr. DaSilva has made several public statements that he is over 50

Q: What is your religion?
R: I believe this question is potentially a violation of Title VII of the Civil Rights Act of 1964 because Mr. DaSilva will be afforded this information and in the past Mr. DaSilva has mocked religious beliefs. At the same, since I am directed to respond to all questions: Christianity

Q: What is your belief of Mr. DaSilva's religion?
R: I believe Mr. DaSilva does not practice any religion

DaSilva, ARDETROIT18MAY01583

Q: Besides this EEO Complaint, have you served as witness in another complaint, filed your own EEO complaint, or opposed any discriminatory practice (answer yes or no only)?
R: yes

Q: Besides this EEO Complaint, are you aware of another EEO Complaint filed by Mr. DaSilva?
R: Yes

Q: When and how did you find out about Complainant's previous complaint?
R: Unfortunately, When Mr. DaSilva was a Fire Inspector, he filed a complaint because the Fire Chief (Sean Edwards) made an inappropriate statement about his wife.

Q: Did you participate in the prior EEO activity? If so, please explain your role, e.g. responsible management official, witness.
R: At that time, I was Mr. DaSilva 1st line supervisor. I immediately reported the incident to the director (Art Young) which was Chief Edwards 1st line supervisor. I also informed Chief Edwards that Mr. DaSilva does not appreciate his family being the center of any jokes.

**Allegation of Discrimination and Harassment**

Q: Regarding the incident on April 3, 2018, did you witness Assistant Chief Martin Potter make the following comment "how much do breast implants cost?" If yes, what did you hear? If not, was a comment made of that nature? If so, what did you hear?
R: because of the length of time that has passed I cannot say with 100 percent accuracy, but I believe the statement was more "Joe you know how much breast implants cost".

Q: Did you hear Assistant Chief Martin Potter say that Mr. Dasilva should "wear a B-Cup Bra." If yes, what did you hear? If not, was a comment made of that nature? If so, what did you hear?
R: because of the length of time that has passed I cannot say with 100 percent accuracy, but I believe the statement was more "Joe you know how much breast implants cost. Those look about a C cup".

Q: What was being discussed prior to the comments above being made?
R: It was a room full of people with several conversation. I cannot remember what was discussed prior. To be honest, I was trying to get my coffee and leave the room as I do every morning.

Q: Were you working on the same shift when the comments were made?
R: Yes

Q: Based on information received for this complaint, I understand that there was an investigation conducted regarding the comments. Who requested the investigation?
**R:** I do not know who requested the investigation to take place.

Q: What was the finding and recommendation for the investigation?
**R:** I do not know

Q: What action [disciplinary or non-disciplinary] was taken against Chief Potter for making the comments (please explain your response)?
**R:** I do not know if any actions were taken disciplinary or non-disciplinary.
Assistant Chief Martin Potter is my peer/co-worker. I believe it would be unprofessionally for the command to discuss what actions were taken about Mr. Potter to me.

Q: Do Mr. DaSilva and Assistant Chief Potter currently work on the same shift? If not, why not?
**R:** They currently work one 24 hour shift a pay period.

Q: Have other employees complained to you about similar comments of this nature being made by Assistant Chief Potter? If so, who complained, approximately when, what did he/she say was Assistant Chief Potter's comment? AND, what action did you take [you must answer all questions]?
**R:** No

Q: Has Assistant Chief Potter ever made similar comments about you? If so, approximately when, who did you complain to? AND, what action did the management official take [you must answer all questions]?
**R:** No


Q: Please advise why you believe Mr. DaSilva is being singled out by Assistant Fire Chief Potter and Fire Chief Edwards.
**R:** Because of the fear of being accused of reprisal. Mr. DaSilva he is treated differently, but not intentionally as a negative, but as a protective measure. I don't believe it is the right way to handle any employee, however, they chose that method to protect themselves. All employees suffer because of it.

Q: Were you aware of any policies in place designed to prevent harassment or hostile work environment? If so, where are these policies?
**R:** Yes, on our department information wall, and on the Garrison common drive

Q: Have you attended any training regarding anti-harassment/hostile work environment? If so, what was the training and when did you take it?
**R:** Yes, Sensitivity Training by Fred Harris on 07/09/2018

DaSilva, ARDETROIT18MAY01583

Q: Do you believe Mr. DaSilva was subjected to unwelcome, offensive, or objectionable comments which are motivated by the fact that he is **male**? If so, what supports your belief?
R: There is no place in the Army or Federal government for those statements to be made. I do not believe any EEO protected class had anything to do with the statements being made. It was just a poor judgement by leadership.

Q: Do you believe Mr. DaSilva was subjected to unwelcome, offensive, or objectionable comments which are motivated by the fact that he is **White and from Brazil?** If so, what supports your belief?
R: No

Q: Do you believe Mr. DaSilva was subjected to unwelcome, offensive, or objectionable comments which are motivated by the fact that he is **older** than most employees? If so, what supports your belief?
R: No

Q: Do you believe Mr. DaSilva was subjected to unwelcome, offensive, or objectionable comments which are motivated by the fact that he is of the **Catholic religion?** If so, what supports your belief?
R: No

## Conclusion

Q: Do you have anything to add that is relevant to the accepted claims for investigation?
**R:** This may or may not be relevant to the claim, but I am disappointed in the prior EEO process. There have been other complaints that occurred in the Fire Department in the past with no resolution. It is disappointing that we are spending so many man hours on an incident that have been processed by two different agencies. Several years ago, I supervised Mr. DaSilva and during that time I was forced to do some corrective action. Instead of my 1st line supervisor supporting my recommendation he allowed Mr. DaSilva to leave prevention and return to the position of firefighter. With that all written corrective actions were removed. However, it does not rationalize the actions of my peer and my past supervisor/s. It simply gives you a glimpse of the special treatment in my previous statements.

Q: Do you have any documents or know of any documents that would support your testimony and claim? Please provide a copy and outline them in accordance with your Declaration.
**R: No**

DaSilva, ARDETROIT18MAY01583

**END OF STATEMENT**

I, **Lesley Tillman,** declare under penalty of perjury, that the foregoing is true and correct.

_____         16 Novermber 2018

(Declarant's Signature)                          (Date)

DaSilva, ARDETROIT18MAY01583

## Declaration under Penalty of Perjury

I, **David Ferris,** in accordance with 28 U.S.C. §1746, make the following statement:

EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.

AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended: Executive Order 10577; and 29 CFR 1614.

PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.

Question (Q): What is your full name (to include your middle initial)?
Response (R):  David L. Ferris

Q: What is your position title, pay plan, series, and pay grade?
R:  Firefighter, GS-07

Q: How long have you held this position (from and to date)?
R:  I have been in the position 3 years.

Q: Who was your first and second-level supervisor during the period at issue [April 2018]?
R: Assistant Chief Potter and Chief Sean Edwards

Q:  What is your organizational relationship to Mr. DaSilva (1st, 2nd, 3rd level supervisor, co-worker, servicing HR personnel, personal friend)?
R: Co-workers

## Bases for Discrimination

Q:  What is your sex?
R:  Male

DaSilva, ARDETROIT18MAY01583

Q:  What country were you born or what country did your family originate from [National Origin]?
R:  United States

Q:  What is your Race?
R:  Caucasian

Q:  What is your year of birth [not entire birthdate]?
R:  1983

Q:  What is your religion?
R:  Atheist

Q:  Besides this EEO Complaint, have you served as witness in another complaint, filed your own EEO complaint, or opposed any discriminatory practice (answer yes or no only)?
R:  Yes

**Allegation of Discrimination and Harassment**

Q:  Regarding the incident on April 3, 2018, did you witness Assistant Chief Martin Potter make the following comment "how much do breast implants cost?"  If yes, what did you hear?  If not, was a comment made of that nature?  If so, what did you hear?
R:  I do not remember the statement as stated. I heard some type of comment about breast implants directed at Mr. DaSilva. I saw Mr. DaSilva get upset and he walked out of the kitchen area.

Q: Did you hear Assistant Chief Martin Potter say that Mr. Dasilva should "wear a B-Cup Bra." If yes, what did you hear?  If not, was a comment made of that nature?  If so, what did you hear?
R:  No, I was not working for the organization at the time.  .

Q:  Has Assistant Chief Potter ever made similar comments about you?  If so, approximately when, who did you complain to?  AND, what action did the management official take [you must answer all questions]?
R:  No, I have not heard him make any off color comments.  We joke a lot in the Firehouse. Nothing is said to offend or degrade anyone.

Q:  Have other employees complained to you about similar comments of this nature being made by Assistant Chief Potter?  If so, who complained, approximately when, what did he/she say was Assistant Chief Potter's comment?
R:  No, they have not.

Q:  Do you believe Mr. DaSilva is being singled out by Assistant Fire Chief Potter and Fire Chief Edwards?  If so, please explain why.
R:  I do not think they are targeting him.  As for A/C Potter – I believe he just made a very poor choice of words.

000168

DaSilva, ARDETROIT18MAY01583

As for Fire Chief Edwards – he and Mr. DaSilva did not have the best relationship, I don't think they really cared for each other.

Q: Do you believe that you are being subjected to a hostile/harassing work environment?
R: No, I do not believe the work environment is hostile or harassing. I am the youngest, smallest guy in the Firehouse. If anything I should feel the brunt of any hostility. However, we are all one big family. Joking with one another is common in the Firehouse..

Q: Does Mr. DaSilva participate in the joking and making comments to and about other Firefighters?
R: Absolutely, he makes comments as well. Everybody in the Firehouse makes jokes with one another.

Q: Were you aware of any policies in place designed to prevent harassment or hostile work environment? If so, where are these policies? Are they on the bulletin board?
R: Yes, we have policy statement. They could be located on the bulletin board I am just not sure.

Q: Have you attended any training regarding anti-harassment/hostile work environment? If so, what was the training and when did you take it?
R: Yes, we have had several mandatory meetings this past year.

Q: Do you believe Mr. DaSilva was subjected to unwelcome, offensive, or objectionable comments which are motivated by the fact that he is **male, White and from Brazil, older than most employees, and Catholic?** If so, what supports your belief?
R: I do not think any of those reasons have a factor on what was said by AC Potter to Mr. DaSilva on that day.

**END OF STATEMENT**

I, **David L. Ferris,** declare under penalty of perjury, that the foregoing is true and correct.

_____          ___12/1/18___
(Declarant's Signature)          (Date)

DaSilva, ARDETROIT18MAY01583

## Supplemental Declaration under Penalty of Perjury

I, **Martin Potter,** in accordance with 28 U.S.C. §1746, make the following statement:

EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.

AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CFR 1614.

PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.

Question (Q): What is your full name (to include your middle initial)?
Response (R): Martin G. Potter

Q: What is your position title, pay plan, series, and pay grade?
R: Assistant Fire chief, GS-0081-10

Q: During the course of this investigation, Mr. Dasilva stated that you once [no timeframe given] told him while standing in the kitchen "you're the oldest Firefighter in the department." Firefighter Kumlin witnessed this comment. Did you make this comment or a comment similar to this one? If so, what did you say?
R: No, I have never made a comment of this nature about or to Mr. DaSilva.

Q: During the course of this investigation, Mr. Dasilva stated during summer of 2017, you said "DaSilva let's do the pencil test" and "I bet you can hold a pencil under your boobs and not let it drop." Firefighter Kumlin witnessed this comment. Did you make this comment or a comment similar to this one? If so, what did you say?
R: I did not make this comment of this nature about or to Mr. DaSilva.

Q: Do you recall making the following comment to Mr. DaSilva "you're the oldest Firefighter in the Department after the last Captain retired?
R: No, I did not make the aforementioned comment.

*Page 1 of -2 Pages*
*Declarant's Initials* __MP__

000164

DaSilva_ARDETROIT18MAY01583

## END OF STATEMENT

I, **Martin Potter,** declare under penalty of perjury, that the foregoing is true and correct.

_____          *2018 1210*_____
(Declarant's Signature)                            (Date)



**SECTION**

**7.4**

## INVESTIGATOR'S DECLARATION

I, Cassandra J. Williams, EEO Complaints Investigator, Investigations and Resolutions Directorate, assigned to investigate the complaint of **Joe DaSilva, Jr.,** **ARDETROIT18MAY01583** in accordance with 28 U.S.C. Section 1746, declare the following:

The investigation was conducted telephonically and via e-mail with the use of declarations (IF pp 190-191).

Settlement options were discussed telephonically, but resolution was not reached.

The Complainant identified the following witnesses: Mr. Lesley Tillman, Mr. David Ferris, Mr. Matthew Holtyn, Mr. Jonathan Perkins, and Mr. Matthew Kumlin. I chose to obtain testimony from everyone with the exception of Mr. Perkins and Mr. Kumlin. Based on the summary of anticipated testimony provided by Complainant, Mr. Perkins and Mr. Kumlin would provide information that is duplicate of the testimony obtained from Mr. Tillman, Mr. Holtyn, and Mr. Ferris (IF p 8).

The Agency did not request additional witnesses beyond those listed in the Scheduling Notice.

Supplemental Declaration was requested from Complainant to clarify information presented in his original complaint and to respond to additional information obtained during the investigation.

During the course of the investigation, Complainant added the following bases as listed on his formal complaint race, age, and religion. The EEO office discussed reprisal with Complainant which was also accepted as a basis (IF pp 7, 9, 200).

Complainant decided to remove religion as a basis (IF p 133).

The Agency does not maintain data on National Origin.

Complainant retained legal counsel during the course of this investigation (IF p 200).

Mr. Art Young, Director of Emergency Services, was not interviewed because Mr. Potter confirmed he received a Letter of Counseling for the single remark substantiated in the AR 15-6 investigation. Complainant concedes Mr. Potter did not make any additional remarks after the incident. In addition, Mr. Edwards confirmed SHARP training took place and Mr. Potter was moved to another shift while the investigation was underway.

The complete Army Regulation 15-6 investigation was requested. The document was not received prior to the end of this investigation (IF pp 209-210).

### END OF STATEMENT

I, *Cassandra J. Williams,* declare under penalty of perjury, that the foregoing is true and correct.

Date: <u>December 3, 2018</u>  Signature: _Cassandra J. Williams_



SECTION

7.5

## Case

**Case: IRD-18-AR-2866-I**

IRD Case Status                     Intake Review
IRD Docket Number                   IRD-18-AR-2866-I

## Case Information

Agency Docket Number                ARDETROIT18MAY01583
Request Type                        Original
Component                           Department of the Army
Activity Against                    USAG - Detroit Arsenal
Complainants Activity               USAG - Detroit Arsenal
  *If different than Activity Against*
Pilot                               No

## Complainant's Information

Complainant's First Name            Joe
Complainant's Last Name             DaSilva, Jr.
Complainant's Address 1             3705 Dexter Ann Arbor Road
Complainant's Address 2
Complainant's City                  Ann Arbor
Complainant's State                 Michigan
Complainant's Zip Code              48103

## Complainant's Contact Information

One of the following fields is required.

  Complainant's Work Phone
  Complainant's Alternate Phone     (734)255-9837
  Complainant's Email Address       joe.dasilva2.civ@mail.mil

## Contacts

Complainant's Representative
Agency Representative               Steven Whittington / 586.282. 8580 / steven.g.whittington.civ@mail.mil
EEO Manager                         Tonja Ancrum / N/A / tonja.k.ancrum.civ@mail.mil
EEO POC                             Melissa Kleehammer / 586-282-8354 /
                                    melissa.m.kleehammer.civ@mail.mil

Alternate EEO POC

## Investigation Request Information

Date Formal Complaint Filed         06/01/2018
Date Request for Investigation Submitted to   06/14/2018
IRD
Investigation Location              USAG - Detroit Arsenal
  *(If different than Activity Against)*
E Processing                        Yes
Mixed Case                          No
Priority Processing                 No

<u>000169</u>

Requested Investigation Date 1
Requested Investigation Date 2
Requested Investigation Date 3
Reason for Priority Processing
Basis
- Sex-Male
- National Origin-Other

## IRD Intake Section

Investigator's Assigned Division
Short Suspense                          No
180 Deadline                            11/28/2018
Contract Case
  Contractor Work

Investigation Type
Complexity                              Simple

Access On
Assign On

## Investigation Dispatch Section

Submitted for Investigation Dispatch Date
Dispatch Target Date
Actual Dispatch Date
Investigation Results

## Formal Mediation Information

Formal ADR Option                       Not interested in IRD ADR

## Assignments

Assigned Customer                       Melissa Kleehammer
Assigned Mediator
Assigned Intake Assistant               Mark Covel
Assigned Intake Reviewer                Patricia Zambardi
Assigned Investigator
Assigned Writer
Assigned Quality Lead
Assigned Dispatcher

## Action

Select Action to Take

## Record Timestamp

Created By                              Melissa Kleehammer

| | |
|---|---|
| Created Date | 06/14/2018 10:08 AM |
| Updated By | Mark Covel |
| Updated Date | 07/03/2018 01:19 PM |

| | |
|---|---|
| From: | Zambardi, Patricia J CIV DODHRA DCPAS (US) |
| To: | "joe.dasilva2.civ@mail.mil"; "steven.g.whittington.civ@mail.mil"; "tonia.k.ancrum.civ@mail.mil"; "melissa.m.kleehammer.civ@mail.mil" |
| Subject: | Document Request - Joe DaSilva, Agency Docket No. ARDETROIT18MAY01583 |
| Date: | Monday, July 30, 2018 2:40:00 PM |
| Attachments: | DocRequest Letter-IRCMS.docx |

Good Afternoon,

I have reviewed the subject complaint file and determined that additional documents are necessary for the investigation. I am forwarding a memorandum, with attachments, outlining the additional information needed. Please note that the suspense for these submissions is August 13, 2018. If not received by that date, our current policy requires us to send a follow-up email to you.

**PLEASE NOTE** We prefer to receive the requested documents from the EEO point of contact/EEO manager electronically, via upload to IRCMS, IRD's web-based file-transfer system. IRCMS is a user-friendly, secure, cost-effective and efficient system. If you are unable to use IRCMS, you may provide the requested documents electronically, via email attachment. (IRCMS is for Agency use only. Complainants and their representatives should provide their submissions via email, postal mail or fax.) Send email attachments to my attention at dodhra.mc-alex.dcpas.mbx.ird-intake@mail.mil. Email attachments should be relatively small (less than 50 pages). Regardless of the method of electronic submission, please provide documents in PDF format. Do not submit documents in other formats (e.g. Word documents, Excel spreadsheets, Power Point presentations). Ensure that all documents submitted are legible and printed on one side of 8 ½" X 11" paper. If you must provide requested documents by mail, send to my attention at Investigations and Resolutions Directorate, Defense Civilian Personnel Advisory Service, 4800 Mark Center Drive, Suite 06G21, Alexandria, VA 22350-1100; Fax     571-372-2090. Please be aware that we will convert your submission to an electronic format. For this reason, we ask that the pages be uniform and not stapled or bound by other than removable clips or bands. Please do not submit original documents. More information is included in Attachment 1 to my memorandum.

The Investigations and Resolutions Directorate (IRD) Case Management System is an UNCLASSIFIED Department of Defense system. It is the responsibility of the agency and/or complainant to ensure only unclassified information is introduced into the system, transmitted, and/or provided to IRD case workers. In the event it is determined classified information was erroneously put into the system, appropriate measures will be coordinated between the IRD Component Coordinator and your Agency's Security Office to investigate and determine if any further action is warranted. Please be advised that introducing classified information into this process could result in criminal, civil, and administrative penalties."

Thank you in advance for your prompt attention to this matter.

Respectfully,
Pat Zambardi
DoD, DCPAS
Investigations and Resolutions Directorate
Phone, 703-401-6787


** FOR OFFICIAL USE ONLY **

This message may contain information that is covered by the Privacy Act of 1974 and that should be viewed only by those with an official "need to know." If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify me immediately by e-mail and delete the original message.

**DEPARTMENT OF DEFENSE**
DEFENSE CIVILIAN PERSONNEL ADVISORY SERVICE
INVESTIGATIONS AND RESOLUTIONS DIRECTORATE

July 30, 2018

MEMORANDUM FOR DEPARTMENT OF THE ARMY
        United States Army Garrison – Detroit Arsenal
        Attention: EEO
        6501 E. Eleven Mile Road
        Warren, MI 48397-5000

SUBJECT: Data/Documentation/Witness Request
              Discrimination Complaint of Joe DaSilva
              Agency Docket No. ARDETROIT18MAY01583

     I have reviewed the subject case file and have determined that there is additional information needed from your organization to insure a complete and impartial investigation. Attachment 1 is a list of the information we are requesting the agency to provide. The material I have identified is based on documents routinely needed for the type of claim(s) accepted in this complaint. As the investigation proceeds, the need for additional documents may become apparent. If you have any questions or concerns about my request, please do not hesitate to e-mail me patricia.j.zambardi.civ@mail.mil. Please provide this material through an upload to **Investigations and Resolutions Case Management System (IRCMS)**, or if you do not have access to IRCMS send to dodhra.mc-alex.dcpas.mbx.ird-intake@mail.mil by August 13, 2018. If not received by that date, our current policy requires us to send you a follow-up email. Attachment 2 is simply general information about the investigative process.

     A courtesy copy of this memorandum, with attachments, is also being provided to the Complainant, the Complainant's Representative [if any], and the Agency Representative to inform the parties of the requested material at this point in the investigative process. This also serves as notification to the parties of their opportunity to name witnesses and submit documents they believe are important to this investigation. If witnesses are named, the individuals naming them should provide the following information (Attachment 3 may be used for this purpose):

- a brief explanation of the expected testimony of each witness
- the job title, organization and duty station of each witness
- a telephone number for each witness
- a postal and email address for each witness

     The information about witness testimony and additional documents (if any) that the Complainant, Complainant's Representative, or Agency Representative may want to include in the record should be submitted to my attention by the suspense noted above. Once this case is assigned, the Investigator will review these submissions for their relevance to the accepted claim(s).

000163

If you have any questions about any aspect of the investigative process or the document request, please to e-mail me patricia.j.zambardi.civ@mail.mil.


*Pat Zambardi*

Pat Zambardi
Intake Reviewer

Attachments:
As stated

cc:
Joe DaSilva, Complainant (by email)
Steven Whittington, Agency Representative (by email)

**THE INFORMATION BELOW TO BE PROVIDED BY THE AGENCY**

**REQUIRED INFORMATION AND DOCUMENTATION**
**DISCRIMINATION COMPLAINT OF Joe DaSilva**
**AGENCY DOCKET N0. ARDETROIT18MAY01583**

**Documents Required for All Complaints:**

1) Organization chart(s), in effect April 3, 2018 thru June 1, 2018 for Complainant's work unit and for the work unit(s) subordinate to Martin Potter. Show organizational relationships between Complainant and **the officials named above,** and Complainant's first-level, second-level, and third-level supervisors, if different.

2) Provide data (a list/spreadsheet/summary sheet) on employment within the organization(s) subordinate to Martin Potter. Specifically provide:
   - Names and positions (title, pay plan, series, and grade) of all employees and supervisors in the organization(s) during April 3, 2018 thru June 1, 2018. Identify each person's organization segment, if different than Complainant's organization.
   - Annotate **sex and national origin** of all employees and supervisors. If any protected group data is not maintained by the Agency, indicate with a note on data list/spreadsheet/summary sheet.
   - If reprisal and/or retaliation is alleged, indicate which employees and management officials have had **prior EEO activity** with "yes" or "no" on data list/spreadsheet/summary sheet.

3) If reprisal and/or retaliation are alleged, provide Complainant's previous EEO protected activity. Specifically provide:
   - Type of EEO protected activity in which Complainant participated (e.g., EEO complaint, grievance with EEO basis, representation, etc.)
   - Date(s) of EEO protected activity.
   - Claim(s), including issue[s] and basis[es]
   - Current status (e.g., in process, settled, withdrawn, decision(s) issued)
   - Name and position (title, pay plan, series, and grade) of the agency official(s) involved.
   - If EEO protected activity did not involve filing an EEO complaint, identify the matters opposed as discrimination.

4) Provide Complainant's position description(s) or statement of duties in effect April 3, 2018. If Complainant was assigned to multiple position descriptions, provide all position description(s) and Standard Form (SF)-50s effecting the change(s) to the Complainant's position.

5) For all actions at issue, provide email addresses and commercial telephone numbers for all RMOs, Complainant's first-level, second-level, and third-level supervisors (if different than RMOs), and for all other involved parties and witnesses to incidents. Indicate for which claims/incidents each involved party or witness was involved.

**Documents Pertaining to Harassment:**

6) Copy of Agency and Activity policy statements and regulations on Equal Employment Opportunity (EEO) and harassment (sexual and non-sexual) in effect April 3, 2018.

7) For the work units of the Responding Management Official(s) (RMOs) (and Complainant's first-level, second-level, and third-level supervisors, if different), provide information on EEO/harassment (sexual and non-sexual) training conducted during the two-year period prior to April 3, 2018.

   - Identify such training required of employees, supervisors, and managers in Complainant's organization segment during this two-year period.
   - Identify method of training, dates of training, and list of attendees and certificates of training (if provided).

8) Publications (e.g., newsletter articles, bulletin board items, etc.) issued by the Agency and Activity on EEO/harassment (sexual and non-sexual) during the two-year period prior to April 3, 2018.

9) Documentation, if any, showing whether the supervisor or any management official was made aware of the alleged incidents of harassment. If management was not notified of the alleged incidents of harassment, indicate such in response to this request. (If Complainant put management on written notice that s/he believed s/he was being harassed/subjected to a hostile work environment, provide a copy of the written notice.)

10) Documentation of any inquiry or investigation conducted by management of Complainant's allegations of harassment/hostile work environment. Include final report with findings and/or recommendations, and all supporting documentation. If no management inquiry or investigation was conducted, indicate such in response to this request.

11) Documentation, if any, of corrective action(s) taken by the Agency or Activity subsequent to management's knowledge of alleged incidents of harassment and/or subsequent to management's investigation or inquiry. If no action taken, indicate such in response to this request.

12) Name, position (title, pay plan, series, and grade), and **sex and national origin**, of Martin Potter.

13) Appropriate data and documents for specific action(s) at issue. (See separate data submission checklists for covered actions, e.g. disciplinary action, accommodation, non-selection, etc.)

**NOTE:  The documents are to be printed on one side of 8½" x 11" paper, and must be legible.  Given that we are moving towards maximum use of electronic transmission of documents, it is requested that hard copy submissions not be stapled or otherwise bound by other than removable clips and bands.  It is also requested that the material be labeled or organized in a way that shows clearly to which items (above) the material responds.  It is requested sections not be separated by tabbed dividers, but rather by untabbed, 8½" x 11" bond paper, with any explanatory information printed on the divider pages.**

**WARNING:**  The Investigations and Resolutions Directorate (IRD) Case Management System is an UNCLASSIFIED Department of Defense system.   It is the responsibility of the agency and/or complainant to ensure only unclassified information is introduced into the system, transmitted, and/or provided to IRD case workers. In the event it is determined classified information was erroneously put into the system, appropriate measures will be coordinated between the IRD Component Coordinator and your Agency's Security Office to investigate and determine if any further action is warranted.  Please be advised that introducing classified information into this process could result in criminal, civil, and administrative penalties.

If you believe you have already provided any of the above requested information/documentation, please e-mail patricia.j.zambardi.civ@mail.mil.  If any of the information/documentation requested above are not available, you may make a substitution after coordination with this office.  If you are unable to provide requested information/documentation, include a statement explaining why the information/documentation is unavailable.  If a document is especially voluminous, provide an extract of the pertinent portions of the document and include instructions regarding where the complete document can be reviewed.  All lists must be signed and dated.

**You are encouraged to sanitize all personal identifiers not necessary to a review of the merits of the complaint from the documents you provide.**  Sanitized information would generally include social security numbers, home addresses and home telephone numbers.  If you sanitize any information beyond social security numbers, home addresses and home telephone numbers, please advise IRD of the type of additional information that was sanitized and from what specific documents.  Please do **not** sanitize any names from the records you provide to IRD.  Furthermore, please do **not** sanitize any EEO protected group information (e.g., race, sex, age, or other EEO protected group data) from the records you provide.  This information is necessary for the purpose of addressing the merits of the complaint filed.  If you have any questions regarding the sanitization of documents, please e-mail me at patricia.j.zambardi.civ@mail.mil.

## INFORMATION ON THE INVESTIGATIVE PROCESS

The following information is provided to assist you in understanding the process used to investigate an EEO complaint.

The Investigations and Resolutions Division (IRD) will conduct the investigation. You may be required to provide an affidavit or a declaration to an investigator during an on-site meeting or in a written request or telephone call, or you may be required to participate in a Fact-Finding Conference. The Fact-Finding Conference is a meeting that may be conducted in person or through video teleconference facilities. The method of investigation used will be based on the specific requirements of the case and will ensure thorough and efficient consideration of the complaint. The investigator will determine the method of investigation.

In all individual complaints of discrimination, the complainant has the initial burden of showing, through a preponderance of the evidence, that discrimination may be inferred from management's action. This may be done by showing that the complainant has been treated less favorably than other employees who are similarly situated to the complainant or by providing some other basis for inferring discrimination has occurred. When reprisal is alleged, the complainant must show that he/she had previous involvement in protected EEO activity, that management was aware of this activity, that the complainant's employment situation was adversely affected subsequent to the activity, and that there is some basis for linking the previous protected EEO activity with the adverse effect to the employment situation.

Once the complainant has been given the opportunity to explain why he or she believes discrimination has occurred, management witnesses will be asked to respond to the complainant's allegations. This is management's opportunity to provide legitimate, nondiscriminatory reasons for their actions. Other witnesses requested by the complainant or management may be called if the investigator determines their testimony may be relevant to the issues or allegations in the complaint and will not be redundant.

The investigator prepares an Investigative File to include all relevant and material documentation and testimony, and a Report of Investigation to summarize and/or analyze the evidence gathered.

## PROPOSED WITNESSES
## (GUIDANCE)

*(Please prioritize the witnesses you propose to support your position.  And, for each witness you propose, please provide the following information.)*

**1a.  First Proposed Witness's Name (Last, First):**
1b.  Witness's Job Title:
1c.  Witness's Organization and Duty Station or Location:

1d.  Witness's Contact Information:
Commercial telephone number (including area code):
Email address:
Mailing address:

1e.  Brief explanation of the testimony this witness is expected to provide regarding the claim(s) accepted for investigation.  (For example, the witness was involved in the action at issue, was present when the events at issue occurred, or can provide a first-hand account of similar disparate treatment or hostile work environment.):

**2a.  Second Proposed Witness's Name (Last, First):**
2b.  Witness's Job Title:
2c.  Witness's Organization and Duty Station or Location:

2d.  Witness's Contact Information:
Commercial telephone number (including area code):
Email address:
Mailing address:

2e.  Brief explanation of the testimony this witness is expected to provide regarding the claim(s) accepted for investigation:

**3a.  (Continue to list your proposed witnesses in the above format using additional sheets.)**

*(The investigator assigned to investigate the complaint will use the information you provide to determine whether or not the proposed witness(es) has (have) testimony to provide that is relevant and material to the accepted claim(s).  Therefore, it is important that you include all the information listed above for each witness you propose.  And, because the investigator may not be able to interview all the witnesses you propose, it is important that you list them in priority order.  Thank you in advance for your adherence to this guidance.)*

| | |
|---|---|
| **From:** | Williams, Cassandra J CIV DODHRA DCPAS (US) |
| **To:** | Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US) |
| **Cc:** | Klephammer, Melissa M CIV USARMY ID-SUSTAINMENT (US); Whittington, Steven G CIV USARMY (US) |
| **Subject:** | Scheduling Notice - DaSilva |
| **Date:** | Thursday, October 11, 2018 11:42:30 AM |
| **Attachments:** | Electronic Processing Participant"s Guide-May 2015.pdf |
| | Scheduling Notice - Joe DaSilva.docx |
| | Privacy Act Cover Sheet.pdf |

Ms. Kleehammer:

Good morning, attached is subject Scheduling Notice.

If you have any questions, please let me know.

Thank you in advance for your cooperation.

Respectfully,
//signed//
Cassandra Williams
Investigator
Investigations and Resolutions Directorate (IRD)
Diversity Mangement Operations Center (DMOC)
Phone: 703-963-5668

FOR OFFICIAL USE ONLY - This email and any attachments may contain information that is protected from disclosure by Federal law (the Privacy Act of 1974) and should be viewed only by those with an official "need to know." If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify me immediately by e-mail, delete the original message, and destroy and hard copies you may have created. Any misuse or unauthorized disclosure may result in both civil and criminal penalities.



**DEFENSE HUMAN RESOURCES ACTIVITY**
**DIVERSITY MANAGEMENT OPERATIONS CENTER**
**INVESTIGATIONS AND RESOLUTIONS DIRECTORATE**
4800 MARK CENTER DRIVE
ALEXANDRIA, VA 22350-4000

October 11, 2018

MEMORANDUM FOR DEPARTMENT OF THE ARMY
        INSTALLATION MANAGEMENT COMMAND
        UNITED STATES ARMY GARRISON-DETROIT ARSENAL
        ATTN: EEO OFFICE
        6501 E ELEVEN MILE RD
        WARREN MI 48397

SUBJECT:  Scheduling Notice
        Discrimination Complaint of Joe DaSilva Jr.
        Agency Docket No. ARDETROIT18MAY01583

**SUSPENSE DATE:  October 18, 2018**

    I have been assigned to investigate subject complaint.  Witness statements will be obtained by the use of Declarations Under Penalty of Perjury as authorized by 28 U.S.C. 1746.  Witnesses will be contacted by telephone and/or email to obtain these declarations.  The following claim was accepted for investigation as taken directly from the Agency's Notice of Acceptance of Formal Complaint dated June 1, 2018:

Whether Mr. Joe DaSilva was harassed (sexual) on April 3, 2018 based on his sex (male) and National Origin (Brazilian) when Assistant Chief Potter made the following unwanted sexual comments – "how much do breast implants cost" and remarking that Mr. DaSilva should wear a "B-cup bra"?

    My role as an IRD Complaint Investigator is to serve as an impartial fact-finder, gather evidence related to the claims accepted for investigation, and prepare a report.  In accordance with 29 CFR 1614.108, I am authorized to administer oaths and to investigate all aspects of this discrimination complaint.  I am authorized to require all employees of the agency to cooperate in the conduct of the investigation, and to require any agency employee having any knowledge of the matter(s) at issue to furnish testimony under oath or affirmation or to submit a declaration under penalty of perjury without a pledge of confidentiality.

    I intend to contact the following persons by telephone and/or email to obtain their declarations (testimony) **on or shortly after October 18, 2018:**

- Complainant
- Martin Potter, Assistant Fire Chief
- Sean Edwards, Fire Chief
- Leslie Tillman, Assistant Fire Chief
- David Ferris, Firefighter
- Matthew Holtyn, Firefighter

**By no later than October 18, 2018,** please: (1) provide me with a telephone number and email address for each witness listed; and (2) advise each witness of my appointment as the investigator and of my intention to contact them by telephone and/or email to obtain a declaration from them in terms of their knowledge of the claim(s) accepted for investigation (a copy of this email may be used for that purpose). Although the Complainant, Complainant's Representative (if any), and the Agency Representative are being sent a copy of this email with attachments, you are encouraged to confirm each individual's receipt of this email as this will help assure notification to all parties in the event copies are misdirected or lost. Please note once I am in receipt of the Agency data, I will be requesting additional witnesses as necessary.

A specific explanation of the procedures is contained at **Attachment 1,** "A Participant's Guide to Electronic Processing in Complaint Investigations." This guide informs all participants of their role in the investigation.

By memorandum dated July 30, 2018, the Complainant, Complainant's Representative (if any), and Agency Representative were provided with the opportunity to request witnesses and provide documentation they believe important to this investigation. I have not received the documentation as requested in the July 30, 2018 notice. Please provide the documentation by **October 18, 2018.** Please note that additional data/documentation may be required from the Agency during this investigation.

If additional witnesses are named by either party outside those already listed in this Scheduling Notice, the individuals naming them should provide the information by **October 18, 2018,** with the following:

- a brief explanation of the expected testimony of each witness
- the job title, organization and duty station of each witness
- a telephone number for each witness
- an email address for each witness

Information about witness testimony and additional documents (if any) should be submitted via email to me at cassamdra.j.williams6.civ@mail.mil or through the EEO Office which can upload the documents to the Investigations and Resolutions Case Management System (IRCMS) by the suspense date noted above. If desired, the Agency Representative may submit a written statement of management's position with respect to the claim.

**WARNING:** The Investigations and Resolutions Directorate (IRD) Case Management System is an UNCLASSIFIED Department of Defense system. It is the responsibility of the agency and/or complainant to ensure only unclassified information is introduced into the system, transmitted, and/or provided to IRD case workers. In the event it is determined classified information was erroneously put into the system, appropriate measures will be coordinated between the IRD Component Coordinator and your Agency's Security Office to investigate and determine if any further action is warranted. Please be advised that introducing classified information into this process could result in criminal, civil, and administrative penalties.

Thank you for your assistance.  Questions may be directed to me at (703) 963-5668 and my email address is cassandra.j.williams6.civ@mail.mil.


*Cassandra J. Williams*

Investigator

Attachment (As stated)


cc (by e-mail and with attachments):
Mr. Joe DaSilva, Jr, Complainant, by email
Mr. Steven Whittington, Agency Representative, by email



# A PARTICIPANT'S GUIDE TO ELECTRONIC PROCESSING IN EEO COMPLAINT INVESTIGATIONS

**Department of Defense
Defense Civilian Personnel Advisory
Service
Investigations and Resolutions
Directorate**

*May 2015*

# INTRODUCTION

The Investigations and Resolutions Directorate (IRD) of the Defense Civilian Personnel Advisory Service (DCPAS) is authorized to investigate individual, formal complaints of discrimination filed by DoD civilian employees or applicants. IRD's authority includes reviewing and copying pertinent records, requiring DoD personnel to testify under oath or affirmation without a pledge of confidentiality, and issuing reports of investigation.

The electronic processing (e-processing) method is an administrative procedure designed to facilitate the collection of facts in an investigation. It is an administrative and not a judicial proceeding, and does not replace any hearing which may be conducted by the Equal Employment Opportunity Commission (EEOC). In an e-processing investigation, the investigator takes telephonic testimony and summarizes it on a Declaration Under Penalty of Perjury, signed by the declarant. This guide explains how e-processing works and how you can expect to participate. Note: In some instances, the investigator may send an interrogatory (a set of questions) to the Complainant and/or witnesses for that individual to complete. The investigator may possibly also need to follow-up by telephone or email to ask any necessary clarifying questions. Following receipt of the declaration, the investigator may contact the Complainant and/or witness by telephone or email to ask any necessary follow-up or clarifying questions.

## WHO PARTICIPATES?

**Investigator.** The investigator is an IRD employee who conducts and controls the investigation. The investigator decides who will testify, which documents will be included in the investigative file, what questions will be asked, and whether the testimony being provided is germane to the accepted claim(s). The investigator will ask the questions during the telephonic interview.

Investigators conduct an impartial fact-finding inquiry, prepare a case record, and write a report of investigation. They are responsible for developing material evidence for the record regardless of whose position the evidence may support.

The investigator is not an employee of the agency under investigation, but is a neutral third party. In an EEO complaint investigation, the investigator's objective is to develop a record on which a decision can be made by the appropriate deciding official; however, the investigator does not make recommendations or decisions on the merits of the case.

**Complainant.** This is the individual who filed the complaint, sometimes referred to as the aggrieved. He or she should provide testimony to the investigator about the specific allegations in the complaint, nominate witnesses, and submit relevant documents for consideration by the investigator. The Complainant may have a personal representative to assist him or her in presenting the complaint; however, the representative does not provide testimony on behalf of the Complainant.

**Primary Management Witness(es).** This is typically the individual(s) who made the decision(s), took or failed to take the action(s), or should have known about the action(s) giving rise to the complaint. Complainants are not required to identify a management witness responsible for the contested action. Complaints are filed against the agency, not against individuals, and no management witness is an official party to the complaint.

A primary management witness, however, is generally called to testify about the complaint. To the extent necessary for a reasonably thorough review of the circumstances under which the alleged discrimination occurred, the investigator will ensure that the primary management witness is briefed about and allowed to respond to testimony containing allegations of wrongdoing, and allowed to review the documents containing allegations involving him or her. The primary management witness should coordinate the review of these documents with the EEO office. A primary management witness is also given the opportunity to submit documents. He or she may also have a personal representative to assist him or her in responding to the complaint; however, the representative does not provide testimony on behalf of the witness.

**Agency Representative.** The agency representative (usually an agency labor counselor) is the official designated to represent the agency in an EEO complaint to ensure that the agency's position is sound and supported by competent evidence. The agency representative may nominate witnesses and submit documents. The agency representative may be present with a management witness during that witness's testimony but does not actively participate in the phone interview. The agency representative does not act as a personal representative for any agency witness because complaints are filed against agencies rather than individual employees.

**Personal Representative.** The complainant, as well as all witnesses, may select a person to assist in the presentation of and/or response to the complaint, but this individual does not testify. This individual may be a legal or personal advisor. There is no requirement to have a personal representative. Agency Equal Employment Opportunity (EEO) personnel may not serve as personal representatives and IRD does not designate, nor can they recommend, personal representatives. The roles of personal representatives and witness are not generally compatible.

**Witnesses.** These are individuals who are called to testify about their knowledge of the claim(s) in the complaint. The investigator determines who will testify. The investigator may call witnesses that have not been nominated by the complainant or the agency representative. Conversely, the investigator may decide not to call one or more witnesses nominated by either party. The investigator will attempt to avoid unduly repetitious testimony. Therefore, it is in the best interest of both parties that they only nominate witnesses with the most relevant and direct knowledge of the claim(s), i.e., those with first-hand or eyewitness information regarding the specific allegation(s) accepted for investigation.

The investigator will request that the EEO office personnel notify the witnesses in advance that they are expected to testify during the investigation. Advance notice includes briefing the witnesses as to the claim(s) accepted for investigation, informing them that they will be asked to testify under penalty of perjury and advising them of their right to testify without reprisal for participating in the investigation.

**Agency EEO Official.** The EEO official is usually an agency employee who accepts the complaint and forwards it to IRD for investigation. Arrangements for the e-processing investigation are made through the EEO official or his/her designated point of contact. IRD relies on the EEO official to arrange Complainant's, Complainant's representatives', and witnesses' availability, notify all participants of the upcoming investigation, and provide current contact information to the investigator. The EEO official is available to assist in settling disputes, if any, about the claims accepted for investigation. Typically, the EEO official and agency representative coordinate any settlement agreement that may be reached during or prior to the investigation.

## WHAT HAPPENS?

When a case is to be investigated using e-processing methodology, the investigator will notify the EEO official of his or her intent to use this method and to schedule the investigation.

Each party is responsible for preparing fully before the investigation and this includes being ready to provide specifics about the matters in dispute. For example:

- Be prepared to provide first and last names of individuals who witnessed the contested events.
- Be ready to explain the position you take on the question of discrimination.
    - o For the Complainant, this includes: Were people in the same situation treated differently than you? What are their names? How were they treated differently?
    - o For management, this includes: What are your reasons for taking or not taking the action(s) at issue that are being contested?
    - o For both parties, provide evidence to support your position.
    - o For all parties, provide names of specific individuals who were involved in bringing about the alleged treatment, and
    - o For all parties, identify dates when the events occurred. Be precise with dates and times. If they cannot be recalled, narrow them down as closely as possible.
    - o For all parties, provide copies of any documentation referred to in testimony.

Remember that the investigator is seeking facts, not opinions or supportive testimony from friends or individuals who simply feel the same way you do.

Usually the investigator will set a deadline for the submission of witnesses' names and documents. It is in the participants' best interests to comply with this deadline. Do not withhold witnesses or documents for presentation when providing testimony. When nominating witnesses, identify the anticipated areas of testimony expected from each one. Without this information, the investigator may not be able to determine whether the witness is required.

On the date and time of the scheduled testimony, the investigator will call the Complainant or witness to obtain their testimony. The investigator will ask questions to the

Complainant in order for the Complainant to present facts related to the accepted claims.  The investigator will ask questions to management officials and other witnesses regarding their firsthand knowledge and/or involvement in the matters at issue in the accepted claims.  The investigator will summarize the individual's responses on a Declaration Under Penalty of Perjury and after the telephonic interview, and send the individual their draft declaration in a Word document for review and signature.  The investigator does not type verbatim testimony, rather the statement is a summary of what the individual conveyed in the telephonic interview. After the individual makes any changes, signs, and dates their declaration, he/she returns it to the investigator for its inclusion in the investigative file.

If individuals do not make themselves available on a scheduled date to provide testimony or are unable to commit to a reasonable date to provide testimony, the investigator may request assistance from the EEO office in ensuring the individual is available.  If those efforts are not successful, the investigator may complete the investigation without that individual's testimony.

Remember, the EEO complaint investigation is an administrative inquiry; and the record is developed primarily through questions asked by the investigator, as well as any data/documentation relevant to the accepted claims.

| From: | Williams, Cassandra J CIV DODHRA DCPAS (US) |
|---|---|
| To: | Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US) |
| Cc: | Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US); Whittington, Steven G CIV USARMY (US) |
| Subject: | Scheduling Notice - DaSilva |
| Date: | Thursday, October 11, 2018 11:42:30 AM |
| Attachments: | Electronic Processing Participant"s Guide-May 2015.pdf |
| | Scheduling Notice - Joe DaSilva.docx |
| | Privacy Act Cover Sheet.pdf |

Ms. Kleehammer:

Good morning, attached is subject Scheduling Notice.

If you have any questions, please let me know.

Thank you in advance for your cooperation.

Respectfully,

//signed//

Cassandra Williams

Investigator

Investigations and Resolutions Directorate (IRD)

Diversity Mangement Operations Center (DMOC)

Phone: 703-963-5668

FOR OFFICIAL USE ONLY - This email and any attachments may contain information that is protected from disclosure by Federal law (the Privacy Act of 1974) and should be viewed only by those with an official "need to know." If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify me immediately by e-mail, delete the original message, and destroy and hard copies you may have created. Any misuse or unauthorized disclosure may result in both civil and criminal penalities.

000189



**DEFENSE HUMAN RESOURCES ACTIVITY**
**DIVERSITY MANAGEMENT OPERATIONS CENTER**
**INVESTIGATIONS AND RESOLUTIONS DIRECTORATE**
4800 MARK CENTER DRIVE
ALEXANDRIA, VA 22350-4000

October 11, 2018

MEMORANDUM FOR DEPARTMENT OF THE ARMY
INSTALLATION MANAGEMENT COMMAND
UNITED STATES ARMY GARRISON-DETROIT ARSENAL
ATTN: EEO OFFICE
6501 E ELEVEN MILE RD
WARREN MI 48397

SUBJECT:  Scheduling Notice
Discrimination Complaint of Joe DaSilva Jr.
Agency Docket No. ARDETROIT18MAY01583

**SUSPENSE DATE: October 18, 2018**

I have been assigned to investigate subject complaint. Witness statements will be obtained by the use of Declarations Under Penalty of Perjury as authorized by 28 U.S.C. 1746. Witnesses will be contacted by telephone and/or email to obtain these declarations. The following claim was accepted for investigation as taken directly from the Agency's Notice of Acceptance of Formal Complaint dated June 1, 2018:

Whether Mr. Joe DaSilva was harassed (sexual) on April 3, 2018 based on his sex (male) and National Origin (Brazilian) when Assistant Chief Potter made the following unwanted sexual comments – "how much do breast implants cost" and remarking that Mr. DaSilva should wear a "B-cup bra"?

My role as an IRD Complaint Investigator is to serve as an impartial fact-finder, gather evidence related to the claims accepted for investigation, and prepare a report. In accordance with 29 CFR 1614.108, I am authorized to administer oaths and to investigate all aspects of this discrimination complaint. I am authorized to require all employees of the agency to cooperate in the conduct of the investigation, and to require any agency employee having any knowledge of the matter(s) at issue to furnish testimony under oath or affirmation or to submit a declaration under penalty of perjury without a pledge of confidentiality.

I intend to contact the following persons by telephone and/or email to obtain their declarations (testimony) **on or shortly after October 18, 2018:**

- Complainant
- Martin Potter, Assistant Fire Chief
- Sean Edwards, Fire Chief
- Leslie Tillman, Assistant Fire Chief
- David Ferris, Firefighter
- Matthew Holtyn, Firefighter

**By no later than October 18, 2018,** please: (1) provide me with a telephone number and email address for each witness listed; and (2) advise each witness of my appointment as the investigator and of my intention to contact them by telephone and/or email to obtain a declaration from them in terms of their knowledge of the claim(s) accepted for investigation (a copy of this email may be used for that purpose). Although the Complainant, Complainant's Representative (if any), and the Agency Representative are being sent a copy of this email with attachments, you are encouraged to confirm each individual's receipt of this email as this will help assure notification to all parties in the event copies are misdirected or lost. Please note once I am in receipt of the Agency data, I will be requesting additional witnesses as necessary.

A specific explanation of the procedures is contained at **Attachment 1**, "A Participant's Guide to Electronic Processing in Complaint Investigations." This guide informs all participants of their role in the investigation.

By memorandum dated July 30, 2018, the Complainant, Complainant's Representative (if any), and Agency Representative were provided with the opportunity to request witnesses and provide documentation they believe important to this investigation. I have not received the documentation as requested in the July 30, 2018 notice. Please provide the documentation by **October 18, 2018**. Please note that additional data/documentation may be required from the Agency during this investigation.

If additional witnesses are named by either party outside those already listed in this Scheduling Notice, the individuals naming them should provide the information by **October 18, 2018**, with the following:

- a brief explanation of the expected testimony of each witness
- the job title, organization and duty station of each witness
- a telephone number for each witness
- an email address for each witness

Information about witness testimony and additional documents (if any) should be submitted via email to me at cassamdra.j.williams6.civ@mail.mil or through the EEO Office which can upload the documents to the Investigations and Resolutions Case Management System (IRCMS) by the suspense date noted above. If desired, the Agency Representative may submit a written statement of management's position with respect to the claim.

**WARNING**: The Investigations and Resolutions Directorate (IRD) Case Management System is an UNCLASSIFIED Department of Defense system. It is the responsibility of the agency and/or complainant to ensure only unclassified information is introduced into the system, transmitted, and/or provided to IRD case workers. In the event it is determined classified information was erroneously put into the system, appropriate measures will be coordinated between the IRD Component Coordinator and your Agency's Security Office to investigate and determine if any further action is warranted. Please be advised that introducing classified information into this process could result in criminal, civil, and administrative penalties.

Thank you for your assistance.  Questions may be directed to me at (703) 963-5668 and my email address is cassandra.j.williams6.civ@mail.mil.


*Cassandra J. Williams*
Investigator

Attachment (As stated)


cc (by e-mail and with attachments):
Mr. Joe DaSilva, Jr, Complainant, by email
Mr. Steven Whittington, Agency Representative, by email



# A PARTICIPANT'S GUIDE TO ELECTRONIC PROCESSING IN EEO COMPLAINT INVESTIGATIONS

**Department of Defense**
**Defense Civilian Personnel Advisory**
**Service**
**Investigations and Resolutions**
**Directorate**

*May 2015*

000183

# INTRODUCTION

The Investigations and Resolutions Directorate (IRD) of the Defense Civilian Personnel Advisory Service (DCPAS) is authorized to investigate individual, formal complaints of discrimination filed by DoD civilian employees or applicants. IRD's authority includes reviewing and copying pertinent records, requiring DoD personnel to testify under oath or affirmation without a pledge of confidentiality, and issuing reports of investigation.

The electronic processing (e-processing) method is an administrative procedure designed to facilitate the collection of facts in an investigation. It is an administrative and not a judicial proceeding, and does not replace any hearing which may be conducted by the Equal Employment Opportunity Commission (EEOC). In an e-processing investigation, the investigator takes telephonic testimony and summarizes it on a Declaration Under Penalty of Perjury, signed by the declarant. This guide explains how e-processing works and how you can expect to participate. Note: In some instances, the investigator may send an interrogatory (a set of questions) to the Complainant and/or witnesses for that individual to complete. The investigator may possibly also need to follow-up by telephone or email to ask any necessary clarifying questions. Following receipt of the declaration, the investigator may contact the Complainant and/or witness by telephone or email to ask any necessary follow-up or clarifying questions.

## WHO PARTICIPATES?

**Investigator.** The investigator is an IRD employee who conducts and controls the investigation. The investigator decides who will testify, which documents will be included in the investigative file, what questions will be asked, and whether the testimony being provided is germane to the accepted claim(s). The investigator will ask the questions during the telephonic interview.

Investigators conduct an impartial fact-finding inquiry, prepare a case record, and write a report of investigation. They are responsible for developing material evidence for the record regardless of whose position the evidence may support.

The investigator is not an employee of the agency under investigation, but is a neutral third party. In an EEO complaint investigation, the investigator's objective is to develop a record on which a decision can be made by the appropriate deciding official; however, the investigator does not make recommendations or decisions on the merits of the case.

**Complainant.** This is the individual who filed the complaint, sometimes referred to as the aggrieved. He or she should provide testimony to the investigator about the specific allegations in the complaint, nominate witnesses, and submit relevant documents for consideration by the investigator. The Complainant may have a personal representative to assist him or her in presenting the complaint; however, the representative does not provide testimony on behalf of the Complainant.

**Primary Management Witness(es).** This is typically the individual(s) who made the decision(s), took or failed to take the action(s), or should have known about the action(s) giving rise to the complaint. Complainants are not required to identify a management witness responsible for the contested action. Complaints are filed against the agency, not against individuals, and no management witness is an official party to the complaint.

A primary management witness, however, is generally called to testify about the complaint. To the extent necessary for a reasonably thorough review of the circumstances under which the alleged discrimination occurred, the investigator will ensure that the primary management witness is briefed about and allowed to respond to testimony containing allegations of wrongdoing, and allowed to review the documents containing allegations involving him or her. The primary management witness should coordinate the review of these documents with the EEO office. A primary management witness is also given the opportunity to submit documents. He or she may also have a personal representative to assist him or her in responding to the complaint; however, the representative does not provide testimony on behalf of the witness.

**Agency Representative.** The agency representative (usually an agency labor counselor) is the official designated to represent the agency in an EEO complaint to ensure that the agency's position is sound and supported by competent evidence. The agency representative may nominate witnesses and submit documents. The agency representative may be present with a management witness during that witness's testimony but does not actively participate in the phone interview. The agency representative does not act as a personal representative for any agency witness because complaints are filed against agencies rather than individual employees.

**Personal Representative.** The complainant, as well as all witnesses, may select a person to assist in the presentation of and/or response to the complaint, but this individual does not testify. This individual may be a legal or personal advisor. There is no requirement to have a personal representative. Agency Equal Employment Opportunity (EEO) personnel may not serve as personal representatives and IRD does not designate, nor can they recommend, personal representatives. The roles of personal representatives and witness are not generally compatible.

**Witnesses.** These are individuals who are called to testify about their knowledge of the claim(s) in the complaint. The investigator determines who will testify. The investigator may call witnesses that have not been nominated by the complainant or the agency representative. Conversely, the investigator may decide not to call one or more witnesses nominated by either party. The investigator will attempt to avoid unduly repetitious testimony. Therefore, it is in the best interest of both parties that they only nominate witnesses with the most relevant and direct knowledge of the claim(s), i.e., those with first-hand or eyewitness information regarding the specific allegation(s) accepted for investigation.

The investigator will request that the EEO office personnel notify the witnesses in advance that they are expected to testify during the investigation. Advance notice includes briefing the witnesses as to the claim(s) accepted for investigation, informing them that they will be asked to testify under penalty of perjury and advising them of their right to testify without reprisal for participating in the investigation.

**Agency EEO Official.** The EEO official is usually an agency employee who accepts the complaint and forwards it to IRD for investigation. Arrangements for the e-processing investigation are made through the EEO official or his/her designated point of contact. IRD relies on the EEO official to arrange Complainant's, Complainant's representatives', and witnesses' availability, notify all participants of the upcoming investigation, and provide current contact information to the investigator. The EEO official is available to assist in settling disputes, if any, about the claims accepted for investigation. Typically, the EEO official and agency representative coordinate any settlement agreement that may be reached during or prior to the investigation.

## WHAT HAPPENS?

When a case is to be investigated using e-processing methodology, the investigator will notify the EEO official of his or her intent to use this method and to schedule the investigation.

Each party is responsible for preparing fully before the investigation and this includes being ready to provide specifics about the matters in dispute. For example:

- Be prepared to provide first and last names of individuals who witnessed the contested events.
- Be ready to explain the position you take on the question of discrimination.
  - For the Complainant, this includes: Were people in the same situation treated differently than you? What are their names? How were they treated differently?
  - For management, this includes: What are your reasons for taking or not taking the action(s) at issue that are being contested?
  - For both parties, provide evidence to support your position.
  - For all parties, provide names of specific individuals who were involved in bringing about the alleged treatment, and
  - For all parties, identify dates when the events occurred. Be precise with dates and times. If they cannot be recalled, narrow them down as closely as possible.
  - For all parties, provide copies of any documentation referred to in testimony.

Remember that the investigator is seeking facts, not opinions or supportive testimony from friends or individuals who simply feel the same way you do.

Usually the investigator will set a deadline for the submission of witnesses' names and documents. It is in the participants' best interests to comply with this deadline. Do not withhold witnesses or documents for presentation when providing testimony. When nominating witnesses, identify the anticipated areas of testimony expected from each one. Without this information, the investigator may not be able to determine whether the witness is required.

On the date and time of the scheduled testimony, the investigator will call the Complainant or witness to obtain their testimony. The investigator will ask questions to the

Complainant in order for the Complainant to present facts related to the accepted claims. The investigator will ask questions to management officials and other witnesses regarding their firsthand knowledge and/or involvement in the matters at issue in the accepted claims. The investigator will summarize the individual's responses on a Declaration Under Penalty of Perjury and after the telephonic interview, and send the individual their draft declaration in a Word document for review and signature. The investigator does not type verbatim testimony, rather the statement is a summary of what the individual conveyed in the telephonic interview. After the individual makes any changes, signs, and dates their declaration, he/she returns it to the investigator for its inclusion in the investigative file.

If individuals do not make themselves available on a scheduled date to provide testimony or are unable to commit to a reasonable date to provide testimony, the investigator may request assistance from the EEO office in ensuring the individual is available. If those efforts are not successful, the investigator may complete the investigation without that individual's testimony.

Remember, the EEO complaint investigation is an administrative inquiry, and the record is developed primarily through questions asked by the investigator, as well as any data/documentation relevant to the accepted claims.

| | |
|---|---|
| **From:** | Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) |
| **To:** | Williams, Cassandra J CIV DODHRA DCPAS (US) |
| **Subject:** | RE: Scheduling Notice - DaSilva |
| **Date:** | Tuesday, October 16, 2018 1:17:41 PM |

Ms. Williams,
Below are is information for witnesses you intend to speak with. Should you have any further questions, please do not hesitate to contact me. I hope to have the documents uploaded soon as well.

Joe DaSilva, Jr., joe.dasilva2.civ@mail.mil, (734)255-9837
Martin Potter, martin.g.potter.civ@mail.mil, (568)282-6448
Sean Edwards, sean.l.edwards.civ@mail.mil, (586)282-0140
Leslie (Jerome) Tillman, lesley.j.tillman.civ@mail.mil, (586)282-6448
David Ferris, david.l.ferris2.civ@mail.mil, (586)282-6448
Matthew Holtyn, matthew.j.holtyn.civ@mail.mil, (586)282-6448


Melissa

V/r,

Melissa Kleehammer
EEO Officer (Acting)
Installation Management Command
US Army Garrison - Detroit Arsenal
Building 230W, Room 1H139, MS 400
6501 East 11 Mile Rd.
Warren, MI 48397
Desk: 282-8354
DSN: 786-8354
Mobile: 586-216-8985

We are the Army's Home - Serving the Rugged Professional.
Learn more at www.imcom.army.mil
Learn more at https://www.facebook.com/ArmyDetroitArsenal

ATTENTION! The information contained in this e-mail must be protected in accordance with DoD Directive 5400.11R, E3.1.1 and is "For Official Use Only." It is intended solely for the individual to whom it is addressed and should be protected so that the security and confidentiality of the information is preserved. If you received this e-mail in error, please notify me immediately by return e-mail or by calling 586-282-8354.



-----Original Message-----
From: Williams, Cassandra J CIV DODHRA DCPAS (US)
Sent: Thursday, October 11, 2018 11:42 AM
To: Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US) <joe.dasilva2.civ@mail.mil>
Cc: Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) <melissa.m.kleehammer.civ@mail.mil>;
Whittington, Steven G CIV USARMY (US) <steven.g.whittington.civ@mail.mil>
Subject: Scheduling Notice - DaSilva

Ms. Kleehammer:

Good morning, attached is subject Scheduling Notice.

If you have any questions, please let me know.

Thank you in advance for your cooperation.

Respectfully,

//signed//

Cassandra Williams

Investigator

Investigations and Resolutions Directorate (IRD)

Diversity Mangement Operations Center (DMOC)

Phone: 703-963-5668

FOR OFFICIAL USE ONLY - This email and any attachments may contain information that is protected from disclosure by Federal law (the Privacy Act of 1974) and should be viewed only by those with an official "need to know."  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited.  If you have received this communication in error, please notify me immediately by e-mail, delete the original message, and destroy and hard copies you may have created.  Any misuse or unauthorized disclosure may result in both civil and criminal penalities.

| | |
|---|---|
| **From:** | Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) |
| **To:** | Williams, Cassandra J CIV DODHRA DCPAS (US) |
| **Subject:** | RE: Scheduling Notice - DaSilva |
| **Date:** | Tuesday, October 16, 2018 1:32:40 PM |

Ms. Williams,

Per our conversation, Mr. DaSilva has indicated that all items checked on the 2590 are correct, as they are all his protected classes and affect him in some way or another. Also, he wants to add reprisal (Prior EEO Activity ARDETROIT17FEB00469).

He does now have a lawyer now. His name is Solomon Wagner, (248)372-1749. I am awaiting his return call to receive official declaration as representation for Mr. DaSilva.

Please let me know if you have any questions.

Thanks,
Melissa

V/r,

Melissa Kleehammer
EEO Officer (Acting)
Installation Management Command
US Army Garrison - Detroit Arsenal
Building 230W, Room 1H139, MS 400
6501 East 11 Mile Rd.
Warren, MI 48397
Desk: 282-8354
DSN: 786-8354
Mobile: 586-216-8985

We are the Army's Home - Serving the Rugged Professional.
Learn more at www.imcom.army.mil
Learn more at https://www.facebook.com/ArmyDetroitArsenal

ATTENTION! The information contained in this e-mail must be protected in accordance with DoD Directive 5400.11R, E3.1.1 and is "For Official Use Only." It is intended solely for the individual to whom it is addressed and should be protected so that the security and confidentiality of the information is preserved. If you received this e-mail in error, please notify me immediately by return e-mail or by calling 586-282-8354.

-----Original Message-----
From: Williams, Cassandra J CIV DODHRA DCPAS (US)
Sent: Thursday, October 11, 2018 11:42 AM
To: Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US) <joe.dasilva2.civ@mail.mil>
Cc: Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) <melissa.m.kleehammer.civ@mail.mil>; Whittington, Steven G CIV USARMY (US) <steven.g.whittington.civ@mail.mil>
Subject: Scheduling Notice - DaSilva

Ms. Kleehammer:

Good morning, attached is subject Scheduling Notice.

If you have any questions, please let me know.

Thank you in advance for your cooperation.

Respectfully,

//signed//

Cassandra Williams

Investigator

Investigations and Resolutions Directorate (IRD)

Diversity Mangement Operations Center (DMOC)

Phone: 703-963-5668

FOR OFFICIAL USE ONLY - This email and any attachments may contain information that is protected from disclosure by Federal law (the Privacy Act of 1974) and should be viewed only by those with an official "need to know." If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify me immediately by e-mail, delete the original message, and destroy and hard copies you may have created. Any misuse or unauthorized disclosure may result in both civil and criminal penalities.

| | |
|---|---|
| **From:** | Kelly Casey |
| **To:** | Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) |
| **Cc:** | Solomon Radner; Keith Altman |
| **Subject:** | [Non-DoD Source] Joe DaSilva |
| **Date:** | Thursday, October 18, 2018 2:59:44 PM |

All active links contained in this email were disabled. Please verify the identity of the sender, and confirm the authenticity of all links contained within the message prior to copying and pasting the address to a Web browser.

---

Melissa,

Thank you for taking the time to speak with me, as we discussed here is the information that you need.

Excolo Law, PLLC

26700 Lahser Rd, Suite 401

Southfield, MI 48033

Attorneys:

Solomon M. Radner / 248.291.9719 / sradner@excololaw.com < Caution-mailto:sradner@excololaw.com >

Keith L. Altman / 248.291.9705 / kaltman@excololaw.com < Caution-mailto:kaltman@excololaw.com >

And should you have any difficulty contacting either Mr. Radner or Mr. Altman, please feel free to contact me for any assistance.

Kelly Casey / 248.327.1842 / kcasey@excololaw.com < Caution-mailto:kcasey@excololaw.com >

Please let me know if you need any additional information.  Thank you.

Kelly D. Casey

Manager, Complex Litigation

Excolo Law, PLLC

26700 Lahser Road, Suite 401

Southfield, Michigan 48033

248.327.1842

kcasey@excololaw.com

This message is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately reply to this message or notify us by telephone at 800-529-3476 and delete the message.

| From: | Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) |
|---|---|
| To: | Williams, Cassandra J CIV DODHRA DCPAS (US) |
| Subject: | RE: Request for Data/Documentation based on added Bases: RE: Scheduling Notice - DaSilva (UNCLASSIFIED) |
| Date: | Thursday, November 29, 2018 11:27:25 AM |

CLASSIFICATION: UNCLASSIFIED

Cassandra,

I have uploaded the second request since the additional claims were added.  I can email them directly to you if you want.

Thanks.
Melissa

V/r,

Melissa Kleehammer
EEO Officer (Acting)
Installation Management Command
US Army Garrison - Detroit Arsenal
Building 230W, Room 1H139, MS 400
6501 East 11 Mile Rd.
Warren, MI 48397
Desk: 282-8354
DSN: 786-8354
Mobile: 586-216-8985

We are the Army's Home - Serving the Rugged Professional.
Learn more at www.imcom.army.mil
Learn more at https://www.facebook.com/ArmyDetroitArsenal

ATTENTION! The information contained in this e-mail must be protected in accordance with DoD Directive 5400.11R, E3.1.1 and is "For Official Use Only."  It is intended solely for the individual to whom it is addressed and should be protected so that the security and confidentiality of the information is preserved.  If you received this e-mail in error, please notify me immediately by return e-mail or by calling 586-282-8354.

-----Original Message-----
From: Williams, Cassandra J CIV DODHRA DCPAS (US)
Sent: Wednesday, November 28, 2018 9:04 AM
To: Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) <melissa.m.kleehammer.civ@mail.mil>
Subject: FW: Request for Data/Documentation based on added Bases: RE: Scheduling Notice - DaSilva

Ms. Kleehammer:

Per our conversation this morning -

Regarding Data still needed:

#2 -add data for all employees [race, age (year of birth), religion, and reprisal]; You can provide a statement stating that the Agency does not maintain data on religion; and,

#3 - add Complainant's Prior EEO Activity information.

Regarding witnesses:

FF Ferris has not returned his Declaration. If he is in today, I can set up an interview with him later today. I know that they work 24 hour shifts, I can talk with him after 4:30 pm CST today if needed.

As A/C Ball is Complainant's first-line supervisor, I would like to talk with him. I can talk with him after 4:30 pm CST today if needed.

Kumlin and Perkins - please schedule after 4:30 pm today

I need 30 minutes with each witness.

V/r,

Cassandra J. Williams

Phone: (703) 963-5668

-----Original Message-----
From: Williams, Cassandra J CIV DODHRA DCPAS (US)
Sent: Tuesday, November 20, 2018 3:23 PM
To: Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) <melissa.m.kleehammer.civ@mail.mil>
Subject: Request for Data/Documentation based on added Bases: RE: Scheduling Notice - DaSilva

Ms. Kleehammer:

Good afternoon. Per our discussion, please request below. The numbers

correspond with the original request for data/documentation.

One of the numbers is incorrect, I do not need #12.

The following is needed:

#2 -add data for all employees [race, age, religion, and reprisal];

#3 - add Complainant's Prior EEO Activity

Have a wonderful Thanksgiving!


-----Original Message-----

From: Williams, Cassandra J CIV DODHRA DCPAS (US)

Sent: Friday, November 9, 2018 1:27 PM

To: Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US)

<melissa.m.kleehammer.civ@mail.mil>

Subject: RE: Scheduling Notice - DaSilva


Ms. Kleehammer:


Since Mr. DaSilva is adding the bases of race, age, religion, and reprisal

to his formal complaint.  Please add these bases to previously provided

data.  Specifically, items #2, #3, and #12.

This information is needed by Thursday, November 15, 2018.

If you have any questions, please let me know.


Respectfully,

//signed//

Cassandra Williams

| | |
|---|---|
| **From:** | Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US) |
| **To:** | Williams, Cassandra J CIV DODHRA DCPAS (US) |
| **Subject:** | RE: Rebuttal Declaration: RE: 2nd Supplemental Declaration page to add with the first one (UNCLASSIFIED) |
| **Date:** | Thursday, November 29, 2018 9:30:49 AM |

CLASSIFICATION: UNCLASSIFIED

Ms. Williams,

Can you please let me know that you received my Supplemental Declaration page I send it from my Government email thanks again. I'm still waiting for my attorney to look over the rebuttal paper work to see if we are going to have a response or not. If we choose to respond to a rebuttal I will have one done by the COB on Dec 03,2018. If we do not want to respond to the rebuttal I will let you know on Dec 03,2018 also.   Thanks again for your time in this matter.


Joe DaSilva Jr.

-----Original Message-----
From: Williams, Cassandra J CIV DODHRA DCPAS (US)
Sent: Thursday, November 29, 2018 8:37 AM
To: Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US) <joe.dasilva2.civ@mail.mil>
Cc: 'SRadner@ExcoloLaw.com' <SRadner@ExcoloLaw.com>; 'kaltman@excololaw.com'
<kaltman@excololaw.com>; 'Joe Dasilva Jr.' <jdasilva324@comcast.net>
Subject: Rebuttal Declaration: RE: 2nd Supplemental Declaration page to add with the first one (UNCLASSIFIED)

Mr. DaSilva:


Please return your Rebuttal Declaration by Monday, December 3, 2018.


Thank you.




V/r,

Cassandra J. Williams

Phone: (703) 963-5668




-----Original Message-----
From: Dasilva, Joe Jr CIV USARMY IMCOM CENTRAL (US)
Sent: Thursday, November 29, 2018 7:58 AM

| From: | Joe Dasilva Jr. |
|---|---|
| To: | Williams, Cassandra J CIV DODHRA DCPAS (US) |
| Cc: | SRadner@ExcoloLaw.com; kaltman@excololaw.com |
| Subject: | [Non-DoD Source] Rebuttal |
| Date: | Monday, December 3, 2018 11:24:34 AM |

In reference to your request on a rebuttal. I believe that is not necessary, due to the fact that I, through my attorney, have provided adequate amount of information in refer to my complaint.
One can go back and forth in a question / answer context for a unspecified amount of time. I believe and know, if given the opportunity of the court proceedings that my side of this case will show favor on my side and i will prevail, justifiably.

I want to move forward with this complaint.

Joe DaSilva Jr.

| | |
|---|---|
| **From:** | Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) |
| **To:** | Williams, Cassandra J CIV DODHRA DMOC (USA) |
| **Subject:** | RE: AR 15-6 Needed: Investigation DaSilva (UNCLASSIFIED) |
| **Date:** | Wednesday, December 12, 2018 10:10:31 AM |

CLASSIFICATION: UNCLASSIFIED

Good Morning Cassandra,

I am awaiting guidance from the attorney. I just left another message, hopefully will hear back most soonest.

Melissa
V/r,

Melissa Kleehammer
EEO Officer (Acting)
Installation Management Command
US Army Garrison - Detroit Arsenal
Building 230W, Room 1H139, MS 400
6501 East 11 Mile Rd
Warren, MI 48397
Desk: 282-8354
DSN: 786-8354
Mobile: 586-216-8985

We are the Army's Home - Serving the Rugged Professional.
Learn more at www.imcom.army.mil
Learn more at https://www.facebook.com/ArmyDetroitArsenal

ATTENTION! The information contained in this e-mail must be protected in accordance with DoD Directive 5400.11R, E3.1.1 and is "For Official Use Only." It is intended solely for the individual to whom it is addressed and should be protected so that the security and confidentiality of the information is preserved. If you received this e-mail in error, please notify me immediately by return e-mail or by calling 586-282-8354.

-----Original Message-----
From: Williams, Cassandra J CIV DODHRA DMOC (USA)
Sent: Tuesday, December 11, 2018 4:24 PM
To: Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) <melissa.m.kleehammer.civ@mail.mil>
Cc: Whittington, Steven G CIV USARMY (US) <steven.g.whittington.civ@mail.mil>
Subject: RE: AR 15-6 Needed: Investigation DaSilva

Ms. Kleehammer,

Good afternoon. What is the possibility of receiving the entire AR 15-6 by tomorrow?

Please advise, thank you.

V/r,

Cassandra J. Williams

Phone: (703) 963-5668

From: Williams, Cassandra J CIV DODHRA DMOC (USA)
Sent: Monday, December 10, 2018 12:15 PM
To: Kleehammer, Melissa M CIV USARMY ID-SUSTAINMENT (US) <melissa.m.kleehammer.civ@mail.mil>
Cc: Whittington, Steven G CIV USARMY (US) <steven.g.whittington.civ@mail.mil>
Subject: AR 15-6 Needed: Investigation DaSilva

Ms. Kleehammer:

Good afternoon. Per our conversation, the complete AR 15-6 (to include sworn statements) is required for the case file. If your Agency is not willing to provide the complete AR 15-6, please provide a statement for use in the case file regarding the reasoning why you cannot provide the investigation.

Please provide this information on or before Tuesday, December 11, 2018.

Thank you in advance for your cooperation.

Respectfully,

//signed//

Cassandra Williams

Investigator

Investigations and Resolutions Directorate (IRD)

Diversity Management Operations Center (DMOC)

Phone: 703-963-5668

FOR OFFICIAL USE ONLY - This email and any attachments may contain information that is protected from disclosure by Federal law (the Privacy Act of 1974) and should be viewed only by those with an official "need to know." If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify me immediately by e-mail, delete the original message, and destroy and hard copies you may have created. Any misuse or unauthorized disclosure may result in both civil and criminal penalties.