UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE DASILVA, JR.,

      Plaintiff,                    Civil No. 20-11358

v.                                 Honorable Mark A. Goldsmith

CHRISTINE WORMUTH,        Magistrate Judge Anthony P. Patti
Secretary of the Army, and MARTIN
POTTER, in his individual capacity,

      Defendants.

---

**CHRISTINE WORMUTH'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

---

## INTRODUCTION

Plaintiff does not contest many of the legal arguments made by the Army supporting summary judgment. Plaintiff attempts to create fact issues where none exist. Plaintiff "may not create a dispute of fact concerning an issue about which he has no recollection." *Pratt v. Brown Mach. Co.*, 855 F.2d 1225, 1233 (6th Cir. 1988). In situations where Plaintiff testified that he did not recall whether something occurred, and the Army offered evidence that it did occur, there is no genuine dispute of fact for summary judgment purposes. *Id.* This scenario occurred frequently here.

Potter attested that right before he made a comment to Plaintiff about wearing a bra, Plaintiff made fun of Potter's stomach, and that Plaintiff's joke about Potter's stomach triggered Potter's joke about Plaintiff's chest. Potter Decl. ¶ 2 (ECF No. 90-3, PageID.814.) This banter occurred in the context of a "biggest loser" weight loss competition in an all-male workplace. *Id.* Plaintiff testified that he does not recall and admitted that he "might have" made fun of Potter's stomach during a biggest loser competition. Pl. Dep. at 195:20-196:10 (ECF No. 90-2, PageID.774–775.) Potter's account of the incident is thus undisputed and dispositive of Plaintiff's harassment claim. Potter's undisputed account proves that Plaintiff was an active participant in the challenged environment and invited the comment by first making fun of Potter's weight. Case law, which requires consideration of "'common sense' and an 'appropriate sensitivity to social context,'" *Wade v. Automation Pers. Servs.,*

*Inc.*, 612 F. App'x 291, 297 (6th Cir. 2015) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)), prevents Plaintiff here from claiming harassment right after he engaged in the exact same conduct.[1]

### REPLY TO COUNTER-STATEMENT OF MATERIAL FACTS

1.     The Army does not dispute that Tillman overheard Potter's statement in the kitchen about breast implants. *See* Tillman Decl. ¶ 4 (ECF No. 90-7, PageID.847.) The Army does not contest that coworkers laughed, but does contest that Potter's statement was unwelcome based on Plaintiff's own workplace conduct, as discussed in paragraphs 16 through 27 of the Army's Statement of Material Facts. (ECF No. 90, PageID.694–696.)

2.     Uncontested, with the caveat that Plaintiff quotes only a portion of the findings. *See* SHARP Findings (ECF No. 90-14, PageID.880.)

3.     Uncontested, except that the quoted document is a memo (not an email), and Plaintiff quotes only a portion of the document. (ECF No. 97-1, PageID.2727.)

4.     Uncontested. (ECF No. 90-18, PageID.908.)

---

[1] The Army also offered evidence that Plaintiff used the term "fat fuck" at work, and referred to a larger coworker, Firefighter Furman, by that derogatory term. Fern Decl. ¶ 4 (ECF No. 90-5, PageID.831.) Plaintiff testified "I don't remember" when asked about this. Pl. Dep. at 286:3-6 (ECF No. 90-2, PageID.803). Under *Pratt*, then, it is established for summary judgment proposes that Plaintiff called Furman a "fat fuck," and Plaintiff's attempt to contest this fact (ECF No. 97, PageID.2541, ¶ 23) is unpersuasive. Again, Plaintiff cannot now turn around and complain when others direct similar banter towards him.

5.      Uncontested. (*Id.*)

6.      Uncontested. (ECF No. 97-1, PageID.2633.)

7.      Denied. The quoted email was sent to Contract Specialist Amy Dombrowski, not to Melissa Kleehammer. (ECF No. 97-1, PageID.2640.) Dombrowski later forwarded it to Kleehammer. (*Id.*)

8.      Denied. The settlement agreement required the Army to do two – and only two – things: (i) "conduct an Inquiry into . . . Edwards' alleged rude and discourteous behavior"; and (ii) "[n]ot take any disciplinary action against . . . DaSilva for acts that occurred prior to 2 March 2017." (ECF No. 90-12, PageID.869.) Plaintiff admitted that the Army complied with its obligations under the agreement. Exhibit 1 – Pl. Dep. at 196:23-197:6, 197:11-21. The Army was not required to take any action relating to Potter or to inform Potter of the EEO complaint or settlement agreement. Potter did not learn of either until his deposition. Potter Dep. at 7:17-8:15 (ECF No. 90-13, PageID.872-873.) Plaintiff offered no evidence disputing this.

9.      Denied. The cited evidence does not stand for the proposition asserted. Plaintiff offered no evidence (beyond his unsupported opinion) that the Army violated its policies and procedures when issuing a letter of counseling to Potter. Plaintiff admitted that Potter received a letter of counseling and that his performance evaluation was lowered. (ECF No. 97, PageID.2544) (admitting ¶ 41 of the Army's

3

Statement of Undisputed Facts). Plaintiff admitted that the comments "stopped" when he filed the SHARP complaint. (ECF No. 97, PageID.2545, ¶ 43.)

## HOSTILE WORK ENVIORNMENT CLAIM

Plaintiff cannot satisfy three elements of his prima facie case: that the alleged harassment was unwelcome, sex-based, or objectively severe or pervasive.

*Not unwelcome*. Plaintiff did not directly respond to the Army's argument that the alleged harassment was not unwelcome. (ECF No. 90, PageID.706-707.) Plaintiff suggests that the Court should conclude that the alleged harassment was unwelcome because the SHARP investigator, Director Robert Porter, concluded that harassment occurred. This overlooks Porter's finding that he does "not believe sexual harassment was the issue," and his related finding that there was an "environment of continued harassment from all within the department," including Plaintiff: "he [Plaintiff] has engaged in off color comments and engaged back in other similar conversations." (ECF No. 90-14, PageID.880.) Case law requires "an examination of the totality of the circumstances including 'common sense' and an 'appropriate sensitivity to social context.'" *Wade*, 612 F. App'x at 297 (quoting *Oncale*, 523 U.S. at 82). Here, this includes the fact that the workplace is all male, and everyone – including Plaintiff – engaged in similar conduct. *See Balletti v. Sun-Sentinel Co.*, 909 F. Supp. 1539, 1547 (S.D. Fla. 1995) (courts "less likely to find that the conduct was 'unwelcome' or 'hostile'" when "a plaintiff's action in the

workplace shows that she was a willing and frequent participant").

More to the point, Porter's finding of "harassment" is not relevant to the Court's legal determination of whether harassment occurred in a legal sense or whether it was "unwelcome." These are legal terms requiring legal analysis; Porter was not conducting a legal analysis, and his conclusions are not binding on the Court. *See Smith v. Cnty. of Isabella*, No. 2:12-CV-11333, 2013 WL 4550163, at *7 n.12 (E.D. Mich. Aug. 28, 2013) (court not bound by employer's internal investigation).

*Not based on sex*. Plaintiff suggests that the alleged harassment was based on sex because the administrative documents reference harassment based on "sex." (ECF No. 97, PageID.2555.) This is irrelevant. It is undisputed that Plaintiff checked "sex" as one of the bases for the alleged harassment in his 2018 EEO complaint. This does not mean that the alleged harassment was based on sex in a legal sense. The analysis is controlled by *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307–08 (6th Cir. 2016), which applied a three-prong test under *Oncale*. As the Army explained, Plaintiff cannot satisfy the test by showing that Potter was acting out of sexual desire, motivated by a general hostility to men in the workplace, or by offering direct comparative evidence about how Potter treated both sexes. (ECF No. 90, PageID.707-708.) Plaintiff did not respond to these arguments.

*Not severe or pervasive*. The Army argued that Plaintiff cannot meet the "high bar" to show that the alleged harassment was objectively severe or pervasive. (ECF

No. 90, PageID.708-711.) Plaintiff did not meaningfully respond to the argument. (ECF No. 97, PageID.2556.) Plaintiff arguably abandoned his opposition to the Army's argument. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."); *Mahindra & Mahindra, Ltd. v. FCA US, LLC*, 503 F. Supp. 3d 542, 554 (E.D. Mich. 2020).

## RETALIATION CLAIM

Plaintiff failed to address almost all of the arguments made by the Army in support of summary judgment on Plaintiff's retaliation claim. For example, Plaintiff did not address the Army's position that aspects of his retaliation claim are barred by the agreement that settled Plaintiff's 2017 EEO complaint. (ECF No. 90, PageID.712.) Plaintiff fails to address the Army's position that retaliation played no role in Plaintiff not receiving the promotion to captain. (*Id.* at PageID.713.) Plaintiff fails to address the Army's argument that Potter's alleged actions could not have been retaliatory because hostilities between the two predated Plaintiff's protected activity. (ECF No. 90, PageID.713-714.) Plaintiff fails to address the argument that Young's refusal to write Plaintiff a letter of recommendation was not retaliatory. (ECF No. 90, PageID.714-715.) All of these arguments are effectively unrebutted.

Plaintiff attempts to offer new claims and arguments. Plaintiff now argues that: (i) his coworkers retaliated against him by not being as friendly; (ii) Potter

6

retaliated by issuing him a warning on September 14, 2017, for watching pornography; and (iii) Captain Skabilia retaliated by endangering Plaintiff during a house fire. (ECF No. 97, PageID.2557-2559.) None of this was alleged in the complaint. Plaintiff testified that only two people retaliated against him: Potter and Young. Pl. Dep. at 133:8-22 (ECF No. 90-2, PageID.751.) No one else. *Id.* Plaintiff cannot contravene his own deposition testimony by now claiming that others retaliated against him.

The new retaliation claims fail on the merits. Plaintiff's perception that his coworkers treated him differently after his protected activity is not an adverse employment action. *See Morris v. Austin Peay State Univ.*, 438 F. Supp. 3d 842, 846 (M.D. Tenn. 2020) (cleaned up) ("Being shunned or avoided, or being ostracized, are not adverse actions for purposes of retaliation, nor are the petty slights or minor annoyances that often take place at work and that all employees experience."). Plaintiff admitted that there is nothing inaccurate in the September 14, 2017, memo that he now says is retaliatory. Pl. Dep. at 252:9-23 (ECF No. 90-2, PageID.789); Exhibit 2 – 9/14/17 Memo. The memo predates any protected activity that Potter knew about, so it could not have been retaliatory. Potter Dep. at 7:17-8:15 (ECF No. 90-13, PageID.872-873.) Plaintiff is not claiming that Captain Skabilia (or anyone involved in the housefire) discriminated or retaliated against him. Exhibit 1 – Pl. Dep. at 152:4-153:4, 153:25-154:4.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*/s/ Benjamin A. Anchill*
Benjamin A. Anchill (P70968)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9566
benjamin.anchill@usdoj.gov

Dated:  January 19, 2023

**CERTIFICATION OF SERVICE**

I certify that on January 19, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the ECF participants in this case.

*s/Benjamin A. Anchill*
BENJAMIN A. ANCHILL
Assistant U.S. Attorney

**LOCAL RULE CERTIFICATION**

I, Benjamin A. Anchill, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*s/Benjamin A. Anchill*
BENJAMIN A. ANCHILL
Assistant U.S. Attorney