UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE DASILVA, JR.,

       Plaintiff,                                         Civil Action No. 20-11358

vs.

                                                             HON. MARK A. GOLDSMITH

MARK ESPER, et al.,

       Defendants.
_____/

**OPINION & ORDER**
**(1) GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkts. 89, 90), (2) GRANTING PLAINTIFF'S MOTION TO WITHDRAW THE MOTION TO AMEND/CORRECT AMENDED COMPLAINT (Dkt. 92), (3) DENYING AS MOOT PLAINTIFF'S MOTION TO AMEND/CORRECT AMENDED COMPLAINT (Dkt. 86), AND (4) DENYING AS MOOT JOINT MOTION TO ADJOURN FINAL PRETRIAL CONFERENCE AND TRIAL PENDING THE OUTCOME OF DISPOSITIVE MOTIONS AND SET PRETRIAL DEADLINES (Dkt. 105)**

This matter is before the Court on the motions for summary judgment filed by Defendant Martin Potter (Dkt. 89) and Defendant Christine Wormuth (Dkt. 90). For the reasons set forth below, the Court grants the motions.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motions, the briefing includes Plaintiff Joe Dasilva Jr.'s responses (Dkts. 96, 97) and Defendants' replies (Dkts. 98, 99).

Dasilva filed a motion to amend/correct his amended complaint (Dkt. 86) and later moved to withdraw that motion (Dkt. 92). The Court grants his motion to withdraw the motion to amend/correct the amended complaint, and it denies as moot the motion to amend/correct the amended complaint.

Because the Court grants Defendants' motions for summary judgment, it denies as moot the joint motion to adjourn the final pretrial conference and trial pending the outcome of the motions and set pretrial deadlines (Dkt. 105).

## I. BACKGROUND

Plaintiff Joe Dasilva Jr. brings this action against (i) Wormuth, the Secretary of the U.S. Army, in her official capacity and (ii) Potter, the former Assistant Chief and now Chief of the U.S. Army Detroit Arsenal Fire Division, in Potter's individual and official capacity. Am. Compl. (Dkt. 29). Dasilva worked for the Army as a firefighter emergency medical technician at the Detroit Arsenal Fire Division. Dasilva Dep. at 60 (Dkt. 90-2). Potter was Dasilva's immediate supervisor. Id. at 360.

Dasilva alleges that Potter created a hostile work environment by sexually harassing him. Am. Compl. ¶¶ 36–47. According to Dasilva, Potter "continuously" told him from 2008 until 2018, "I bet you can wear a B-sized bra." Dasilva Dep. at 143, 147. Potter also allegedly once asked Dasilva how much breast implants cost and once stated, "Hey, Dasilva [bet] you can . . . hold this pencil under . . . your breasts." Id. at 144, 162, 164. Dasilva further asserts that Potter retaliated against him for reporting the sexual harassment. Id. at 191, 307; Am. Compl. ¶¶ 23–35; 48–62.

After issuance of the Court's opinion granting in part and denying in part Defendants' motions to dismiss, the following claims remain: (i) a First Amendment retaliation claim against Potter; (ii) a hostile work environment claim under Title VII of the Civil Rights Act of 1964 against the Army; and (iii) a retaliation claim under Title VII against the Army. 2/9/22 Op. & Order (Dkt. 50).[2]

---

[2] The Court dismissed Dasilva's sex discrimination, weight discrimination, and retaliation claims under Michigan's Elliott-Larsen Civil Rights Act. 2/9/22 Op. & Order at 18–20. Dasilva withdrew his claims for negligent infliction of emotional distress and intentional infliction of emotional distress. See Resp. to Mot. to Dismiss at 22 (Dkt. 46).

2

## II. ANALYSIS[3]

The Court addresses Defendants' arguments as to each remaining claim in turn.

### A. First Amendment Retaliation Claim

Potter argues that he is entitled to summary judgment on Dasilva's First Amendment retaliation claim because the United States Supreme Court's decision in Egbert v. Boule, 142 S. Ct. 1793 (2022), in which the Court held that there is no remedy for First Amendment retaliation under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), precludes the claim. Potter Mot. for Summ. J. at 8–11. The Court finds that Dasilva's claim is in fact a Bivens claim and that Egbert forecloses it.[4]

In his amended complaint, Dasilva asserted a § 1983 claim against Potter based on First Amendment retaliation. See Am. Compl. ¶ 24. And in his response to Potter's motion for summary judgment, Dasilva insists that his claim is not a Bivens claim but rather a § 1983 claim. See Resp. to Potter Mot. for Summ. J. at 18–20.

---

[3] In assessing whether Defendants are entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

[4] Relying on the Court's opinion granting in part and denying in part Defendants' motions to dismiss, Dasilva argues that the Court already determined that he has a valid First Amendment retaliation claim against Potter. See Resp. to Potter Mot. for Summ. J. at 13–15. The Court found that Dasilva's Title VII retaliation claim did not fail for a lack of a cognizable adverse action and, therefore, could survive a motion to dismiss. 2/9/22 Op.& Order at 12–14. It did not determine whether his First Amendment or Title VII retaliation claim could survive a motion for summary judgment.

3

Section 1983 "enables a person to seek money damages for constitutional violations by State officials." Enriquez-Perdomo v. Newman, 54 F.4th 855, 867 (6th Cir. 2022). It creates a cause of action against "every person who under color of the law of any state . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983 (emphasis added). By its terms, § 1983 "does not and cannot apply to the action of the federal government." Miller v. U.S. Dep't of Hous. & Urb. Dev., No. 1:05-cv-01045, 2006 WL 2504834, at *5 (M.D.N.C. Aug. 29, 2006), aff'd, 216 F. App'x 367 (4th Cir. 2007).

Potter is not a state official. Potter is and has been employed by the U.S. Department of the Army, first as the Assistant Chief at the Detroit Arsenal Fire Division and subsequently as the Chief at the Detroit Arsenal Fire Division. Potter Mot. for Summ. J. at 7; Am. Compl. ¶ 7; Answer to Am. Compl. ¶ 7 (Dkt. 52). The Army is one of three military departments within the U.S. Department of Defense, and the U.S. Department of Defense is a federal agency.[5] Potter is a federal government official. There is no indication that Potter acted under color of state law, and Dasilva does not argue that Potter did so. "That means § 1983 has no role to play." Ciraci v. J.M. Smucker Co., 62 F.4th 278, 287 (6th Cir. 2023) (finding that plaintiffs seeking damages under the First Amendment against a federal official had no cause of action under § 1983 and, instead, had to rely on Bivens).

Dasilva seeks damages from a federal official based on a federal constitutional violation. See Am. Compl. ¶¶ 23–35; Resp. to Potter Mot. for Summ. J. at 13–18. Therefore, he must rely on the kind of implied cause of action created by Bivens. See Carlson v. Green, 446 U.S. 14, 50 n.14

---

[5] See Army Department, Federal Register, https://www.federalregister.gov/agencies/army-department.

4

(1980) (explaining that a § 1983 action is against a state officer and a Bivens action is against a federal officer). In Bivens, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). A Bivens claim can be brought only against federal officials in their individual capacities. Smith v. United States, 561 F.3d 1090, 1099 (10th Cir. 2009).

Under Egbert, however, Dasilva has no such claim against Potter. In that case, the Supreme Court held that "there is no Bivens action for First Amendment retaliation." 142 S. Ct. at 1807. It found that there were "many reasons to think that Congress, not the courts, is better suited to authorize such a damages remedy." Id. For instance, it determined that almost any adverse government action could be grounds for a retaliation claim, and, therefore, extending Bivens to this type of claim would increase the risk that "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Id. (punctuation modified).

Dasilva argues, however, that Egbert does not apply because it involved border patrol agents and matters of national security. Resp. to Potter Mot. for Summ. J. at 18–19. But the Egbert Court discussed the national-security context of the case—i.e., the fact that the incident giving rise to the suit occurred at the U.S.-Canadian border and that the plaintiff brought the suit against a border agent—only when examining the plaintiff's Fourth Amendment claim for excessive force, not the plaintiff's First Amendment claim. See Egbert, 142 S. Ct. at 1804 (stating that "regulating the conduct of agents at the border unquestionably has national security implications" and that the "risk of undermining border security provides reason to hesitate before extending Bivens into" the field of excessive-force claims against border agents); see also id. at 1804–1805 (finding that because "[m]atters intimately related to foreign policy and national security are rarely proper

5

subjects for judicial intervention," "a Bivens cause of action may not lie where, as here, national security is at issue").

The Court in Egbert did not indicate that its broad holding that there is no Bivens claim for alleged First Amendment violations was limited to cases implicating national-security concerns. Indeed, it discussed the potential costs of such First Amendment claims to federal employees generally, emphasizing that, if it recognized those claims, "[f]ederal employees face[d with] the added risk of personal liability for decisions that they believe to be a correct response to improper [activity] would be deterred from carrying out their duties." Id. at 1807. The plaintiff's First Amendment claim in that case presented a new Bivens context not because it arose in a border-security context but because the Court had "never held that Bivens extends to First Amendment claims," and, therefore, there was a "new constitutional right at issue." Id.

And the United States Court of Appeals for the Sixth Circuit has confirmed that Egbert disallows First Amendment claims against federal officials in other contexts, including where a plaintiff alleged retaliation for reporting sexual harassment. See Greene v. United States, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (holding that "Egbert specifically forecloses [the plaintiffs'] Bivens First Amendment retaliation claims" against individual federal government employees of the Bureau of Prisons and the Department of Justice).

Egbert forecloses Dasilva's First Amendment retaliation claim against Potter. See Enriquez-Perdomo, 54 F.4th at 769 (finding that plaintiff's Bivens claim for First Amendment retaliation brought against a federal officer "is not viable after Egbert"); Greene, 2022 WL 13638916, at *4; Hall v. Chapman, 2022 WL 4122024, at *6 (E.D. Mich. Sept. 9, 2022) (finding that the unequivocal holding in Egbert was not limited to the border-security context involved in the case).

6

### B. Title VII Hostile Work Environment Claim

Dasilva also brings a Title VII hostile work environment claim against the Army based on sexual harassment and gender stereotyping. Am. Compl. ¶¶ 36–47. The Court finds that the Government is entitled to summary judgment on this claim because Dasilva has not created a genuine factual dispute that Potter's alleged harassment was based on sex.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment. Williams v. Gen. Motors Corp., 187 F.3d 553, 560 (6th Cir. 1999). A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). To establish a prima facie claim of hostile work environment sexual harassment, an employee must show the following: (i) the employee is a member of a protected class; (ii) he or she was subject to unwelcome sexual harassment; (iii) the harassment was based on the employee's sex; (iv) the harassment created a hostile work environment; and (v) the employer is vicariously liable for the hostile work environment. Clark v. United Parcel Serv., Inc., 400 F.3d 341, 347 (6th Cir. 2005).

The Government argues in part that Dasilva cannot satisfy the third element—that the harassment was based on Dasilva's sex. Gov't Mot. for Summ. J. at 17–18; Gov't Reply at 5.

"To establish that the harm was based on [his or her] sex, [the plaintiff] must show that but for the fact of [his or her] sex, [the plaintiff] would not have been the object of harassment." Williams, 187 F.3d at 565 (punctuation modified). This inference is "easy to draw with male-female sexual

harassment . . . [but] not automatically available with same-sex harassment." Wasek v. Arrow Energy Servs., Inc., 682 F.3d 463, 467 (6th Cir. 2012) (punctuation modified).

The Sixth Circuit "allows a plaintiff alleging same-sex harassment in hostile work environment cases to establish the inference of discrimination based on sex in three ways: (1) where the harasser making sexual advances is acting out of sexual desire; (2) where the harasser is motivated by general hostility to the presence of men [or women] in the workplace; and (3) where the plaintiff offers direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." Smith v. Rock-Tenn Serv., Inc., 813 F.3d 298, 307–308 (6th Cir. 2016) (punctuation modified).

Whichever evidentiary route the plaintiff chooses to take, the plaintiff must "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] because of sex.'" Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (quoting 42 U.S.C. § 2000e–2(a)(1)). Workplace harassment is not "automatically discrimination because of sex merely because the words used have sexual content or connotations." Id. Rather, the text of Title VII indicates that "[t]he critical issue . . . is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. (punctuation modified).

Looking to the three ways set forth by the Sixth Circuit for establishing that harassment by same-sex individuals was based on sex, the Court finds that Dasilva has not set forth sufficient evidence inferring discrimination. The first method does not apply because there is no indication, and Dasilva does not allege, that Potter was motivated by sexual desire. Dasilva also does not argue that Potter was motivated by general hostility to men in the workplace. And the Detroit Fire

8

Arsenal is an all-male workplace, see Dasilva Dep. at 89, so there cannot be direct comparative evidence of how both sexes were treated in a mixed-sex workplace.

Dasilva does not state the method of proof on which he relies, and he does not address the Government's argument that he cannot satisfy any of the methods of proof under Smith. Given this failure, summary judgment against him is appropriate. Further, the two arguments that Dasilva does make as to why Potter's alleged harassment was based on sex have no merit under this standard.

First, Dasilva states that the complaints that he filed with the Equal Employment Opportunity Commission (EEOC) in 2017 and 2018, a SHARP (Sexual Harassment/Assault Response and Prevention) complaint he filed in 2018, and various documents associated with those complaints reference harassment based on "sex." Resp. to Gov't Mot. to Dismiss at 24–25. As the Government notes, however, the fact that Dasilva checked the box for "sex" in reporting the bases for Potter's harassment does not mean that the harassment was in fact based on sex for the purpose of Smith.

Second, Dasilva contends that he testified in the EEOC investigation that Potter's "comments about [Dasilva's] breast size inferred that he was a woman, which demeaned [Dasilva's] sexuality and masculinity." Id. at 25. Potter's comments may have demeaned Dasilva's sexuality and masculinity, but that does not mean that the comments fulfill one of the pathways that Smith recognizes for establishing that the plaintiff was harassed because of the plaintiff's sex. Demeaning sexual comments may come into play if they support a pathway recognized by Smith. For example, a plaintiff may establish that same-sex harassment was based on sex by presenting evidence that he or she was harassed "in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of [women or men] in the

9

workplace." See Oncale, 523 U.S. at 80. But Potter's comments do not show that Potter was motivated by general hostility to the presence of men in the workplace.

Dasilva has not produced any evidence to create a material factual dispute as to whether Potter made the various statements to Dasilva because of Dasilva's sex. Because he has not met his burden of showing that Potter's alleged conduct constituted discrimination because of sex, as opposed to being "merely tinged with offensive sexual connotation," see Oncale, 523 U.S. at 80, the Army is entitled to summary judgment on his Title VII hostile work environment claim.[6] See Wade, 612 F. App'x at 297 (finding that a jury could not reasonably infer that the actions of the alleged harasser, a female who called herself the "bitch in charge," constituted harassment of female workers because, even though words used had "sexual content or connotations," the plaintiff did not present sufficient evidence to satisfy any of the three methods for proving same-sex sexual harassment as described in Smith); Wasek, 682 F.3d at 467–468 (finding that plaintiff's hostile work environment claim could not survive summary judgment when plaintiff did not present credible evidence as to any of the Sixth Circuit's three routes for creating an inference of discrimination); Anderson v. Miracle Chrysler Plymouth Dodge, Inc., 2016 WL 3018781, at *6 (M.D. Tenn. May 26, 2016) (finding that plaintiff had not presented evidence that any harassment she faced was based on her sex and granting defendants' motion for summary judgment as to her hostile work environment discrimination claim where plaintiff could not satisfy any of the methods of proof under Smith).

---

[6] Because the Court finds that Dasilva has not created a material factual dispute as to whether Potter's alleged harassment occurred because of Dasilva's sex, it need not address the Army's arguments that the harassment was not unwelcome and that it was not objectively severe or pervasive.

### C. Title VII Retaliation Claim

In addition to a Title VII hostile work environment claim, Dasilva brings a Title VII retaliation claim against the Army, alleging that Potter retaliated against him for filing the 2017 and 2018 EEOC complaints and the 2018 SHARP complaint.[7] Am. Compl. ¶¶ 48–62. He alleges that Potter (i) denied his request to attend a training in 2017, (ii) lowered his performance evaluation in 2017, (iii) ignored and ostracized him, and (iv) interfered with his 2019 application for promotion to captain. Id. ¶¶ 11, 14–15, 55; Resp. to Gov't Mot. for Summ. J. at 25–29.[8] He also testified that Arthur Young, the Director of the Detroit Arsenal Fire Division, retaliated against him due to his complaints of sexual harassment when Young refused to write him a letter of recommendation for a reserve police officer position. Dasilva Dep. at 133; 263–264.[9]

---

[7] Dasilva argues that, in its opinion granting in part and denying in part Defendants' motions to dismiss, the Court already determined that he can establish a Title VII retaliation claim. Resp. to Gov't Mot. for Summ. J. at 25. The Court determined that Defendants were not entitled to dismissal of the claim on the ground that Dasilva failed to plausibly allege an adverse action. 2/9/22 Op. & Order at 12–17. It did not decide whether the claim could survive a motion for summary judgment.

[8] In his amended complaint, Dasilva alleged that Potter negatively interfered with his applications for "multiple promotions and/or transfers." Am. Compl. ¶ 55. The 2019 application for captain, however, is the only application for promotion or transfer that he discusses in his response, and, in his deposition, Dasilva testified that he did not remember whether there was another promotion or transfer with which Potter interfered. Resp. to Gov't Mot. for Summ. J. at 28–29; Dasilva Dep. at 169.

[9] In his response, Dasilva sets forth new allegations in support of his retaliation claim. Resp. to Gov't Mot. for Summ. J. at 26, 28–29. He alleges for the first time that (i) after he complained of Potter's harassment, Edwards, Firefighter DeArmon, and Sean Beal stopped talking to him and saying good morning to him; (ii) Potter retaliated against him by issuing him a warning on September 14, 2017, for watching pornography in his bunkroom; and (iii) Captain Skabilia retaliated against him by endangering him during a house fire. Id. These allegations do not appear in either the amended complaint or Dasilva's testimony. "[A] party may not circumvent Rule 8's pleading requirements by asserting a new allegation in response to a motion for summary judgment." Bullard v. Wastequip Mfg. Co. LLC, No. 14-01309, 2015 WL 12766467, at *12 (C.D. Cal. 2015). Further, Dasilva testified that only Potter and Young retaliated against him. See Dasilva Dep. at 133. He cannot survive a motion for summary judgment through these newly asserted allegations.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [his or her] employees . . . because [the employee] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). When a plaintiff does not offer direct evidence of retaliation, courts consider a Title VII retaliation claim under the McDonnell Douglas burden-shifting framework. Kenney v. Aspen Tech., Inc., 965 F.3d 443, 448 (6th Cir. 2020). A plaintiff must first set forth a prima facie case of discrimination. Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir. 2001). If the plaintiff does so, the burden of production of evidence then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. Id. If the defendant carries this burden, the plaintiff must then prove "by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination." Id. "The ultimate burden of persuasion remains at all times with the plaintiff." Id. A plaintiff can defeat summary judgment only if he or she produces evidence sufficient to "create a genuine dispute [of fact] at each stage of the McDonnell Douglas inquiry." Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir. 2000).

The Court finds that it cannot consider certain acts underlying the claim because those acts were the subject of the 2017 settlement agreement. Even if it could consider those acts, Dasilva cannot establish a prima facie case. As to the remaining allegations, the Court determines that the Government has met its burden in offering a legitimate, nondiscriminatory reason for the adverse action, and Dasilva has not produced sufficient evidence from which a reasonable juror could conclude that this reason was a pretext for discrimination.

1. **Potter's Denial of Training and Lower Performance Evaluation**

In February 2017, Dasilva filed a complaint with the EEOC, alleging in part that Potter denied him a training that year and rated him as "successful" rather than "excellent" on a performance

12

evaluation that year. 2017 EEOC Counselor's Report. This complaint culminated in a settlement agreement between the Army and Dasilva. Settlement Ag. (Dkt. 90-12). In the settlement agreement, which Dasilva signed on March 16, 2017, the Army agreed to investigate allegedly rude comments that the then-Chief of the Detroit Fire Arsenal, Sean Edwards, made to Dasilva. Id. at 2. Dasilva agreed "to waive his right to pursue administrative or judicial action in any forum concerning the matters raised in this complaint" and that these matters "will not be made the subject of future litigation." Id.

Dasilva's Title VII retaliation claim is based in part on conduct that occurred prior to and was subject to the 2017 settlement agreement. He alleges that Potter denied him a training in January 2017 and rated him as "successful" rather than "excellent" on a performance evaluation in February 2017. Am. Compl. ¶¶ 14–15; see also Dasilva Dep. at 186, 192 (stating that allegations in amended complaint refer to the same incidents as those raised in the 2017 EEOC complaint). As the Court previously stated in its opinion granting in part and denying in part Defendants' motions to dismiss, a settlement agreement extinguishes Title VII claims that are based on events that occurred before the settlement agreement. 2/9/22 Op. & Order at 10–12 (citing Folley v. Henderson, 175 F. Supp. 2d 1007, 1011–1013 (S.D. Ohio 2001)). Both Potter's denial of a training and his performance evaluation rating occurred before the 2017 settlement agreement. Therefore, the Court cannot consider these acts in determining whether Dasilva's Title VII retaliation claim survives summary judgment.

Even if the settlement agreement did not preclude the Court's consideration of these acts, Dasilva cannot establish a prima facie case by relying on them. To make out a prima facie case of retaliation under Title VII, a plaintiff must show the following: (i) he or she engaged in protected activity; (ii) the defendant knew about the plaintiff's exercise of this right; (iii) the defendant then

took an employment action adverse to the plaintiff; and (iv) the protected activity and the adverse employment action are causally connected. Gribcheck, 245 F.3d at 550.

As the Army notes, Dasilva cannot establish the fourth element because the denial of training and the performance evaluation, which are the alleged adverse employment actions, occurred before Dasilva engaged in the protected activity of filing the 2017 EEOC complaint. See Simmons v. Ohio Rehab. Servs. Comm'n, No. 13-4496, 2015 WL 13926948, at *3 (6th Cir. Jan. 27, 2015) ("Protected activity that occurs after an adverse action cannot form the basis of a retaliation claim."); Weatherby v. Fed. Express, 454 F. App'x 480, 492 (6th Cir. 2012) ("All of Plaintiff's other protected actions . . . occurred after her termination and so cannot form the basis of the protected activity for which Plaintiff claims she experienced retaliation through termination."); Hamilton v. Starcom Mediavest Grp., Inc., 522 F.3d 623, 628 (6th Cir.2008) ("[A]n employee's protected activities will be the cause of an employer's retaliatory conduct only where the employer knew of those protected activities.").

### 2. Potter Ignoring and Ostracizing Dasilva

Dasilva also alleges that Potter was "routinely loud and rude to [him] specifically, in addition to ignoring him and/or ostracizing him from the workplace community." Am. Compl. ¶ 11. Dasilva does not provide many examples of this conduct. In his response, he states that, after Dasilva complained of Potter's harassment, Potter did not talk to or say good morning to him. Resp. to Gov't Mot. for Summ. J. at 26. These allegations are insufficient to support a cause of action under Title VII. "[Dasilva's] perception that [Potter] shunned and avoided him is not a materially adverse action" for the purpose of a retaliation claim. Creggett v. Jefferson Cnty. Bd. of Educ., 491 F. App'x 561, 569 (6th Cir. 2012); see also Wierengo v. Akal Sec., Inc., 580 F. App'x 364, 373 (6th Cir. 2014).

### 3. Potter's Interference with Dasilva's Application for Promotion to Captain

Dasilva alleges that, in 2019, Potter retaliated against him by interfering with his application for promotion to captain and that Potter's interference caused Dasilva to be denied the promotion. Dasilva Dep. at 390. Dasilva has made out the first three elements of a prima facie case. He engaged in protected activity by filing complaints regarding Potter's treatment of him, Potter knew of the complaints at the time Dasilva applied for captain, and the failure to promote is an adverse employment action. See Nguyen v. City of Cleveland, 229 F.3d 559, 562 (6th Cir. 2000); McNutt v. Ross Educ., LLC, 20-34, 2022 WL 3654861, at *9 (E.D. Ky. Aug. 24, 2022).

The Army contends, however, that Dasilva cannot establish the fourth element of a prima facie case—that a causal connection exists between Dasilva's reporting of Potter's alleged sexual harassment and Dasilva not being selected for captain. In response, Dasilva simply asserts that "Potter's negative involvement in [Dasilva's] evaluation caused [Dasilva] not to receive a promotion" and points to an April 2018 email that he sent to the EEOC Specialist and Complaints Manager for the Army, in which Dasilva stated that had filed an EEOC complaint for reprisal and retaliation and that Potter "has played a very big role in [his] evaluation at the end of the year." Resp. to Gov't Mot. for Summ. J. at 28; DOD Investigation File a 0128 (Dkt. 97-1)). But Dasilva must create a triable issue as to whether there is a causal connection between the protected activity—the reporting of the harassment—and the denial of promotion, not whether there is a causal connection between Potter's evaluation and the denial of promotion. Dasilva does not point to any facts to create a causal connection between his complaints regarding Potter and not being promoted to captain.

Even if Dasilva could establish a prima facie case of retaliation, however, the Army has met its burden of offering a legitimate, nondiscriminatory reason for not offering him the position of

captain. This burden is a "burden of production, not of persuasion, and it does not involve a credibility assessment." Upshaw v. Ford Motor Co., 576 F.3d 576, 585 (6th Cir. 2009). Although "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons," it must raise "a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). The Army "must clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse employment action]." Id. "The explanation provided must be legally sufficient to justify a judgment for the defendant." Id.

The Army asserts that Dasilva was not selected for the position of captain because he was less qualified than the candidate who was selected, Shane Biehl. Gov't Mot. for Summ. J. at 23. The three individuals who interviewed and rated Dasilva's abilities when Dasilva applied for the position—Potter, Assistant Chief Adam Todd, and Assistant Chief Lesley Tillman—submitted declarations stating that they did not deem Dasilva qualified for the position. Potter Decl. ¶ 7 (Dkt. 90-3); Todd Decl. ¶ 8 (Dkt. 90-6); Tillman Decl. ¶ 5 (Dkt. 90-7). The rating criteria sheets attached to the declarations show that all three individuals rated Dasilva the second lowest of the eight individuals who applied for the position. Potter Decl. at 3; Todd Decl. at 4; Tillman Decl. at 4. Out of 110 total points, they scored the highest-scoring applicant between 48–52 points higher than Dasilva. Potter Decl. at 3; Todd Decl. at 4; Tillman Decl. at 4. The interview rating sheets attached to the declarations show that Potter and Tillman found that Dasilva did not demonstrate leadership performance skills. Potter Decl. at 4; Tillman Decl. at 5. Todd's interview rating sheet shows that Todd found that Dasilva lacked evidence of numerous performance skills, including leadership, customer service, motivating others, team building, and "planning, prioritizing, and goal setting." Todd Decl. at 5. It also states that Dasilva "does not demonstrate abilities needed

16

to effectively lead at the GS-8 level" and "should continue to improve and work towar[d] engaging in activity to help." Id. Defendants' reason for not promoting Dasilva to captain—that he was not qualified—satisfies their burden of proof at this stage. See Smith v. City of Dayton, 37 F.3d 1499 (6th Cir. 1994).

Dasilva must, therefore, "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. "A plaintiff may establish pretext by showing that the employer's proffered reason for the adverse employment action (1) has no basis in fact, (2) did not actually motivate the action, or (3) was insufficient to warrant the action." Horn v. City of Cleveland, 674 F. App'x 511, 515 (6th Cir. 2017). Dasilva does not offer any argument or point to any evidence refuting the Army's legitimate and nonretaliatory reason for his lack of promotion to captain. Therefore, he has not produced sufficient evidence from which a jury could reasonably reject the Army's explanation and infer that it intentionally discriminated against him. See Hall v. Mich. State Police Dep't, 290 F. App'x 913, 919 (6th Cir. 2008).

**4. Young's Refusal to Write a Letter of Recommendation for Dasilva**

In his deposition, Dasilva asserted that Young retaliated against him by refusing to write a letter of recommendation supporting Dasilva's application for a part-time reserve police officer position. Dasilva Dep. at 137, 263–264.

The Government argues that Young's refusal to write a recommendation is not an adverse action in part because Dasilva cannot show he was harmed by Young's action. Gov't Mot. for Summ. J. at 25. Dasilva offers no response to this argument. The Court agrees with the Government. Dasilva testified that he did not finish the application process for the part-time reserve police officer position because he could not meet one of the physical requirements for the

17

position. Dasilva Dep. at 264–266. Because Dasilva "makes no serious argument in support of [Young's refusal to write a recommendation] being an adverse action, and there is affirmative evidence that [he] was not actually harmed," he "has not shown that [Young's action], in and of itself, is an adverse employment action." Taylor v. Geithner, 703 F.3d 328, 340 (6th Cir. 2013); see also Hunter v. Sec'y of U.S. Army, 565 F.3d 986, 995–996 (6th Cir. 2009) (finding that plaintiff's transfer to another unit was insufficient to constitute an adverse employment action when the plaintiff did not show that the transfer resulted in injury or harm); Garner v. Cuyahoga Cnty. Juv. Ct., 554 F.3d 624, 640 (6th Cir. 2009) (noting that "a fundamental requirement for demonstrating retaliation" is showing that an action "produce[d] an injury or harm") (punctuation modified).

Because Dasilva either cannot make out a prima facie case of retaliation or create a triable issue as to pretext based on Potter's alleged conduct and Young's alleged conduct, the Army is entitled to summary judgment on his Title VII retaliation claim.

### III. CONCLUSION

For the reasons set forth above, the Court grants Defendant Martin Potter's motion for summary judgment (Dkt. 89), and it grants Defendant Christine Wormuth's motion for summary judgment (Dkt. 90).

SO ORDERED.

Dated: June 2, 2023  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge